UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALISHA CLARK WALKER,

                              Plaintiff,

                                                                    1:22-cv-581
v.                                                                  (DNH/TWD)

DR. MARY O'CONNOR,

                              Defendants.
_____

APPEARANCES:

ALISHA CLARK WALKER
Plaintiff, *pro se*
757 Taborton Road
Sand Lake, NY 12153

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

        Alisha Clark Walker ("Plaintiff") initiated this action *pro se* on June 2, 2022, claiming

Dr. Mary O'Connor ("Defendant") violated 42 U.S.C. § 1983 and § 1985.  (Dkt. No. 1.)

Plaintiff simultaneously moved to proceed *in forma pauperis* ("IFP").  (Dkt. No. 2.)  Having

reviewed Plaintiff's motion to proceed IFP, the undersigned GRANTS the motion for purposes

of this review.  *See id.*  The undersigned now considers the sufficiency of the allegations set forth

in the Complaint under 28 U.S.C. § 1915(e).  For the reasons discussed below, the undersigned

recommends that the Court dismiss Plaintiff's Complaint in its entirety with leave to amend.

(Dkt. No. 1.)

I.      **SUMMARY OF THE COMPLAINT**[1]

This is the second of two actions Plaintiff initiated against various individuals stemming from a child custody dispute in New York State Family Court.  (*See* Dkt. No. 1; *see also* Case No. 1:22-cv-560, Dkt. No. 1.)  In the first (hereinafter, "*Walker I*"), Plaintiff claimed several New York State Family Court Judges, two private attorneys, and the Averill Park School District violated her First and Fourteenth Amendment rights.  (Case No. 1:22-cv-560, Dkt. No. 1.)  In this case, Plaintiff restates and reasserts many of the same claims against Dr. Mary O'Connor, a private individual ordered by the New State Family Court to render forensic psychological evaluations in the underlying custody dispute.  (*See* Dkt. No. 1 at 1-2, 8.)  Here, as in *Walker I*, Plaintiff invokes this Court's jurisdiction under 28 U.S.C. § 1331 and § 1343, purporting to advance several causes of action under 42 U.S.C. § 1983 and § 1985.  (Dkt. No. 1 at 4.)

Plaintiff claims "the policies, practices, procedures, and standards established and/or maintained by Defendant/s [sic] violate the Right to Free speech under the First Amendment, and the Due Process and Equal Protection clauses of the Fourteenth Amendment to the U.S. Constitution."  *Id.* at 4.  Plaintiff accordingly recycles many of the same claims against Dr. O'Connor that she asserted against the Defendants in *Walker I*.  *See id.* at 9-31.  Through the first cause of action, Plaintiff claims Dr. O'Connor "religiously discriminated against" her in violation of the First Amendment.  *Id.* at 9.  In her second cause of action, Plaintiff claims  Dr. O'Connor retaliated against her in violation of the First Amendment.  *Id.* at 10.  By her third cause of action, Plaintiff claims Dr. O'Connor "deprived [her] of the rights of a mother to her

---

[1] The following recitation of facts is drawn from the Complaint, which the Court accepts as true for purposes of initial review.  *See, e.g.*, *LaTouche v. Rockland County*, No. 22-CV-1437 (LTS), 2022 WL 953111, at *1 (S.D.N.Y. Mar. 29, 2022); *Walker v. City of New York*, No. 20-CV-5240 (PKC) (LB), 2021 WL 1838277, at *1 n.1 (E.D.N.Y. May 7, 2021).

children and due process and freedom of speech" in violation of the First and Fourteenth
Amendments. *Id.* at 12-13. Through her fourth cause of action, Plaintiff claims Dr. O'Connor
discriminated against her. *Id.* at 14-19. In her fifth cause of action, Plaintiff claims Dr.
O'Connor used her position to "maliciously intentionally inflict harm and pain on the Plaintiff."
*Id.* at 20. By her sixth and final cause of action, Plaintiff claims Dr. O'Connor engaged in sex
bias discrimination. *Id.* at 25.

## II.    STANDARD OF REVIEW

This Court must conduct an initial review of complaints filed *in forma pauperis*, and
"complaints in which a prisoner seeks redress from a governmental entity or officer or employee
of a governmental entity." 28 U.S.C. § 1915(e)(2)(B) (governing complaints filed *in forma
pauperis*); 28 U.S.C. § 1915A (governing complaints filed by prisoners against the government).
When reviewing these types of complaints, this Court must "identify cognizable claims
or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous,
malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief
from a defendant who is immune from such relief." 28 U.S.C. § 1915A; 28 U.S.C.
§ 1915(e)(2)(B); *see also Allen v. Stringer*, No. 20-3953, 2021 WL 4472667, at *1 (2d Cir. Sept.
30, 2021) (applying Section 1915(e)(2)(B)); *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999)
(applying Section 1915A).[2]

This Court must exercise caution when determining whether to *sua sponte* dismiss a *pro
se* complaint on the grounds that it is frivolous. *See Thomas v. Scully*, 943 F.2d 259, 260
(2d Cir. 1991); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). "An action is frivolous

---

[2] Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks,
emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157
n.4 (2d Cir. 2020).

when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

When undertaking this initial review, the Court must construe *pro se* pleadings with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. 662, 678. It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in

a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

## III.   SUFFICIENCY OF THE COMPLAINT

Plaintiff's Complaint should be dismissed because it fails to state a claim upon which

relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B).  Moreover, just like *Walker I*, Plaintiff's

claims are likely barred by either the *Younger* abstention or the *Rooker-Feldman* doctrine.

### A.   Plaintiff's Section 1983 Claims

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the

undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983.  *See*

28 U.S.C. § 1915(e)(2)(B)(ii).[3]  Plaintiff purports to bring this action against Dr. O'Connor, a

court-appointed forensic psychologist, under 42 U.S.C. § 1983.  (*See* Dkt. No. 1 at 3-4.)  "To

prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has

deprived him of a federal right, and (2) that the person who has deprived him of that right acted

under color of state law."  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005).  "[P]rivate individuals .

. . cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under

color of state law."  *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013).  A conclusory

allegation that a private individual acted in concert with a state actor does not constitute a

plausible allegation that the private individual acted under color of state law.  *See Ciambriello v.

Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see, e.g.*, *Asensio v. DiFiore*, No. 18-CV-

10933 (RA), 2019 WL 4392743, at *8 (S.D.N.Y. Sept. 13, 2019) (concluding the plaintiff's

"conclusory allegations" of conspiracy were "plainly insufficient to support a finding that [the

---

[3] Plaintiff does not explain or distinguish which of her six causes of action are advanced under
42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985.  (*See generally* Dkt. No. 1 at
9-31.)  The undersigned accordingly considers whether *any* of Plaintiff's six causes of action
state a claim for relief under 42 U.S.C. § 1983.  *See Sealed Plaintiff*, 537 F.3d at 191.

defendant] has acted under color of state law."); *Bornschein v. Herman*, 304 F. Supp. 3d 296, 301 (N.D.N.Y. 2018) (same).

Plaintiff's Section 1983 claims against Dr. O'Connor are inadequately pled because she failed to allege Dr. O'Connor acted under color of state law.  *See* 42 U.S.C. § 1983; *Velez*, 401 F.3d at 84.  Plaintiff's conclusory allegations that Dr. O'Connor acted in concert with state actors do not plausibly allege that Dr. O'Connor acted under color of state law.  *See Asensio*, 2019 WL 4392743, at *8; *Bornschein*, 304 F. Supp. 3d at 301.  Similarly, Plaintiff's allegation that Dr. O'Connor was ordered by the court to issue a forensic evaluation does not give rise to the reasonable inference that she was acting under color of state law.  *See, e.g.*, *Markham v. Rosenbaum*, No. 20-CV-6039-FPG, 2020 WL 3316099, at *9 (W.D.N.Y. June 18, 2020), *appeal dismissed*, No. 20-2223, 2021 WL 3027159 (2d Cir. May 13, 2021) (concluding a court-appointed psychologist was not a state actor for purposes of a claim brought pursuant to 42 U.S.C. § 1983 arising out of child custody dispute); *Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) (same); *see generally Estiverne v. Esernio-Jenssen*, 910 F. Supp. 2d 434, 444 (E.D.N.Y. 2012) ("Dr. Jenssen's cooperation in the [Administration for Children's Services] investigation, by providing medical information and opinion, does not transform her into a state actor.").  The undersigned accordingly recommends that the Court dismiss all claims asserted under 42 U.S.C. § 1983 on the grounds that Plaintiff failed to adequately allege Dr. O'Connor acted under color of state law.  *See* 28 U.S.C. 1915(e)(2)(B)(ii).

Moreover, Plaintiff has failed to adequately allege Dr. O'Connor violated one of her federal rights.  *See* 42 U.S.C. § 1983; *see also Velez*, 401 F.3d at 84.  Plaintiff repeatedly claims Dr. O'Connor violated her First and Fourteenth Amendment rights.  (*See* Dkt. No. 1 at 4, 9-31.) Yet, Plaintiff failed to support this general claim with sufficient factual allegations to give rise to

the reasonable inference that Dr. O'Connor's conduct amounted to *an actual violation* of her First and Fourteenth Amendment rights.  *See Iqbal*, 556 U.S. at 678.  Because Plaintiff failed to plausibly allege that Dr. O'Connor violated one or more of her federal rights, the undersigned recommends that the Court dismiss every cause of action Plaintiff asserts under Section 1983 for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see, e.g.*, *Perez v. Colon*, No. 9:19-CV-0722 (BKS), 2019 WL 5102612, at *6 (N.D.N.Y. Oct. 11, 2019) ("In the absence of factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violated Plaintiff's constitutional rights, the complaint fails to state a cognizable claim against him/her."); *Hamilton v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:18-CV-1312 (MAD), 2019 WL 2352981, at *7 (N.D.N.Y. June 4, 2019) (same).

### B.      Plaintiff's Section 1985 Claims

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1985.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).[4]  To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007); *see also DeRouseau*, 2022 WL 1747859, at *3.  Further, the "conspiracy must also be

---

[4] Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985.  (*See generally* Dkt. No. 1 at 9-31.)  The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1985.  *See Sealed Plaintiff*, 537 F.3d at 191.

motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus

behind the conspirators' action."  *Cine SK8, Inc.*, 507 F.3d at 791.  "Complaints containing only

conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to

deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive

allegations are insufficient, unless amplified by specific instances of misconduct."  *DeRouseau*,

2022 WL 1747859, at *3; *see, e.g.*, *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) ("The

plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the

minds occurred among any or all of the defendants. Their conspiracy allegation must therefore

fail."); *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 340 (E.D.N.Y. 2010), *aff'd*,

417 F. App'x 96 (2d Cir. 2011) (concluding the § 1985 conspiracy claim failed because

"Plaintiff has provided only conclusory, vague and unsupported allegations . . . as a basis for

asking the Court to find the existence of a conspiracy.").  Moreover, a § 1985 conspiracy claim

fails as a matter of law where there is no underlying constitutional violation.  *See, e.g.*, *Oliver v.*

*Penny*, No. 21-111, 2022 WL 2165814, at *3 (2d Cir. June 16, 2022) (concluding plaintiff's

§ 1985 conspiracy claim "failed because she did not plausibly allege an underlying constitutional

violation"); *Tirse v. Gilbo*, No. 6:15-CV-0987 (GTS) (ATB), 2016 WL 4046780, at *18

(N.D.N.Y. July 27, 2016) ("Because the Court has found that Plaintiff has failed to allege facts

plausibly suggesting a conspiracy and/or an underlying constitutional violation, Plaintiff's

§ 1985 claim is likewise dismissed.").

     Here, Plaintiff failed to advance any non-conclusory factual allegations suggesting Dr.

O'Connor targeted and discriminated against her on the basis of sex.  (*See generally* Dkt. No. 1;

*see, e.g., Doe v. Fenchel*, 837 F. App'x 67, 68 (2d Cir. 2021) (concluding plaintiff failed to plead

any facts in support of the "conclusory allegations" that defendants "targeted him and

discriminated against him based on his race, color, gender, sex, veteran status, disability status, and so forth.").)  Although Plaintiff alleges Dr. O'Connor "acted in malice with bias" and "routinely engag[ed] in sex bias and discrimination," she fails to advance any factual allegations to support this conclusory statement.  (*See* Dkt. No. 1 at 5, 25.)  "Such naked assertions devoid of further factual enhancement are insufficient to give rise to a plausible entitlement to relief." *Doe*, 837 F. App'x at 68.

Plaintiff also failed to adequately allege Dr. O'Connor conspired with other individuals to engage in unlawful conduct against her.  (*See generally* Dkt. No. 1 at 13-14.)  Plaintiff advanced the general allegation that Dr. O'Connor acted in concert with others during the custody dispute before the New York State Family Court, but advanced no factual allegations indicating that Dr. O'Connor agreed to engage in *unlawful conduct* against her.  *See id.*  As explained above, the Complaint lacks sufficient factual allegations to give rise to the reasonable inference that Dr. O'Connor violated Plaintiff's First and Fourteenth Amendment rights.  *See Iqbal*, 556 U.S. at 678.  The general allegation that Dr. O'Connor acted in concert with others, without more, does not give rise to the inference that she agreed to engage in *unlawful conduct* against Plaintiff.  *See, e.g.*, *Webb*, 340 F.3d at 110-11; *Alston v. Sebelius*, No. 13-CV-4537 (SJF) (ARL), 2014 WL 4374644, at *18 (E.D.N.Y. Sept. 2, 2014); *Morpurgo*, 697 F. Supp. 2d at 340.

Finally, Plaintiff failed to allege facts plausibly suggesting an underlying constitutional violation.  (*See generally* Dkt. No. 1 at 9-31; *see, e.g.*, *Tirse*, 2016 WL 4046780, at *18 (dismissing a § 1985 conspiracy claim because "Plaintiff has failed to allege facts plausibly suggesting . . . an underlying constitutional violation").)  Plaintiff alleged in conclusory fashion that Dr. O'Connor violated her First and Fourteenth Amendment rights, but her Complaint lacks factual allegations to support this claim.  (*See generally* Dkt. No. 1 at 4, 6, 9-31.)  Those

conclusory allegations fail to plausibly allege a constitutional violation. *See id.*; *see also Iqbal*, 556 U.S. at 678. Plaintiff has accordingly failed to state a claim for relief under 42 U.S.C. § 1985(3). *See, e.g.*, *Oliver*, 2022 WL 2165814, at *3; *Tirse*, 2016 WL 4046780, at *18; *Alston*, 2014 WL 4374644, at *18. The undersigned therefore recommends that the Court dismiss every cause of action Plaintiff asserts under 42 U.S.C. § 1985(3) for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).[5]

### C.    Jurisdiction

Although the nature of Plaintiff's Complaint makes it difficult to precisely determine which doctrines apply, her claims are likely barred by *Younger* abstention and/or the *Rooker-Feldman* doctrine. (*See* Dkt. No. 1; *see, e.g.*, *Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *10-11 (N.D.N.Y. Jan. 26, 2022) (concluding plaintiff's claims, which stemmed from an underlying New York State Family Court custody dispute, were likely barred by *Younger* abstention and the *Rooker-Feldman* doctrine).)

First, in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine. *See generally Younger v. Harris,* 401 U.S. 37 (1971); *see, e.g.*, *Amato*, 2022 WL 226798, at *11. In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* abstention doctrine is limited to three exceptional circumstances, including: (1) state criminal prosecutions; (2) civil

---

[5] The undersigned notes that, nested within Plaintiff's third cause of action, she purports to assert a "civil rights action brought pursuant to Title VII of the Civil Rights Act of 1964." (Dkt. No. 1 at 4, 14.) That claim fails, however, because Plaintiff did not allege she is or was an employee of Dr. O'Connor, and she did not allege any employment discrimination. *See, e.g.*, *Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022) (dismissing plaintiff's Title VII claim as frivolous because she did not "allege employment discrimination or that she is or was an employee of Judge McGinty") (collecting cases).

enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73; *see also id.* ("This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions . . . or that implicate a State's interest in enforcing the orders and judgments of its courts").

Here, Plaintiff seeks injunctive relief from a child custody dispute before New York State Family Court.  (Dkt. No. 1 at 1-2, 32.)  "[I]t is well-settled that a custody dispute raises important state interests." *Stumpf v. Maywalt*, No. 21-CV-06248 (EAW), 2022 WL 2062613, at *3 (W.D.N.Y. June 6, 2022) (collecting cases); *see also Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-00459 (PKC), 2015 WL 1120120, at *3 (E.D.N.Y. Mar. 12, 2015).  Accordingly, to the extent the custody dispute is continuing in New York State Family Court, this Court should abstain from interfering with that process.  *See, e.g.*, *Stumpf*, 2022 WL 2062613, at *3 (applying *Younger* abstention in an action stemming from an ongoing child custody dispute); *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK) (CFH), 2020 WL 3503158, at *4 (N.D.N.Y. June 29, 2020) (applying *Younger* abstention in an action seeking declaratory relief over a child custody dispute); *Graham*, 2015 WL 1120120, at *3 (applying *Younger* abstention in an action seeking injunctive relief over a child custody dispute); *Rhee-Karn v. Burnett*, No. 13 CIV. 6132 (JPO), 2014 WL 4494126, at *7 (S.D.N.Y. Sept. 12, 2014) (applying *Younger* abstention in an action seeking declaratory and injunctive relief over a child custody dispute).

Second, in the event the relevant underlying state court proceedings are concluded, such claims are likely barred by the *Rooker-Feldman* doctrine.  *See Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that *Rooker–Feldman* bars Phifer's challenges to the family court's decisions regarding custody, neglect, and visitation."); *Fernandez v.*

*Turetsky*, No. 1 2-CV-4092 (SLT) (MDG), 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases).  "The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases."  *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *see also Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015).  The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered.  *Dorce*, 2 F.4th 82, 101; *Sykes*, 780 F.3d at 94.

Here, it appears Plaintiff "lost" in New York State Family Court, complains of injuries caused by that court's judgments, and asks this Court to invalidate those judgments on the grounds that they violated her due process rights.  (*See* Dkt. No. 1 at 32 (requesting an "injunction barring Defendant from continuing their [sic] illegal acts," and a "permanent restraining order to be placed on the defendant [sic]").)  Thus, as currently drafted, Plaintiff's Complaint is likely barred under the *Rooker-Feldman* doctrine.  *See, e.g.*, *Phifer*, 289 F.3d at 57; *Stumpf*, 2022 WL 2062613, at *4 n.4; *Amato*, 2022 WL 226798, at *10; *Fernandez*, 2014 WL 5823116, at *4.

## IV.   CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court dismiss Plaintiff's Complaint with leave to amend.  (Dkt. No. 1.)

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED** solely for purposes of initial review; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: June 29, 2022
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

[6] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2022 WL 953111
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Valery LATOUCHE, Plaintiff,

v.

ROCKLAND COUNTY; Rockland County Jail;
John Morley, Chief Medical Officer; Department
of Correctional Services; Dr. Jacobson, DDS,
Sing Sing Correctional Facility; Tushar Udeshi,
DDS, Sing Sing Correctional Facility, Defendants.

22-CV-1437 (LTS)
|
Signed 03/29/2022

**Attorneys and Law Firms**

Valery LaTouche, Ossining, NY, Pro Se.

ORDER TO AMEND

LAURA TAYLOR SWAIN, Chief United States District
Judge:

 **\*1** Plaintiff, who is currently incarcerated at Sing Sing
Correctional Facility (Sing Sing), brings this *pro se* action
under 42 U.S.C. § 1983, asserting numerous claims that
are wholly unrelated to one another. Plaintiff brings claims
arising from his 2004 arrest, and he challenges his 2005
conviction. Plaintiff also brings claims about his medical
care, which he asserts against: (1) two dentists who allegedly
provided "negligent" dental care in 2016, at Sing Sing; and (2)
the Rockland County Jail, the New York State Department of
Corrections and Community Supervisions (DOCCS),[1] and
DOCCS Chief Medical Officer John Morley in connection
with medical treatment of Plaintiff's hair loss, eczema, and
gynecomastia.

[1]  Plaintiff names as a defendant "Department
of Correctional Services," which the Court
understands to refer to the DOCCS, rather than the
New York City Department of Correction.

By order dated March 14, 2022, the Court granted Plaintiff's
request to proceed *in forma pauperis* (IFP), that is, without
prepayment of fees.[2]

[2]  Prisoners are not exempt from paying the full filing
fee even when they have been granted permission
to proceed *in forma pauperis*. *See* 28 U.S.C. §
1915(b)(1).

**STANDARD OF REVIEW**

The Prison Litigation Reform Act requires that federal courts
screen complaints brought by prisoners who seek relief
against a governmental entity or an officer or employee of a
governmental entity. *See* 28 U.S.C. § 1915A(a). The Court
must dismiss a prisoner's *in forma pauperis* complaint, or any
portion of the complaint, that is frivolous or malicious, fails
to state a claim upon which relief may be granted, or seeks
monetary relief from a defendant who is immune from such
relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v.
Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must
also dismiss a complaint if the court lacks subject matter
jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the
court is obliged to construe *pro se* pleadings liberally, *Harris
v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them
to raise the "strongest [claims] that they *suggest*," *Triestman
v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)
(internal quotation marks and citations omitted) (emphasis in
original). But the "special solicitude" in *pro se* cases, *id.* at
475 (citation omitted), has its limits – to state a claim, *pro se*
pleadings still must comply with Rule 8 of the Federal Rules
of Civil Procedure, which requires a complaint to make a short
and plain statement showing that the pleader is entitled to
relief.

**BACKGROUND**

Plaintiff Valery LaTouche alleges the following facts, which
the Courts accepts as true for purposes of screening the
complaint.

**1. False Arrest**

In 2004, Plaintiff was at a friend's house in New City,
Rockland County, New York. (ECF 1 at 2.) There was a
"police raid," and Plaintiff was "unreasonably seized by a
Ramapo police officer." (*Id.*) He was arrested and charged
with unlawful possession of weapons. Later, at a preliminary

hearing, the charges against Plaintiff were dismissed based on information that he did not reside in the home.

**\*2**  In 2005, Plaintiff was arrested on an "active warrant" arising from the 2004 police raid, which "was used as cause" to detain him in connection with the charges for which he is currently serving a sentence. [3]  Plaintiff obtained, in 2021, a certificate of dismissal from the Ramapo Town Court in connection with the weapons possession charges. Plaintiff sues the County of Rockland for false imprisonment and violations of his rights under the Fourth Amendment in connection with this 2004 arrest, for which the charges were dismissed.

[3]      In the report and recommendation addressing Plaintiff's petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, the court noted that Plaintiff was arrested because a plainclothes officer believed that there was an outstanding warrant from Clarkstown for his arrest, but he was released when it was determined that the warrant was no longer valid. *See LaTouche v. Graham*, No. 7:10-CV-01388, 44 (PED) (S.D.N.Y. Mar. 8, 2013) (R & R at 3-4), *adopted* (ECF 55) (S.D.N.Y. Sept. 24, 2013).

### 2. Challenge to 2005 Conviction

Plaintiff asserts claims against Defendant "Rockland County Supreme Court," in connection with Justice Kevin Russo's handling of Plaintiff's post-conviction motions, under New York Criminal Procedure Law § 440.10.

Plaintiff contends that the Rockland County District Attorney, in opposing Plaintiff's December 18, 2018 motion to vacate his conviction, ignored the arguments that Plaintiff was actually innocent and disputed that defense counsel was ineffective in failing to present evidence of Plaintiff's "low intellectual disability." (*Id.* at 4, ¶ 19.) Justice Russo denied Plaintiff's motion under New York Criminal Procedure Law § 440.10(3)(c) based on Plaintiff's failure to have raised these arguments in his earlier § 440.10 motions. (*Id.* at 4, ¶ 20.) Justice Russo also denied the motion for rehearing, and the Appellate Division, Second Department, denied leave to appeal.

Plaintiff also filed applications in state court arguing (1) that his § 440.10 motion should not have been heard by Justice Russo, whose law clerk was a former prosecutor who had previously worked for a judge who is biased against Plaintiff (Justice Kelly); and (2) that the Grand Jury proceedings were

flawed. Plaintiff seeks only damages in this complaint and has not requested any other relief in connection with these claims against the Rockland County Supreme Court.

### 3. Medical Treatment

During Plaintiff's confinement as a pretrial detainee at Rockland County Jail in 2005, he was diagnosed with depression and placed on suicide watch. Plaintiff was prescribed two antidepressant medications: Rameron and Atrax. (*Id.* at 6, ¶ 25.) In May 2005, a doctor at the jail diagnosed Plaintiff with gynecomastia "as a result of his [in]gestion of Rameron." (*Id.* at ¶ 26.) Plaintiff was referred "to a surgeon for a biopsy." (*Id.* at ¶ 27.) Before the biopsy took place, Plaintiff was convicted and taken into DOCCS custody. (*Id.*)

DOCCS initially housed Plaintiff at Downstate Correctional Facility, where he "repeatedly sought medical attention for his gynecomastia." (*Id.*) On an unspecified date, after Plaintiff was transferred to Sing Sing, he asked Doctors Kwan, Bigaud, and Ezeke for medical treatment because he had pain when lying on his chest. Plaintiff had a mammogram, which had a "negative result." (*Id.* at 6.) Plaintiff continued to complain about the gynecomastia, and gave Sing Sing physician Dr. Muthra, who is not named as a defendant in this action, documents from Rockland County Jail that showed his earlier referral for a biopsy. Dr. Muthra explained that the "Albany official" denied Plaintiff's request for a biopsy based on the results of the mammogram and because treatment for the breast enlargement itself is considered a "cosmetic procedure." (*Id.* at 6, ¶ 29.) Plaintiff brings claims against Rockland County Jail, DOCCS, and its Chief Medical Officer John Morley for failing to treat his gynecomastia.

**\*3**  On August 30, 2021, Dr. Muthra told Plaintiff that there was "a spike in his hormonal glands," which can indicate a "possible benign tumor." (*Id.*) Plaintiff was sent to an outside hospital for an MRI. (*Id.* at 7.) At Plaintiff's next medical visit, when he inquired about the MRI results, Dr. Muthra told Plaintiff that his earlier abnormal "blood test w[as] likely a lab error," but that he would continue to monitor Plaintiff's status. (*Id.*)

On an unspecified date, Plaintiff told "his medical provider" at Sing Sing that he had a recurring skin rash, and it was diagnosed as eczema. (*Id.* at 7, ¶ 32.) Plaintiff continued to complain about itching, apparent "ringworm," and hair thinning and bald spots on his scalp and beard. Dr. Muthra prescribed a topical cream (fluocinolone acetonide) for

Plaintiff, and he was given "tar shampoo" and lotion with vitamin E. Plaintiff asked for a biopsy and dermatologist visit, but these requests were denied, and Plaintiff was told that "the Albany official considers his condition to be cosmetic." (*Id.* at ¶ 33.) Plaintiff asserts claims against DOCCS and its Chief Medical Officer, John Morley, for denying him "over the counter drug[s] minoxidil, corticosteroid, [and] antholin for his scalp." (*Id.* at 31.)

**4. Dental Care at Sing Sing in 2016**
On April 4, 2016, at Sing Sing, Dr. Allen Jacobson examined Plaintiff's teeth and found cavities and decay. (*Id.* at 2-3.) Two weeks later, on April 19, 2016, dental hygienist cleaned Plaintiff's teeth. Dr. Jacobson then filled the cavity in Plaintiff's tooth #12 but warned him that the cavity was deep, and the tooth might need to be extracted. (*Id.* at 3.) Shortly after the filing, "the tooth became infected," and Plaintiff suffered "extreme sensitivity" and shooting pain. On July 18, 2016, Dr. Jacobson attempted to "file down" the injured tooth. X-rays were taken and these showed that "cavities surrounding the tooth" caused scraping near the nerve. Dr. Jacobson advised Plaintiff that the tooth needed to be extracted, but Plaintiff refused and asked him to "cur[e] the infection." (*Id.*) Dr. Jacobson prescribed penicillin and ibuprofen.

On July 22, 2016, another dentist at Sing Sing, Dr. Udeshi, told Plaintiff that tooth #12 needed to be extracted. Plaintiff told Dr. Udeshi that the medication that Plaintiff had taken was provided to "save the tooth," and he refused the extraction. (*Id.* at 3.)

In 2021, the filling in tooth #12 fell out. Dr. K. Rakib examined Plaintiff and found deep cavities in the "tooth opposite ... tooth #12." (*Id.* at 3-4.) Plaintiff told Dr. Rakib that he had been unable to chew on his left side, where tooth #12 was located, due to the "destructive dental filling." (*Id.* at 4.) As a result, he chewed on the other side of his mouth, which "cause[d] the decay in the tooth opposite #12." (*Id.*) On January 21, 2022, Plaintiff's tooth #12 was extracted. Plaintiff asserts claims against Doctors Jacobson and Udeshi for "negligen[ce]" and failing to provide "adequate dental treatment." (*Id.* at 2.)

Plaintiff brings this complaint against Defendants Rockland County, Rockland County Jail, Dentists Jacobson and Udeshi, DOCCS and DOCCS Chief Medical Officer John Morley. Plaintiff seeks $35 million in damages.

# DISCUSSION

## A. Timeliness

Many of Plaintiff's claims under section 1983 appear to be time-barred. The statute of limitations for section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. *See* N.Y.C.P.L.R. § 214(5). Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013). Plaintiff knew of his injuries when they occurred, and his claims therefore accrued at that time. Plaintiff's claims arising more than three years before he filed this complaint on February 22, 2022 therefore are time-barred, including his claims arising from his 2004 arrest, his 2005 conviction, his medication with Rameron at Rockland County Jail in 2005, and his dental treatment in 2016.

**\*4** Because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that the case is timely filed. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.") (internal quotation marks and citation omitted); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as frivolous on statute of limitations grounds); *see also Abbas*, 480 F.3d at 640 (concluding that district court should grant notice and opportunity to be heard before dismissing complaint *sua sponte* on statute of limitations grounds).

If Plaintiff amends his complaint, and the amended complaint includes any claim arising more than three years before he filed the original complaint on February 22, 2022, he must include any facts showing why the claim should not be deemed time-barred. The doctrine of equitable tolling permits a court, "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order 'to prevent inequity.' " *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir.

LaTouche v. Rockland County, Slip Copy (2022)

2022 WL 953111

2003) (citation omitted). The statute of limitations may be equitably tolled, for example, when a defendant fraudulently conceals from a plaintiff the fact that the plaintiff has a cause of action, or when the plaintiff is induced by the defendant to forego a lawsuit until the statute of limitations has expired. *See Pearl*, 296 F.3d at 82-83.[4]

[4]    In addition, New York provides by statute for other circumstances in which a limitations period may be tolled. *See, e.g.,* N.Y. C.P.L.R. § 204(a) (where commencement of an action has been stayed by court order), *id. at* § 204 (where a dispute has been submitted to arbitration but is determined to be non-arbitrable), id. at § 207(3) (defendant is outside New York at the time the claim accrues), *id.* at § 208 (plaintiff is disabled by infancy or insanity).

As set forth below, even if Plaintiff's claims were not time-barred, the allegations of the complaint generally fail to state a federal claim on which relief can be granted or are otherwise not cognizable in an action under section 1983.

## B. False Arrest in 2004
The Court first looks to state law to establish the elements of a false arrest claim under section 1983. *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 925 (2017) ("[T]o flesh out the elements of this constitutional tort, we must look for 'tort analogies.' "); *see also Lanning v. City of Glens Falls,* 908 F.3d 19, 25 (2d Cir. 2018) (holding that common law principles are meant simply to guide rather than to control the definition of Section 1983 claims and courts should not "mechanically apply" the law of New York State).

Under New York law, to state a claim for false arrest, a plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007).

Officers have probable cause to arrest when they "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (emphasis and citation omitted). "Probable cause can exist even where

it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (1994); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (holding that a police officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

**\*5** Here, Plaintiff alleges that he was arrested after a "raid" on a home where unlawful weapons were found, and that the charges against him were dismissed when he demonstrated that he did not reside in the home. The fact that the charges against Plaintiff were dismissed, without more, is insufficient to plead plausibly that the Ramapo police officer who arrested Plaintiff lacked probable cause to do so.

Moreover, Plaintiff has not sued an individual officer who allegedly made a wrongful arrest. Instead, he brings this claim against the County of Rockland. To state a claim against a municipality, such as the County of Rockland, a plaintiff must allege that the municipality itself violated Plaintiff's rights. *See Connick v. Thompson,* 131 S. Ct. 1350, 1359 (2011). It is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. To state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

Even if Plaintiff had adequately alleged that a police officer violated his rights, which he has not done, that allegation would be insufficient to provide a basis for liability on the part of the County of Rockland. Plaintiff does not include any allegations that any policy, custom, or practice on the part of Rockland County violated his rights in connection with this 2004 arrest. Plaintiff thus fails to state a claim against the County of Rockland based on his 2004 arrest on charges that were later dismissed.

Plaintiff also suggests that this wrongful arrest in 2004 was used in 2005 as a pretense to arrest him for the charges for which he is currently serving a prison sentence. A prisoner cannot pursue civil rights claims that would necessarily be inconsistent with a conviction. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Moreover, even where a civil rights

claim would lie, a plaintiff cannot seek relief for "the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." *Id.* at 477, n. 7. Plaintiff's 2005 conviction has not been overturned, and any claim for damages for the injury of serving this sentence would be inconsistent with this conviction.

As set forth above, these claims had been time-barred for nearly 15 years when Plaintiff filed this complaint. It therefore would be futile for Plaintiff to replead these claims, unless he has some adequate basis for equitable tolling.

### C. Challenge to 2005 Conviction
Plaintiff brings civil rights claims regarding the denial of his post-conviction motions against Defendant "Rockland County Supreme Court." As an initial matter, "state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.*

The Supreme Court of the State of New York, Rockland County, is a part of the New York State Unified Court System, and, as such, is an arm of the State of New York. *Id.* at 368 (explaining that a court that is part of the New York State Unified Court System "is unquestionably an 'arm of the State,' entitled to Eleventh Amendment sovereign immunity."). New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). The Eleventh Amendment therefore bars Plaintiff's section 1983 claims against the Rockland County Supreme Court.

*6 Moreover, Plaintiff's allegations that Justice Russo wrongfully denied his § 440.10 motions are not cognizable in a civil rights action under section 1983. A prisoner can challenge the validity of his state conviction in federal court, or obtain release from custody, only by bringing a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254. *See Wilkinson v. Dotson*, 544 U.S. 74, 78-82 (2005) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)) (noting that writ of *habeas corpus* is sole federal remedy for prisoner seeking to challenge the fact or duration of his confinement). Plaintiff's

section 1983 claims challenging his conviction must therefore be dismissed for failure to state a claim on which relief can be granted and because defendant is immune from suit. 28 U.S.C. § 1915(e)(2)(b)(ii)-(iii).

The Court also declines to recharacterize these claims as arising under section 2254, because Plaintiff has already challenged his 2005 conviction in a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, which was denied on the merits. *See LaTouche v. Graham*, No. 7:10-CV-01388, 44 (PED) (S.D.N.Y. Mar. 8, 2013) (R & R at 3-4), *adopted* (ECF 55) (S.D.N.Y. Sept. 24, 2013), *certificate of appealability denied*, No. 13-3720 (2d Cir. Mar. 13, 2014), *lv to file successive petition denied*, No. 15-3662 (2d Cir. Dec. 7, 2015), *certificate of appealability denied*, No. 16-2885 (2d Cir. Feb. 13, 2017) (appeal of denial of Rule 60(b) motion), *lv to file successive petition denied*, No. 19-4006 (2d Cir. Jan 21, 2020). Plaintiff would require permission from the Court of Appeals to bring a new petition for a writ of *habeas corpus* under section 2254.

### D. Deliberate Indifference to Serious Medical Needs
Plaintiff alleges that several defendants were deliberately indifferent to his serious medical needs. Such claims arise under the Due Process Clause of the Fourteenth Amendment, if Plaintiff was a pretrial detainee at the time of the events giving rise to his claims, and under the Eighth Amendment, if he was a convicted prisoner. *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1979); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Whether Plaintiff was a pretrial detainee or convicted prisoner, he must satisfy two elements to state such a claim: (1) an "objective" element, which requires a showing that the challenged conditions are sufficiently serious, and (2) a "subjective" or "mental" element, which requires a showing that the officer acted with at least deliberate indifference to the challenged conditions. *Darnell*, 849 F.3d at 29.

The objective element of a deliberate indifference claim is the same for pretrial detainees and convicted prisoners. The plaintiff's medical need must be a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (noting that standard contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain").

The "subjective" or "mental" element varies depending on whether a plaintiff is a pretrial detainee or convicted prisoner. A convicted prisoner must allege that a correction official actually "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Darnell*, 849 F.3d at 32 (quoting *Farmer*, 511 U.S. at 837). That is, a convicted prisoner must allege that the official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also [have] draw[n] the inference." *Id.* By contrast, a pretrial detainee need allege only that the official intentionally or recklessly failed to act with reasonable care "even though the defendant-official knew, *or should have known*, that the condition posed an excessive risk to health or safety." *Id.* at 35 (emphasis added).

**\*7** The mere negligence of a correction official is not a viable basis for a claim of a federal constitutional violation under section 1983, under either the Eighth or the Fourteenth Amendment. *See Daniels v. Williams*, 474 U.S. 327, 335 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).

### 1. Dental Care

Plaintiff was a convicted prisoner as of 2016, when his claims for constitutional violations in connection with his dental care first arose. Plaintiff adequately alleges at this stage that his dental problems were a serious medical need. *See Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (holding that a tooth cavity is a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become painful or otherwise dangerous). Plaintiff therefore has pleaded facts showing that the objective prong of a deliberate indifference claim is satisfied.

Plaintiff fails, however, to plead any facts giving rise to an inference that either dentist acted with the subjective intent required for deliberate indifference. He states that Dr. Jacobson filled the cavity in Plaintiff's tooth #12 but warned him that the cavity was deep, and that the tooth might need to be extracted, which later proved true; Plaintiff nevertheless refused to have it extracted, and Dr. Jacobson prescribed penicillin and ibuprofen for the infection. These allegations do not show that Dr. Jacobson "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Darnell*, 849 F.3d at 32. On the contrary, it appears that Plaintiff acted against Dr. Jacobson's advice, and Dr. Jacobson then took steps to mitigate the danger to Plaintiff.

Plaintiff further alleges that, on July 22, 2016, Dr. Udeshi told Plaintiff that tooth #12 needed to be extracted, but Plaintiff refused the extraction. (ECF 2 at 3.) Plaintiff brings claims against Doctors Jacobson and Udeshi for "negligen[ce]" and failing to provide "adequate dental treatment." (*Id.* at 2.) These allegations are insufficient to support a claim of a constitutional violation, both because Plaintiff alleges that he was the one who refused the tooth extraction and because allegations of negligence are insufficient to state a claim that a defendant actually "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Darnell*, 849 F.3d at 32. Plaintiff's section 1983 claims against Doctors Jacobson and Udeshi must therefore be dismissed for failure to state a claim on which relief can be granted.

### 2. Cosmetic Conditions

Plaintiff alleges that Defendants have denied him adequate treatment for his hair loss and eczema because these are cosmetic conditions. "Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury to state a cognizable claim." *Washington v. Fludd*, No. 18-CV-1273(JS) (SIL), 2019 WL 1643542, at *3 (E.D.N.Y. Apr. 16, 2019) (quoting *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (internal quotation marks and additional citation omitted; alteration in original)). A "cosmetic" condition can rise to the level of seriousness needed to establish a duty of care if: (1) a reasonable doctor would perceive the condition as important and worthy of treatment; (2) the condition significantly affects the prisoner's daily activities; and (3) the condition results in chronic and substantial pain. *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).

**\*8** Plaintiff alleges that he suffers from hair thinning and bald spots on his scalp and beard. Hair loss is generally not deemed a serious medical condition. *See, e.g., Guthrie v. US Fed. Bureau of Prisons*, No. 09-CV-990 (LAP), 2010 WL 2836155, at *5 (S.D.N.Y. July 7, 2010) (holding that "[t]he BOP's duty of care to provide for the safekeeping of its prisoners does not require them to provide medication that is cosmetic in nature, including administering hair loss medication), *aff'd*, 421 F. App'x 120 (2d Cir. 2011). Plaintiff does indicate that he has "itching" on his scalp or beard, and apparent "ringworm," but these allegations do not show that he was in chronic or substantial pain at any relevant time or that the condition significantly affected his daily activities. He thus fails to plead facts showing that this was

a sufficiently serious medical condition that satisfies the objective component of a deliberate indifference claim.

Plaintiff also alleges that he was diagnosed with eczema. Skin conditions can be sufficiently serious to satisfy the objective component of a deliberate indifference claim. *Brock*, 315 F.3d at 163 (holding that prisoner's thick keloid scar that was a source of chronic pain was a serious medical condition). Plaintiff alleges, however, that Dr. Muthra prescribed treatment with a topical cream (fluocinolone acetonide), "tar shampoo," and lotion with vitamin E. Although Plaintiff contends that he was denied a biopsy, a dermatologist visit, and "over the counter drug[s] minoxidil, corticosteroid, [and] antholin for his scalp" (*id.* at 31), it is well established that "[d]isagreements over medications ... forms of treatment, or the need for specialists ... are not adequate grounds for a Section 1983 claim." *See Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001). Plaintiff's allegations are therefore insufficient to state a claim for deliberate indifference in connection with his hair loss or eczema.

### 3. Gynecomastia

Plaintiff alleges that while he was a pretrial detainee at Rockland County Jail, in 2005, he was prescribed a psychiatric drug (Rameron) that caused breast enlargement, known as gynecomastia. He was referred for a biopsy but was transferred to the custody of DOCCS in May 2005, before it took place. Plaintiff sues Rockland County for administering a drug that caused him harm.

Plaintiff's allegations might be construed as a claim for violation of the Fourteenth Amendment right to information about potential side effects of the medication. *See Pabon v. Wright*, 459 F.3d 241, 250-51 (2d Cir. 2006) ("In order to permit prisoners to exercise their right to refuse unwanted treatment, there exists a liberty interest in receiving such information as a reasonable patient would require in order to make an informed decision as to whether to accept or reject proposed medical treatment."). [5] Because Plaintiff alleges that he knew of this harm in 2005, it appears that his claim accrued at that time. The three-year limitations period for a section 1983 claim therefore barred this claim when he filed the complaint in 2022. Plaintiff should not replead this claim in his amended complaint, unless he can plead facts showing equitable tolling of the limitations period.

[5] To establish a claim for violation of the Fourteenth Amendment right to medical information, "a prisoner must show that (1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment." *Pabon*, 459 F.3d at 250-51.

Plaintiff alleges that the DOCCS and its Chief Medical Officer have denied treatment for gynecomastia on the ground that it is a cosmetic condition. In cases where a prisoner alleges that gynecomastia "significantly affects daily activities" or cause him "chronic and substantial pain," gynecomastia may qualify as a serious medical condition. *See, e.g., Blaine v. Burnes*, No. 3:20-CV-1039 (KAD), 2020 WL 5659101, at *6 (D. Conn. Sept. 23, 2020) ("While Gynecomastia can cause pain or discomfort, and can result in discharge from the nipple, [plaintiff] alleges none of these infrequent side effects."); *Washington v. Fludd*, 2019 WL 1643542, at *3 (dismissing plaintiff's Eighth Amendment claim based on gynecomastia as a Risperdal side effect for failure to allege facts sufficient to meet the objective component). Plaintiff's allegations are insufficient to show that his breast enlargement "significantly affects daily activities" or causes him "chronic and substantial pain." *Moore*, 2008 WL 4186340 at *6 (citing Brock, 315 F.3d at 162-63).

**\*9** Because Plaintiff may be able to allege facts showing that this is a sufficiently serious condition that is not merely cosmetic, and that defendants are actually aware that this condition is more than cosmetic, the Court grants Plaintiff leave to amend to replead this claim against Chief Medical Officer John Morley or other individuals who were personally aware of a serious medical condition related to Plaintiff's gynecomastia and were deliberately indifferent to the risk to him of serious harm.

### E. Leave to Amend

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss

[a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim about his medical conditions, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his claims.

Plaintiff is granted leave to amend his complaint to provide more facts about his claims. In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## CONCLUSION

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order,

caption the document as an "Amended Complaint," and label the document with docket number 22-CV-1437 (LTS). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**\*10**  SO ORDERED.

Attachment

## I.   LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants).

☐ Violation of my federal constitutional rights

☐ Other:

## II.   PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name          Middle Initial          Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City          State          Zip Code

## III.   PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee

☐ Civilly committed detainee

☐ Immigration detainee

☐ Convicted and sentenced prisoner

☐ Other:

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Defendant 2:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Defendant 3:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

Defendant 4:

First Name          Last Name          Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City          State          Zip Code

## V.   STATEMENT OF CLAIM

Place(s) of occurrence:

Date(s) of occurrence:

### FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

### INJURIES:

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.          9

LaTouche v. Rockland County, Slip Copy (2022)

2022 WL 953111

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | | Plaintiff's Signature |
|---|---|---|
| First Name | Middle Initial | Last Name |
| Prison Address | | |
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6

**All Citations**

Slip Copy, 2022 WL 953111

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 1838277
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Michael WALKER, Plaintiff,

v.

CITY OF NEW YORK; Brooklyn Public Defenders
Office; Danielle Regis; New York City Police
Department; Detective Courtney Winston; Detective
Raymond Higgins; Detective Jason Guzman; Detective
Patrick Jean Pierre; Ranking Detective Daniel Pierrino;
Civil Complaint Review Board; Chairman Frank
Davie; Field Investigator A. Wassim; Panel Member
S. Carceterra; Panel Member M. Rivadene; Records
Access Officer George Alexander; Internal Affairs
Bureau; Captain Brian White; Lt. Dwayne Watson;
Sgt. Moode; Detective Carmelo Rivera; Detective
Rashad Vandross; Corporation Counsel Law Dept.;
Supervisor Nelson Genevieve; Daniel Oliner; Allyson
Nicole Brown; Christopher D. Deluca, Defendants.

20-CV-5240 (PKC) (LB)
|
Signed 05/07/2021

**Attorneys and Law Firms**

Michael Walker, Napanoch, NY, pro se.

**MEMORANDUM & ORDER**

PAMELA K. CHEN, United States District Judge:

 **\*1** Plaintiff Michael Walker, incarcerated at the Eastern New
York Correctional Facility, brings this *pro se* action under
42 U.S.C. §§ 1983, 1985, and 1986, the Americans with
Disabilities Act ("ADA") and Rehabilitation Act, and various
state-law provisions. Plaintiff's request to proceed *in forma
pauperis* ("IFP") is granted pursuant to 28 U.S.C. § 1915. For
the reasons discussed below, Plaintiff's Amended Complaint
(Dkt. 24-1) is dismissed in its entirety. Plaintiff is granted
sixty (60) days' leave to file a Second Amended Complaint
as set forth below.

**BACKGROUND**

**I. Underlying Facts** [1]

[1]  This recitation of the facts is based on the
non-conclusory allegations in the Complaint and
Amended Complaint, which the Court accepts
as true at this stage in the case, *see Milan v.
Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (per
curiam) (citation omitted), as well as the Court's
factual findings at the summary judgment stage in
*Walker v. Raja, see* 2020 WL 606788.

This case is related to Plaintiff's pending action in *Walker
v. Raja*, No. 17-CV-5202 (PKC) (LB) (E.D.N.Y. Aug. 22,
2017). [2] On January 8, 2017, Plaintiff was arrested following
an attempted armed robbery of a jewelry store. *Walker v.
Raja*, No. 17-CV-5202 (PKC) (LB), 2020 WL 606788, at \*1
(E.D.N.Y. Feb. 7, 2020). After an altercation during which
Plaintiff threatened the store owner and an employee with
a gun, Plaintiff fled the store with the jewelry and firearm.
*Id.* The store owner followed Plaintiff and wrestled him to
the ground, where the pair exchanged blows until civilian
bystanders intervened, grabbing Plaintiff and restraining him
on the pavement. *Id.*

[2]  In that lawsuit, Plaintiff has asserted § 1983 and
state-law claims against NYPD officers based on
the same attempted robbery incident that forms the
basis of this action.

Soon thereafter, several police officers from the New York
City Police Department ("NYPD") arrived at the scene. *Id.* In
their attempts to subdue and arrest Plaintiff, an officer struck
Plaintiff several times, and a female officer "began repeatedly
punching him in the face." *Id.* Plaintiff was charged with, *inter
alia*, robbery, assault, grand larceny, criminal possession of
a weapon, and criminal possession of stolen property. *Id.* at
\*2. He pled guilty to attempted robbery in the second degree
pursuant to New York Penal Law § 160.10(2)(a), and was
sentenced to 12 years to life as a "persistent violent felony
offender." *Id.*

Plaintiff had advanced glaucoma and distorted vision prior
to the January 8, 2017 arrest, but his vision became
completely impaired following the arrest. *Id.* Plaintiff is now
legally blind, and "cannot see, write, type, nor navigate
himself without the assistance of" auxiliary aids. (Amended
Complaint ("Am. Compl."), Dkt. 24-1, at 10.) Plaintiff also
suffers from post-traumatic stress disorder following the
arrest and, upon admission to the New York Department of
Corrections and Community Supervision ("DOCCS") local

2021 WL 1838277

county jail, was hospitalized in the medical unit due to medical complications. (*Id.* at 14–15.)

**\*2** Attorney Danielle Regis from the Brooklyn Defender Services[3] ("BDS") was assigned to represent Plaintiff in his criminal proceeding. (*Id.* at 15.) Around April 2017, Regis visited Plaintiff in DOCCS confinement, accompanied by a social worker. (*Id.*) During the visit, Regis played back the surveillance tape from Plaintiff's arrest, verbally describing the video to Plaintiff due to his visual impairment. (*Id.* at 16.) In the video, the arresting officers were subduing Plaintiff and striking him "until incoherent," including NYPD Officer Elisa Battista, who was "seen repeatedly striking [P]laintiff's head[.]" (*Id.* at 16.) Regis "immediately shut[ ] off [the] video" in the middle of playback, which Plaintiff characterizes as "a conscious disregard in preventing [P]laintiff any further information due to overwhelming exculpatory impeaching evidence, enough for criminal charges being brought on [the] seven arresting officers." (*Id.*) Plaintiff thereafter requested access to the surveillance tape several times to "[n]o avail," which he claims is due to Regis's "derelict tactics to insulate [the] seven arresting officers." (*Id.*)

[3]  Though Plaintiff refers to the "Brooklyn Public Defender Office" in his Complaint (*see, e.g.*, Complaint ("Compl."), Dkt. 1, at 10), the Court assumes Plaintiff meant to name Brooklyn Defender Services, a non-profit public defender organization, *see* http://bds.org/ (last visited Mar. 3, 2021), and refers to the organization by its correct name.

On or about May 12, 2017, Plaintiff filed a Notice of Claim with the New York State Office of the Comptroller concerning state-law claims arising from his January 2017 arrest.[4] (*see id.* at 17); *see also Walker*, 2020 WL 606788, at *2. Plaintiff also filed a "[p]etition with the (DOJ) Dept[.] of Justice (Southern District)" on May 6, 2017, a citizen's complaint with the Civilian Complaint Review Board ("CCRB")[5] on May 18, 2017, and a citizen's complaint with the NYPD's Internal Affairs Bureau ("IAB")[6] on June 6, 2017. (*See* Am. Compl., Dkt. 24-1, at 17.) On August 22, 2017, Plaintiff filed a *pro se* action against NYPD Officers Taimur Raja, David Vazquez, Estharlin Lopez, and Kyle Brown, advancing claims under 42 U.S.C. § 1983 and state law in connection with his January 2017 apprehension and arrest. *See* Complaint, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Aug. 22, 2017), ECF No. 2; *see also Walker*, 2020 WL 606788, at *2.

[4]  The Comptroller's Office informed Plaintiff on or about May 24, 2017 that his claim was denied as untimely because it had not been filed within 90 days from the date of his January 8, 2017 arrest. *Walker*, 2020 WL 606788, at *2.

[5]  The CCRB is an independent City agency "empowered to receive, investigate, mediate, hear, make findings, and recommend action on complaints against New York City police officers." *Joseph v. Doe*, No. 16-CV-2004 (PKC) (LB), 2017 WL 4233024, at *2 n.3 (E.D.N.Y. Sept. 22, 2017).

[6]  The IAB is a division of the NYPD that "investigates claims of serious misconduct and corruption of members of the NYPD." *Floyd v. City of New York*, 739 F. Supp. 2d 376, 379 (S.D.N.Y. 2010); *see id.* at 384 ("IAB investigations are confidential, including within the NYPD.").

## II. *Walker v. Raja*

The New York City Office of Corporation Counsel ("Corporation Counsel") represents the arresting officers in *Walker v. Raja*, which is still pending before this Court. Previously, Allyson Brown, an attorney with Corporation Counsel, requested a stay of the proceedings in light of the pending CCRB investigation. (Am. Compl., Dkt. 24-1, at 18); *see also* Motion to Stay, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Nov. 2, 2017), ECF No. 19; 11/6/2017 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Nov. 6, 2017), ECF No. 21. On June 12, 2018, following an 18-month investigation and hearing in front of a three-member panel,[7] the CCRB "exonerated [the] five arresting officers[,]" Raja, Brown, Vazquez, Lopez, and Sgt. Rahman. (Am. Compl., Dkt. 24-1, at 18.) The stay in *Walker v. Raja* was lifted, and the case proceeded to discovery. (*Id.* at 18); *see also* 8/7/2018 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Aug. 7, 2018), ECF No. 51.

[7]  The panel consisted of CCRB chairman Frank Davie and CCRB members S. Carceterra and M. Rivadene. (Am. Compl., Dkt. 24-1, at 18.)

**\*3** During discovery, Plaintiff received the CCRB investigative records and learned that there were seven NYPD officers involved in his arrest, not five, as he had previously thought. (Am. Compl., Dkt. 24-1, at 19.) According to Plaintiff, when questioned by the Court as

to whether there were other arresting officers that should have been added to the complaint, Corporation Counsel attorney Brown "strategically respon[ded][ ] by mentioning only[ ] (Sgt. Rahman) with a conscious disregard [in] excluding arresting officers ... [William Chow and Elisa Battista] ... when having constructive knowledge of direct participation [by] all seven arresting officers." (*Id.* at 19.) Plaintiff claimed that Brown failed to mention Officers Chow and Battista in order to cover up the CCRB's "mishandling [of] investigations in disavowing information while deleting arresting officers police misconduct ... which result[ed] in [the] same two arresting officers [being] intentionally excluded from the" CCRB decision. (*Id.* at 19–20.) Plaintiff also alleged that BDS attorney Regis had seen Officers Chow and Battista on the surveillance tape during her visit with Plaintiff in April 2017, but hid their involvement from Plaintiff. (*Id.* at 20.) Plaintiff further claimed that he later learned through discovery that "the video surveillance tape, audio and investigative records sent by [the City], [BDS], Brooklyn District Attorney['s] Office and Corporation Counsel law dept [had been] doctor[ed], deleting [the] arresting officers['] police misconduct[.]" (*Id.*) Plaintiff believed that the "records, videos, and audio[ ]" provided to Plaintiff and the Court were "doctored when sent during discovery." (*Id.* at 21–22 (asserting that Defendants were "banking on [P]laintiff's disability" and "hinder[ing] him from exercising his Civil Rights").) According to Plaintiff, the original video surveillance tape showed Officer Battista "kneeling over [P]laintiff in a malicious assault," and an audio file depicted Officer Vazquez stating that "he [had] used physical force on [P]laintiff," but both files had been deleted, "along with missing investigative records concerning direct participation[.]" (*Id.* at 20.)

On November 6, 2018, the Court granted Plaintiff leave to file an amended complaint. (Dkt. 62.) The Amended Complaint additionally named as defendants NYPD Officers William Chow and Elisa Battista, Sergeant Sazedur Rahman, and the City of New York (the "City"). [8] Amended Complaint, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Oct. 31, 2018), ECF No. 61; 11/6/2018 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Nov. 6, 2018), ECF No. 62. On February 7, 2019, Plaintiff filed a motion to compel, in which he raised the issue of the allegedly altered videos, asserting that the "CCRB and Corporation Counsel have in their po[ss]ession video record evidence of ... facts of police criminal misconduct." Motion to Compel, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Feb. 7, 2019), ECF No. 86, at 1. In response, Corporation Counsel explained that:

> Defendants produced copies of these videos to Plaintiff in their original form as received by [Corporation Counsel], and were not altered in any way by this Office. Additionally, Defendants attach hereto as Exhibit B a video of the underlying incident received from the Kings County District Attorney's Office, which is an incomplete version of the video from Brooklyn Defender Services that was previously provided to Plaintiff during discovery and to the Court on December 22, 2017.

Response to Motion to Compel, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Feb. 22, 2019), ECF No. 91, at 1–2. [9] In its partial grant of summary judgment, the Court briefly addressed this argument and found it "not cognizable," given that "Plaintiff offer[ed] no record evidence to suggest that the video evidence [had been] doctored." *Walker,* 2020 WL 606788, at *3 n.6.

[8]   In his Amended Complaint in *Walker v. Raja*, Plaintiff set forth his theories about the video alterations and omission of Officers Chow's and Battista's identities from the defendants' initial disclosures. *See, e.g.*, Amended Complaint, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Oct. 31, 2018), ECF No. 61, at 3 ("Plaintiff states that police officer Battista [ ] somehow was not mentioned within [the initial disclosures] but was present during [P]laintiff['s] assault and arrest.... In addition[,] in and around April of 2017[,] [P]laintiff, defense attorney, and [a] social worker viewed a record of a female officer [ ] assaulting [P]laintiff[.] [T]his video record is missing as evidence and has yet to surface[ ].... Battista[ ] somehow disappear[ed] from [the] CCRB investigation completely[.]"), 12 ("Police officer Battista was not included but is an Arresting officer present at the scene.").

[9]   Plaintiff alleges that, in response to his raising of the issue of doctored videos in *Walker v. Raja*, Corporation Counsel stated that it was the Kings County District Attorney's Office that had deleted portions of the video surveillance

tape, not Corporation Counsel. (Compl., Dkt. 1, at 15 (referring to the "Brooklyn" District Attorney's Office, which is the Kings County District Attorney's Office).) Although Corporation Counsel's above statement form its response to the motion to compel, *Walker v. Raja*, No. 17-CV-5202, Dkt. 91, at 1–2, does indicate that the copy of the video sent by the District Attorney's Office to Corporation Counsel was "incomplete" when compared to the BDS version provided to Plaintiff and the Court, that does not mean that the District Attorney's Office "doctored" the video; rather, it means only that the Office did not provide the entire video to Corporation Counsel. "Incomplete" is not the same as "doctored" or equivalent to altering images. Indeed, contrary to Plaintiff's contention, he received the entire video from BDS in discovery, and there is no basis for Plaintiff's claim that any party "doctored" video evidence in *Walker v. Raja*.

**\*4** Plaintiff also moved for sanctions against the CCRB and Corporation Counsel, [10] *see* Motion for Sanctions, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Mar. 4, 2019), ECF No. 93, which the Honorable Lois Bloom denied on the grounds that there was "no record evidence that [D]efendants [had] disobeyed a discovery order or engaged in sanctionable conduct. Defendants have provided the videos to plaintiff as they were received by their office," 4/2/2019 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Apr. 2, 2019), ECF No. 95.

[10]    In a submission filed April 1, 2019, Plaintiff asserted that, though Defendants "produced 3 doctored video segments" during discovery, "the building where the incident occurred had an adjoining store," which "had at least one other camera that would have recorded a more concise detailed description concerning relevant footage of [Officer] Vazquez strategically taking a firearm from a civilian then carefully planting [the] firearm near plaintiff[']s feet as he is beaten by other defendants." Plaintiff's Supportig Evidence, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Apr. 1, 2019), ECF No. 94, at 5. Plaintiff claimed that he "attempted to obtain this footage on multiple occasions[,] but was unsuccessful due to preventive tactics by counsel for the defendants." (*Id.*)

The parties cross-moved for summary judgment, and by Memorandum and Order on February 7, 2020, the Court denied Plaintiff's motion and partially granted and denied Defendants' motion, dismissing some of Plaintiff's claims. *Walker*, 2020 WL 606788, at \*13. That case is pending trial as to the few remaining claims, *i.e.*, claims for excessive force and failure to intervene as to Defendants Raja, Vazquez, Brown, Chow, and Battista, and failure to supervise as to Defendant Rahman. [11] *See id.* In anticipation of trial, the Court, *inter alia*, granted the defendants' motion in limine to preclude Plaintiff "from proffering any evidence to suggest that any material was doctored in this matter." Court's Motions *in Limine* Chart, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Aug. 11, 2020) ECF No. 144, at 2, #9.

[11]    On April 12, 2021, the Court referred the case to the Trial Ready Rapid Mediation Program, and requested the ADR Department to secure pro bono counsel for Plaintiff. *See* 4/12/2021 Order, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Apr. 12, 2021).

Plaintiff filed the instant action thereafter.

**III. The Instant Action**

On October 29, 2020, Plaintiff commenced the instant action against the City, BDS, the CCRB, the IAB, and Corporation Counsel based on the alleged misconduct relating to investigations into his January 2017 arrest and the discovery process in *Walker v. Raja*. (Compl., Dkt. 1.) On January 21, 2021, Plaintiff filed a submission entitled "Amended Complaint," consisting of three pages summarizing the exhibits he seeks to incorporate in his Complaint. (Dkt. 21.) On February 9, 2021, Plaintiff filed the Amended Complaint, adding as defendants the NYPD and individual employees of the NYPD, CCRB, and Corporation Counsel in their individual and official capacities. [12] (*See generally* Am. Compl., Dkt. 24-1.)

[12]    Specifically, Plaintiff seeks to bring claims against Detective Courtney Winston, Detective Raymond Higgins, Detective Jason Guzman, Detective Patrick Jean Pierre, and Ranking Detective Daniel Perrino of the NYPD's 70th Precinct; Chairman Frank Davie and employees A. Wassim, S. Carceterra, M. Rivardene, and Records Access Officer Alexander George of the CCRB; Captain Brian White, Lieutenant Dwayne Watson, Sergeant Moode, Detective Carmelo Rivera, and Detective Rashad Vandross of the NYPD's IAB and 67th precinct; and Corporation Counsel attorneys

Nelson Genevieve, Daniel H. Oliner, Allyson Nicole Brown, and Christopher D. Deluca.

**\*5** For the reasons discussed below, the Court dismisses the Amended Complaint in its entirety, and grants Plaintiff leave to file a Second Amended Complaint within sixty (60) days.

## LEGAL STANDARD

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A document filed *pro se* is to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "If [a] liberal reading of the complaint gives any indication that a valid claim might be stated, the Court must give the plaintiff an opportunity to amend the complaint." *Nelson-Charles v. U.S. Dep't of Educ.*, No. 19-CV-1616 (PKC) (PK), 2019 WL 1675999, at *2 (E.D.N.Y. Apr. 16, 2019) (internal quotation marks omitted) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Title 28 of the United States Code § 1915A requires this Court to review the complaint in a civil action in which a prisoner seeks redress from a governmental entity or from officers or employees thereof, and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Similarly, pursuant to the IFP statute, a district court must dismiss a case if the court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

Although Plaintiff's Amended Complaint is slightly confusing in that he frequently references legal phrases without substantively elaborating on his allegations, he appears to center his claims on five main theories: (1) the CCRB and IAB failed to properly investigate his claims against his arresting officers, and the City, CCRB, IAB, Corporation Counsel, and BDS subsequently conspired to cover up the mishandled investigation by doctoring video evidence and failing to disclose the identities of Officers Chow and Battista in *Walker v. Raja*; (2) NYPD officers pressured witnesses and covered up evidence in the lead-up to Plaintiff's grand jury indictment; (3) the City's failure to train led to the foregoing violations; (4) the City and BDS failed to accommodate Plaintiff's visual impairment during his underlying criminal proceedings; and (5) the City failed to establish an independent commission to investigate Plaintiff's claims against his arresting officers. Based on these factual allegations, Plaintiff asserts claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against the City, the NYPD, individual NYPD officers, BDS, BDS attorney Regis, the CCRB, CCRB employees, the IAB, IAB employees, Corporation Counsel, and Corporation Counsel attorneys; claims pursuant to Title II of the ADA and the Rehabilitation Act against the City, BDS, and BDS attorney Regis; and state-law claims against the City. (Am. Compl., Dkt. 24-1, at 23–43.) [13]

[13]   Though not distinguishing between claims under Section 1983 and state law, Plaintiff explains that he "asserts the following thirteen Counts of which all are amongst defendants": (1) deliberate indifference, (2) negligence, (3) conspiracy, (4) failure to intervene, (5) fraudulent misrepresentation or deception, (6) abuse of process, (7) intentional infliction of emotional distress, (8) equitable estoppel, (9) due process, (10) equal protection, (11) procedural due process, (12) fabrication of evidence and failure to investigate, and (13) substantive due process. (Dkt. 26, at 4.)

### I. Section 1983

**\*6** 42 U.S.C. § 1983 ("Section 1983") "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 438 (E.D.N.Y. 2012) (quoting *Baker v. McCollan*, 443 U.S 137, 144 n.3 (1979)); *accord Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). In order to maintain a civil rights action under Section 1983, a plaintiff must allege two essential elements. First, the conduct challenged must have been "committed by a person

Case 1:22-cv-00581-DNH-TWD    Document 4    Filed 06/29/22    Page 29 of 175

acting under color of state law[.]" *Cornejo*, 592 F.3d at 127 (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (internal quotation marks and citation omitted)). Second, the conduct complained of "must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo*, 592 F.3d at 127; *see also Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

### A. Claims Against the NYPD, IAB, CCRB, and Corporation Counsel

As an initial matter, claims against agencies of the City of New York, including the NYPD, IAB, the CCRB, and Corporation Counsel, are not allowed, and instead, must be brought against the City of New York. *See* N.Y.C. Charter, ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Ojeda v. Mendez*, No. 20-CV-3910 (EK) (LB), 2021 WL 66265, at *3 (E.D.N.Y. Jan. 7, 2021) (dismissing claims against, *inter alia*, the NYPD and IAB as non-suable entities (citing N.Y.C. Charter, ch. 17, § 396)); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City." (citation omitted)); *Wingate v. City of New York*, No. 14-CV-4063 (ARR) (LB), 2018 WL 3863439, at *10 (E.D.N.Y. Aug. 14, 2018) ("Plaintiff's claims against Corporation Counsel ... are dismissed because [it is] not [a] suable entit[y]." (citing, *inter alia*, N.Y.C. Charter ch. 17, § 396)).

Therefore, Plaintiff's claims against the NYPD, the IAB, the CCRB, and Corporation Counsel are dismissed for failure to state a claim.

### B. Claims against BDS and BDS Attorney Regis

Plaintiff's Section 1983 claims against BDS and BDS attorney Regis also must be dismissed. Though BDS and Regis were appointed by the state court as Plaintiff's counsel in his underlying criminal case, as a general matter, Plaintiff cannot sue his public defender under Section 1983. *see Polk County. v. Dodson*, 454 U.S. 312, 324–25 (1981) (holding that public defenders do not act under color of law when they represent defendants and are not subject to suit under Section 1983); *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir.

1997) ("[C]ourt-appointed attorneys performing a lawyer's traditional functions as counsel to defendant[s] do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983." (internal citation omitted)).

> Absent special circumstances suggesting concerted action between an attorney and a state representative, the representation of a defendant by private counsel in state criminal proceedings does not constitute the degree of state involvement or interference necessary to establish a claim under § 1983, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender.

*Liverpool v. City of New York*, No. 19-CV-5527 (CM), 2019 WL 3745734, at *2 (S.D.N.Y. Aug. 7, 2019) (citing, *inter alia*, *Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005)); *see also id.* at *3 (noting that the plaintiff "has not stated a § 1983 claim against" a BDS attorney, who is a "private part[y] who do[es] not work for any state or other government body"). Although Plaintiff claims that BDS attorney Regis prevented Plaintiff from seeing and accessing certain surveillance tape evidence in an effort to "insulate [the] seven arresting officers" (Am. Compl., Dkt. 24-1, at 16), these claims neither sufficiently allege "concerted action" between Regis and "state representatives," nor are they supported by any factual allegation in the Complaint or Amended Complaint. Given the wholly conclusory nature of Plaintiff's assertion that Defendant Regis sought to protect the arresting officers, the Court cannot find any "special circumstance" that justifies deviating from the fundamental principle that Plaintiff's court-appointed defense counsel cannot be sued as state actors under Section 1983.

**\*7** Therefore, Plaintiff's Section 1983 claims against BDS and Regis are dismissed for failure to state a claim.

### C. Claims Against NYPD Officers

When asserting claims under Section 1983 against government officials, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v.*

*Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). In connection with his claims against NYPD 70th Precinct Detectives Winston, Higgins, Guzman, Jean Pierre, and Perrino, Plaintiff alleges that the detectives,

> acting under the color of state law, also as arms to the (NYPD), in concert with the [BDS], in a Sin Qua Non to insulate seven arresting officers police misconduct by suppressing exculpatory impeaching evidence, falsifying arrest reports, and allowing inadmissible tainted / manufactured evidence during plaintiff's grand jury proceedings. [The detectives] amplified their conduct by excluding two crucial arresting officers, (William Chow) [ ], (Elisa Battista) police misconduct, obstructed the due course of justice. [The detectives] dissuaded arresting officers from telling the truth during secretive meeting of the minds, while forwarding false reports to the grand jury resulting in perjury of witnesses to deprive, oppress, annoy, wantonly motivated to do plaintiff harm in order to insulate seven arresting officers['] police misconduct in order to obtain a collateral objective that's outside legitimate ends of process.

(Am. Compl., Dkt. 24-1, at 27–28.) [14] As to supervisory officers Captain White, Lieutenant Watson, and Sergeant Moode, Plaintiff alleges simply that they "failed t[o] intervene to prevent such violations [by the IAB] from occurring[,] resulting in injuries of fraudulent concealment [and] [subjecting] [P]laintiff [to] discovery harm that was suffered in deception to delay in bring[ing] [ ] suit by keeping investigation reports from [P]laintiff." (*Id.* at 39.)

[14]   In an affirmation attached to his Amended Complaint, Plaintiff asserts further allegations against Detectives Winston, Higgins, Guzman, Jean Pierre, and Perrino, but these allegations are

similarly vague and fail to allege the detectives' personal involvement. (*See* Dkt. 24-2, at 3–7.)

To the extent Plaintiff argues that his arrest and criminal charges were premised on the presentation of "manufactured evidence" during grand jury proceedings, the Court already dismissed such a claim in *Walker v. Raja*, finding that "the evidence overwhelmingly supports a finding that Plaintiff robbed the store with a firearm," and thus Plaintiff cannot establish that "fabricated evidence le[d] to a false charge against him." *See* 2020 WL 606788, at *10. Furthermore, to the extent this claim calls into question the validity of Plaintiff's conviction, it is barred by the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), which holds that a state prisoner's Section 1983 action is barred if success in that action would necessarily demonstrate the invalidity of a criminal conviction or sentence. *see Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis removed)). Lastly, Plaintiff's general, conclusory statements fail to allege the individual officers' personal conduct that led to the deprivation of Plaintiff's constitutional rights. In fact, Plaintiff fails to state *any* factual allegations as to Detectives Rivera and Vandross of the 67th precinct, despite naming them as Defendants in the Amended Complaint.

**\*8** Plaintiff's claims against the individual NYPD officers of the 70th Precinct are thus dismissed, with leave to replead facts relating to their individual conduct, provided that any repleaded allegations do not relate to the due-process claim the Court has already dismissed in *Walker v. Raja. See* 2020 WL 606788, at *10.

### D. Claims against CCRB Employees

To the extent Plaintiff brings claims against CCRB employees —Chairman Frank Davie, employees A. Wassim and George Alexander, and panel members M. Rivardene and S. Carceterra—for their involvement in the allegedly defective investigation into Plaintiff's arresting officers, the claims are dismissed for lack of personal involvement and for failure to state a claim. First, with respect to Defendants Davie, Alexander, Rivardene, and Carceterra, Plaintiff alleges only that they participated in the CCRB's decision absolving the

2021 WL 1838277

arresting officers of responsibility, which, in itself, does not constitute a violation of Plaintiff's rights. As to CCRB investigator A. Wassim, Plaintiff alleges:

> (CCRB) field investigator, (A. Wassim) interrogated plaintiff's Brooklyn Public Defender, (Danielle Regis) and with a conscious disregard withheld records of interrogations, an overt act in concealing meetings of the minds that exhibited deliberate indifference by turning their heads to the obvious by disavowing, exculpatory, probative, impeaching evidence in interference with state and federal Court proceedings, unlawful actions motivated by an intent to deprive plaintiff Equal protection of the laws. Defendants refrained and dissuaded arresting officers from giving the truth, concerning accurate statements involving the plaintiff incident on, (Jan 8. 2017) resulting in false oral and written statements preventing an honest investigation when false and defamatory statements of facts in their final determination caused a deprivation of plaintiff's civil rights, pursuant to, 42 USC § 1985, while inconsistent with the, IAB investigation holding a different set of arresting officers in their investigation, violation of plaintiff's Due process. Private actors acted in concert with the IAB and Corporation Counsel to inflict an unconstitutional Injury, causing damages[.]

(Am. Compl., Dkt. 24-1, at 33.) Beyond the conclusory statements couched in legal terminology, Plaintiff has failed to explain exactly what "truth" Defendant Wassim dissuaded the officers from telling, and what "false and defamatory statements" were induced. Without more, the claim against Defendant Wassim cannot proceed.

Furthermore, Plaintiff fails to allege the violation of any constitutional right in connection with the CCRB

investigation and final decision. "It is well[-]established that there is no constitutional right to an investigation by government officials." *Troy v. City of New York*, No. 13-CV-5082 (AJN), 2014 WL 4804479, at *6 (S.D.N.Y. Sept. 25, 2014) (internal quotations, alterations, and citations omitted); *see also Koulkina v. City of New York*, 559 F. Supp. 2d 300, 316 (S.D.N.Y. 2008) ("[T]here is no federal constitutional right to a[ ] [CCRB] investigation." (citing *Blount v. Swiderski*, No. 03-CV-0023 (ENV), 2006 WL 3314635 at *12 (E.D.N.Y. Nov. 14, 2006)); *McCaffrey v. City of New York*, 2013 WL 494025, at *5 (S.D.N.Y. Feb. 7, 2013) ("[A] 'failure to investigate' is not independently cognizable as a stand-alone claim[.]"). Plaintiff thus lacks an actionable claim against the CCRB, the IAB, and their employees for allegedly failing to investigate his claims against the arresting officers.

**\*9** Therefore, Plaintiff's claims against CCRB Chairman Davie, employees A. Wassim and George Alexander, and panel members M. Rivardene and S. Carceterra are dismissed.

### E. *Monell* Claims Against the City

Plaintiff alleges that the City failed to protect his constitutional rights by, *inter alia*, "fail[ing] to train and supervise" its employees, "creating and contin[uing] in policies or customs upon having a conscious disregard in private and government municipalities in protecting plaintiff's (Const Rights)," and failing to

> set[ ] in place a Commission (Watchdog agency) in preventing private and government entity's in mishandling, and disavowing information involving seven arresting officers police misconduct, revealed upon their investigative work (Collectively) by subpoenaing records resulting in overt acts by withholding, Aided cards, doctor[ing] investigative records, video surveillance tapes, TRI audio radio runs, and disciplinary records[.]

(Am. Compl., Dkt. 24-1, at 23–25.)

Plaintiff's claims against the City of the New York cannot proceed. A municipality can be liable under Section 1983 if the plaintiff can show that a municipal policy or custom caused the deprivation of his constitutional rights. *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Four types of practices may give rise to a Section 1983 claim against a municipality:

> (1) a formally adopted municipal policy; (2) the actions or decisions of a municipal official with final policymaking authority; (3) a practice so persistent and widespread that it constitutes a custom or usage; and (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference.

*Doe v. City of New York*, No. 18-CV-670 (ARR) (JO), 2018 WL 3824133, at *8 (E.D.N.Y. Aug. 9, 2018) (internal quotation marks and citation omitted); *Safran v. Singas*, No. 20-CV-4537 (PKC) (SMG), 2020 WL 7125232, at *4 (E.D.N.Y. Dec. 4, 2020) (citation omitted). Critically, "a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). As the Second Circuit has noted, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also id.* (noting that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct").

## 1. Underlying Constitutional Violation

Plaintiff purports to bring claims under the Sixth, Fifth, and Fourteenth Amendments, but fails to allege constitutional violations by any state actor.

Plaintiff fails to state a Six Amendment claim.

To prevail on a claim for denial of the constitutional right to a fair trial, a plaintiff must demonstrate that "(1) an investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."

**\*10** *Case v. City of New York*, 408 F. Supp. 3d 313, 322–23 (S.D.N.Y. 2019) (quoting *Caravalho v. City of New York*, 732 F. App'x 18, 24 (2d Cir. 2018) (summary order)). The fabricated information must be "both false and likely to influence a jury's decision." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 280 (2d Cir. 2016). Plaintiff has failed to sufficiently allege any element of a Sixth Amendment violation. As discussed, he offers only conclusory assertions that evidence was "manufactured" by NYPD officers and others without providing any factual allegations to support these claims, such as what evidence was allegedly fabricated and forwarded to prosecutors, by whom, and when, and how that evidence might have affected a jury's verdict. Furthermore, to the extent Plaintiff alleges that NYPD officers mishandled investigations leading up to his criminal charges, "in the context of § 1983, allegations of officers' failure to investigate are considered under the rubric of false imprisonment, false arrest, or malicious prosecution." *Campbell v. Giuliani*, No. 99-CV-2603 (JG), 2000 WL 194815, at *3 n.6 (E.D.N.Y. Feb. 16, 2000) (citing *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 135 (E.D.N.Y. 1998)); *see also Luck v. Westchester Med. Ctr.*, No. 17-CV-9110 (NSR), 2020 WL 564635, at *7 (S.D.N.Y. Feb. 4, 2020) (collecting cases). For the same reasons set forth in *Walker v. Raja*, Plaintiff fails here too to state a claim for false imprisonment, false arrest, or malicious prosecution. Thus, Plaintiff's Sixth Amendment claims are dismissed.

As to any Fifth Amendment claims Plaintiff seeks to bring, the "Fifth Amendment only applies to claims against the federal government," and not the Defendants in this case. *see Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 412 n.1 (S.D.N.Y. 2013). Any Fifth Amendment claims are thus dismissed.

Plaintiff's claims of Fourteenth Amendment violations pursuant to Section 1983 are also dismissed for failure to state a claim. First, to the extent Plaintiff alleges an equal-protection violation, he has failed to make the requisite factual allegations. "To prove a violation of the Equal Protection Clause ... [,] a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination ... [and] that the

disparity in treatment cannot survive the appropriate level of scrutiny[.]" *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citations omitted). Plaintiff has not alleged facts from which to infer that Defendants acted with any racial or otherwise impermissible animus, or that Plaintiff was treated differently from any similarly situated persons.

Furthermore, as discussed above, to the extent Plaintiff argues that his procedural due process rights were violated by the mishandling of investigations into his claims against the officers by the CCRB, the IAB, and their employees, these allegations do not give rise to a constitutional violation. *See supra* Section I.D.

Nor does the alleged withholding of evidence and alteration of video surveillance footage in *Walker v. Raja* amount to a constitutional violation. Though Plaintiff alleges that Defendants withheld evidence regarding Officers Chow's and Battista's involvement in the January 2017 altercation, Plaintiff faced no barriers in adding Officers Chow and Battista as Defendants in his amended complaint in *Walker v. Raja*. In fact, the excessive force claims in that case against the NYPD Officers, including Officers Chow and Battista, are currently pending trial. Though Plaintiff was not able to name Officers Chow and Battista as defendants as early as he otherwise may have liked, this delay does not violate Plaintiff's constitutional rights. *Cf. Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) ("Mere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." (internal quotations and citation omitted)); *see also Smith v. Annucci*, No. 18-CV-1107 (DNH) (DJS), 2019 WL 11727264, at *4–5 (N.D.N.Y. Jan. 16, 2019) ("A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts. Instead, a plaintiff must demonstrate actual injury by establishing that the denial hindered his efforts to pursue a non-frivolous legal claim." (internal quotations and citations omitted)).

*11  Finally, to the extent Plaintiff wishes to hold the Defendant NYPD Officers and/or Corporation Counsel accountable for "derelict tactics" during discovery, the correct mechanism through which to do so is moving for sanctions in that case, which Plaintiff has already, albeit unsuccessfully, done. *See* Motion for Sanctions, *Walker v. Raja*, No. 17-CV-5202 (PKC) (LB) (E.D.N.Y. Mar. 4, 2019), ECF No. 93; 4/2/2019 Order, *Walker v. Raja*, No. 17-CV-5202 (PKC) (LB) (E.D.N.Y. Apr. 2, 2019), ECF No. 95. And as discussed above, the issue of the allegedly doctored video evidence

was addressed and rejected by the Court in *Walker v. Raja*. *See, e.g.*, *Walker*, 2020 WL 606788, at *3 n.6; Transcript of 8/11/2020 Pretrial Conference, *Walker v. Raja*, No. 17-CV-5202 (E.D.N.Y. Aug. 11, 2020), at 25:15–24 (the Court stating: "The bottom line is I have not seen any evidence, Mr. Walker, about the tapes to show that this tape has been doctored. I have viewed the video surveillance a number of times and it certainly depicts the event that you are complaining about in which you say that the officers use excessive force. And obviously, I relied in part o[n] my viewing of that video surveillance to allow your excessive force claim to go through. So at this point, again I will just reiterate, that I do not see any basis for your claim that the video surveillance footage was doctored.").

In sum, Plaintiff has failed to sufficiently allege a constitutional violation by any state actor, which, in itself, requires dismissal of his *Monell* claims against the City.

### 2. Custom or Policy

Even if this were not the case, the allegations in Plaintiff's Amended Complaint do not give rise to a *Monell* claim against the City. Plaintiff proffers two theories of liability against the City under *Monell*: that the City (1) failed to train and supervise its employees, exhibited deliberate indifference to Plaintiff's rights, and created a policy or custom that resulted in the deprivation of Plaintiff's rights (Am. Compl., Dkt. 24-1, at 23–24); and (2) consciously disregarded Plaintiff's equal-protection and due-process rights, and rights under the ADA, by failing to establish an independent Commission to investigate Plaintiff's claims against the officers (*id.* at 24–25). (*see also id.* at 14 ("Plaintiff advance[s] two theories of municipal liability. First asserts that the City has a custom of zealously promoting debating science in mishandling investigations failed to train employees[.]")

However, Plaintiff offers only conclusory statements in support of his claims that the City failed to train and supervise its employees or created a policy or custom that resulted in the deprivation of Plaintiff's rights. (*See, e.g.*, Am. Compl., Dkt. 24-1, at 23–24.) Plaintiff argues, for example, that the City "knew of the moral certain[t]y that private and government superiors and their subordinates would acquire legally blind individuals (clients)," and that the failure to train subordinates pursuant to the ADA "will virtually always lead to a substantial violation[ ], in Due process [and] Equal protection[.]" (*Id.* at 12.) Plaintiff also

argues that the City failed to properly train its agencies, presumably the CCRB and the IAB, "in handling police misconduct allegations and records," thereby insulating the seven arresting officers and violating Plaintiff's Fourth and Fourteenth Amendment rights. (*Id.* at 13.) Such "boilerplate assertion[s]" are insufficient to state a *Monell* claim. *see Dumel v. Westchester County*, No. 19-CV-2161 (KMK), 2021 WL 738365, at *6 (S.D.N.Y. Feb. 25, 2021) (collecting cases); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 540 (S.D.N.Y. 2012) (same). Nor does the decision against establishing an independent Commission (*e.g.*, Am. Compl., Dkt. 24-1, at 24–25)—a discretionary choice by the City— arise to a conscious disregard of Plaintiff's rights. *see Doe*, 2018 WL 3824133, at *8.

Therefore, Plaintiff's *Monell* claims against the City are dismissed for failure to state a claim. *see Johnson v. City of New York*, No. 18-CV-4030 (MKB), 2020 WL 249100, at *2 (E.D.N.Y. Jan. 16, 2020) (dismissing a *Monell* claim because the plaintiff failed to allege facts "to support an inference that the City had an official policy or custom that caused a violation of any federally protected right").

## II. Sections 1985 and 1986

 **\*12**  To the extent Plaintiff alleges a conspiracy to deprive him of constitutional rights under Sections 1985 and 1986, those claims are dismissed as to all Defendants.

> To state a civil rights conspiracy under § 1985(3), a plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. A section 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.

*Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir. 2006) (internal quotations and citations omitted); *see also Brito v. Arthur*, 403 F. App'x 620, 621 (2d Cir. 2010) (summary order) ("To state a conspiracy claim under 42 U.S.C. § 1985, App ellant must have alleged: (1) some racial or other class-based discriminatory animus underlying the Appellees' actions; and (2) that the conspiracy was aimed at interfering with Appellant's protected rights." (citing *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268 (1993))).

With respect to his claims under Sections 1985 and 1986, Plaintiff alleges that Defendants

> held secret meetings of the minds, leading to issuing subpoenas, conducting interrogations, communication through e-mails, coming into contact, and further overt acts in the suppression of exculpatory evidence, unreasonably prolonging investigations, while doctoring records, video, audio recordings, falsifying reports and dissuading arresting officers from telling the truth, fraudulent concealment caused plaintiff to suffer possible discovery deception wrongly deceived.

(Am. Compl., Dkt. 24-1, at 11–12.)

These allegations plainly fail to state a claim under Section 1985(3). First, they are "nothing more than conclusory allegations of a conspiracy between and among Defendants." *see DuBois v. Bedford-Flatbush Chiropractic, P.C.*, 409 F. Supp. 3d 62, 67 (E.D.N.Y. 2019). Second, they do not suggest any agreement to violate constitutional rights based on class-based discriminatory animus. *see Brito*, 403 F. App'x at 621. Accordingly, Plaintiff's Section 1985 claim must be dismissed. *see Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding allegations of conspiracy "baseless" where the plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators"); *Webb v. Goord,* 340 F.3d 105, 110–11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the

minds"); *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999) (per curiam).

Since Plaintiff's Section 1985 conspiracy claim fails, his Section 1986 claim also fails. *see Graham v. Henderson,* 89 F.3d 75, 82 (2d Cir. 1996) ("[A] § 1986 claim is contingent on a valid § 1985 claim[.]"); *see also Wang v. Off. of Pro. Med. Conduct,* 228 F. App'x 17, 19 (2d Cir. 2007) (summary order). [15]

[15]  42 U.S.C. § 1986 creates civil liability for failing to prevent actions taken pursuant to a § 1985 conspiracy: "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented ...." 42 U.S.C. § 1986.

**\*13** Therefore, Plaintiff's Section 1985 and 1986 claims are dismissed for failure to state a claim.

## III. ADA and Rehabilitation Act

Plaintiff alleges that the City failed "to implement adequate training courses to [BDS] in safeguarding [P]laintiff's [rights] pursuant to [the] ADA [and] Rehabilitation Act[.]" (Am. Compl., Dkt. 24-1, at 30.) He asserts that the City should have "implemented polic[ies, or customs fit in training Court appointed attorneys when faced with representing qualified individuals" (*id*), and that BDS attorney Regis's meeting with Plaintiff without "a qualified interpreter (advocate)" and "any auxiliary aids and devices for [P]laintiff's disability" violated Plaintiff's rights (*id.* at 31).

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *see also Harris v. Mills,* 572 F.3d 66, 73 (2d Cir. 2009) (citing, *inter alia,* 29 U.S.C. § 794(a)). "In most cases, the standards are the same for actions under both statutes." *Harris,* 572 F.3d at 73 (internal quotations, alteration, and citation omitted). The Court thus analyzes Plaintiff's claims with reference only to Title II of the ADA, but the same analysis applies for any claim under the Rehabilitation Act.

To assert a claim under Title II, Plaintiff "must demonstrate that '(1) he is a qualified individual with a disability; (2) [Defendants] [are] subject to [the statute]; and (3) he was denied the opportunity to participate in or benefit from [ ] [D]efendant[s'] services, programs, or activities, or was otherwise discriminated against by [D]efendant[s] because of his disability." *Disabled in Action v. Bd. of Elections,* 752 F.3d 189, 196–97 (2d Cir. 2014) (footnote omitted) (quoting *McElwee v. County of Orange,* 700 F.3d 635, 640 (2d. Cir. 2012)). An ADA "plaintiff may base [his] discrimination claim on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation." *Davis v. Shah,* 821 F.3d 231, 260 (2d Cir. 2016); *see also Disabled in Action,* 752 F.3d 189, 197 (2d Cir. 2014) (ellipsis omitted) ("To assure meaningful access, 'reasonable accommodations in the [public entity]'s program may have to be made.' " (quoting *Henrietta D. v. Bloomberg,* 331 F.3d 261, 273 (2d Cir. 2003))).

Under the applicable standards, there are several limitations to Plaintiff's ADA claims. First, Title II claims may proceed against individuals only if they are government officers acting in their official capacity. *see Harris,* 572 F.3d at 72. Plaintiff thus cannot bring an ADA claim against BDS attorney Regis, a private individual (who does not qualify as a state actor, as previously discussed). Plaintiff's ADA claim against BDS attorney Regis is therefore dismissed. *see Green v. City of New York,* 465 F.3d 65, 76 (2d Cir. 2006) (affirming dismissal of ADA claim against a private individual).

**\*14** Second, "Title II applies only to state and local governments, their instrumentalities, and commuter authorities." *Pierce v. Fordham Univ., Inc.,* 692 F. App'x 644, 646 (2d Cir. 2017) (summary order) (citing 42 U.S.C. §§ 12131, 12132; *Mary Jo C. v. N.Y. State & Local Ret. Sys.,* 707 F.3d 144, 162–63 (2d Cir. 2013)). The Second Circuit interprets " 'instrumentality' ... as referring to a creature of a state or municipality." *Green,* 465 F.3d at 79. A private entity "performing services pursuant to a contract with a municipality[,] even if it does so according

2021 WL 1838277

to the municipality's rules and under its direction, is not a creature of any governmental entity." *Id.* As discussed above in the dismissal of § 1983 claims against BDS, public defender organizations are private entities. Thus, Plaintiff's ADA claims against BDS are similarly dismissed. *see Browdy v. Karpe*, 131 F. App'x 751, 753–54 (2d Cir. 2005) (summary order) ("[Plaintiff's] ADA claims also were properly dismissed because he has sued his [public defenders], not [a] public entity[.]").

Third, "it is well[-]settled that monetary damages are [ ] available under Title II of the ADA [only] where the Plaintiff is able to demonstrate intentional discrimination." *Frank v. Sachem Sch. Dist.*, 84 F. Supp. 3d 172, 186 (E.D.N.Y. 2015) (citing *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)), *aff'd*, 633 F. App'x 14 (2d Cir. 2016) (summary order). To prevail on a claim for intentional discrimination under Title II, "a plaintiff must prove a policymaker's 'deliberate indifference to the rights secured the disabled by those statutes,' in addition to the other elements of a Title II claim." *Gershanow v. City of Rockland*, No. 11-CV-8174 (CS), 2014 WL 1099821, at *4 (S.D.N.Y. Mar. 20, 2014) (quoting *KM ex rel. D.G. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343, 358 (S.D.N.Y. 2005)).

Unless Plaintiff properly pleads the City's intentional discrimination to his rights secured by the ADA and Rehabilitation Act, Plaintiff may claim only injunctive relief. Plaintiff's ADA and Rehabilitation Act claims against the City are thus dismissed, with leave to replead. If Plaintiff seeks to replead his claims under the ADA and Rehabilitation Act, he should make sure to identify the program, benefit, or activity that he was denied the ability to participate in due to his disability.

## IV. State-Law Claims

To the extent Plaintiff purports to bring state-law claims for intentional infliction of emotional distress ("IIED"), respondeat superior, or negligence (*see* Dkt. 26, at 4), these claims are dismissed with leave to replead.

### A. Intentional Infliction of Emotional Distress

"Under New York Law, [IIED] has four elements: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial possibility of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.' " *Saleh v. United States*, No. 12-CV-4598 (KBF), 2013 WL 5439140, at *11 (S.D.N.Y.

Sept. 27, 2013) (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993)). "Whether the alleged conduct is sufficiently extreme and outrageous is a matter of law for the courts to decide." *Frigerio v. United States*, No. 10-CV-9086 (SAS), 2011 WL 3163330, at *9 (S.D.N.Y. July 22, 2011). The extreme and outrageous requirement is met "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (internal quotations and citations omitted). "[T]he requirements of the rule are rigorous, and difficult to satisfy. Given the 'rigorous' requirements, courts often dismiss claims under the 'extreme and outrageous conduct' prong as a matter of law." *Reid v. Sack*, No. 20-CV-1817 (VM), 2021 WL 100490, at *5 (S.D.N.Y. Jan. 12, 2021) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)).

**\*15** Plaintiff fails to allege that Defendants engaged in extreme and outrageous conduct with the intent to cause him emotional distress, or that he suffered emotional distress as a result of their conduct. To the extent Plaintiff's claim is that some Defendants engaged in extreme and outrageous conduct by "manufacturing" or "doctoring" evidence, that conclusory assertion, as previously discussed, is insufficient. Plaintiff's IIED claim therefore is dismissed.

### B. Respondeat Superior

Because Plaintiff has not demonstrated an "entitlement to recover against [any City] employee," his claim against the City under the doctrine of respondeat superior fails. *see Ferreira v. City of Binghamton*, 975 F.3d 255, 278 (2d Cir. 2020).

### C. Negligence

Plaintiff asserts that the City "was grossly negligent upon setting in place a contractual agreement between, (the City) and [BDS]." (Am. Compl., Dkt. 24-1, at 29.) Under New York law, an essential element of a negligence claim against a municipality is a "special duty to the injured person, in contrast to a general duty owed to the public." *Ferreira*, 975 F.3d at 283 (quoting *McLean v. City of New York*, 12 N.Y.3d 194, 199 (2009)), *certified question accepted*, 35 N.Y.3d 1105 (2020).

New York courts have recognized the existence of such a duty where either "(1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the

government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality took positive control of a known and dangerous safety condition."

*Id.* at 281 (quoting *Applewhite v. Accuhealth, Inc.*, 972 N.Y.S.2d 169, 173 (2013)). Plaintiff has alleged no such duty. His negligence claim against the City is therefore dismissed with leave to replead.

### V. Leave to Amend

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file a Second Amended Complaint within sixty (60) days of this Memorandum and Order. "Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state-law claims when it has dismissed all claims over which it has original jurisdiction." *Liverpool*, 2019 WL 3745734, at *3 n.2 (internal quotations omitted). Because the Court grants Plaintiff leave to replead his federal claims, Plaintiff is also granted leave to replead his state-law claims.

Plaintiff's leave to amend his pleadings is subject to the following limits: (1) Plaintiff should not assert § 1983 claims against the CCRB, IAB, Corporation Counsel, and BDS because, as discussed above, they are non-suable entities under § 1983; (2) Plaintiff should not assert claims relating to the CCRB or IAB investigations against the arresting officers because, as discussed above, there is no constitutional right to a government investigation; (3) Plaintiff should not assert claims relating to the delayed disclosure of Officers Chow's and Battista's involvement in his arrest because, as discussed above, Plaintiff suffered no prejudice and was able to timely add them as defendants in *Walker v. Raja*; (4) Plaintiff should not re-assert any claim that surveillance videotape was "doctored," or that "manufactured" or "fabricated" evidence was produced or introduced during grand jury proceedings; and (5) Plaintiff should not assert-due process claims relating to his underlying arrest and indictment, as the Court has already determined in *Walker v. Raja* that "the evidence overwhelmingly supports a finding that Plaintiff robbed the store with a firearm," *Walker*, 2020 WL 606788, at *10. *see Hunt v. All. N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998) ("[I]t is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile.").

**\*16** Plaintiff is advised that the Second Amended Complaint will completely replace the Amended Complaint, must be

captioned "Second Amended Complaint," and shall bear the same docket number as this Memorandum and Order. Plaintiff is also advised that he should submit only one filing constituting his Second Amended Complaint, and that such filing need not include reproductions of court opinions to which Plaintiff cites. Plaintiff need not, and should not, file additional affirmations (*e.g.*, Dkts. 24-2, 26, 27) in connection with the Second Amended Complaint, and should submit only one copy of all further filings in this case. Furthermore, Plaintiff's Second Amended Complaint should reference only exhibits and documents filed in this action and bearing the same docket number as this Memorandum and Order.

Although the Court is obliged to allow Plaintiff to amend his complaint at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted), Plaintiff should proceed in good faith and he must refrain from setting forth conclusory statements (*i.e.*, statements not based on specific factual allegations) in support of his claims and repeating any claims that have been dismissed by this Order.

### CONCLUSION

For the reasons stated above, the Amended Complaint is dismissed in its entirety for failure to state a claim pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B). However, the Court grants Plaintiff's motion to proceed IFP and leave to file a Second Amended Complaint within sixty (60) days, as set forth above. All further proceedings shall be stayed for sixty (60) days or until Plaintiff files a Second Amended Complaint, whichever is earlier. If Plaintiff fails to file a Second Amended Complaint within the time allowed or fails to show good cause why he cannot, the Court shall direct the Clerk of Court to enter judgment and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore IFP status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

### All Citations

Slip Copy, 2021 WL 1838277

**Walker v. City of New York, Slip Copy (2021)**

2021 WL 1838277

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Allen v. Stringer, Not Reported in Fed. Rptr. (2021)

2021 WL 4472667

2021 WL 4472667
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Doran ALLEN, Plaintiff-Appellant,

v.

Scott M. STRINGER, New York City Comptroller,
Warden AMKC-C-95, Defendants-Appellees.

20-3953
|
September 30, 2021

Appeal from a judgment of the United States District Court
for the Southern District of New York (Stanton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Doran Allen, pro se,
Ossining NY.

FOR DEFENDANTS-APPELLEES: No appearance.

PRESENT: RICHARD C. WESLEY, RICHARD J.
SULLIVAN, Circuit Judges, JOHN G. KOELTL, District
Judge. *

*      Judge John G. Koeltl of the United States District
Court for the Southern District of New York, sitting
by designation.

## SUMMARY ORDER

Appellant Doran Allen, proceeding pro se, sued Scott M.
Stringer, in his capacity as New York City Comptroller, and
the unnamed warden of the Rikers Island Anna M. Kross
Center ("AMKC") under 42 U.S.C. § 1983 for violations of
the Due Process Clause of the Fourteenth Amendment. Allen
alleges that, while he was detained at AMKC, a corrections
officer refused to help him carry breakfast trays, causing him
to slip and fall on broken stairs, injuring himself. The district
court dismissed the complaint sua sponte for failure to state a
claim. We assume the parties' familiarity with the underlying

facts, the procedural history of the case, and the issues on
appeal.

We review de novo a district court's sua sponte dismissal of
a complaint under 28 U.S.C. § 1915(e)(2). *Zaleski v. Burns*,
606 F.3d 51, 52 (2d Cir. 2010). Under that statute, the district
court must dismiss a complaint filed in forma pauperis if
it determines that the action "(i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted;
or (iii) seeks monetary relief against a defendant who is
immune from such relief." 28 U.S.C. § 1915(e)(2)(B). To
avoid dismissal, a complaint must plead "enough facts to
state a claim to relief that is plausible on its face." *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft
v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing that "legal
conclusions" and "[t]hreadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do
not suffice" to plead a viable claim). Pro se submissions are
reviewed with "special solicitude," and "must be construed
liberally and interpreted to raise the strongest arguments that
they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d
471, 474–75 (2d Cir. 2006) (internal quotation marks and
emphasis omitted).

Conditions-of-confinement claims brought by pretrial
detainees are analyzed under the Fourteenth Amendment's
Due Process clause. *Darnell v. Pineiro*, 849 F.3d 17, 29
(2d Cir. 2017). To state such a claim, a plaintiff must
satisfy both an objective prong and a subjective prong.
*See id.* The objective prong requires "showing that the
challenged conditions were sufficiently serious to constitute
objective deprivations of the right to due process," while
the subjective prong requires "showing that [an] officer
acted with at least deliberate indifference to the challenged
conditions." *Id.* (internal quotation marks omitted). If a
conditions-of-confinement claim is predicated on an unsafe
condition, a court will analyze "whether society considers
the risk that the prisoner complains of to be so grave that it
violates contemporary standards of decency to expose *anyone*
unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25,
36 (1993).

Allen alleges that he slipped or tripped on broken stairs,
causing him to fall. But while the existence of broken stairs
could be deemed to constitute negligence on the part of
the prison, broken stairs alone cannot satisfy the objective
prong of a conditions-of-confinement claim. *See McCray v.
Lee*, 963 F.3d 110, 120 (2d Cir. 2020) (explaining that the
defendant's complaint alleging unconstitutional conditions of

Allen v. Stringer, Not Reported in Fed. Rptr. (2021)
2021 WL 4472667

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 40 of 175

confinement after a slip and fall in an icy prison yard did not show "exceptional circumstances" that would "elevate" the conditions "beyond the typical level of danger presented by a slippery sidewalk or a wet floor"). Because broken stairs cannot be considered a risk that is "so grave that it violates contemporary standards of decency," Allen's conditions-of-confinement claim was properly dismissed. *Helling*, 509 U.S. at 36.

**\*2** But even if it could be argued that Allen alleged an objectively serious condition, the district court properly dismissed Allen's claims against Stringer and the AMKC warden due to the obvious deficiencies in Allen's complaint. As the district court concluded, the suit against the warden in his official capacity was more properly a suit against the City of New York because Allen did not allege that the warden personally had done or failed to do anything that violated his rights. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity... should be treated as suits against the State."). Similarly, Stringer, as the New York City Comptroller, is sued in his official capacity. Allen was therefore obligated to allege sufficient facts showing that the Fourteenth Amendment violation occurred "pursuant to a municipal policy or custom," *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing, inter alia, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978)), or was caused by a "failure to train," *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell*, 436 U.S. at 694). Allen did not allege any facts showing that the corrections officer acted pursuant to an unconstitutional policy or custom, or that the City of New York failed to train its corrections officers, as required for such a claim.

The district court also did not abuse its discretion by declining to exercise supplemental jurisdiction over any state-law claims because the district court properly dismissed Allen's § 1983 claim, the only claim over which it had original jurisdiction. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." (internal quotation marks omitted)).

Finally, the district court did not err by denying Allen leave to amend his complaint. A district court should not dismiss a pro se plaintiff's complaint without granting leave to amend "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). As discussed above, the incident involving the corrections officer and the broken steps did not amount to a due process violation, and that deficiency in the complaint cannot not be cured. Accordingly, amendment would have been futile.

We have considered all of Allen's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

### All Citations

Not Reported in Fed. Rptr., 2021 WL 4472667

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

538 Fed.Appx. 5
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE 32.1
AND THIS COURT'S LOCAL RULE 32.1.1. WHEN
CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN
ELECTRONIC DATABASE (WITH THE NOTATION
"SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON
ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

Christopher BASILE, Plaintiff–Appellant,

v.

Francesca CONNOLLY, in her official and individual
capacity, John Guttridge, in his individual capacity,
Sherry Wiggs, in her individual capacity, Anne Mueller,
in her individual capacity, Defendants–Appellees.

No. 13–339–cv
|
Sept. 3, 2013.

**Synopsis**
**Background:** Attorney brought pro se § 1983 action against
state-court judge and private individuals who had advocated
in favor of protective order issued by judge. The United States
District Court for the Eastern District of New York, Jack B.
Weinstein, J., dismissed complaint. Attorney appealed.

**Holdings:** The Court of Appeals held that:

[1] judge had absolute immunity from liability for money
damages under § 1983;

[2] attorney did not plead that private individuals engaged in
collusive action under color of state law allowing them to be
sued under § 1983;

[3] attorney could not plausibly claim to have been injured in
violation of his due process rights; and

[4] granting leave to amend would be futile.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

West Headnotes (6)

[1] **Civil Rights** 🔑 Judges, courts, and judicial
officers

State-court judge had absolute immunity from
liability for money damages under § 1983, based
upon her issuance of protective order in case after
it was removed from state court, even if judge
acted in excess of her jurisdiction. 42 U.S.C.A.
§ 1983.

4 Cases that cite this headnote

[2] **Civil Rights** 🔑 Pursuit of private or judicial
remedies

Attorney did not plead facts plausibly
suggesting that state-court judge committed
unconstitutional act in issuing protective order
in case removed to federal court, and thus could
not claim that advocacy for protective order by
private individuals was collusive action under
color of state law allowing those individuals to
be sued under § 1983. 42 U.S.C.A. § 1983.

4 Cases that cite this headnote

[3] **Constitutional Law** 🔑 Notice and hearing in
general

**Pretrial Procedure** 🔑 Objections and
protective orders

Attorney had notice and opportunity to appear
at hearing, as well as opportunity to appeal
protective order issued by state-court judge
after action was removed, and thus could not
plausibly claim to have been injured by issuance
of order in violation of his due process rights.
U.S.C.A.Const.Amend. 14.

**[4]   Federal Courts** 🔑 **Failure to mention or inadequacy of treatment of error in appellate briefs**

Attorney abandoned any challenge to district court's dismissal of his state-law claims by failing to raise it in his brief on appeal to Court of Appeals.

**[5]   Federal Courts** 🔑 **Effect of dismissal or other elimination of federal claims**

Declining to exercise supplemental jurisdiction over plaintiff's state-law claims, after his federal claims had been dismissed, was not abuse of discretion. 28 U.S.C.A. § 1367(c)(3).

2 Cases that cite this headnote

**[6]   Federal Civil Procedure** 🔑 **Pleading over**

Attorney proceeding pro se did not inadequately or inartfully plead any potentially viable claims, and therefore granting him leave to amend, upon dismissal of his complaint, would be "futile."

6 Cases that cite this headnote

**\*6** Appeal from a judgment of the United States District Court for the Eastern District of New York (Jack B. Weinstein, Judge).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on January 24, 2013, is AFFIRMED.

**Attorneys and Law Firms**

Christopher Basile, Esq., Brooklyn, NY, pro se.

Mark Shawhan (Barbara D. Underwood, Solicitor General, Michael S. Belohlavek, Senior Counsel, Simon Heller, Assistant Solicitor General, of Counsel, on the brief), for Eric T. Schneiderman, Attorney General of the State of New York, New York, NY, for Defendant–Appellee Francesca Connolly.

Dianna D. McCarthy, Winget, Spadafora & Schwartzberg, LLP, New York, N.Y. for Defendant–Appellee John Guttridge.

Ronald W. Weiner, Steinberg & Cavaliere, LLP, White Plains, NY, for Defendant–Appellee Anne Mueller.

Sherry Wiggs, Dobbs Ferry, NY, pro se.

PRESENT: JON O. NEWMAN, REENA RAGGI and GERARD E. LYNCH, Circuit Judges.

**SUMMARY ORDER**

Christopher Basile appeals from the dismissal of his 42 U.S.C. § 1983 complaint against New York Supreme Court Justice Francesca Connolly and defendants John Guttridge, Anne Mueller, and Sherry Wiggs. We review such a dismissal *de novo,* "accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir.2010). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While we ordinarily afford special solicitude to *pro se* pleadings, such solicitude is not warranted here, where a lawyer is representing himself. *See Tracy v. Freshwater,* 623 F.3d 90, 102 (2d Cir.2010). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**[1]** After an independent review of the record and relevant case law, we conclude that the district court properly dismissed Basile's § 1983 complaint. The act by Justice Connolly complained of in the Eastern District action—issuance of a January 20, 2012 protective order—is different from her earlier conduct in the same state case that Basile complained about in his dismissed Southern District suit. *See Basile v. Connolly,* No. 11–cv–08605–VB, Dkt. No. 3 (S.D.N.Y. Dec. 16, 2011), *aff'd* 513 Fed.Appx. 92 (2d Cir.2013). Nevertheless, **\*7** absolute judicial immunity shields the judge from this action as it did from the earlier one. *See id.,* 513 Fed.Appx. at 93–94.

The entry of a protective order by a judge in a court of general jurisdiction is plainly a "judicial" action shielded by absolute immunity. *See Stump v. Sparkman,* 435 U.S. 349, 362–63, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (holding that judicial act is "type of act normally performed only by judges"); *Gross v.*

*Rell,* 585 F.3d 72, 85 (2d Cir.2009) (holding that "ruling on conservatorship applications and related matters are judicial functions within the realm of a probate judge"). A contrary conclusion would require plaintiff to show that the judge acted "in the *complete absence* of all jurisdiction. *Mireles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (emphasis added). A complete absence of jurisdiction means that a court acts "when it does not have any statutory or constitutional power to adjudicate the case." *Gross v. Rell,* 585 F.3d at 84 (emphasis and internal quotation marks omitted). It is not to be confused with judicial actions "in excess of" jurisdiction, for which a judge is immune "even when the judge is accused of acting maliciously and corruptly." *Id.* When a judge who clearly had jurisdiction over a matter is precluded from exercising that jurisdiction by a removal of the case to federal court, *see* 28 U.S.C. § 1446, any judicial actions she takes thereafter may be "in excess of," but are not in the "complete absence of," jurisdiction. *See, e.g., Stump v. Sparkman,* 435 U.S. at 357 n. 7, 98 S.Ct. 1099 (observing that if probate judge, with jurisdiction over only wills and estates, should try criminal case over which he never had jurisdiction, "he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune"). Thus, Justice Connolly is absolutely immune from a § 1983 claim for money damages for entry of the January 20 protection order.

**[2] [3]** As for the other defendants, all of them are private individuals who cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law. To the extent that Basile argues that they acted under color of law because they engaged in a conspiracy with Justice Connolly to violate his rights, we agree with the district court that Basile has failed to plead facts plausibly suggesting that Justice Connolly committed any unconstitutional act. *See Bell Atl. Corp. v. Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. Without such a plausible claim of constitutional injury by Justice Connolly, Basile cannot claim that the private defendants' advocacy for the protective order was collusive action under color of state law. *See Ciambriello v. County of Nassau,* 292 F.3d 307, 324 (2d Cir.2002) ("To state a claim against a private entity on a section 1983 conspiracy

theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." (internal quotation marks omitted)). Moreover, because Basile had notice and opportunity to appear at the hearing, as well as an opportunity to appeal the protective order issued after removal, he cannot plausibly claim to have been injured in violation of due process. *Cf. Harris v. Mills,* 572 F.3d 66, 76 (2d Cir.2009) (holding that notice and opportunity to be heard before deprivation of constitutionally protected interest coupled with Article 78 post-deprivation remedy satisfied due process).

**\*8 [4] [5]** Further, Basile has abandoned any challenge to the dismissal of his state law claims by failing to raise it in his brief on appeal. *See LoSacco v. City of Middletown,* 71 F.3d 88, 92–93 (2d Cir.1995). Even if he had raised such a challenge, however, it would be without merit as "the exercise of supplemental jurisdiction is left to the discretion of the district court, and this court's review is limited to whether the district court abused its discretion." *Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994); *see* 28 U.S.C. § 1367(c)(3) (stating that district court "may decline to exercise supplemental jurisdiction over a claim" if court "has dismissed all claims over which it has original jurisdiction"). We identify no such abuse here. *See generally Castellano v. Bd. of Trs. of Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir.1991) (holding that "if [all] federal claims are dismissed before trial ... [then] the state claims should be dismissed as well").

**[6]** Finally, while a district court generally should not dismiss a *pro se* complaint without granting the plaintiff leave to amend, such leave is not necessary when it would be futile. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). Here, granting Basile leave to amend would be futile, as a review of the record does not suggest that Basile has inadequately or inartfully pleaded any potentially viable claims.

We have considered Basile's remaining arguments on appeal and find them to be without merit. For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.

### All Citations

538 Fed.Appx. 5

---

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 44 of 175

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)

2019 WL 4392743

2019 WL 4392743
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Manuel P. ASENSIO, individually; Manuel P.
Asensio as the parent of E.A., a minor child, Plaintiff,
v.
Janet DIFIORE, Chief Judge of New York State; Letitia
James, Attorney General of New York State; Barbara
Underwood; Andrew M. Cuomo, Governor of New York
State; Adetokunbo O. Fasanya; New York County Family
Court Magistrate Judge; Emilie Marie Bosak, Defendants.

No. 18-CV-10933 (RA)
|
Signed 09/13/2019

**Attorneys and Law Firms**

Manuel P. Asensio, New York, NY, pro se.

Jonathan Conley, NYS Office of the Attorney General, New
York, NY, for Defendants Janet DiFiore, Barbara Underwood,
Andrew M. Cuomo, Adetokunbo O. Fasanya.

Rachel Ambats, The Law Office of Rachel Ambats, PLLC,
Brooklyn, NY, for Defendant Emilie Marie Bosak.

Emilie Marie Bosak, New York, NY, pro se.

<u>OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

 **\*1**  Plaintiff Manuel Asensio, appearing *pro se*, commenced
this action on behalf of himself and his minor child, E.A.,
challenging various state court proceedings relating to E.A.'s
custody. He asserts claims under 18 U.S.C. § 241, and 42
U.S.C. §§ 1983, 1985, and 1986, against Defendants Janet
DiFiore, Chief Judge of New York State; Letitia James,
Attorney General of New York; Barbara Underwood, the
former Attorney General of New York; Andrew Cuomo,
Governor of New York; Adetokunbo Fasanya, New York
County Family Court Magistrate Judge (together, the "State
Defendants"); and Emilie Marie Bosak, Asensio's ex-wife.[1]
Before the Court are the State Defendants' motion to dismiss,
Defendant Bosak's motion to dismiss, and Asensio's renewed
requests for the undersigned's recusal. For the following

reasons, Defendants' motions to dismiss are granted, and
Asensio's motions are denied.

[1] As explained further below, the Court assumes for
purposes of this Opinion that Asensio brings his
claims against the State Defendants in both their
official and individual capacities. Because Letitia
James succeeded Barbara Underwood as Attorney
General of New York after the Complaint was
filed, Letitia James is added as a party with respect
to Asensio's official capacity claims, pursuant to
Fed. R. Civ. P. 25(d). *See, e.g., Correction Officers
Benev. Ass'n v. Kralik,* No. 04 Civ. 2199(PGG),
2009 WL 856395, at \*5 (S.D.N.Y. Mar. 26, 2009).

**FACTUAL BACKGROUND** [2]

[2] The facts in this section, which are assumed to
be true for purposes of this motion, are drawn
from Plaintiff's Complaint, its attachments, and the
record in the state court proceedings of which the
Court takes judicial notice. *See Roth v. Jennings,*
489 F.3d 499, 509–510 (2d Cir. 2007). In light of
Plaintiff's *pro se* status, the Court also considers
factual allegations made in Plaintiff's numerous
oppositions to Defendant's motion to dismiss.
*See* Dkts. 61–71, 73–75, and 78; *Washington
v. Westchester County Dep't of Corr.,* No. 13
Civ. 5322(KPF), 2015 WL 408941, at \*1 n.1
(S.D.N.Y. Jan. 30, 2015). The Court refers to the
ECF pagination of Plaintiff's filings for ease of
reference.

Familiarity with the substance of the underlying state court
proceedings and their complicated procedural history is
presumed. The Court reviews only those facts necessary to
resolving the instant motions.

This case arises from various post-divorce custody
proceedings in New York Family Court between Asensio
and his ex-wife, Defendant Bosak. Specifically, after the
New York Supreme Court granted Asensio and Bosak a
judgment of divorce in August 2013, Asensio filed multiple
petitions in New York Family Court, seeking, among other
things, modifications to the custody arrangements of E.A.
*See* Compl. at 6, 38 n. 7; Barnett Aff. ¶ 3. Defendant
Magistrate Judge Fasanya, who presided over some of these
petitions, issued a number of orders directing Asensio to pay

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)

2019 WL 4392743

Bosak's attorney's fees, as well as the fees of an attorney who Judge Fasanya appointed to represent E.A. *See* Compl. at 4, 6, 24. Asensio thereafter unsuccessfully appealed many of those orders in the New York State Court System, until he was ultimately barred from bringing any further litigation challenging the propriety of his Family Court proceedings, absent prior permission. *See Asensio v. Fasanya*, Index No. 158837/2017 (Sup. Ct. N.Y. Cnty. June 8, 2018) (Doc. 119). Asensio now comes to this Court essentially alleging that his lack of success in New York State Court is the result of a broader conspiracy between Judge Janet DiFiore, Judge Fasanya and Bosak, to violate his constitutional rights—and to which the Attorney General and the Governor have turned a blind eye. The allegations against each of the Defendants, all of which are frivolous, are nonetheless reviewed in further detail below.

## I. Magistrate Judge Fasanya

**\*2** Asensio's claims against Judge Fasanya largely arise in the first instance from a May 15, 2014 proceeding the judge held to address certain of Asensio's then-pending custody petitions. *Id.* at 24; *see also* Lipton Aff. Ex. A, *Asensio v. Bosak*, Index No. 153776/2017 (Sup. Ct. N.Y. Cnty. July 29, 2018) (Doc. 83). Asensio alleges that Judge Fasanya deprived him of due process at that hearing by, among other things, "ignor[ing] [his] attorney's legal objections." Compl. at 19. Although not entirely clear from the Complaint, those objections appear to have been directed to Judge Fasanya's appointment of a lawyer, Ms. Restivo, to represent the interests of E.A. in the ongoing custody proceedings. *See id.* Asensio contends that Judge Fasanya lacked "jurisdiction or authority" to appoint Ms. Restivo, and that he did so in cooperation with Bosak and her attorney. *Id.* at 28, 63. Asensio further alleges that "[i]t was obvious"—although he does not explain why—that Judge Fasanya had had "*ex parte* communications with Defendant Bosak's counsel." *Id.* at 24.

Since May 15, 2014, and in response to the alleged collusion that occurred on that date between Judge Fasanya, Bosak, her attorney, and Ms. Restivo, Asensio has "been prosecuting his complaints against Defendant Fasanya," "within the Unified Court System." *Id.* at 34, 62. As a result, Asensio maintains that Judge Fasanya has since retaliated against him in numerous ways. *See id.* at 20, 59 (alleging that Judge Fasanya's "actions against [Asensio] since May 15, 2014 ... have been deliberate and malicious one-sided fabrications, executed to retaliate against him").

Judge Fasanya's first alleged retaliatory act was his issuance of orders directing Asensio to pay at least a portion of Ms. Restivo's legal fees in connection with her representation of E.A. Asensio further asserts that Judge Fasanya had "no authority, right, or discretion to obligate [him] ... to agree to Ms. Restivo's hourly rate or the time she spends on the case." *Id.* at 67; *see also id.* at 20 (accusing Judge Fasanya of "fabricat[ing] ... arbitrary and unauthorized ... 'interim' fees for Ms. Restivo, contempt orders and summary 'pay or be arrest[ed]' orders to collect these fees"); *id.* at 67 (alleging that Judge Fasanya "use[d] thirteen (13) contempt and arrest orders to force [Asensio] to pay ... $99,153.22,"). In Asensio's view, Judge Fasanya "is required by law to have New York County pay Ms. Restivo's bill ... not the Plaintiff." *Id.*

Next, Asensio alleges that Judge Fasanya retaliated against him by issuing a so-called interim custody suspension order on January 15, 2016, which he claims the judge "fabricated" with Bosak. *Id.* at 9; *see also id.* at 68 (asserting that the suspension order was "based on ... Bosak's false story-telling[.]"). Asensio also alleges that, on the same day, Judge Fasanya forced him "to see his daughter under the supervision of Richard Spitzer," a social worker of "Comprehensive Family Services," pursuant to an alleged plan between Judge Fasanya and Bosak's counsel "to suspend [Asensio's] parenting access without evidence, charges, hearing, decision or reasoning." *Id.* at 62.

Then, as an allegedly "punitive follow-up" to the January 15, 2016 Order, and "retaliatory act" against Asensio's complaints against Fasanya, the judge issued an order requiring Asensio to pay Bosak's legal fees in the amount of $33,000. *Id.* at 74. Asensio acknowledges that the order was "based on a finding that [his] petitions were frivolous," but claims that the finding had "no basis in the record." *Id.* at 74; *see also id.* at 63, 76 (noting that "[t]he UCS and the State of New York have ignored and refused to review Defendant Fasanya's ... order entered on January 21, 2016, granting Defendant Bosak a $33,701.50 legal fee award"). Asensio also asserts that Judge Fasanya has unconstitutionally deprived him of his due process rights by ordering him to pay over $200,000 in fees. *See id.* at 18 ("Fasanya has unilaterally manufactured processes sixteen (16) times to commit unconstitutional seizures of money from Plaintiff totaling ... $226,090.22."). The most recent order to pay fees (or alleged "seizure") "occurred on July 16, 2018 when Defendant Fasanya ... forced the Plaintiff to pay $62,912.82 to Defendant Bosak's attorneys." *Id.*

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)

2019 WL 4392743

**\*3**  Asensio further asserts that Judge Fasanya unlawfully incarcerated him on June 30, 2017, for failing to comply with the judge's fee orders. *See id.* at 75 (describing the incarceration as "deliberately and maliciously in derogation of New York State law."). Asensio maintains that Judge Fasanya held him "in contempt of court at the conclusion of a contempt hearing on ... orders to show cause to enforce payment of Ms. Restivo's fees." *Id.* at 74. He further claims that he had secured the necessary surety bond to "secure an automatic statutory stay" of the contempt order, but that he was precluded from filing a notice of appeal of the order. *See id.* (accusing Judge Fasanya of denying Asensio's purported "right for an automatic stay and right to purge the alleged contempt ... and order[ing] [that] the Plaintiff be turned over to the department of corrections."). Asensio then alleges that "the Appellate Division for the First Department ... and the Court of Appeals refused to entertain [his] application for leave to appeal the contempt and incarceration order[.]" *Id.* at 75.

Lastly, Asensio refers to the Judge Fasanya's May 2, 2018 "Decision and Order on Default." *Id.* at 69. Although Asensio does not articulate the basis or contents of the order, he states that it "can only be viewed as a fraud on the court and the judicial system[.]" *Id.* at 77.

## II. Emilie Bosak

Asensio's allegations against Bosak, which are stated in less detail than those against Judge Fasanya, arise from the purported "collusion" between the two in connection with the May 15, 2014 hearing, the January 15, 2016 interim suspension order, and Judge Fasanya's numerous attorney's fees orders discussed above. In essence, Asensio alleges that Judge Fasanya's actions taken against him in his post-divorce proceedings is the result of a broader conspiracy between the judge and Bosak to violate his civil rights. Asensio asserts, for instance, that Bosak colluded with Judge Fasanya to "fabricate evidence, charges, and records, [and] to make fraudulent calendaring decisions[.]" Pl.'s Mem. Opp. at 1 (Dkt. 71). In addition, although he does not mention it in his Complaint, Asensio later alleges that Defendant Bosak conspired with Judge Fasanya at a much earlier date— December 13, 2013—to cause Asensio to be falsely arrested. *See* Pl.'s Aff. at 2 (Dkt. 62). The details of the purported conspiracy and the arrest are not specified.

## III. Chief Judge DiFiore

Asensio's claims against Judge DiFiore are similarly predicated on Judge Fasanya's alleged misconduct, and Judge DiFiore's purported failure to remedy such harm. More broadly, Asensio claims that Judge DiFiore's alleged conspiracy with Judge Fasanya—to permit the entry of the various fee orders against Asensio, among other things—is a component of what he dubs Judge DiFiore's "prohibited and impermissible domestic relations process." Compl. at 1. As part of this so-called "process," Asensio alleges that Judge DiFiore has "ignore[d] the law" to "maliciously create income" for lawyers appointed by New York judges ("18-B lawyers"). *Id.* at 4 (asserting that "the imposition of attorney's fees ... and appointments of unnecessary attorneys for children in ... post-divorce judgment custody violation cases" is a "central component" of DiFiore's "domestic relations process"). Other components of this process, Asensio contends, include DiFiore's "sanctioning" of Fasanya's "collusion" with Bosak, by permitting Fasanya to issue the interim suspension order. *Id.* at 3; *see also id.* at 14 (alleging that Judge DiFiore "has protected Defendant Fasanya from the Plaintiff's complaints," including by "deliberately refrain[ing] from ... regulat[ing] Defendant Fasanya's acts[.]").

According to Asensio, the reason Judge DiFiore has been able to engage in this purported "domestic relations process" is because of the domestic relations exception to the federal courts' subject matter jurisdiction under Article III of the U.S. Constitution—which he refers to as the "DRE" and which "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). "Without the cover provided by the DRE," Asensio posits, DiFiore could not have "conceal[ed]" her supposedly unlawful conduct. Compl. at 2. In other words, Asensio argues that DiFiore has been relying on the DRE as a shield to protect her from liability for her acts. Asensio thus purports to challenge "the federal courts' use of the so-called domestic relations exception." *Id.* at 5. It might seem, then, that Asensio is asking this Court to overturn the domestic relations exception as a legal doctrine. In Asensio's view, the doctrine has emboldened Chief Judge DiFiore to unconstitutionally permit family court judges to appoint attorneys for children in post-custody proceedings, and to order parents to pay for those attorneys' fees. The Complaint, however, makes no such request—instead, it seeks millions of dollars in punitive and compensatory damages against Defendants for allegedly violating Asensio's constitutional rights.

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 47 of 175

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)

2019 WL 4392743

**\*4** Separately, Asensio alleges that, on December 5, 2016, DiFiore improperly dismissed his prior complaint against Judge Fasanya and directed him "to the normal appellate practice ... without any review or consideration." *Id.* at 66; *see also id.* at 21 (noting that on December 5, 2016, "Defendant DiFiore arbitrarily ... fabricated a blanket protection order that banned all of the Plaintiff's actions against Defendant Fasanya.").

### IV. The Attorney General, the Governor, and Underwood

With respect to Defendants James, Underwood, and Cuomo, Asensio alleges that they have been "maliciously refraining from performing their inherent duties to restrain Defendant DiFiore from acting against" Plaintiff and E.A. *Id.* at 16; *see also id.* at 21 (stating that these defendants have "deliberately and wrongfully abstained from exercising the inherent duties of their official positions ... to monitor ... and prosecute Defendant DiFiore for her malicious actions against ... Plaintiff"). As with Judge DiFiore, Asensio blames the domestic relations exception to federal subject matter jurisdiction for giving these defendants "unrestricted authority to allow the [C]hief [J]udge to violate [his] rights." *Id.* at 25.

### PROCEDURAL BACKGROUND

Asensio commenced this action on November 21, 2018. On December 14, 2018, he filed a letter requesting, among other things, that the Court schedule a pre-trial conference and hold oral argument on Defendants' then-anticipated motions to dismiss. *See* Dkt. 12. After granting Defendants' subsequent requests for extensions of time to file the motions—which contest in part the Court's subject matter jurisdiction to hear Asensio's claims—the Court stayed the remainder of the case pending resolution of the motions and denied the requests in Asensio's December 14, 2018 letter. *See* December 17, 2018 Order (Dkt. 24). For the reasons provided in the Court's January 18, 2019 Order, Dkt. 31, the Court also denied Asensio's subsequent requests that the Court vacate its prior orders and that the undersigned recuse herself.

On February 1 st and again on February 13, 2019, the Court denied Asensio's renewed requests for recusal. *See* Dkts. 40, 42. The Court then granted Asensio's first request for an extension to file his opposition to Defendants' motions to dismiss. Dkt. 52. On April 17 th, Asensio filed a complaint

against Chief Justice Roberts of the United States Supreme Court, Chief Judge Katzmann of the United States Court of Appeals for the Second Circuit, and the undersigned, based in part on this Court's management of the case. *See* Dkt. 53-1. On the same day, Asensio again requested that the undersigned recuse herself. *See id.* The Court denied the request in its April 18, 2019 Order. Dkt. 55. As explained in that Order, it is well-established that "a judge is not required to recuse ... herself simply because a litigant before the judge has filed suit or made a complaint against ... her." *Jenkins v. Sladkus*, No. 04 Civ. 1595(LAK), 2004 WL 1238360, at \*1 (S.D.N.Y. June 3, 2004). Otherwise, litigants would be given carte-blanche to engage in endless "judge-shopping." *See Salten v. Cty. of Suffolk*, No. 08-CV-5294 (SJF)(AKT), 2012 WL 3260266, at \*2 (E.D.N.Y. Aug. 6, 2012). The Court subsequently granted Asensio's multiple requests for additional time to oppose Defendants' motions. *See* Dkts. 56, 58, 72.

On June 5, 2019, nearly two weeks before the State Defendants had filed their June 17 th reply to Asensio's opposition, he requested leave to file a sur-reply. Despite the Court not having ruled on the request, Asensio filed a sur-reply on June 17 th. On July 8 th, the Court declined to exercise ancillary jurisdiction over a separate fee dispute that had arisen between Defendant Bosak, who is now proceeding *pro se*, and her former counsel. On July 9 th, July 18 th, August 20 th, August 21 st, and September 11 th, Asensio filed additional letters requesting that the undersigned recuse herself.

### LEGAL STANDARDS

**\*5** "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint ... as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as

**Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)**

2019 WL 4392743

true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.*

An action is frivolous when either: "(1) the factual contentions are clearly baseless ...; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible").

## DISCUSSION

### I. Claims on Behalf of E.A.

As a threshold matter, Asensio's *pro se* status precludes him from asserting claims on behalf of E.A. in this action. "[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998). It follows that a non-attorney parent cannot bring a *pro se* case on behalf of his or her child in federal court. *See, e.g.*, *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005). Given that Asensio does not purport to be an attorney, his claims asserted on behalf of E.A. are dismissed without prejudice.

### II. Claims under 18 U.S.C. § 241

Asensio's first cause of action is brought against Defendants DiFiore, Fasanya, and Bosak, pursuant to 18 U.S.C. § 241, for allegedly conspiring to violate his "civil and due process rights[.]" Compl. at 29. But "nothing in the language or structure of § 241 suggests that Congress intended to create a private right of action under that section[.]" *Storm-ggink v. Gottfried*, 409 Fed. App'x 426, 427 (2d Cir. 2011) (citing cases). Indeed, 18 U.S.C. § 241 is a criminal statute and a private citizen, like Asensio, "lacks a judicially cognizable

interest in the prosecution or nonprosecution of another." *Leeke v. Timmerman*, 454 U.S. 83, 85–86 (1981). Asensio's claims under 18 U.S.C. § 241 are, therefore, dismissed for lack of standing. *See id.*

### III. Claims under 42 U.S.C. §§ 1983, 1985, 1986

Asensio's remaining claims seek compensatory and punitive damages from all Defendants for alleged violations of 42 U.S.C. §§ 1983, 1985, and 1986. With respect to the State Defendants, it is not clear to the Court whether Asensio intends to bring these claims against them in their official, as opposed to individual, capacities. On the one hand, the conduct for which Asensio seeks to hold them liable largely (if not entirely) occurred in the context of their official functions; on the other, Asensio is seeking punitive damages from each of them which are only available in individual capacity suits, and Defendants have raised both official and individual capacity defenses. *See Rodriguez v. Phillips*, 66 F.3d 470, 473 (2d Cir. 1995) (concluding that defendant officials were being sued in their individual capacities because the complaint sought punitive damages, "which are not available against the state," and the defendants had asserted a qualified immunity defense which is "unavailable in an [an] official capacity suit[ ]"). Out of deference to Asensio's *pro se* status, the Court will construe his claims as being asserted against Defendants in both their official and individual capacities. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529–30 (2d Cir. 1993). In any event, Asensio's claims must be dismissed in their entirety.

### A. Official Capacity Claims

**\*6** "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). The immunity "extends beyond the states themselves to state agents ... that are, effectively, arms of a state." *Id.* Such state agents include the New York Attorney General, the New York Governor, and New York state judges when acting in their official capacities. *See Abdullah-Sadiq v. Behringer*, No. 17-CV-0270(TPG), 2017 WL 5508478, at \*2 (S.D.N.Y. Feb. 27, 2017); *New York State Court Clerks Ass'n. v. Unified Court System of the State of New York*, 25 F. Supp. 3d 459, 467 (S.D.N.Y. 2014).

Here, New York has not waived its Eleventh Amendment immunity to being sued in federal court. Nor did Congress abrogate the state's immunity in enacting 42 U.S.C. §§ 1983,

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)

Case 1:22-cv-00581-DNH-TWD    Document 4    Filed 06/29/22    Page 49 of 175

2019 WL 4392743

1985, or 1986. *See Gasparik v. Stony Brook Univ.*, No. CV-05-3817(SJF)(ARL), 2007 WL 2026612, at *4 (E.D.N.Y. July 9, 2007) (citing cases), *appeal dismissed*, 296 Fed. App'x 151 (2d Cir. 2008). And Asensio's allegations against the State Defendants concern conduct occurring in their official capacities—namely, the entry of judicial orders by Judge Fasanya (and at least one by Judge DiFiore), as well as the alleged failure of the Attorney General and Governor "to abstain[ ] from exercising the inherent duties of their official positions." Compl. at 2. Accordingly, Asensio's official capacity claims against the State Defendants are barred by the Eleventh Amendment and are dismissed for lack of subject matter jurisdiction. *See Graziosac v. New York City*, 29 Fed. App'x 691, 693 (2d Cir. 2002).

**B. Individual Capacity Claims**

To the extent Asensio's claims against the State Defendants under 42 U.S.C. §§ 1983, 1985, and 1986 can be construed to be seeking damages from them in their individual capacities, those claims also fail. The claims against Judges DiFiore and Fasanya are barred by the doctrine of judicial immunity; the claims against former Attorney General Underwood are barred by the doctrine of prosecutorial immunity; and the claims against Governor Cuomo are dismissed as frivolous or, alternatively, under Rule 12(b)(6).

**1. Chief Judge DiFiore and Judge Fasanya**

"As early as 1872, the Supreme Court recognized that it was a general principle of the highest importance ... that a judicial officer, in exercising the authority vested in him, should be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978). Were judges required to face the fear "that unsatisfied litigants may hound [them] with litigation charging malice or corruption[,]" this would result in "intimidation" rather than "principled and fearless decisionmaking," *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Thus, for decades courts have held that judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *See Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). Judicial immunity can only be overcome when a judge takes actions "in the complete absence of all jurisdiction" or when the judge's actions are "nonjudicial." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). When a judge, however, has taken "the challenged action [when] he had jurisdiction over the subject matter before

him," and the "action in question" was "judicial in nature," he —or she—is immune from liability for damages. *Huminski v. Corsones*, 396 F.3d 53, 74–75 (2d Cir. 2005).

**\*7** That is the case here. Asensio's allegations against Judge Fasanya are predicated on his conduct at the May 15, 2014 proceeding over which he presided, his appointment of E.A.'s attorney and social worker, his January 15, 2016 suspension order, and his orders requiring Asensio to pay the legal fees of E.A.'s and Bosak's attorneys. Despite Asensio's repeated assertions that Judge Fasanya "fabricated" these proceedings and orders, Asensio makes no plausible argument that Judge Fasanya lacked subject matter jurisdiction over Asensio's petitions against Bosak. In particular, Judge Fasanya clearly had jurisdiction to issue the January 15, 2016 suspension order, *see* N.Y. Fam. Ct. Act § 651(b), N.Y. Dom. Rel. Law § 240; to appoint E.A.'s attorney and social worker, *see id.* §§ 241–249, N.Y. Fam. Ct. Act § 651; and to order Asensio to pay E.A.'s and Bosak's attorneys' fees, *see* N.Y. Dom. Rel. Law § 237.

Asensio similarly fails to adequately allege that these acts were not judicial in nature. An act is judicial in nature when "it is a function normally performed by a judge," and when the parties "dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. Each of Judge Fasanya's orders that Asensio addresses in his Complaint are the result of quintessential judicial acts—namely, the application of law and the exercise of judgment. *See Tarter v. State*, 68 N.Y.2d 511, 518–19 (1986). [3] The same goes for Asensio's allegations against Judge DiFiore with respect to her December 5, 2016 Order purportedly prohibiting him from filing further petitions against Judge Fasanya. Likewise, the allegations regarding Judge Fasanya's conduct over proceedings where Asensio appeared constitute judicial acts. *See Buhannic v. Friedman*, No. 18-CV-5729(RA), 2019 WL 481732, at *5 (S.D.N.Y. Feb. 7, 2019) (citing cases recognizing that presiding over hearings is a judicial act), *appeal dismissed*, No. 19-365, 2019 WL 3774562 (2d Cir. 2019). This result remains the same even in the face of Asensio's allegations that Judge Fasanya, Bosak, her counsel, and E.A.'s counsel colluded during the custody proceedings because "[t]he cloak of immunity is not pierced by allegations of bad faith or malice." *Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir. 1997). Asensio's claims against Judge Fasanya are thus dismissed as barred by the doctrine of judicial immunity, as are Asensio's claims against Judge DiFiore. [4]

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 50 of 175

Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)

2019 WL 4392743

3      The Second Circuit also looks to state law to determine whether an act is judicial in nature. *See Huminski*, 396 F.3d at 76.

4      Even assuming, *arguendo*, that Judge DiFiore's purported "sanctioning of," or "failure to supervise," Judge Fasanya's allegedly unlawful conduct could be considered administrative as opposed to judicial acts, those allegations are frivolous. They also fail to state a claim for relief under § 1983, because (1) Asensio has not plausibly alleged that Judge Fasanya acted unlawfully in the first place, for the reasons explained above, and (2) "[a] defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983." *LaMagna v. Brown*, 474 Fed. App'x 788, 789 (2d Cir. 2012) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam)).

Moreover, Asensio's allegations that DiFiore and Fasanya conspired with Bosak—to the extent such conduct could be considered "non-judicial" in nature and thus outside the scope of judicial immunity—do not suffice to state a conspiracy claim under § 1985(2) or § 1985(3). [5] *See L.K. v. Sewanhaka Central High School Dist.*, 641 Fed. App'x 56, 59 (2d Cir. 2016). To support a claim for a conspiracy under section § 1985, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Rodriguez v. City of New York*, No. 05 Civ. 10682(PKC)(FM), 2008 WL 4410089, at *15 (S.D.N.Y. Sept. 25, 2008). Asensio's conclusory and vague allegations that Judge DiFiore "direct[ed] the entry of 63 false judgments" in state actions that he filed against the Chief Judge based on her alleged "cooperation" with Fasanya and Bosak—and that Judge DiFiore and Fasanya conspired to "maliciously fabricat[e] processes to prevent the Plaintiff from having contact with his daughter," Compl. at 27—lack the requisite factual basis to state a § 1985 claim. *See Dubois v. City of White Plains*, No. 16-cv-0771 (NSR), 2018 WL 6025868, at *5 (S.D.N.Y. Nov. 16, 2018). Finally, because "a § 1986 claim must be predicated on a valid § 1985 claim," Asensio's § 1986 claim against DiFiore and Fasanya also fails. *Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000). Thus, to the extent they are not barred by judicial immunity, Asensio's §§ 1985 and 1986 claims against the two judges are dismissed as frivolous or, alternatively, under Rule 12(b)(6).

5      Although Asensio does not specify what provision of § 1985 he seeks to invoke, the Court does not construe his Complaint as asserting a claim under § 1985(1), because that provision "only applies to conspiracies intended to interfere with ... federal officers, not state officers." *Cobbs v. City of Newburgh – City Council*, No. 09 Civ. 3800 (LMS), 2012 WL 12884367, at *9 (S.D.N.Y. Nov. 19, 2012), *aff'd*, 546 Fed. App'x 34 (2d Cir. 2013).

### 2. Former Attorney General Underwood

**\*8** It is well-settled that "prosecutors are entitled to absolute immunity when accused of a failure to investigate." *Brady v. Schneiderman*, No. 15-CV-9141 (RA), 2016 WL 3906737, at *3 n.1 (S.D.N.Y. July 13, 2016) (citing cases), *aff'd*, 714 Fed. App'x 60 (2d Cir. 2018). The claims against Underwood are exclusively premised on such accusations, specifically, her asserted decision to "abstain[ ] from exercising the inherent duties of [her] official positions ... to prosecute Defendant DiFiore for her malicious actions against ... Plaintiff," and thereby "permit[ting] other judges and non-judicial personnel ... to deny the Plaintiff process." Compl. at 21, 57. Underwood is thus immune from Asensio's claims arising from those decisions, which are, accordingly, dismissed.

### 3. Governor Cuomo

Asensio's allegations against Cuomo also fail state a claim for relief under 42 U.S.C. §§ 1983, 1985, and 1986. Asensio alleges that Cuomo ignored twelve of Asensio's complaints concerning Judge DiFiore's December 5, 2016 Order; and, as with Underwood, that he abstained "from exercising the inherent duties of [his] official positions," and cooperated with Judge DiFiore to permit other judges to "commit acts of wrongdoing" against Asensio. These allegations "rise to the level of the irrational" and plainly fall short of stating a claim for a deprivation of Asensio's constitutional rights. *Abdullah-Sadiq*, 2017 WL 5508478, at *2." The claims against Cuomo are thus dismissed as frivolous or, alternatively, under Rule 12(b)(6).

### C. Claims Against Emilie Bosak

Finally, Asensio's claims against Defendant Bosak similarly fail. To state a claim under 42 U.S.C. § 1983, a plaintiff must first show that "the defendant was a state actor, i.e., acting

**Asensio v. DiFiore, Not Reported in Fed. Supp. (2019)**

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 51 of 175

2019 WL 4392743

under color of state law," when she committed the alleged constitutional violation. *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015). The actions of a private citizen, like Bosak, may constitute state action only when "there is such a close nexus between the State and the challenged action that ... private behavior may be fairly treated as that of the State itself." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 188 (2d Cir. 2009). This nexus may exist where, as Asensio alleges, the private actor "conspire[d] ... with a state official to violate the plaintiff's constitutional rights." *Osipova v. Dinkins*, 907 F. Supp. 94, 96 (S.D.N.Y. 1995).

But to state a claim against a private party on a such a § 1983 conspiracy theory, a plaintiff must show "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambrello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). Asensio's conclusory allegations that Bosak engaged in "collusion, conspiracy, and cooperation" with Judge Fasanya to "fabricate charges and evidence against [him]," so as to have Ms. Restivo and Mr. Spitzer appointed as E.A.'s attorney and social worker, are plainly insufficient to support a finding that Bosak has acted under "color of state law." *See Jae Soog Lee v. Law Office of Kim & Bae, PC*, 530 Fed. App'x 9, 10 (2d Cir. 2013). For that same reason, any allegations that Bosak conspired with any of the State Defendants to violate Asensio's constitutional rights cannot state a claim under § 1985, and Asensio's § 1986 claim against Bosak fails as a result. *See Brown*, 221 F.3d at 341. Asensio's claims against Bosak are, therefore, dismissed.

## IV. Recusal

As previously noted, the Court has denied Plaintiff's multiple prior requests for the undersigned's recusal. *See* Jan. 18, 2019 Order (Dkt. 31); Feb. 01, 2019 Order (Dkt. 40); Feb. 13, 2019 Order (Dkt. 42); April 18, 2019 Order (Dkt. 55). Because Plaintiff has identified no new legal or factual basis warranting recusal in his renewed recusal requests of June

12th, July 9th, July 18th, August 20th, August 21st, and September 11th (*see* Dkts. 94, 102, 103, 106, 107, 108) those requests are also denied.

## V. Leave to Amend

**\*9** "District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not warranted where it would be futile." *Boone v. Codispoti & Assocs. P.C.*, No. 15-CV-1391 (LGS), 2015 WL 5853843, at \*5 (S.D.N.Y. Oct. 7, 2015) (citing *Hill*, 657 F.3d at 122–24). Where, as here, "[t]he problem with [a plaintiff's] causes of action is substantive," such that "better pleading will not cure it," amendment is futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Leave to replead is thus denied. [6]

[6]   Defendants also moved to dismiss the Complaint on grounds that the claims were barred by the domestic relations exception, the doctrines of *res judicata* and *Rooker-Feldman*, and that some claims were barred by the statute of limitations as well. In light of the Court's dismissal of Asensio's claims on the grounds cited above, the Court need not address Defendants' alternative grounds for dismissal.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED, and Plaintiff's requests for the undersigned's recusal are DENIED. The Clerk of Court is directed to terminate all pending motions, to close this case, and to mail a copy of this Order to Plaintiff and Defendant Bosak.

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2019 WL 4392743

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 3316099
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Michael D. MARKHAM, Plaintiff,

v.

Matthew A. ROSENBAUM, [1] et al., Defendants.

[1]    Incorrectly sued as Mathew A. Rosenbaum.

Case # 20-cv-6039-FPG
|
Signed 06/18/2020

## Attorneys and Law Firms

Michael D. Markham, Lahaina, HI, pro se.

Gary M. Levine, New York State Office of the Attorney General, Rochester, NY, for Defendants Mathew A. Rosenbaum, Cynthia L. Snodgrass.

Adam M. Clark, Monroe County Department of Law, Rochester, NY, for Defendant Adam J. Bello.

Timothy E. Ingersoll, Fero & Ingersoll, LLP, Rochester, NY, for Defendant Timothy E. Ingersoll.

Matthew Tracy, Winget, Spadafora & Schwartzberg, LLP, New York, NY, for Defendant Maureen A. Pineau.

Nicholas B. Davis, Davidson Fink LLP, Rochester, NY, for Defendant Gregory J. Mott.

Devin Lawton Palmer, Boylan Code LLP, Rochester, NY, for Defendants Sharon Kelly Sayers, Jennifer Speller.

Karen Guyder Felter, Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, NY, for Defendant David Coron.

Diane R. DeLong, Rochester, NY, pro se.

## DECISION AND ORDER

FRANK P. GERACI, JR., Chief Judge

## INTRODUCTION

**\*1**  On January 17, 2020, *pro se* Plaintiff Michael Markham commenced this action pursuant to 42 U.S.C. § 1983 [2] against New York State Supreme Court Justice Matthew A. Rosenbaum, Acting Supreme Court Justice Richard A. Dollinger, Monroe County Clerk Adam J. Bello, Plaintiff's ex-wife Diane R. DeLong, her former attorneys Timothy E. Ingersoll, Marueen A. Pineau, and Jennifer Speller, Plaintiff's former attorneys Sharon Kelly Sayers and Gregory J. Mott, court referee Cynthia L. Snodgrass, and court-assigned psychologist David Coron (collectively, "Defendants") for various due process violations arising out of his lengthy and contentious divorce and custody litigation. [3] ECF No. 1.

[2]    Plaintiff also purported to bring claims under 18 U.S.C. § 241 and 18 U.S.C. § 242, which are are criminal statutes. Because there is no private right of action for either statute, *Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006), those claims are dismissed.

[3]    Plaintiff brought a similar action against other individuals related to his divorce proceedings in December 2019. Case No. 19-cv-6930. That case is also pending before the Court.

Before the Court are Defendants' motions to dismiss, ECF Nos. 5, 11, 12, 14, 16, 18, 21, 33, and Plaintiff's motions for miscellaneous relief, ECF Nos. 31, 34, 50.

## BACKGROUND

Plaintiff's amended complaint does not contain a cogent recitation of the facts giving rise to his legal claims. Instead, he attaches over 100 pages of exhibits to fill in the blanks. The facts described below are derived from those exhibits.

The exhibits reveal that Plaintiff and DeLong were involved in divorce proceedings before New York Supreme Court Justice Kenneth Fisher beginning in 2015. [4]  Plaintiff alleges that during those proceedings, Justice Fisher and other individuals involved with the case fabricated a hearing and trial that never occurred. *See* ECF No. 30 at 42, 80 (in which Plaintiff's outgoing attorney Mott indicates to incoming attorney Sayers that "Fisher says he held a Lincoln Hearing. He refers to 'Mother's testimony, but there is no transcript in existence and no reference to a default hearing or notice of default hearing. In talking to [Bezinque] he admitted that there was no hearing"). During these proceedings and in response

to a custody dispute, Plaintiff apparently requested that Dr. Coron conduct a forensic custodial evaluation but Plaintiff did not retain Dr. Coron and the evaluation did not occur. *Id.* at 85.

4       According to Plaintiff, after he fired his own attorney, Justice Fisher precluded Plaintiff "from offering any proof on any disputed issue of fact" with "full knowledge that [Plaintiff] was now without representation." *Id.* at 62. The exhibits Plaintiff attaches to the amended complaint also indicate that Justice Fisher jailed Plaintiff for contempt. *Id.*

On December 20, 2016, following Plaintiff's default, Justice Fisher issued a decision and order granting divorce and awarding custody. *Id.* at 115-32. In September 2017, the case was transferred to the late Justice Elma A. Bellini, who vacated that judgment of divorce. *Id.* at 71.

**\*2**  The matter was then transferred to Justice Dollinger. Plaintiff, represented by Attorney Mott,[5] made an application to vacate the previous proceedings. On October 31, 2017, despite that the judgment had been vacated by Justice Bellini, Justice Dollinger granted the application to vacate the previously-granted divorce and appointed Lisa Morris, Esq. as attorney for the children. *Id.* at 53-55. At the time, Attorney Ingersoll represented DeLong, Plaintiff's ex-wife.

5       Sayers later assumed Plaintiff's representation. *See* ECF No. 30 at 79.

On September 16, 2018, Plaintiff asked Justice Rosenbaum to remove Justice Dollinger from presiding over Plaintiff's divorce proceedings, arguing that an "overwhelming conflict of interest" existed due to "the Dollinger family's decades long relationship with [DeLong]." *Id.* at 46. Two days later, Plaintiff wrote to Justice Dollinger, seeking his recusal because DeLong is a "decades long friend of your brother Andrew and is a lifelong friend of your sister-in-law Virginia Blackwell," and because Plaintiff and DeLong had been the overnight guest at the home of Justice Dollinger's mother. *Id.* at 49. Plaintiff also indicated that DeLong had contacted Justice Dollinger before regarding a dispute when Justice Dollinger was a town court judge. *Id.* According to the amended complaint, Justice Dollinger declined to recuse himself. *Id.* at 37-38.

In a letter dated September 21, 2018, Justice Rosenbaum explained to Plaintiff that he did not have authority to remove

Justice Dollinger from the case and suggested that, if Plaintiff felt there was a conflict of interest, he should seek recusal directly from Justice Dollinger. *Id.* at 47.

At Plaintiff's request, Justice Dollinger set a show cause hearing for the end of October 2018. Plaintiff sought the disqualification of the new attorney for the child, Edward Riley and Plaintiff's own attorneys, Mott and Sayers, and again requested the recusal of Justice Dollinger. *Id.* at 50-51.

Plaintiff reported the alleged misconduct of Justices Fisher, Dollinger, and Rosenbaum and many of the attorneys involved in the divorce proceedings—including DeLong's first attorney Mark Bezinque—numerous times to state and federal agencies. *Id.* at 57-66. While these agencies acknowledged the complaints, they do not appear to have taken any action.

Prior to trial in December 2018, Plaintiff, then proceeding *pro se*, and DeLong, represented by Attorney Pineau, together with the children's attorney, Riley, reached a settlement in open court resolving the issues between them. *Id.* at 71. On April 3, 2019, Justice Dollinger issued a "Judgment of Absolute Divorce," which incorporated the parties' stipulated terms and which was filed with the Monroe County Clerk. ECF No. 30 at 68-77.

Plaintiff filed his complaint on January 17, 2020. ECF No. 1. On March 9, 2020, Plaintiff filed an amended complaint, which is the same as the original complaint in all respects except for the removal of Plaintiff's request for "injunctive relief in the form of referral for criminal prosecution and parental rights." ECF No. 30 at 1. Plaintiff now seeks monetary damages in the amount over $12 million. *Id.* at 7. Although Plaintiff's time to amend the complaint as of right expired with respect to some Defendants, Fed. R. Civ. P. 15, because the complaint and amended complaint are virtually identical and because no Defendant has made any claim to the contrary, ECF No. 32, the Court will accept the amended complaint as the operative pleading.

**\*3**  Plaintiff asserts that Defendants "fabricat[ed] evidence including Lincoln Hearings and an entire Trial that the facts show never actually occurred," and that some Defendants "actively and knowingly conspired to cover up these crimes to protect their legal colleagues and associates and willfully deprived the Plaintiff" of due process. ECF No. 30 at 36. According to Plaintiff, Defendants conspired to falsely claim that New York courts had jurisdiction over the custody

disputes, despite the fact that Plaintiff's minor children had lived in Hawaii—not New York—"in the years immediately preceding the commencement of divorce litigation in New York State." *Id.*

Before Plaintiff filed his amended complaint, Defendants, represented by various counsel, moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [6] ECF Nos. 5, 11, 12, 14, 16, 18, 21, 33. Having accepted the amended complaint as the operative pleading, the Court will analyze these motions to dismiss in light of the amended complaint. The Court will then address Plaintiff's motions for miscellaneous relief. ECF Nos. 31, 34, 50.

[6]     This case has been the subject of extensive litigation. On February 6, 2020, the Court denied Plaintiff's motion to proceed *in forma pauperis*, ECF No. 2, and Plaintiff's motion to appoint counsel, ECF No. 3. ECF No. 6. The Court denied Plaintiff's motion for a preliminary injunction against some Defendants, ECF No. 9, on February 18, 2020. ECF No. 17. Plaintiff sought entry of default against DeLong, ECF Nos. 24, 25, and against Justice Dollinger, ECF No. 29. The Clerk of Court declined to enter default. Plaintiff also requested a change in venue, ECF No. 44, which the Court also denied. ECF No. 47.

## LEGAL STANDARD

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Bryant v. Roosa*, No. 15-CV-440-FPG, 2016 WL 320990, at *2 (W.D.N.Y. Jan. 25, 2016) (quoting another source). A claim "is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving such a motion, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting another source). The Court may refer to evidence outside of the pleadings in determining a Rule 12(b)(1) motion. *Rojas v.*

*Roman Catholic Diocese of Rochester*, 557 F. Supp. 2d 387, 393 (W.D.N.Y. 2008).

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (quoting another source), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**\*4**  "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

## DISCUSSION

### I. Motions to Dismiss

Defendants argue that the amended complaint must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Because the Court is required to address whether it has subject matter before proceeding to the merits, the Court addresses the Rule 12(b)(1) arguments first.

### A. Motions to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1) [7]

[7]     At the outset, the Court notes that despite Plaintiff's assertion that the Court has jurisdiction over this

case under both federal question and diversity jurisdiction, only federal question applies because Plaintiff's claims appear to arise exclusively out of alleged federal constitutional violations under 42 U.S.C. § 1983.

Defendants advance a number of jurisdictional arguments to support their contention that the claims against them should be dismissed under Rule 12(b)(1). They argue that the Court does not have subject matter jurisdiction over Plaintiff's claims under (1) the *Rooker-Feldman* doctrine, (2) the domestic relations exception, and (3) *Younger* abstention.

First, Defendants suggest that the claims against them are precluded by the *Rooker-Feldman* doctrine, which bars cases brought by losing parties in state court actions complaining of injuries caused by state court judgments. *Wik v. City of Rochester*, 632 F. App'x 661, 662 (2d Cir. 2015) (summary order). The Court agrees in part and disagrees in part.

The *Rooker-Feldman* doctrine precludes a district court from adjudicating "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "If the injury alleged resulted from the state court judgment itself, the *Rooker-Feldman* doctrine dictates that the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional." *Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 702 (7th Cir. 1998) (footnotes and citations omitted); *see also id.* at 703 ("Injury due to a state court decision remains the essential touchstone in determining the applicability of the *Rooker-Feldman* doctrine.").

Based on *Exxon Mobil*, the Second Circuit distilled four requirements for the application of the *Rooker-Feldman* doctrine, two of which may be described as procedural and two which may be deemed substantive. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* (citation, footnote, internal quotation marks and brackets omitted).

**\*5** Here, the first and fourth elements are met but the second and third are a closer call. With respect to the first element, Plaintiff lost in state court when Justice Dollinger issued a Judgment of Divorce against him, even though it was the product of a stipulation. *Wittich v. Wittich*, No. 06CV1635(JFB)(WDW), 2006 WL 3437407, at \*3 (E.D.N.Y. Nov. 29, 2006) (deeming the plaintiff a losing party where he sought to overturn a settlement on the basis that it violated his rights). With respect to the fourth element, the state court judgment was entered months before Plaintiff filed this lawsuit.

It is unclear, however, that Plaintiff's injuries were *caused* by the state court judgment. To be sure, Plaintiff challenges conduct that occurred during the state court proceedings and the challenged conduct may have contributed to or culminated in the state court judgment. But it is not clear that Plaintiff has invited the district court to review and reject the state court judgment itself. Initially, Plaintiff's complaint sought injunctive relief vacating the judgment of divorce. Defendants moved to dismiss based on that complaint. Without question, such relief would have required the Court to review and reject the state court's conclusions. In response to Defendants' motions, however, Plaintiff removed his request for injunctive relief, leaving only his request for money damages for alleged constitutional violations, such as conspiring to conceal certain allegedly fabricated divorce proceedings. *See McKnight v. Middleton*, 699 F. Supp. 2d 507, 515 (E.D.N.Y. 2010) (holding that Second Circuit precedent "suggest[s] that a plaintiff's claims seeking only monetary damages or prospective-only relief against court procedures rather than modification of a family court's temporary custody or other orders would not run afoul of the *Rooker-Feldman* doctrine"); *Dowlah v. Dowlah,* No. 09 Civ. 2020, 2010 WL 889292, at \*2 (E.D.N.Y. Mar. 10, 2010) (same). He avers that his claims are not matrimonial in nature; they are based solely on "a deprivation of his Constitutional rights alone." ECF No. 31 at 6. While evaluating these allegations may require examination of events that occurred during the proceedings, it is not clear that the Court here would necessarily be required to review and reject the state court judgment itself. *See McKnight*, 699 F. Supp. 2d at 515 ("The doctrine only applies where the requested federal court remedy of an alleged injury caused by a state court judgment would require overturning or modifying that state court judgment." (internal quotation marks omitted)).

Therefore, it does not appear that the *Rooker-Feldman* doctrine bars all of Plaintiff's claims. Still, the amended

complaint does seem to challenge Justice Dollinger's failure to recuse himself and his use of previous orders "as a substantive basis for all of his rulings going forward," ECF No. 30 at 38, as well as an order exerting jurisdiction over Plaintiff and the children, *id.* at 43. To the extent Plaintiff asks the Court to review and reject any previous state court judgment, the *Rooker-Feldman* doctrine would indeed divest the Court of subject matter jurisdiction.

Second, Defendants argue that the domestic relations exception divests the Court of subject matter jurisdiction because this case involves divorce and child custody disputes that were the subject of state court litigation. *See* ECF No. 12-2 at 4-5. The Court disagrees.

The Second Circuit has held that the domestic relations exception only applies to cases whose basis for jurisdiction is diversity, not federal question. *Deem v. DiMella-Deem*, 941 F.3d 618, 623 (2d Cir. 2019) ("[T]he domestic relations exception clearly does not apply to this case because it is before this Court on federal question jurisdiction, not diversity." (quoting another source)). Because this case is premised on a federal question arising out of 42 U.S.C. § 1983, the domestic relations *exception* does not divest the Court of subject matter jurisdiction.

**\*6** However, in *Deem*, the Second Circuit went on to conclude that the domestic relations *abstention* doctrine may allow a federal court to decline to exercise subject matter jurisdiction over claims that are "on the verge of being matrimonial in nature" where "there is no obstacle to their full and fair determination in state courts." 941 F.3d at 623 (quoting *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990)). Because, as explained below, the Court concludes that Plaintiff's amended complaint has failed to state a claim, it will not reach whether it should abstain from exercising subject matter jurisdiction due to the domestic relations abstention doctrine.

Third, some Defendants argue that the Court should abstain under *Younger v. Harris*, 410 U.S. 37 (1971), which "generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002). The Court acknowledges that, in his motion for a preliminary injunction, ECF No. 9 at 1, Plaintiff indicated that some litigation was ongoing in Family Court or New York Supreme Court. Although it appears that such litigation

*may* be related to the pending proceeding—especially since it appears to involve many of the same people—the Court is not persuaded based on the pleadings that exercising jurisdiction over this case would necessarily call into question ongoing state proceedings. However, to the extent any of Plaintiff's claims in this case *do* bear on an ongoing state proceeding, the Court will abstain from hearing them.

For these reasons, the Defendants' motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) are GRANTED to the extent the amended complaint (1) bears on an ongoing state proceeding and (2) requires the Court to review and reject a state court judgment. In all other respects, Defendants' motions to dismiss for lack of subject matter jurisdiction are DENIED.

## B. Motions to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

Defendants also move to dismiss the claims against them for failure to state a claim pursuant to Rule 12(b)(6). The allegations against Defendants are similar, but because they differ slightly, the Court will address each Defendant separately. However, the Court concludes that the claims against each Defendant should be dismissed.

### i. Timothy E. Ingersoll (ECF No. 5)

Plaintiff alleges that Ingersoll—Plaintiff's ex-wife's second attorney—conspired to deprive Plaintiff of due process by, among other things, conspiring to conceal the fabricated trial and hearings and "hid[ing] the crimes his legal colleagues committed under the Kenneth Fisher Court." ECF No. 30 at 38.

To support a federal claim for deprivation of a constitutional right under 42 U.S.C. § 1983, "the conduct at issue must have been committed by a person acting under color of state law." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). A private person is generally not considered a state actor unless: (1) "the entity acts pursuant to the coercive power of the state or is controlled by the state"; (2) the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies"; or (3) "the entity has been delegated a public function by the state." *Justice v. King*, No.

08-CV-6417-FPG, 2015 WL 1433303, at *15 (W.D.N.Y. Mar. 27, 2015), *aff'd*, 628 F. App'x 58 (2d Cir. 2016).

**\*7** Here, however, Ingersoll is *not* a state actor. *Agron v. Douglas W. Dunham, Esq & Assocs.*, No. 02 CIV. 10071 (LAP), 2004 WL 691682, at *3 (S.D.N.Y. Mar. 31, 2004) ("It is well-established that as a matter of law a private attorney is not a state actor."). Plaintiff does not set forth any argument that Ingersoll should be converted into one using the three tests described above. Rather, Plaintiff argues that Ingersoll conspired with state actors to deprive him of his constitutional rights.

"[T]o demonstrate that a private party defendant was a state actor engaged in a conspiracy with other state actors under § 1983, a plaintiff must allege (1) an agreement between the private party and state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." *Young v. Suffolk Cty.*, 705 F. Supp. 2d 183, 197 (E.D.N.Y. 2010). "A plaintiff is not required to list the place and date of defendants' meetings and the summary of their conversations when he pleads conspiracy, ... but the pleadings must present facts tending to show agreement and concerted action." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see Young*, 705 F. Supp. 2d at 197 ("Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed.").

Plaintiff's allegations are vague and conclusory. Far from including any facts regarding Ingersoll's personal involvement in any conspiracy, Plaintiff merely alleges that Ingersoll "conspired to keep" quiet that a trial and facts had been fabricated. That is not enough to survive a motion to dismiss. *See Robbins v. Cloutier*, 121 F. App'x 423, 425 (2d Cir. 2005) (dismissing a § 1983 conspiracy claim as insufficient where plaintiff merely alleged that defendants "acted in a concerted effort" to agree not to hire plaintiff and to inform others not to hire plaintiff). Nor has Plaintiff established any overt act on the part of Ingersoll to give rise to § 1983 liability.

Ingersoll's motion to dismiss for failure to state a claim, ECF No. 5, is therefore GRANTED.

### ii. Maureen Pineau (ECF No. 11)

Plaintiff alleges that Pineau, DeLong's third attorney, "conspired to hide the crimes of the Fisher Court including the fabricated trial, the falsified hearings, and the destroyed records and thereby willfully and effectively deprived the Plaintiff of his Constitutional right to due process." ECF No. 30 at 38. He indicates that Pineau attempted to defraud him and the state court "with her numerous false affirmations and submissions" to Justice Dollinger, including fraudulently conveying the terms of the parties' agreement, and conspired with Defendants to compel Justice Dollinger to issue a "Personal Jurisdiction order against Plaintiff." *Id.* at 39.

Like with respect to Ingersoll, Plaintiff has not met the factors required for treating the allegations against Pineau as those against a state actor or a private actor in a conspiracy with a state actor. Plaintiff's allegations are vague and conclusory and he fails to set forth any agreement or any overt, concerted acts to deprive him of his constitutional rights. Therefore, Pineau's motion to dismiss, ECF No. 11, is GRANTED.

### iii. Matthew A. Rosenbaum (ECF No. 12)

**\*8** Plaintiff claims that former Justice Rosenbaum knew of the alleged falsified hearings and trial but, as supervising judge, "still refused to do anything to ensure the integrity of the Court and the preservation of its records." ECF No. 30 at 37. He also alleges that Justice Rosenbaum's "willful participation in the conspiracy to falsify a trial and through his attempts to ignore and cover up the destruction of all of the Plaintiff's Court records has deprived the Plaintiff of his rights." *Id.*

Plaintiff's claims against Justice Rosenbaum must be dismissed because Justice Rosenbaum is entitled to absolute judicial immunity. Courts have routinely found state court judges immune from suit for similar conduct involving divorce and custody-related hearings and issues. *See Leathersich v. Cohen*, No. 18-CV-6363, 2018 WL 3537073, at *2 (W.D.N.Y. July 23, 2018) (concluding that monetary and injunctive relief was not available against state court judge overseeing divorce proceedings because judge's acts were "all quintessential judicial functions that, even where performed incompetently or for improper purposes, cannot form the basis of a suit against the judicial officer"), *appeal dismissed*, No. 18-2600, 2019 WL 994360 (2d Cir. Jan. 30,

2019); *see also Anthony Pappas for Cong. v. Lorintz*, No. CV184199JSAKT, 2019 WL 4396589, at *13 (E.D.N.Y. Aug. 2, 2019) ("As an initial matter, [plaintiff] cannot raise a viable claim against [the divorce judge] because as a judicial officer, [he] is shielded from suit by absolute judicial immunity."), *Report and Recommendation adopted sub nom.* 2019 WL 4396761 (E.D.N.Y. Aug. 26, 2019).

"Absolute judicial immunity is not overcome by allegations of bad faith or malice, nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his authority." *Renner v. Stanton*, No. 13-CV-01676 DLI, 2013 WL 1898389, at *3 (E.D.N.Y. May 7, 2013) (quoting another source). Rather, "[j]udicial immunity may be overcome only if the court is alleged to have taken nonjudicial actions or if the judicial actions taken were in the complete absence of all jurisdiction." *Id.*

Plaintiff makes no such claim here. Instead, Plaintiff challenges judicial decisions or inaction by Justice Rosenbaum in his role as supervising judge.[8] His allegations against Justice Rosenbaum are therefore barred by absolute judicial immunity. *See Levine v. Lawrence*, No. 03-CV-1694, 2005 WL 1412143, at *5 (E.D.N.Y. June 15, 2005) (neither claims that a judge's decision was "biased and prejudicial" nor that proceedings were conducted "in an irregular or erroneous manner" abrogates absolute immunity). Justice Rosenbaum's motion to dismiss, ECF No. 12, is therefore GRANTED.

[8]   It is unclear whether Justice Rosenbaum ever had any authority to act on or remedy Plaintiff's grievances.

#### iv. Cynthia L. Snodgrass (ECF No. 12)

Plaintiff alleges that Snodgrass, a court-appointed referee, refused to remove Riley as the attorney for Plaintiff's children, despite Plaintiff's claims to Snodgrass that Riley was "heavily conflicted." ECF No. 30 at 40.

Plaintiff's claims against Snodgrass must be dismissed for the same reasons the claims against Justice Rosenbaum must be dismissed. Snodgrass's failure or refusal to reassign Riley as attorney for the children was an act or omission firmly within her purview as a court appointed referee. *Renner*, 2013 WL 1898389, at *3 ("Furthermore, a court appointed referee is similarly entitled to absolute immunity for her official acts."); *Wilson v. Wilson–Polson*, 446 F. App'x 330, 331 (2d Cir.

2011) (allegations that a New York State Family Court referee violated plaintiff's procedural due process rights failed in light of the referee's absolute immunity to suit).

**\*9** Snodgrass's motion to dismiss, ECF No. 12, is GRANTED.

#### v. Gregory J. Mott (ECF No. 14)

Plaintiff alleges that his second attorney, Mott, "knowingly and willfully conspired with the other defendants to deprive Plaintiff to his Constitutional right to due process" by refusing to act on his client's behalf despite knowing that "the trial was fabricated, the hearings falsified, and the records were destroyed." ECF No. 30 at 39.

Mott's motion to dismiss must be granted for the same reasons articulated above with respect to Ingersoll and Pineau, *i.e.*, that Plaintiff fails to allege that Mott was a state actor or that his actions alone or in concert with others convert him into a state actor for purposes of 42 U.S.C. § 1983.

#### vi. David Coron (ECF No. 16)

Plaintiff alleges that Dr. Coron, a court-appointed psychologist, issued a parental evaluation portraying Plaintiff in a negative light and conspired with the court to conceal that the trial and hearings never happened. ECF No. 30 at 41.

Plaintiff fails to state a claim against Dr. Coron for the same reason he failed to state a claim against Ingersoll, Pineau, and Mott: Dr. Coron is not a state actor and the pleadings do not permit the Court to infer that he is. Plaintiff's claims that Dr. Coron participated in a conspiracy to deprive him of his constitutional rights are vague and entirely conclusory. Therefore, Dr. Coron's motion to dismiss, ECF No. 16, is GRANTED.

#### vii. Sharon Kelly Sayers (ECF No. 18)

Plaintiff alleges that his third attorney, Sayers, was a close personal friend of Lisa Morris, the first attorney for the children, and, like the other Defendants, "knowingly and willfully conspired" to deprive Plaintiff of his rights and cover up the "fabricated trial." ECF No. 30 at 40.

Sayers, too, is a private actor. *See Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd*, 485 F. App'x 500 (2d Cir. 2012) ("[A]lthough appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent."). Plaintiff's claim that Sayers participated in a conspiracy to deprive him of his constitutional rights is vague and entirely conclusory. For the same reasons stated above with respect to the other Defendants, Sayers's motion to dismiss, ECF No. 18, is GRANTED.

### viii. Jennifer Speller (ECF No. 18)

Plaintiff alleges that Speller, one of DeLong's former attorneys, "conspired to fabricate a trial, falsify the existence of Lincoln Hearings and cover up the destruction of court records to hide these crimes." ECF No. 30 at 42.

Plaintiff has not set forth any allegations that give rise to Speller's liability under 42 U.S.C. § 1983. Again, Plaintiff's claim that Speller participated in a conspiracy to deprive him of his constitutional rights is vague and conclusory. Speller's motion to dismiss, ECF No. 18, is GRANTED.

### ix. Adam J. Bello (ECF No. 33)

Plaintiff alleges that Bello, who was county clerk at the time, "attempted to cover up the crimes of officers of the court" and "further refused to act when notified of all the missing records and conspired in the cover up that followed." ECF No. 30 at 38.

 **\*10**  Bello initially filed an answer rather than a motion to dismiss. *See* ECF No. 15. However, Bello timely filed a motion to dismiss the amended complaint, which the Court accepts as the operative pleading. He argues that the amended complaint should be dismissed as to him because it does not name him as a defendant, does not set forth a clear and precise constitutional violation, and alleges no personal involvement on the part of Bello. ECF No. 33-2 at 2-4.

Bello is named in the amended complaint, and the amended complaint does indicate that Bello refused to remedy the loss of missing documents and helped to cover them up. *See* ECF No. 30 at 38. Yet it is not clear what the constitutional violation is and how it injured Plaintiff. The amended complaint therefore fails to allege any specific unconstitutional acts taken by Bello giving rise to liability under 42 U.S.C. § 1983. Bello's motion to dismiss, ECF No. 33, is therefore GRANTED.

### x. Richard A. Dollinger (ECF Nos. 12, 28)

Plaintiff complains of a number of acts and omissions by Justice Dollinger. He alleges that Justice Dollinger illegally signed an order to vacate when Justice Bellini refused to sign it, barred Plaintiff from the courtroom, refused to recuse himself despite being a "lifelong family friend of the Plaintiff's ex-wife," and refused to "vitiate or even acknowledge the crimes of the Fisher Court," all while using those "crimes" "as a substantive basis for all of his rulings going forward." ECF No. 30 at 27-28. He also claims that Justice Dollinger refused to order additional parental evaluations, never allowed Plaintiff to see the parental evaluation, and sealed the file to hide his collusion. ECF No. 30 at 41-42.

First, Justice Dollinger had not been served at the time Snodgrass and Justice Rosenbaum filed their motions to dismiss. However, the motion papers indicated that "[i]t is believed that once served[,] the Attorney General's Office would represent Supreme Court Justice Dollinger. Therefore, in the interest of judicial economy, this motion also includes arguments related to the Judge Dollinger [sic]." ECF No. 12-2 at 1. Justice Dollinger has since been served and the Attorney General's Office has again renewed its request that the arguments advanced in support of the motions to dismiss from the other judicial defendants be applied to Justice Dollinger.

Although, as discussed above, it is difficult to parse Plaintiff's allegations, to the extent he seeks to attack a state court judgment issued by Justice Dollinger, those claims are barred by the *Rooker-Feldman* doctrine. Even if they were not, and to the extent Plaintiff does not attack any such judgment, his claims must still be dismissed because, like Snodgrass and Justice Rosenbaum, Justice Dollinger is absolutely immune. Plaintiff does not allege that Justice Dollinger took any "nonjudicial actions" or any judicial actions "in the complete absence of all jurisdiction." *See Renner*, 2013 WL 1898389, at \*3 (quoting another source). Justice Dollinger's motion to dismiss, ECF Nos. 12, 28, is therefore GRANTED.

### xi. Diane DeLong (ECF No. 21)

Plaintiff alleges that his ex-wife, DeLong admitted "to conspiring with Mark Bezinque and Jennifer Speller to illegally seizing by secret wire transfer the Plaintiff's bank assets ... and then proceeded to divide them up in Mark Bezinque and Jennifer Speller's law office." ECF No. 30 at 42. He further claims that DeLong "conspired with Mark Bezinque and Jennifer Speller to defraud the Court about the Hawaii residency of the children prior to the commencement of the divorce proceedings." *Id.* at 43.

**\*11** As explained above, the Court will not entertain relitigating previous state court rulings. To the extent these allegations against DeLong do not require such review, they must be dismissed because DeLong is not a state actor and Plaintiff does not allege that DeLong entered into an agreement with a state actor or took overt and concerted steps to carry out the conspiracy. Plaintiff's claims are vague and conclusory. DeLong's letter request to dismiss, ECF No. 21, joining the arguments advanced by other Defendants, is therefore GRANTED.

## II. Motions for Miscellaneous Relief

### A. Plaintiff's Motion to Deny Motions to Dismiss (ECF No. 31)

As explained above, the Court grants Defendants' motions to dismiss. Therefore, Plaintiff's request that Court deny the motions to dismiss, ECF No. 31, is DENIED AS MOOT.

### B. Plaintiff's Motion for Summary Judgment Against Adam Bello (ECF No. 34)

Plaintiff argues that summary judgment against Bello in Plaintiff's favor is appropriate because Bello failed to timely file a motion to dismiss. As explained above, Bello timely moved to dismiss the amended complaint, which the Court accepts as the operative pleading. Because the Court dismisses the claims against Bello, Plaintiff's motion for summary judgment, ECF No. 34, is DENIED AS MOOT.

### C. Plaintiff's Motion to Deny Requested Orders (ECF No. 50)

Again, Plaintiff confusingly moves to deny some Defendants' motions to dismiss. Because the Court grants those motions, Plaintiff's motion, ECF No. 50, is DENIED AS MOOT.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, ECF Nos. 5, 11, 12, 14, 16, 18, 21, 33, are GRANTED to the extent the amended complaint (1) bears on an ongoing state proceeding and (2) requires the Court to review and reject a state court judgment and DENIED in all other respects.

Defendants' motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, ECF Nos. 5, 11, 12, 14, 16, 18, 21, 33, are GRANTED. Plaintiff's motions for miscellaneous relief, ECF Nos. 31, 34, 50, are DENIED AS MOOT.

Because Plaintiff already amended the complaint in response to all but one of Defendants' motions to dismiss, the Court declines to provide Plaintiff with another opportunity to amend. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

## All Citations

Slip Copy, 2020 WL 3316099

---

2021 WL 3027159
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Michael D. MARKHAM, Plaintiff-Appellant,

v.

Matthew A. ROSENBAUM,
et al., Defendants-Appellees.

20-2223
|
May 13, 2021

**Attorneys and Law Firms**

Michael D. Markham, Lahaina, HI, Pro Se.

Robert Mark Goldfarb, New York State Office of the Attorney General, Albany, NY, for Defendants-Appellees Mathew A. Rosenbaum, Richard A. Dollinger, Cynthia L. Snodgrass.

Adam Michael Clark, Esq., Monroe County Department of Law, Rochester, NY, for Defendant-Appellee Adam J. Bello.

Matthew Tracy, Winget, Spadafora & Schwartzberg, LLP, New York, NY, for Defendant-Appellee Maureen A. Pineau.

Nicholas B. Davis, Esq., Richard Nicholas Franco, Esq., Davidson Fink LLP, Rochester, NY, for Defendant-Appellee Gregory J. Mott.

Devin Lawton Palmer, Esq., Boylan Code LLP, Rochester, NY, for Defendants-Appellees Sharon Kelly Sayers, Jennifer Speller

Karen Guyder Felter, Esq., Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, NY, for Defendant-Appellee David Coron.

Timothy E. Ingersoll, Rochester, NY, Pro Se.

Diane R. DeLong, Rochester, NY, Pro Se.

Present: Dennis Jacobs, Reena Raggi, Susan L. Carney, Circuit Judges.

**Opinion**

**\*1** Appellant, pro se, moves to change venue, "to strike Appellee Brief of Diane R. DeLong for Failure to Disclose Attorney Assistance," and to file a supplemental appendix. Upon due consideration, it is hereby ORDERED that the motions are DENIED and the appeal is DISMISSED because it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also* 28 U.S.C. § 1915(e).

**All Citations**

Not Reported in Fed. Rptr., 2021 WL 3027159

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Perez v. Colon, Not Reported in Fed. Supp. (2019)

2019 WL 5102612

Case 1:22-cv-00581-DNH-TWD    Document 4    Filed 06/29/22    Page 62 of 175

2019 WL 5102612
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Felipe PEREZ, Plaintiff,

v.

Mr. COLON, Mr. Russo, Mr. Wiggins, Waters, Mr.
Tilden, Mr. Banks, Officer John Doe #1, Officer
John Doe #2, Officer John Doe #3, Officer John
Doe #4, Officer John Doe #5, Officer John Doe #6,
Officer John Doe #7, Officer John Doe #8, Officer
John Doe #9, Officer John Doe #10, Officer John
Doe #11, Nurse Practitioner Jane Doe Registered
Nurse Jane Doe, and Dr. John Doe, Defendants.

Felipe Perez, Plaintiff,

v.

Mr. Carter, Sgt. John Doe, Mr. Waters, Officer
John Doe #1, Officer John Doe #2, Officer John
Doe #3, Chaplain, and Sergeant Colon, Defendants.

9:19-CV-0722 (TJM/DJS), 9:19-CV-0824 (BKS/TWD)
|
Signed 10/11/2019

**Attorneys and Law Firms**

FELIPE PEREZ, Plaintiff, pro se, 17-A-5251, Sing Sing
Correctional Facility, 354 Hunter Street, Ossining, NY 10562.

**DECISION and ORDER**

BRENDA K. SANNES, United States District Judge

**I. INTRODUCTION**

 **\*1** On June 19, 2019, pro se plaintiff Felipe Perez
("Plaintiff") commenced a civil rights action in this Court
asserting claims arising out of his confinement in the custody
of the New York State Department of Corrections and
Community Supervision ("DOCCS") at Marcy Correctional
Facility ("Marcy C.F."). *Perez v. Donahue, et al.*, No. 9:19-
CV-0722 (TJM/DJS), Dkt. No. 1 ("*Perez I*"). In a Decision
and Order filed on August 20, 2019 (the "August Order"),
Plaintiff was granted leave to proceed in forma pauperis and
the defendants were directed to respond to the following
claims: (1) Eighth Amendment conditions-of-confinement
claims against defendant Banks; (2) Eighth Amendment
excessive force claims against defendants Colon, Russo,

Wigins, Waters, Tilden, Banks, Officer Does #1 through #11
related to incidents that occurred on June 9, 2019; and (3)
Fourteenth Am endment claims related to unwanted medical
treatment against defendants Dr. Doe and Russo. [1] *Perez I*,
Dkt. No. 7.

[1]       On August 26, 2019, summons were issued to
          defendants. Dkt. No. 8.

Presently before the Court for consideration is a second pro
se Complaint filed by Plaintiff asserting claims arising out of
his confinement at Marcy C.F. in June 2019. *Perez v. Carter,
et al.*, No. 9:19-CV-0824 (BKS/TWD), Dkt. No. 1 ("*Perez
II*"). Plaintiff has not paid the statutory filing fee and seeks
leave to proceed in forma pauperis. *Perez II*, Dkt. No. 3 ("IFP
Application").

**II. IFP APPLICATION**

"28 U.S.C. § 1915 permits an indigent litigant to commence
an action in a federal court without prepayment of the filing
fee that would ordinarily be charged." *Cash v. Bernstein,
No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct.
26, 2010).* [2] "Although an indigent, incarcerated individual
need not prepay the filing fee at the time of filing, he must
subsequently pay the fee, to the extent he is able to do so,
through periodic withdrawals from his inmate accounts." *Id.*
(citing 28 U.S.C. § 1915(b) and *Harris v. City of New York,
607 F.3d 18, 21 (2d Cir. 2010)*).

[2]       Section 1915(g) prohibits a prisoner from
          proceeding in forma pauperis where, absent a
          showing of "imminent danger of serious physical
          injury," a prisoner has filed three or more actions
          that were subsequently dismissed as frivolous,
          malicious, or failing to state a claim upon which
          relief may be granted. *See* 28 U.S.C. § 1915(g).
          The Court has reviewed plaintiff's litigation history
          on the Federal Judiciary's Public Access to Court
          Electronic Records ("PACER") Service. *See* http://
          pacer.uspci.uscourts.gov. It does not appear from
          that review that Plaintiff had accumulated three
          strikes for purposes of 28 U.S.C. § 1915(g) as of
          the date this action was commenced.

Upon review of Plaintiff's IFP Application, the Court finds
that he has demonstrated sufficient economic need. *See*
28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate
authorization form required in this District. Dkt. No. 4.
Accordingly, the Court grants Plaintiff's IFP Application.

**Perez v. Colon, Not Reported in Fed. Supp. (2019)**

2019 WL 5102612

Case 1:22-cv-00581-DNH-TWD    Document 4    Filed 06/29/22    Page 63 of 175

## III. SUFFICIENCY OF THE COMPLAINT

### A. Standard of Review

**\*2** Having found that Plaintiff meets the financial criteria for commencing this action in forma pauperis, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

---

[3]     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

---

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-

CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

### B. Summary of the Complaint

The following facts are set forth as alleged by Plaintiff in his Complaint.

**\*3** In June 2019, Plaintiff was confined in Housing Unit A2, Cell 39, in the Residential Mental Health Unit ("RMHU") at Marcy C.F. Compl. at 3. On June 9, 2019, on an Islamic holiday, between 3:00 p.m. and 11:00 p.m., Plaintiff was performing Islamic faith prayers in his cell when he was "pepper sprayed without warning" by defendant Sergeant Colon ("Colon"). *Id.* at 6.

On June 17, 2019, between 7:00 a.m. and 3:00 p.m., Plaintiff attempted to speak with defendant Captain Carter ("Carter"), the Director of the RMHU. Compl. at 3. Carter told Plaintiff, "if you don't like what Sergeant Colon did to you and beat your ass with my officers suck it up cause [sic] the next time you'll die Perez!" *Id.* At or around the same time, Plaintiff told defendant Sergeant Doe ("Sgt. Doe") that he had "injuries" and requested permission to "see medical." *Id.* at 4. Sgt. Doe refused to allow Plaintiff to seek treatment. *Id.* During the same shift, defendant Waters approached Plaintiff's cell and questioned Plaintiff about his "blacked eye." [4] *Id.* at 5. Waters

Perez v. Colon, Not Reported in Fed. Supp. (2019)

2019 WL 5102612

told Plaintiff, "I'd do a better job at that" and stated "if I hit you, I would of [sic] broken your eye socket." Compl. at 5.

[4]     Plaintiff has not plead facts related to how or when he sustained an injury to his eye. However, in *Perez I*, Plaintiff claimed that Officers Russo, Wigins, Waters, Tilden, John Does #1 through #3, Colon, and Banks "assaulted" him on June 9, 2019. *See Perez I*, Compl. at 9.

On June 17, 2019, between 3:00 p.m. and 11:00 p.m, Colon approached Plaintiff's cell and threatened Plaintiff with violence if he continued to ask for medical treatment. Compl. at 4. Colon also threatened to "spray 2 tanks of OC tear gas" in Plaintiff's cell if he refused to take his "medication." *Id.* at 5. Plaintiff was so "afraid" of Colon that he defecated himself. *Id.*

Plaintiff also claims that while he was confined to the RMHU, defendants Officer John Doe #1, Officer John Doe #2, and Officer John Doe #3 mocked Plaintiff and pointed to his black eye. Compl. at 6. Officer John Doe #2 told Plaintiff, "we might have to do the other eye so we can go out on workers compensation." *Id.*

Construed liberally, [5] Plaintiff asserts the following: (1) First Amendment claim related to religious rights against Colon; (2) Eighth Amendment excessive force claim against Colon; (3) Eighth Amendment claims related to threats against Colon, Carter, Waters, and John Does #1 through #3; and (4) Eighth Amendment deliberate medical indifference claim against Sgt. Doe. *See generally*, Compl. Plaintiff seeks monetary damages. *Id.* at 8-12. For a complete statement of Plaintiff's claims and the facts he relies on in support of those claims, reference is made to the Complaint.

[5]     The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations,

not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

**C. Nature of Action**

**\*4** Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

The Court will construe the allegations in the Complaint with the utmost leniency. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**IV. CONSOLIDATION OF *PEREZ I* AND *PEREZ II***

Actions involving common questions of law or fact pending before a court may be consolidated to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a). While courts have broad discretion to consolidate in the interests of judicial economy, efficiency concerns must be balanced against the potential for confusion or prejudice. *Kelly v. Kelly*, 911 F.Supp. 66, 69 (N.D.N.Y. 1996). As part of its general power to administer its docket, "a court faced with a duplicative suit will commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions." *Curtis v. Citibank*, N.A., 226 F.3d 133, 138 (2d Cir. 2000). A suit is duplicative where the "claims, parties, and available relief do not significantly differ between the two actions." *Morency v. Vill. of Lynbrook*, 1 F.Supp.3d 58, 62 (E.D.N.Y. 2014).

The Complaints in *Perez I* and *Perez II* assert claims related to the incidents that occurred at the RMHU in June 2019. Waters, Colon, and Officers John Does 1 through 3 (on duty from 3:00 p.m. to 11:00 p.m. on June 9, 2019) are named as

Perez v. Colon, Not Reported in Fed. Supp. (2019)

Case 1:22-cv-00581-DNH-TWD    Document 4    Filed 06/29/22    Page 65 of 175

2019 WL 5102612

defendants in both actions. While the remaining defendants in the two actions are different, due to the common questions of law and facts in *Perez I* and *Perez II*, the two lawsuits will be consolidated in order to avoid the risks associated with duplicative actions and prevent the defendants from having to defend against two actions involving overlapping factual allegations. *See Jones v. Nassau Cty. Corr. Inst.*, No. 14-CV-1217, 2014 WL 1277908, at *3 (E.D.N.Y. Mar. 26, 2014) (consolidating cases despite the fact that the named defendants were different). The lead case is designated as *Perez I*, and the member case will be transferred from the undersigned to Senior District Judge Thomas J. McAvoy. All further Orders of the Court and papers submitted by the parties that pertain to either of the foregoing actions shall be filed in *Perez I*.

## V. ANALYSIS

### A. First Amendment - Freedom of Religion

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). "To assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective." *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988) (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591).[6] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir. 1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

[6]    The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S. 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 Fed. Appx. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

**\*5** Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that Plaintiff's First Amendment Free Exercise claim against Colon survives sua sponte review and require a response. *See Shakur v. Selsky*, 391 F.3d 106, 120 (2d Cir. 2004) (finding that the District Court erred when it *sua sponte* dismissed prisoner's First Amendment claim asserting that the defendants had refused to allow prisoner to attend the feast of Eid ul Fitr). In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### B. Eighth Amendment - Excessive Force

In *Perez I,* the Court directed Colon to respond to Plaintiff's Eighth Amendment claims related to the use of pepper spray on June 9, 2019. *Perez I*, Dkt. No. 7 at 9. To the extent that Plaintiff attempts to assert an Eighth Amendment excessive force claim against Colon based upon the June 9, 2019 incident, that claim is dismissed as duplicative.

**Perez v. Colon, Not Reported in Fed. Supp. (2019)**

2019 WL 5102612

### C. Eighth Amendment - Threats

Allegations of verbal harassment or abuse, without an allegation of an actual injury, are insufficient to support a § 1983 claim. *Johnson v. Eggersdorf,* 8 Fed. Appx. 140, 143 (2d Cir. 2001) (citing *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir. 1986)). The intentional infliction of psychological pain may constitute an Eighth Amendment violation only if the pain is not de minimis. *See Jermosen v. Coughlin,* No. 87-CV-6267, 1993 WL 267357 at *6 (S.D.N.Y. July 9, 1993),* aff'd, 41 F.3d 1501 (2d Cir. 1994) (finding that officers' approach "with their nightsticks raised in a threatening position was not enough to cause the degree of psychological pain which rises to the level of a constitutional violation"); *Greene v. Mazzuca,* 485 F.Supp.2d 447, 451 (S.D.N.Y. 2007) (being yelled at, spit at, and threatened with time in the SHU, without an allegation of serious injury or damage, did not rise to the level of a § 1983 claim).

In this case, given the severity of the alleged conduct, i.e., the alleged assault(s) on June 9, the presence of the same officers on June 17, and the conduct on June 17, as well as Plaintiff's alleged harm, the Court finds that, at this point, Plaintiff's injurious threats cause of action survives initial review and requires a response from Colon, Carter, Waters, Officer John Doe #1, Officer John Doe #2, and Officer John Doe #3. This is not a ruling on the merits and the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion. [7]

> [7]  Because some of the Eighth Amendment claims are asserted against corrections officers whose names are not known to Plaintiff, service of process cannot be effected on them unless and until these individuals have been identified by name. If Plaintiff wishes to pursue his claims against defendants Officer John Does 1, 2, and 3, he must take reasonable steps to ascertain through discovery the identity of those individuals. Upon learning the identities of the unnamed defendants, Plaintiff must amend the operative complaint to properly name those individuals as parties. If Plaintiff fails to ascertain the identity of the John Doe defendants so as to permit timely service of process, all claims against those individuals will be dismissed.

### D. Eighth Amendment - Medical Indifference

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle,* 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance,* 143 F.3d at 702 (internal quotation marks and citations omitted). Addressing the objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir. 1996). "Second, the defendant must act with a sufficiently culpable state of mind," *Chance,* 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *see also Blyden,* 186 F.3d at 262 (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' ").

 **\*6** "Non-medical prison personnel engage in deliberate indifference where they 'intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.' " *Baumann v. Walsh,* 36 F.Supp.2d 508, 512 (N.D.N.Y. 1999).

Construing the Complaint liberally, Plaintiff alleges that Sgt. Doe refused to allow him to receive medical treatment for injuries that he sustained during a physical altercation. *See* Compl. at 4. The Complaint however, lacks facts related to the nature of the treatment sought or the injuries he allegedly suffered. Plaintiff has not pleaded that he told Sgt. Doe that he was in extreme pain and has failed allege that Sgt. Doe was present during the alleged altercation(s) or that he was otherwise aware that Plaintiff's condition was severe. As presently constituted, the pleading does not plausibly allege that Plaintiff had serious medical needs or that Sgt. Doe knew of and disregarded an excessive risk to Plaintiff's health or safety.

Consequently, Plaintiff's Eighth Amendment deliberate medical indifference claims against Sgt. Doe are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### E. Claims Against Chaplain

Perez v. Colon, Not Reported in Fed. Supp. (2019)
2019 WL 5102612

Case 1:22-cv-00581-DNH-TWD    Document 4    Filed 06/29/22    Page 67 of 175

Plaintiff names the Chaplain as a defendant in the caption and list of parties. Compl. at 1, 7. However, Plaintiff did not attribute any of the alleged constitutional violations to the Chaplain. Indeed, this defendant is not referenced anywhere in the body of the Complaint. In the absence of factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violated Plaintiff's constitutional rights, the complaint fails to state a cognizable claim against him/her. *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007)* ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014)* (dismissing complaint since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint). Accordingly, Plaintiff's claims against the Chaplain are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief can be granted.

**VI. CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's in forma pauperis application (Dkt. No. 3) is **GRANTED**;[8] and it is further

[8]    Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's inmate authorization form, and notify the official that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

***7 ORDERED** that the Clerk of the Court provide a copy of Plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the Clerk shall consolidate Civil Actions Nos. 9:19-CV-0722 (TJM/DJS) and 9:19-CV-0824 (BKS/TWD), with the first of those two actions being designated as the lead case;

**ORDERED** that all future filings in these cases are to be filed in the docket for case No. 19-CV-0722; and it is further

**ORDERED** that the Clerk shall reassign *Perez II* to the Senior Judge Thomas J. McAvoy and Daniel J. Stewart as the assigned Magistrate Judge, add to this action the defendants in *Perez II* who are not already defendants in this action, re-docket Complaint in *Perez I*, and attach to it the Complaint in *Perez II*, which together shall represent the master consolidated Complaint; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b): (1) Eighth Amendment excessive force claim against Colon; (2) Eighth Amendment deliberate medical indifference claim against Sgt. Doe; and (3) claims against the Chaplain;[9] and it is further

[9]    Should Plaintiff seek to pursue a claim dismissed without prejudice by the Court herein, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which Plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. Any amended complaint filed by Plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**ORDERED** that the following claims survive sua sponte review and require a response: (1) First Amendment Free Exercise claim against Colon; and (2) Eighth Amendment claims related to threats against Colon, Carter, Waters, and John Does #1, #2, and #3; and it is further

**ORDERED** that the Chaplain is **DISMISSED** as a defendant herein; and it is further

**ORDERED** the Clerk shall issue a summonses and forward them, along with copies of the Complaint, to the United States Marshal for service upon the defendants. The Clerk shall forward a copy of the summonses and Complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to the Complaint be filed by the defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED** that Plaintiff shall take reasonable steps through discovery to ascertain the identity of defendants Officer Does #1 through #3. **Plaintiff's failure to timely serve those defendants will result in dismissal** of the claims asserted against them and termination of those defendants from the action; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

 **\*8 ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5102612

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

2019 WL 2352981
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Derrick M. HAMILTON, Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, et al., Defendants.

9:18-CV-1312 (MAD/CFH)
|
Signed 06/04/2019

**Attorneys and Law Firms**

DERRICK M. HAMILTON, 89-A-5202, Plaintiff, pro se,
Auburn Correctional Facility, P.O. Box 618, Auburn, NY
13021.

**DECISION AND ORDER**

MAE A. D'AGOSTINO, United States District Judge

**I. INTRODUCTION**

**\*1** Pro se plaintiff Derrick M. Hamilton ("Plaintiff")
commenced this action by filing a Complaint asserting
claims arising out of his confinement in the custody of the
New York State Department of Corrections and Community
Supervision ("DOCCS") at Auburn Correctional Facility
("Auburn C.F."). Dkt. No. 1 ("Compl."). In the original
Complaint, Plaintiff identified the following individuals as
defendants: Commissioner Anthony J. Annucci ("Annucci"),
Superintendent Harold Graham ("Graham"), Prison Guard
A. Venditti ("Venditti"), and Prison Guard Delfavero
("Delfavero"). *Id.* at 1-3. Plaintiff also named DOCCS as a
defendant. *Id.*

By Decision and Order filed December 17, 2018 (the
"December Order"), this Court reviewed the sufficiency of
the Complaint in accordance with 28 U.S.C. § 1915(e) and
28 U.S.C. § 1915A and dismissed the following claims,
with prejudice: (1) claims pursuant to 42 U.S.C. § 1983
("Section 1983") for monetary damages against DOCCS and
defendants in their official capacity; (2) claims pursuant to the
Religious Land Use and Institutionalized Persons Act of 2000
("RLUIPA") against defendants in their individual capacity
and RLUIPA claims for monetary damages and declaratory

judgment against defendants in their official capacities; and
(3) claims asserted pursuant to various United States Treaties.
Dkt. No. 4. The Court also dismissed the following claims,
without prejudice: (1) First Amendment religious claims; (2)
equal protection claims; (3) retaliation claims; (4) claims
for injunctive relief; and (5) New York State Constitutional
claims. *Id.* In light of his pro se status, Plaintiff was afforded
an opportunity to submit an amended pleading with respect to
the claims that were dismissed without prejudice. *Id.* at 24.

Currently before the Court is Plaintiff's Amended Complaint.
Dkt. No. 15 ("Am. Compl.").

**II. LEGAL STANDARD**

The legal standard governing the dismissal of a pleading for
failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)
(B) and 28 U.S.C. § 1915A(b) was discussed at length in the
December Order and will not be restated here. *See* Dkt. No. 4
at 2-4. Taking into account Plaintiff's pro se status, the Court
construes the allegations in the Amended Complaint with the
utmost leniency. *See, e.g., Haines v. Kerner,* 404 U.S. 519,
521 (1972) (holding that a pro se litigant's complaint is to be
held "to less stringent standards than formal pleadings drafted
by lawyers.").

**III. SUMMARY OF AMENDED COMPLAINT** [1]

[1]    The Amended Complaint includes exhibits. *See*
Am. Compl. at 90-96. To the extent that the
exhibits are relevant to the incidents described in
the Amended Complaint, the Court will consider
the Amended Complaint as well as any documents
attached as exhibits. *See Cortec Indus., Inc. v.
Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.
1991) (the complaint is deemed to include any
written instrument attached to it as an exhibit
or any statements or documents incorporated in
it by reference). Additionally, Plaintiff's original
Complaint included exhibits. *See* Compl. at 15-28.
In the Amended Complaint, Plaintiff incorporated,
by reference, the same exhibits attached to the
original Complaint, but failed to actually attach the
exhibits to the Amended Complaint. "Although it is
well settled that an amended complaint supersedes
a prior complaint in its entirety, it is clear to
the court that plaintiff intended to attach the
exhibits to his amended complaint." *Wellington
v. Langendorf,* No. 12-CV-1019 (FJS/DEP), 2013

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

Case 1:22-cv-00581-DNH-TWD Document 4 Filed 06/29/22 Page 70 of 175

2019 WL 2352981

WL 3753978, at *3 (N.D.N.Y. July 15, 2013). To require Plaintiff to file an Amended Complaint that includes the original exhibits is, "an unnecessary procedural hoop that would waste resources and delay resolution of this action." *Alexander v. U.S.*, No. 13-CV-678, 2013 WL 4014539, at *4 (N.D. Cal. Aug. 5, 2013). Because Plaintiff is proceeding pro se, the Court will consider the exhibits and documentation attached to the original Complaint as incorporated by reference in the Amended Complaint.

**\*2** In the Amended Complaint, Plaintiff asserts new claims and realleges previously dismissed claims against Annucci, Graham, Venditti, and Delfavero. Plaintiff also asserts claims against the following new defendants: Deputy Commissioner of Program Services Jeff McKoy ("McKoy"), Director of Division of Ministerial, Family, and Volunteer Services ("DMFVS") Cheryl Morris ("Morris"), Assistant Director of DMFVS Paul Guenette ("Guenette"), Chaplain Marcia Stewart ("Stewart"), Chaplain Wayne Rose ("Rose"), Director of Inmate Grievance Program ("IGP") Karen Bellamy ("Bellamy"), Director of IGP Shelly Mallozzi ("Mallozzi"), Superintendent Timothy McCarthy ("McCarthy"), Deputy Superintendent of Program Services G. Schenk ("Schenk"), Steward D. Vanni ("Vanni"), Assistant Food Service Administrator, A. Bertonica ("Bertonica"), Lieutenant Kelsey ("Kelsey"), Watch Commander John Doe #1 ("WC John Doe #1"), Watch Commander John Doe #2 ("WC John Doe #2"), Watch Commander John Doe #3 ("WC John Doe #3"), Senior Chaplain Deacon John Tomandl ("Tomandl"), Prison Guard S. Pino ("Pino"), Prison Guard John Doe #1 ("PG John Doe #1"), Sergeant Porten ("Porten"), Sergeant Doe ("Sgt. Doe"), North Yard Supervisor Jay Doe ("Yard Supervisor Jay Doe"), Prison Guard James Doe ("PG James Doe"), Inmate Organization Coordinator ("IOC") Dave Porter ("Porter"), Recreation Program Leader ("RPL") Ron Pitoniak ("Pitoniak"), and RPL Travis Silcox ("Silcox").[2] *See* Am. Compl. at 1, 6-10. The Amended Complaint does not include any claims against DOCCS.[3] The facts are set forth as alleged by Plaintiff in his Amended Complaint.

[2]    The Clerk of the Court is directed to add these defendants to the docket report for this action.

[3]    The Clerk of the Court is directed to terminate DOCCS as a defendant.

**A. Background**

Pursuant to DOCCS' Directive #4202, the DMFVS is responsible for ensuring that all religious programs are carried out in accordance with the established tenets and practices of the faith. Am. Compl. at 26.

In 1991 or 1992, DOCCS hired Ascento Fox ("Fox") as the Senior Rastafari Chaplain. Am. Compl. at 11. While Fox was employed as the Chaplain, DOCCS aligned its policies with the "Lived Tenets Rastafari Ecclesiastical Order." *Id.* at 51-52. Specifically, with respect to the blessing, handling, preparation, and distribution of food, DOCCS' policy provided that "food is to be prepared by a faith group member and people who are not initiates of the faith should not be allowed to handle, prepare, or distribute the food." *Id.* at 52. After Fox departed, Annucci "rewrote" the policy to "exclude the sanctity of [Rastafari] food preparation, handling, and distribution."[4] *Id.*

[4]    Plaintiff has not plead when Fox departed.

In 2012 and 2013, Annucci, McKoy, Morris, and Guenette began rewriting the tenets of Rastafari order. Am. Compl. at 13-14. Defendants implemented a policy that prevented inmates with "significant knowledge" of the Rastafari tenets and beliefs from acting as "clerks." *Id.* at 12. By eliminating clerks, Annucci, McKoy, Morris, and Guenette assumed "authority" over the community and assigned chaplains of other denominations to advise the Rastafari community. *Id.* at 12-14. Defendants allowed "cultural vultures" or "undesirables" such as gang members, homosexuals, and mentally challenged individuals into the "sacred order." *Id.* at 14. These "cultural vultures" were only interested in receiving special meals and avoiding DOCCS' rules related to the length of their hair. Am. Compl. at 11-12. Annucci also hired Stewart and Rose as Rastafari chaplains in an effort to introduce the "state's pro-homosexual" views into the Rastafari order. *Id.* at 15. Additionally, Annucci, McKoy, Morris, and Guenette removed "Negust Day" from the Rastafari practice.[5] *Id.* at 14.

[5]    Negust Day is a principle that is a "sincerely held Rastafari belief" and annually commemorated on October 7th. Am. Compl. at 14-15.

Plaintiff, a practicing Rastafari since birth, filed grievances claiming that Annucci, McKoy, Morris, and Guenette violated the Establishment Clause and unconstitutionally rewrote and

created tenets for Rastrafarians.[6] Am. Compl. at 14-15, 16. Plaintiff also filed grievances challenging the decision to remove Negust Day as a High Holy Day.[7] *Id.* at 15. In 2013, Plaintiff filed an Article 78 petition in New York State Supreme Court, Albany County, challenging the removal of Negust Day from the Rastafari practice. *Id.* at 14. The matter was declared "moot" and Annucci was compelled to reintegrate Negust Day into the practice. *Id.*

[6]    The Amended Complaint does not include facts related to where or when these grievances were filed.

[7]    *See* Footnote 5, *supra.*

**B. Facts Related to Plaintiff's Confinement at Auburn C.F. from November 2015 through March 2016**

**\*3** On October 21, 2015, Plaintiff was transferred from the Special Housing Unit ("SHU") at Great Meadow Correctional Facility to the SHU at Auburn C.F. Am. Compl. at 15. Upon arriving at Auburn C.F., Plaintiff wrote to Graham advising that his disciplinary sanctions ended on October 30, 2015. *Id.* Plaintiff also wrote to Tomandl, the Rastafari staff advisor, and asked to be placed on all Rastafari call-outs, classes, and services[8] (including Transfiguration Day). *Id.* at 16. Plaintiff expected other members of his community to commemorate Transfiguration Day on November 2, 2015. *Id.* at 11-16. Plaintiff did not receive any response to his correspondence. Am. Compl. at 16-17.

[8]    Plaintiff describes services as "Nyahbinghi". Am. Compl. at 16.

On October 30, 2015, Plaintiff informed SHU staff that his SHU time was complete and presented his disposition sheet as evidence. Am. Compl. at 17. The supervisor informed Plaintiff, "you've pissed somebody off" and, pursuant to Graham's orders, Plaintiff would not be released until the next day. *Id.* On October 31, 2015, Plaintiff was released from the SHU and transferred to cell D-3-11. *Id.*

On November 2, 2015, Plaintiff asked Delfavero for permission to attend Transfiguration Day. Am. Compl. at 17. Delfavero and Venditti refused to allow Plaintiff to attend because he was listed "as a Jew" on the D-Block census. *Id.* at 18. Plaintiff objected to being "branded Jewish," claiming that it endangered Plaintiff's life, health, and well-being.[9] *Id.* at 21. Plaintiff also attempted to explain to Defendants

the importance of Transfiguration Day to the practice of his sincerely held Rastafari beliefs. *Id.* at 19. Plaintiff asked Defendants to contact the Chaplain's Office, but Defendants threatened Plaintiff with a misbehavior report. Am. Compl. at 19. As a result of Defendants' actions, Plaintiff was deprived of the opportunity to practice the highest form of Rastafari worship. *Id.* at 19-20. Additionally, Defendants' interceded and prevented other inmates from delivering the Transfiguration Day sacramental meal to Plaintiff. *Id.* at 20; Compl. at 21.

[9]    According to DOCCS' block census, the inmate who previously occupied cell D-3-11 was Jewish. Am. Compl. at 28-29.

On November 20, 2015, Plaintiff filed a grievance (AUB-68310-15) complaining that Graham retaliated against him and violated his First Amendment religious rights. Am. Compl. at 22; Compl. at 16-19. Specifically, Plaintiff complained that Graham's decision to retain Plaintiff in the SHU for an extra day resulted in Plaintiff being falsely identified as a "Jew" and prevented Plaintiff from observing Transfiguration Day. *Id.* Graham denied the grievance and Plaintiff appealed to the Central Office Review Committee ("CORC"). Compl. at 24, 27. On March 2, 2016, CORC issued a decision "unanimously" accepting the grievance, in part. *Id.* at 28. CORC noted that Plaintiff completed his disciplinary sanctions on October 30, 2015 and was moved to another cell on October 31, 2015, "when it became available." *Id.* CORC also noted that Plaintiff's religion of record was Rastafarian. *Id.*

On December 27, 2015, at 10:00 a.m., Graham ordered WC John Doe #1 to escort Plaintiff to the "penalty box" in the North Yard to await Rastafari services. Am. Compl. at 22. At 10:20 a.m., Plaintiff was released and permitted to enter the chapel for services but was advised that his "time was up at 10:25 a.m." *Id.* On the same day, prisoners belonging to the Nation of Gods and Earths ("NOGE") and Protestant inmates were allowed to study from 1:00 p.m. until 2:45 p.m. and to attend services from 7:00 p.m. until 9:30 a.m. *Id.* at 22-23. Plaintiff filed a grievance (AUB 68521-15) related to the incident. *Id.* at 23.

**\*4** On February 14, 2016, Graham ordered WC John Doe #2 and Yard Supervisor Jay Doe to detain Plaintiff in the "penalty box" to await Rastafari services. Am. Compl. at 23, 31-32. Plaintiff, who suffers from asthma, was forced to endure sub-zero temperatures, for approximately one hour. *Id.* Plaintiff began to experience difficulty breathing and tried to use his

inhaler but, the aerosol was frozen. *Id.* Eventually, guards allowed only five Rastafari inmates to enter the chapel at one time while Protestants inmates were sent to the chapel "en masse." *Id.* When Plaintiff finally entered the chapel, Pino questioned Plaintiff's religious beliefs. Am. Compl. at 23.

On February 21, 2016, PG John Doe questioned Plaintiff's religious beliefs regarding gay marriage and homosexuality. Am. Compl. at 24. PG John Doe told Plaintiff that Graham intended to charge Plaintiff with "hate speech and unauthorized religious speech" because Plaintiff was not the "chosen facilitator." *Id.* Plaintiff was compelled to explain his religious beliefs to PG John Doe. *Id.* at 25. PG John Doe responded, "[s]ince this is not going to stop on its own, I'm going to report it." Am. Compl. at 25.

On February 25, 2016, Tomandl, PG John Doe, and Porten, acting upon Graham's order, attempted to remove Plaintiff from all Rastafari call outs by threatening the assigned Inmate Facilitator. Am. Compl. at 25. Plaintiff filed a grievance (AUB 68944-16) claiming that Defendants were attempting to "silence" him. *Id.* While investigating the grievance, Porten prepared a false report claiming that the Inmate Facilitator was unaware of any problems and that services were "running smoothly." *Id.* at 26-27. Porten also threatened Plaintiff, on Graham's behalf, with SHU confinement if he attempted to participate in Rastafari services. *Id.* at 27. As a result of Porten's threat, Plaintiff's "once close Brethren," abandoned him. Am. Compl. at 27.

### C. Christmas Day - December 2016
On December 25, 2016, at 8:45 a.m., Plaintiff asked PG James Doe if Rastafari services would be held at the usual time. Am. Compl. at 39. PG James Doe laughed and responded that only Christian services were being held that day. *Id.* At 10:45 a.m., Plaintiff was released from his cell for a meal and made an attempt to discuss the issue with WC John Doe #3 and Sgt. Doe. *Id.* Sgt. Doe responded, "You're about the fourth one to ask. It's a holiday, where's your Christmas spirit? It's a white Christmas! Have a happy jolly one enjoy your lunch." *Id.* From 7:00 p.m. until 9:30 p.m, Plaintiff witnessed Protestant inmates released from the same cell block to attend services in the chapel. Am. Compl. at 41.

On December 30, 2016, Plaintiff filed a grievance (AUB 70769-17) related to the incident. Am. Compl. at 41. Graham issued a decision conceding that Rastafari services were on the "callout" and should have been held as scheduled. *Id.* Plaintiff appealed Graham's decision to CORC. *Id.* One year

and nineteen days after receipt of the appeal, Mallozzi issued a fraudulent decision and noted that, "Rastafari services were not held on 12/25/16 due to a staff shortage on the holiday." *Id.* at 41-42.

### D. Caribbean African Unity
During the relevant time, Plaintiff was the president of the Caribbean African Unity ("CAU"), a cultural organization that addressed the needs of Auburn C.F. inmates of African, Carribean, Central, and South American ancestry. Am. Compl. at 66. Pursuant to DOCCS' Directive #4760, all cultural organizations must contribute a minimum of fifty percent of any profit to the Inmate Occupational Therapy Fund ("IOTF"). *Id.* Pursuant to the Directive, the formula for profit is the income generated from any fund raising event less the expense of the event. *Id.* Membership dues were not included in the profit analysis. *Id.* Schenk, who was responsible for supervising all cultural organizations at Auburn C.F., implemented new guidelines that contradicted Directive #4760. Am. Compl. at 66-67. For example, Schenk demanded that membership dues be included in the profit calculation and that organizations make quarterly contributions rather than one fiscal year contribution. *Id.*

**\*5** In August 2017, Plaintiff began to notice accounting errors in the CAU account and "question[ed] the illegal siphoning of funds[.]" Am. Compl. at 67. Shortly thereafter, Plaintiff received a memorandum from Pitoniak stating that the CAU was not in compliance with DOCCS' directives related to membership quotas. *Id.* at 67-68. As a result, Pitoniak placed the CAU on a 60-day probationary period. *Id.*

In September 2017 and October 2017, Plaintiff discovered discrepancies in the CAU's trust account and addressed the matter with Pitoniak and Porter. Am. Compl. at 68. Plaintiff was advised "not to make a big stink." *Id.*

In October 2017, Pitoniak approached members of the CAU and attempted to enlist them in a plan to remove Plaintiff as President of the CAU. Am. Compl. at 69-70. Pitoniak told the members that Plaintiff "wrote up a bunch of [expletive] on us" and that Porter and Schenk "want him out" because he questioned how much money the CAU paid to the Inmate Liaison Committee. *Id.* at 70. When the members refused, Pitoniak responded, "That doesn't matter, I already have Morris ready to do it for me." *Id.* Plaintiff filed a grievance (AUB 74417-18) related to the incident. *Id.*

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 73 of 175

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

On December 4, 2017, Plaintiff wrote to Schenk and explained that the CAU had not received monthly financial statements and was unable to account for transactions. Am. Compl. at 69.

On January 4, 2018, at approximately 2:10 p.m., Plaintiff and Pitoniak met in the staff office in the gymnasium to discuss the goals of the cultural organizations. Am. Compl. at 69. Pitoniak began screaming racial slurs at Plaintiff. *Id.* Plaintiff filed a grievance (AUB 73415-18) against Pitoniak. *Id.* Porter was assigned to investigate the grievance and filed a perjured statement in favor of Pitoniak. *Id.* As a result, Plaintiff filed a grievance against Porter (AUB 73649-18). Am. Compl. at 69.

In February 2018, Plaintiff wrote to Vanni requesting an audit of the CAU account. Am. Compl. at 69. In a "face to face conversation," Vanni promised to conduct the audit, "as soon as possible." *Id.* The audit was never conducted. *Id.*

On June 5, 2018, Plaintiff sent a memorandum to Vanni after discovering that $ 91.00 in membership dues was counted as sales and subjected to Defendants' "illegal profit tanking." Am. Compl. at 70. Vanni did not respond. *Id.*

In June 2018, Plaintiff made repeated verbal and written complaints to Vanni, Porter, Silcox, and Pitoniak claiming that money was illegally withdrawn from the CAU account and reported that food purchased for membership meetings was stolen. Am. Compl. at 71-72. Throughout June 2018, Plaintiff's regularly scheduled weekly meetings with Pitoniak were canceled, orders for fund raisers were not processed or fulfilled, and membership dues were not collected. *Id.* at 72. Effectively, the CAU was administratively "stifled." *Id.* at 73.

On September 6, 2018, Silcox issued a memorandum announcing that the CAU was suspended. Am. Compl. at 73. On October 3, 2018, Plaintiff filed a grievance (AUB 75138-18) claiming that the staff retaliated against the CAU and misappropriated funds. *Id.* Silcox fabricated a report related to his investigation of AUB 75138-18. Am. Compl. at 74-75.

On October 4, 2018, Silcox threatened Plaintiff with SHU confinement if he continued to correspond on behalf of the CAU. Am. Compl. at 74. On October 7, 2018, Plaintiff wrote to Annucci and recounted the recent events surrounding the CAU. *Id.* On October 28, 2018, Shenk responded to the "packet of letters" sent to "Acting Commissioner Annucci" and advised that the organization would be reimbursed for

items that were not received. *Id.* Because the CAU was suspended however, the money was transferred to Schenk's IOTF purse and available for use by employees. *Id.*

### E. Food Preparation and Service

**\*6** On October 2, 2017, when Plaintiff entered the messhall to receive his "medical diet,"[10] he noticed an "openly homosexual inmate" serving the diet meals. Am. Compl. at 47. The tenets of Rastafari law prohibit the consumption of food prepared, distributed, or served by homosexuals. *Id.* Following his religious beliefs, Plaintiff opted not to eat or receive any meal prepared by a known homosexual. *Id.* On October 4, 2017, Plaintiff wrote to Bertonica and explained that Rastafaris are prohibited from eating food prepared and served by a homosexual. *Id.* at 48. Plaintiff advised that he would not "sign for" or eat the medical diet meal. Am. Comp. at 48. Bertonica responded in a written memorandum and stated that all servers are "properly trained in the safe and hygiene [sic] handling of foods and serving areas." *Id.*

[10]     Plaintiff's diet was "drug-free medical therapy" as treatment for high cholesterol. Am. Compl. at 47.

On October 16, 2017, Plaintiff wrote to Bertonica and reiterated his sincerely held beliefs and right not to "buy into the state-mandated perception of homosexuality as normal generative human behavior." Am. Compl. at 48. On October 19, 2017, Bertonica issued a misbehavior report charging Plaintiff with missing meals. *Id.* at 48. In total, Plaintiff was deprived of twenty "medically significant meals." *Id.* at 49.

On October 25, 2017, Plaintiff filed a grievance (AUB 73025-17) against Annucci and Bertonica accusing them of "nefarious use of despicable means ... to coerce me into accepting and participating in the state's homosexual agenda." Am. Compl. at 49. After the grievance was denied, Plaintiff appealed to CORC. *Id.* at 53. Mallozzi falsified the record and denied the appeal. *Id.*

On November 2, 2017, Plaintiff attended a disciplinary hearing related to the misbehavior report. Am. Compl. at 49. Kelsey presided over the hearing however, Plaintiff's guilt was "predetermined." *Id.* Plaintiff asserted that the misbehavior report was issued in retaliation for Plaintiff exercising his sincerely held Rastafari beliefs. *Id.* at 50. Plaintiff asked Kelsey to call Stewart as a witness, but Kelsey denied the request as "immaterial." *Id.* As Plaintiff began to testify in his defense, Kelsey stopped the hearing and directed Plaintiff to leave the room so that he could place a telephone

call to McCarthy. Am. Compl. at 50. When Plaintiff was recalled, the hearing resumed and he was found guilty of all charges. *Id.* at 51. Plaintiff appealed the determination to Graham and Graham's designee, McCarthy, affirmed. *Id.* Plaintiff was directed to pay at "$ 5.00 surcharge and $ 10.35 for missed meals." *Id.*

### F. Causes of Action

Construing the Amended Complaint liberally, [11] Plaintiff asserts the following: (1) First Amendment retaliation claims; (2) First Amendment claims related to the free speech and the right to petition; (3) First Amendment free exercise claims; (4) First Amendment claims related to violations of the Establishment Clause; (5) Fourth Amendment claims; (6) Eighth Amendment claims; (7) Ninth Amendment claims; (8) Fourteenth Amendment equal protection and due process claims [12]; (9) constitutional claims based upon violations of DOCCS' directives; and (10) New York State Law and Constitutional claims. *See generally*, Am. Compl. Plaintiff seeks declaratory relief and monetary damages. *See id.* at 33-38. Plaintiff also seeks prospective and preliminary injunctive relief. *See id.* at 37-38; 61-64; 87-88.

[11]   The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

[12]   The Fifth Amendment is applicable to federal actors, not state actors. *Snow v. Vill. of Chatham,* 84 F. Supp. 2d 322, 326 (N.D.N.Y. 2000) (citing *Brock v. North Carolina,* 344 U.S. 424, 426 (1953)). To the extent that Plaintiff is attempting to raise the Fifth Amendment as against the state

defendants, that claim must be dismissed with prejudice. *Horton v. Schneiderman,* No. 9:13–CV–742 (GLS/ATB), 2014 WL 2154538, at *7 (N.D.N.Y. 2014). Because Plaintiff is imprisoned in a state institution, the Fourteenth Amendment, and not the Fifth Amendment, applies to his due process violation claims. *See Pugliese v. Nelson,* 617 F.2d 916, 918 n.2 (2d Cir. 1980).

## IV. ANALYSIS

### A. Eleventh Amendment

**\*7** The law related to Eleventh Amendment was discussed in the December Order and will not be restated herein. *See* Dkt. No. 4 at 9-10. To the extent that Plaintiff attempts to reassert section 1983 claims for monetary damages against Defendants in their official capacity in the Amended Complaint, those claims are dismissed for the reasons set forth in the December Order.

### B. Defendants Stewart, Rose, and Pino

Plaintiff names Stewart, Rose, and Pino as defendants in the caption and list of parties. *See* Am. Compl. at 1, 6, 8-9. Plaintiff claims that Stewart and Rose were hired by Annucci as Rastafari Chaplains as "duplicitious conduits" to introduce the "state's pro-homosexual" policy into the Rastafari order. *See id.* at 15. Plaintiff claims that Pino "questioned why [he] was playing so active a role in [ ] '[r]easoning' amount the Brethren[.]" *See id.* at 23. Plaintiff however, did not attribute any of the alleged constitutional violations to Stewart, Rose, or Pino. In the absence of factual allegations sufficient to plausibly suggest that Defendants were personally involved in conduct that violated Plaintiff's constitutional rights, the Amended Complaint fails to state a cognizable claim against them. *See Cipriani v. Buffardi,* No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl,* No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint). Accordingly, Plaintiff's claims against Stewart, Rose, and Pino are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief can be granted.

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 75 of 175

## C. First Amendment

### 1. Retaliation

The law related to First Amendment retaliation claims was discussed in the December Order and will not be restated herein. *See* Dkt. No. 4 at 16-17. In the Amended Complaint, Plaintiff asserts retaliation claims against Graham, Bertonica, Pitoniak, Schenk, Vanni, Porter, and Silcox, and Annucci. [13] *See generally*, Am. Compl.

[13]   Plaintiff claims he was transferred to Auburn C.F. in retaliation for grievances against Annucci, McKoy, Guenette, and Morris related to their violations of the Establishment Clause. *See* Am. Compl. at 15. Plaintiff has not identified the person(s) responsible or personally involved in the decision to transfer him to Auburn C.F. Accordingly, this claim is not sufficiently plead.

### a. Graham

In the Complaint, Plaintiff alleged that Graham retaliated against him "on behalf of his colleagues at Great Meadow" when he detained Plaintiff for an additional day in the SHU without a valid "detention hold." Compl. at 4, 17, 25. In the December Order, the Court dismissed Plaintiff's retaliation claims against Graham holding:

To the extent that Plaintiff claims that the retaliatory conduct was in response to grievances previously filed at Great Meadow C.F., the claims are nonetheless subject to dismissal. Plaintiff has failed to identify the grievances he filed which allegedly motivated Graham to retaliate against him. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."); *Edwards v. Bezio*, No. 9:08-CV-256(LEK/RFT), 2010 WL 681369, at *3 (N.D.N.Y. Feb. 24, 2010) (dismissing retaliation claim based on allegation that plaintiff suffered adverse action for "past and present" grievances and lawsuits, noting that plaintiff's "general references to grievances and lawsuits he allegedly filed are not sufficient to establish that he was engaged in protected conduct"). "As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant." *Hare v. Hayden*, No. 09 Civ. 3135,

2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011); *see also Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (collecting cases).

**\*8**  Here, Plaintiff did not file any grievances or complaints against Graham or any staff member at Auburn C.F. prior to the alleged retaliatory conduct. As Plaintiff has not sufficiently alleged any causal connection between any protected activity and retaliatory conduct, Plaintiff has not stated a plausible claim for retaliation against Graham in violation of the First Amendment and this claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Dkt. No. 4 at 18-19.

In the Amended Complaint, Plaintiff alleges that Graham ordered Plaintiff held in the SHU for an extra day in retaliation for grievances Plaintiff filed against Morris, Guenette, McKoy, and Annucci and in response to his "exercise of [his] constitutional protected right" to speak against Annucci's violation of the Establishment Clause. *See* Am. Compl. at 15, 29. Despite the fact that Plaintiff was afforded the opportunity to amend his Complaint, the amended pleading does not cure the deficiencies in the original pleading related to this claim. For the reasons set forth in the December Order, Plaintiff's retaliation claim against Graham is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Bertonica

Plaintiff claims that Bertonica issued a false misbehavior report in retaliation for Plaintiff's free exercise of his Rastafari beliefs. *See* Am. Compl. at 50. At this juncture, Plaintiff has sufficiently plead a First Amendment retaliation claim against Bertonica to warrant a response. *See Parks v. Smith*, No. 908-CV-0586 (TJM/GHL), 2009 WL 3055278, at *1 (N.D.N.Y. Sept. 23, 2009) (finding that the exercise of religion could constitute protected conduct). In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### c. Pitoniak, Schenk, Vanni, Porter, Silcox, and Annucci

Case 1:22-cv-00581-DNH-TWD Document 4 Filed 06/29/22 Page 76 of 175

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

Plaintiff claims that Pitoniak suspended the CAU because Plaintiff "questioned the illegal taking of 50% of [CAU] sales." *See* Am. Compl. at 75. Plaintiff also alleges that Vanni, Porter, and Silcox, refused to process purchase orders, membership dues, and callouts and that Schenk authorized the suspension of the CAU because Plaintiff filed grievances related to the "illegal seizure of [his] property" and grievances "necessary to safeguard CAU's funds." *See id.* at 75-79. Plaintiff also claims that Annucci retaliated against him because Annucci failed to remedy the constitutional violations after being informed of Defendants' "embezzlement scam." *See id.* at 80.

At this juncture, Plaintiff has sufficiently plead a retaliation claim against Pitoniak, Schenk, Vanni, Porter, and Silcox to require a response. *See Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 731 (W.D.N.Y. 2015) (theft of the plaintiff's commissary may be construed as an adverse action). In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

A different conclusion is reached however, with respect to the retaliation claim against Annucci. Courts in this District have held that letters to supervisors and his responses (via his subordinates) do not satisfy the personal involvement requirement. *DeMeo v. Koenigsmann*, No. 11 Civ. 7099, 2015 WL 1283660, at \*16 (S.D.N.Y. Mar. 20, 2015) (holding that prisoner letters sent to Dr. Koenigsmann, which were referred to and responded to by subordinates, did not establish Koenigsmann's personal involvement; *see also Yearney v. Sidorowicz*, No. 13 Civ. 3604, 2014 WL 2616801, at \*9 (S.D.N.Y. June 10, 2014) (reasoning that Dr. Koenigsmann's subordinate, writing on his behalf, was insufficient to establish Dr. Koenigsmann's personal involvement); *see also Brantley v. Fischer*, No. 12-CV-1051, 2013 WL 5466790, at \*9 (N.D.N.Y. Sept. 30, 2013) (holding that the receipt of a letter by Koenigsmann's subordinate which stated that, "Dr. Koenigsmann, Chief Medical Officer, has asked me to respond to your recent letter concerning your health care issue," was insufficient to establish supervisory liability).

**\*9** Accordingly, Plaintiff's retaliation claim against Annucci is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Free Speech

Plaintiff claims that Porten and Kelsey violated his right to freely speak against "DOCCS' pro-homosexual agenda." *See* Am. Compl. at 25, 56. Plaintiff also contends that Vanni violated his right to speak on behalf of the CAU and that Silcox "undermind[ed] his right to speak out against the unlawful and unreasonable seizure of [his] property." *See id.* at 78-79.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "Because of security concerns inherent in correctional facilities, the First Amendment's protection of communication is not without restriction." *Pitsley v. Ricks*, No. 9:96–CV–0372 (NAM/ DRH), 2000 WL 362023, at \*4 (N.D.N.Y. March 31, 2000) (citing *Morgan v. LaVallee*, 526 F.2d 221, 225 (2d Cir. 1975)). A prisoner's right to free speech is more limited than the right of a non-prisoner, but still any restrictions on the prisoner's First Amendment rights must be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

"In order to state a claim for deprivation of a constitutional right to communication, an inmate must make some showing of prejudice or actual injury as a result of the prison officials' conduct." *Pitsley*, 2000 WL 362023, at \*3 (citation omitted). "[P]laintiffs who allege a violation of their right to free speech must prove that (1) defendants silenced him or (2) 'defendant[s'] actions had some actual, non-speculative chilling effect' on his speech." *Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008) (citing *inter alia, Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002)).

Here, Plaintiff has not plead that he suffered "prejudice or actual injury." Indeed, throughout the Amended Complaint, Plaintiff claims that he repeatedly and continually voiced his objections to DOCCS' policies and filed several complaints regarding staff behavior with numerous grievances and written correspondence. Thus, as presently plead, the Amended Complaint does not suggest that Defendants "chilled his speech or otherwise prevented him from speaking." *See Williams*, 535 F.3d at 78; *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ("[w]here a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech.") (citation omitted).

Accordingly, Plaintiff's First Amendment free speech claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Freedom to Petition

Plaintiff alleges that Annucci, Bellamy, and Mallozzi violated his First Amendment right to petition the government because the grievance process is "corrupt," "irreparably biased," and "operated as a dead end." *See* Am. Compl. at 27-28, 33, 45-46, 53, 60-61.

**\*10** It is well-established that a prison inmate has no constitutional right of access to an internal grievance process. *Rhodes v. Hoy*, No. 9:05-CV-0836 (FJS/DEP), 2007 WL 1343649, at \*6 (N.D.N.Y. May 5, 2007); *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at \*3 (N.D.N.Y. May 4, 2005) ("[P]articipation in an inmate grievance process is not a constitutionally protected right."); *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at \*3 (S.D.N.Y. Mar. 29, 2001) (holding that "inmate grievance procedures are not required by the Constitution" and therefore failure to see it that grievances are properly processed does not create a claim under Section 1983). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

Accordingly, Plaintiff's First Amendment freedom to petition claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Free Exercise of Religion

The law related to First Amendment Free Exercise Clause was discussed in the December Order and will not be restated herein. *See* Dkt. No. 4 at 11-12. In the December Order, the Court dismissed Plaintiff's First Amendment claims holding:

Plaintiff [ ] alleges that Venditti and Delfavero refused to allow Plaintiff to attend a religious service and denied Plaintiff a religious meal on November 2, 2015 violating Plaintiff's First Amendment rights. Compl. at 4-6. As presently plead, the Complaint lacks facts suggesting that Plaintiff's religious beliefs were "sincerely held."

Moreover, Plaintiff has not plead facts establishing that defendants created a substantial burden on his religion or prevented him, in other ways, from practicing his religion. The Complaint was filed in November 2018, nearly three years after the alleged incidents, and is conspicuously devoid of references to any other violations to Plaintiff's religious freedoms before or after the incidents in November 2015. The isolated incidents on November 2, 2015 "are not representative of larger, systematic deprivations [and] are constitutionally de minimis and do not rise to a level sufficient to support a First Amendment claim." *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/DEP), 2016 WL 3882530, at \*4 (N.D.N.Y. May 31, 2016) (citation omitted); *see also Williams v. Weaver*, No. 9:03-CV-0912 (LEK/GHL), 2006 WL 2794417, at \*5, n. 29 (N.D.N.Y. Sept. 26, 2006) (granting the defendant's motion for judgment on the pleadings with respect to prisoner's First Amendment free-exercise claim that defendant caused prisoner to miss two weekly religious services); *Cancel v. Mazzuca*, 205 F.Supp.2d 128, 142 (S.D.N.Y. 2002) (granting defendant's Rule 12(b)(6) motion to dismiss prisoner's First Amendment free-exercise claim that defendant "prevented him, on one occasion, from attending a religious service"); *Gill v. DeFrank*, 8 Fed. App'x 35, 37 (2d Cir. 2001) (affirming lower court dismissal of First Amendment claim holding "missing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion."); *see Butler v. Hogue*, No. 9:08-CV-0264 (GLS/DRH), 2010 WL 4025893, at \*4 (N.D.N.Y. Feb. 4, 2010) (dismissing First Amendment claim based upon allegations that the plaintiff missed two of six meals in a two day period, with no other complaints of prior problems "before, or after, during his tenure at Upstate.").[14]

Dkt. No. 4 at 14-15.

[14]     The Court also dismissed the First Amendment religious claims against Graham for failure to plead personal involvement for purposes of § 1983. *See* Dkt. No. 4 at 13.

**\*11** In the Amended Complaint, Plaintiff, a Rastafari "since birth," clearly identifies and explains his religious beliefs. *See generally*, Am. Compl. Accordingly, at this juncture, Plaintiff has sufficiently alleged that he held a sincere religious belief.

### a. Graham, Tomandl, Venditti,
### Delfavero, WC Doe #1, and Porten

"[P]risoners have a constitutional right to participate in congregate religious services." *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) (citations omitted). While the Second Circuit has accorded prison officials great deference in the administration and "responsibility of maintaining order in prisons, ... prisoners should be afforded every reasonable opportunity to attend religious services, whenever possible." *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989) (citations omitted).

In the Amended Complaint, Plaintiff asserts the following Free Exercise claims related to incidents that occurred in November 2015 and December 2015:

- Graham's failure to release Plaintiff from the SHU on October 30, 2015 resulted in Plaintiff being falsely identified as a "Jew" and a violation of Plaintiff's constitutional right to practice his religion;

- Tomandl, Venditti, and Delfavero refused to allow Plaintiff to attend the Transfiguration Day service and denied him the opportunity to partake in the Transfiguration Day meal, as an alternative means of observing the holiday;

- Plaintiff claims that Graham and WC John Doe #1 violated his right to the free exercise on December 27, 2015 because he was afforded only five minutes to worship in the chapel; and

- Graham and Porten threatened Plaintiff with SHU confinement if he participated in Rastafari services or answered questions from the "Brethren."

*See* Am. Compl. at 16, 18-20, 22-23, 27, 31; Compl. at 17-18.

At this juncture, Plaintiff has sufficiently plead facts suggesting that a pattern and policy of discrimination and interference with his religious rights was prevalent at Auburn C.F. in November and December 2015. *See Bass v. Grottoli*, No. 94 CIV. 3220, 1995 WL 565979, at *4 (S.D.N.Y. Sept. 25, 1995) (allowing the plaintiff to proceed with First Amendment claim that alleged a pattern of anti-Semitic harassment and deliberate interference with religious services or instruction). Accordingly, Graham, Venditti, Delfavero, WC John Doe #1, and Porten are directed to respond to

Plaintiff's First Amendment Free Exercise claims. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

A different conclusion is reached however, with regard to Plaintiff's First Amendment Free Exercise claims against Tomandl. Plaintiff summarily states that he wrote to Tomandl and that he did not receive a response. *See* Am. Compl. at 16-17. The Second Circuit has cautioned against dismissing claims for failure to allege personal involvement without granting leave to amend where the plaintiff may allege that an official failed to respond to a letter of complaint. *Grullon v. City of New Haven,* 720 F.3d 133, 141 (2d Cir. 2013) (holding that a prisoner's letter of complaint sent to a prison warden "at an appropriate address and by appropriate means" would suffice to state facts plausibly suggesting personal involvement). While cognizant of *Grullon*, the Court finds that, as presently plead, Plaintiff has failed to establish that Tomandl was personally involved in any constitutional deprivation. The Amended Complaint lacks facts suggesting where the letter to Tomandl was sent or by what means the letters were forwarded. Without more, the allegations are not enough to allege that the Tomandl was personally involved in violations of Plaintiff's First Amendment rights. *See Bridgewater v. Taylor,* 698 F.Supp.2d 351, 359 (S.D.N.Y. 2010); *Guillory v. Cuomo,* 616 Fed. App'x 12, 14 (2d Cir. 2015) (summary order).

### b. PG James Doe, Sgt. Doe, and WC Doe #3

**\*12** Plaintiff claims PG James Doe, Sgt. Doe and WC Doe #3 violated his First Amendment rights when they refused to allow him to attend Rastafari services on December 25, 2016. *See* Am. Compl. at 43. Generally, the inability to attend religious services, for one day, does not result in a constitutional violation. *See Scott v. Uhler*, No. 9:16-CV-403 (TJM/CFH), 2017 WL 9511167, at *3–4 (N.D.N.Y. Feb. 8, 2017) (citing *Boomer v. Irvin*, 963 F.Supp. 227, 230-31 (W.D.N.Y. 1997)) (holding that the inability to attend Jumm'ah service on one day did not violate the plaintiff's constitutional rights). While Plaintiff sufficiently plead that other Defendants engaged in a pattern of First Amendment violations in November and December of 2015, as presently plead, the Amended Complaint lacks facts connecting PG James Doe, Sgt. Doe and/or WC Doe #3 to the aforementioned "pattern and practice" of interference with Plaintiff's religious rights. Moreover, the gap between the Christmas Day incident and the prior pattern is too tenuous to

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 79 of 175

2019 WL 2352981

suggest that the conduct is associated. Indeed, the Amended Complaint lacks facts related to violations of Plaintiff's free exercise rights between December 2015 and December 2016. Because Plaintiff has not plead facts suggesting that Defendants prevented him, in other ways, from practicing his religion on December 25, 2016, the isolated incident does not give rise to a constitutional violation.

Accordingly, Plaintiff's First Amendment free exercise claims against PG James Doe, Sgt. Doe, and WC Doe #3 are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### c. Bertonica

Plaintiff claims that he wrote to Bertonica, on two occasions, explaining that he could not eat any food known to be prepared or served by homosexuals and that Bertonica "failed to act" on his complaints. *See* Am. Compl. at 48, 55. "Prison authorities must accommodate the right of prisoners to receive diets consistent with their religious scruples." *Ford*, 352 F.3d at 597. "Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *McEachin v. McGuinnis*, 357 F.3d 204-05 (2d Cir. 2004).

At this juncture, Plaintiff has sufficiently plead a First Amendment Free Exercise claim against Bertonica to warrant a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion. *See Lewis v. Zon*, 920 F. Supp. 2d 379, 385 (W.D.N.Y. 2013) (holding that "it is the sincerity of plaintiff's beliefs and not their objective reasonableness that is relevant") (citing *Ford*, 352 F.3d at 588 (holding that " 'an individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious,' regardless of whether the belief is unorthodox, irrational or even demonstrably false")).

### d. Kelsey and McCarthy

Plaintiff makes conclusory allegations against Kelsey and McCarthy related to his First Amendment right to the free exercise of his religious beliefs. *See* Am. Compl. at 56-57,

59. Because the Amended Complaint lacks facts suggesting how Plaintiff's sincerely held religious beliefs were burdened by Kelsey or McCarthy, Plaintiff's First Amendment free exercise claims against Kelsey and McCarthy are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### e. Annucci, McKoy, Morris, and Guenette

Plaintiff claims that Annucci, McKoy, Morris, and Guenette violated his First Amendment religious rights because they "rewrote the Rastafari ecclesiastical doctrine" related to food preparation, handling, and distribution to "accommodate DOCCS' pro-homosexual doctrine." *See* Am. Compl. at 52, 57.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

**\*13** If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 80 of 175

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). [15]

[15]    The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing *Grullon*, 720 F.3d at 139).

The third *Colon* category provides for personal involvement where "the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom." *Colon*, 58 F.3d at 873. With respect to the third *Colon* factor, "[a] policy or custom can be explicitly established in an adopted rule or regulation, or may exist if the 'violative practice is persistent and widespread,' and if the acts of subordinate employees 'imply the constructive acquiescence of senior policy-making officials.' " *Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434, 453 (S.D.N.Y. 2004).

Liberally construing the pleading, particularly at this early juncture, Plaintiff's allegations clearly fall into the third *Colon* category. Plaintiff alleges that Defendants promulgated policies that rewrote "Rastafari Ecclesiastical doctrine and Divine Laws to exclude the sanctity of our food preparation, handling, and distribution" and, thus, violated his right to practice his chosen religion. *See Selah v. Fischer*, No. 9:09-CV-1363 (GLS/DEP), 2013 WL 5603866, at *2 (N.D.N.Y. Oct. 11, 2013) (allowing First Amendment claim against Morris with allegations that she promulgated the policies that allegedly infringed upon the plaintiff's right to practice his chosen religion; *see also Jones v. Annucci*, No. 16-CV-3516, 2018 WL 910594, at *9 (S.D.N.Y. Feb. 14, 2018) (allowing the plaintiff to proceed with First Amendment claim against the Deputy Superintendent of Program Services under third *Colon* factor because the plaintiff alleged that the Deputy

instituted the policy requiring Shia inmates to change their religion from "Islam" to "Shia") (citations omitted). At this juncture, Plaintiff has sufficiently plead a First Amendment Free Exercise claim against Defendants to warrant a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### 5. Establishment Clause

**\*14**  In addition to the free exercise claim, Plaintiff also claims that Defendants violated the Establishment Clause. The First Amendment's Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Establishment Clause guarantees that the government may not "coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a [state] religion." *Muhammad v. City of New York Dep't of Corrs.*, 904 F.Supp. 161, 197 (S.D.N.Y. 1995). "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Skoros v. City of New York*, 437 F.3d at 1, 39 (2d Cir. 2006) (citation omitted). A government practice satisfies the Establishment Clause, if it (1) has a secular purpose; (2) neither advances nor inhibits religion; and (3) avoids excessive entanglement between the state and religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612-13, *reh'g denied*, 404 U.S. 876 (1971). However, in the prison setting, this test is tempered by an inmate's free exercise rights and legitimate penological interests. *See Pugh v. Goord*, 571 F. Supp. 2d 477, 494 (S.D.N.Y. 2008) (citing *Turner v. Safley*, 482 U.S. 78 (1987)).

Plaintiff claims that Annucci, Graham, McKoy, Morris, and Guenette imposed "pro-homosexual policies" on the Rastafari community and that PG John Doe was an advocate for those policies. *See* Am. Compl. at 25, 26, 32-33, 37, 52. To wit, under Defendants' policies, homosexuals were permitted to handle, prepare, and distribute meals to Rastafarians during religious commemorations in violation of Rastafari tenets and the Establishment Clause. *See id.* at 32, 52.

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that Plaintiff's Establishment Clause claims against Annucci, McKoy, Morris, Guenette, Graham, and PG John Doe survive sua sponte review and require a response. In so ruling, the Court

Case 1:22-cv-00581-DNH-TWD Document 4 Filed 06/29/22 Page 81 of 175

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### D. Fourth Amendment

Plaintiff claims that Schenk, Vanni, Porter, Silcox, Annucci, and McCarthy illegally seized his property in violation of the Fourth Amendment. *See* Am. Compl. at 77, 79, 80, 81.

While inmates do not retain the full range of constitutional rights that unincarcerated individuals enjoy, they do retain "some Fourth Amendment rights upon commitment to a correctional facility." *Bell v. Wolfish*, 441 U.S. 520, 558–60 (1979). "Since the exigencies of prison life authorize officials indefinitely to dispossess inmates of their possessions without specific reason, any losses that occur while the property is in official custody are simply not redressable by Fourth Amendment litigation." *Hudson v. Palmer*, 468 U.S. 517, 539 (1984). Personal effects of inmates are routinely searched, seized, and placed in official custody. *Id.* at 540 (holding that claims related to missing property "have long been redressable in tort" and whether those remedies are "adequate" is a question for the "Takings and Due Process Clauses.")

Plaintiff's claim that his "membership dues" were unreasonably seized by Defendants does not give rise to a Fourth Amendment claim. *See Jackson v. SCI-Camp Hill*, No. 1:11-CV-1135, 2012 WL 3990888, at *6 (M.D. Pa. Sept. 11, 2012), *aff'd sub nom. Jackson v. SCI Camp Hill*, 530 F. App'x 150 (3d Cir. 2013) ("[C]ourts have [ ] refused to recognize an inmate's claim that the seizure of money from his inmate account violated the Fourth Amendment[.]") (collecting cases); *see also Gardner v. Rogers State Prison*, No. CIV. A. CV608-016, 2009 WL 29572, at *5 (S.D. Ga. Jan. 5, 2009) ("Even accepting as true Plaintiff's allegation that $ 1 was taken from his inmate reserve account, he does not state a valid Fourth Amendment cause of action.").

Accordingly, Plaintiff's Fourth Amendment claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### E. Eighth Amendment

**\*15** The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d

118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). "To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Id.* (citation omitted). "[The inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).

With respect to the subjective element, plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " *Jolly*, 76 F.3d at 480 (citation omitted). "To constitute deliberate indifference, '[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety.' " *Walker*, 717 F.3d at 125 (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

### a. Venditti and Delfavero

Plaintiff claims that Venditti and Delfavero placed him at "unreasonable risk of substantial harm" when they intentionally mislabeled Plaintiff as "Jewish." *See* Am. Compl. at 30. While Plaintiff alleges that being "branded" Jewish endangered his life, health and well being "in a way no less significant than if they had called me an informer," *see* Am. Compl. at 21, he fails to allege that he suffered any actual physical injury, i.e., that he was actually attacked or assaulted. Fear of danger, without more, is insufficient to establish a "sufficiently serious" injury. *See Best v. City of N.Y.*, No. 11 CIV. 4475, 2012 WL 5458054, at *7 (S.D.N.Y. Nov. 8, 2012) (dismissing the complaint where the plaintiff alleged that he feared his life was in danger because he was not held in protective custody, but did not allege that he was attacked or injured as a result of being denied protective custody status); *see also Newman v. Duncan*, No. 04-CV-395 (TJM/DRH), 2007 WL 2847304, at *5 (N.D.N.Y. Sept. 26, 2007) ("The law is clear that an inmate must demonstrate an 'actual injury' when alleging a constitutional violation."); *Cruz v. Hillman*, No. 01 CIV. 4169, 2002 WL 31045864, at *8 (S.D.N.Y. May 16, 2002) (citations omitted) ("Under the relevant case law, fear of assault does not constitute a 'sufficiently serious' injury sufficient to state a claim under

the Eighth Amendment."). "A general, conclusory statement that an inmate fears for his safety, without more, is insufficient information from which an inference can be drawn that such inmate's safety is actually at risk." *Wilson v. Campbell*, No. 06-CV-0175 (GLS/RFT), 2008 WL 902187, at *5 (N.D.N.Y. Mar. 31, 2008) (citation omitted). For the reasons set forth herein, Plaintiff's Eighth Amendment claims against Venditti and Delfavero are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Graham, Yard Supervisor Jay Doe, WC Doe #2

The Second Circuit has found that prisoners claiming detention under very cold temperatures may establish an Eighth Amendment claim of cruel and unusual punishment. *See, e.g., Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) (reinstating Eighth Amendment claims of frigid temperatures dismissed by district court); *Channer v. Mitchell*, 43 F.3d 786, 788 (2d Cir. 1994) (denying motion to dismiss where prisoner alleged that officer had required him to spend two nights in a holding cell without bedding). Exposure to the "bitter cold of winter in northern-New York State" for "a substantial period of time" may constitute an Eighth Amendment claim. *See Corseli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988); *Ifill v. Goord*, No. 03-CV-355, 2012 WL 176492, at *3 (W.D.N.Y. Jan. 20, 2012) (holding that "freezing temperatures can constitute the basis of an inhumane conditions of confinement claim."). "It is true that some district courts in this circuit have found that allegations of exposure to cold temperatures for short periods of time, in conjunction with a deprivation of clothing and/or bedding, are insufficient to state a claim under the Eighth Amendment." *Nelson v. Plumley*, No. 9:12-CV-0422 (TJM/DEP), 2013 WL 1121362, at *10 (N.D.N.Y. Jan. 24, 2013) (collecting cases).

 *16 Here, Plaintiff claims that Defendants forced him to remain outside for one hour in "minus twenty degrees below zero." *See* Am. Compl. at 23. The Amended Complaint however, lacks any facts suggesting that Plaintiff suffered any physical injury or that he sought or required medical treatment. Further, while he states that he was exposed to "bone chilling cold," Plaintiff does not contend that he was forced outside without proper clothing or that he was deprived of a jacket or coat.

For the reasons set forth herein, Plaintiff's Eighth Amendment claims against Graham, Yard Supervisor Jay Doe, and WC

Doe #2 are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### c. Bertonica

Plaintiff claims that Bertonica "forced" him to miss twenty medical meals causing "unknown damages." *See* Am. Compl. at 55. The Eighth Amendment requires that prisoners be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citation omitted); *Brown v. Eagen*, No. 08–CV-0009 (TJM/DRH), 2009 WL 815724, at *10 (N.D.N.Y. Mar. 26, 2009) (citations omitted); *Midalgo v. Bass*, No. 03–CV–1128 (NAM/RFT), 2006 WL 2795332, at *11 (N.D.N.Y. Sept. 26, 2006) (citations omitted). "Depriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment." *Moncrieffe v. Witbeck*, No. 86-CV-253 (NAM), 2000 WL 949457, at *6 (N.D.N.Y. June 29, 2000) (citing *Robles*, 725 F.2d at 15). Where a particular diet is medically required, denial of a smaller number of meals may be sufficient in some circumstances. *See Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 180 (N.D.N.Y. 1996) (citing *Robles*, 725 F.2d at 15-16).

Here, Plaintiff does not allege that his decision to refuse medical meals caused any adverse impact upon his health. Rather, Plaintiff asserts, in conclusory terms, that the condition caused "unknown damage." Moreover, Plaintiff has not plead that he was denied any food or meals. Accordingly, Plaintiff's Eighth Amendment claims against Bertonica are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F. Ninth Amendment

Plaintiff claims that Annucci, Stewart, Rose, Bertonica, and Pitoniak violated the Ninth Amendment. *See* Am. Compl. at 76. The Ninth Amendment to the United States Constitution provides, "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const., amend. IX. Courts from within the Second Circuit have recognized the inapplicability of the Ninth Amendment to prisoner Section 1983 claims. *Muniz v. Goord*, No. 9:04-CV-0479 (TJM/GHL), 2007 WL

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 83 of 175

2019 WL 2352981

2027912, at *9 (N.D.N.Y. July 11, 2007) (citations omitted); *Newman v. Annucci*, No. 3:17-CV-0918 (LEK/DEP), 2018 WL 4554494, at *8 (N.D.N.Y. Sept. 21, 2018) (holding that the Ninth Amendment "is not an independent source of constitutional rights that may be asserted in a civil rights action ... [and] cannot serve as the basis for a § 1983 claim because such a claim must be based on the violation of a right guaranteed by the U.S. Constitution or federal law.").

According, Plaintiff's Ninth Amendment claims are dismissed.

### G. Violations of DOCCS' Directives

Construing the Amended Complaint liberally, Plaintiff alleges that Annucci violated DOCCS' Directive #4202 because he "sought to establish tenets and practices of Rastafari." *See* Am. Compl. at 26. Plaintiff also claims that Venditti and Delfavero failed to adhere to DOCCS' procedures and that Pitoniak, Schenk, Vanni, Porter, Silcox, Annucci, and McCarthy violated DOCCS' Directive #4760. *See id.* at 19, 66-75.

**\*17** A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations. *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, *6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim) (citing *Fluent v. Salamanca Indian Lease Auth.*, 847 F.Supp. 1046, 1056 (W.D.N.Y. 1994)) (holding that section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles); *see also McAllister v. Call*, No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *11 (N.D.N.Y. Oct. 29, 2014) ("A section 1983 claim is not the appropriate forum in which to seek review of a violation of unspecified DOCCS rules, regulations and procedures.") (citation omitted).

Accordingly, Plaintiff's constitutional claims based upon the failure to adhere to DOCCS' directives are dismissed.

### H. Fourteenth Amendment

#### 1. Equal Protection

The law related to the Equal Protection Clause was discussed in the December Order and will not be restated herein. *See* Dkt. No. 4 at 15-16. In the December Order, the Court held:

> Here, Plaintiff claims that Rastafarians represent a "minority religious group" and are "viewed as primitive" and subjected to discrimination. Compl. at 6-7. Plaintiff failed to identify any similarly situated inmates who were treated differently based upon their religious beliefs. Indeed, the Complaint lacks any facts supporting this conclusion and thus, fails to state an equal protection claim. *See Lloyd v. City of New York*, 43 F. Supp. 3d 254, 265 (S.D.N.Y. 2014) (finding that the plaintiffs failed to plead an equal protection claim based upon religion because nothing in the complaint suggested that similarly-situated inmates of other faiths were treated more favorably than the plaintiffs, or that the plaintiffs were singled out for discriminatory treatment on account of their religion).

Dkt. No. 4 at 15-16.

#### a. Tomandl, Venditti, Delfavero, Graham, WC Doe #1, WC Doe #2, Yard Supervisor Jay Doe, PG James Doe, Sgt. Doe, and WC Doe #3

In the Amended Complaint, Plaintiff asserts the following equal protection claims:

- Tomandl allowed Christian and Muslim SHU inmates who wrote, pre-SHU release letters, to attend their religious services upon release;

- Venditti and Delfavero "added" similarly situated "new arrivals" of Protestant, Catholic, and Muslim faiths to the "Feed-up list of their faith" while Plaintiff's "Brethren" was prevented from delivering the Transfiguration Day sacramental meal;

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 84 of 175

2019 WL 2352981

• On December 27, 2015, Graham, WC Doe #1, and Tomandl allowed Protestant and NOGE groups to worship for over one hour and forty five minutes while Plaintiff was "walked in and out of the chapel;"

• On February 14, 2016, Graham, WC Doe #2, and Yard Supervisor Jay Doe allowed only five Rastafari inmates into the chapel at a time while Protestant inmates were allowed in the chapel "en masse;" and

• Similarly situated Protestant and NOGE prisoners were allowed to attend worship and study on December 25, 2016 while PG James Doe, Sgt. Doe, and WC Doe #3 deprived Plaintiff of the same opportunity.

*See* Am. Compl. at 17, 29, 30, 31, 32, 43, 44.

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court will require a response to the aforementioned equal protection claims from Venditti, Delfavero, Graham, WC Doe #1, WC Doe #2, Yard Supervisor Jay Doe, PG James Doe, Sgt. Doe, and WC Doe #3. *See Scott v. Uhler*, No. 9:16-CV-403 (TJM/CFH), 2018 WL 3130670, at *5 (N.D.N.Y. May 24, 2018) (holding that the plaintiff sufficiently alleged a claim of discrimination in violation of the Equal Protection clause with facts suggesting that similarly-situated inmates were permitted to attend religious services on December 25, 2015 while Muslim inmates intentionally were denied the right to hold and attend services) (citing *Guillory v. Fischer*, No. 9:12-CV-00280 (LEK), 2013 WL 1294626, at *16 (N.D.N.Y. Mar. 7, 2013)) (finding that the plaintiff sufficiently pleaded an equal protection claim based upon the denial of Jewish services on one day because Jewish, Muslim, Catholic and Protestant inmates are similarly situated in that they are all religious groups seeking to utilize prison facilities to hold religious services, and Plaintiff alleges that the Defendants facilitated the use of prison facilities for all of the other religious groups except the Jewish inmates for purely discriminatory reasons). This is not a ruling on the merits and the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment. For the reasons set forth in Part IV(C)(1)(4)(a) *supra*, the equal protection claim against Tomandl is dismissed.

### b. Pitoniak, Vanni, Porter, Annucci, and McCarthy

**\*18** Plaintiff claims that Pitoniak, Vanni, and Porter discriminated and treated the CAU differently than "similarly situated organizations." *See* Am. Compl. at 76-80. Plaintiff also asserts that Annucci and McCarthy failed to protect the CAU "on par with all other similarly situated organizations and individuals" from discrimination and unequal treatment. *See* Am. Compl. at 80-81. As discussed in the December Order, the failure to identify similarly situated individuals who were treated differently is fatal to an equal protection claim. Accordingly for the reasons set forth in the December Order, the equal protection claims against Pitoniak, Vanni, Porter, Annucci, and McCarthy are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Due Process

To successfully state a claim under § 1983 for denial of due process, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351–52 (2d Cir. 1996). "A prisoner's liberty interest is implicated by prison discipline," "only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' ...." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (citations omitted).

### a. Mallozzi

Plaintiff claims that Mallozzi made false statements during the investigation into his grievances in violation of his due process rights. *See* Am. Compl. at 44, 60-61. It is well-established that prison grievance procedures do not create a due-process-protected liberty interest. *See, e.g., Mateo v. Fischer*, 682 F.Supp.2d 423, 431 n. 3 (S.D.N.Y. 2010); *Mastroianni v. Reilly*, 602 F.Supp.2d 425, 437 (E.D.N.Y. 2009); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 342 (S.D.N.Y. 2003). Thus, Mallozzi's failure to properly respond to his grievances did not violate Plaintiff's constitutional rights. *See Mimms v. Carr*, No. 09-CV-5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that prison

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

grievance procedures do not create a due-process-protected liberty interest.") (citing cases).

Accordingly, Plaintiff's due process claims against Mallozzi are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Pitoniak, Schenk, Vanni, Porter, Silcox, Annucci, and McCarthy

Plaintiff claims that Pitoniak, Schenk, Vanni, Porter, Silcox, Annucci, and McCarthy failed to adhere to Directive #4760, in violation of his due process rights. *See* Am. Compl. at 82. As discussed *supra*, section 1983 claims based on violations of prison rules are subject to dismissal. Thus, to the extent that Plaintiff claims that his due process rights were violated because of a liberty interest created by DOCCS' directives, that claim is dismissed. *See Turner v. Sidorowicz*, No. 12-CV-7048, 2014 WL 641454, at *10 (S.D.N.Y. Feb. 18, 2014) (citing *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) ("[R]egardless of state procedural guarantees, the only process due an inmate is that minimal process guaranteed by the Constitution[.]")).

### c. Kelsey and McCarthy

After the disciplinary hearing, Kelsey found Plaintiff guilty of missing meals and ordered him to pay a $ 5.00 surcharge and $ 10.35 charge for the cost of the meals. *See* Am. Compl. at 49, 51. A "surcharge", without more, is not an atypical hardship. *See Edwards v. Horn*, No. 10 CIV. 6194, 2012 WL 473481, at *9 (S.D.N.Y. Feb. 14, 2012) (holding that a $ 25 fine implicates the requisite liberty interest to state a due process claim). Because Plaintiff has failed to plead that he was subjected to any disciplinary confinement or otherwise deprived a valid liberty interest, his Fourteenth Amendment Due Process claims related to the disciplinary hearing are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure state a claim upon which relief may be granted. *See id.* ("Because of the absence of any protected liberty interest [...] any failures by the hearing officer to conduct a thorough investigation [...] do not support a cause of action for the denial of due process.") (citation omitted).

### I. New York State Law and Constitutional Claims

#### 1. Corrections Law

**\*19** Plaintiff asserts state law claims, parallel to his free exercise claims, under New York Correction Law §§ 112 and 610. Section 610 guarantees inmates "the free exercise and enjoyment of religious profession and worship" while incarcerated. *See May v. Donneli*, No. 9:06-CV-437 (GLS/RFT), 2009 WL 3049613, at *4 (N.D.N.Y. Sept. 18, 2009). Similarly, under Correction Law § 112, the Commissioner is empowered to promulgate regulations pertaining to religious service and ministrations. *See U. S. ex rel. Washington v. Fay*, 217 F. Supp. 931, 933, n. 1 (S.D.N.Y. 1963). Because the First Amendment free exercise and establishment law claims survive review, the Court shall exercise supplemental jurisdiction over the corresponding state law claims.

Plaintiff also claims that McCarthy and Annucci violated Correction Law § 116, which vests the Commissioner with the broad power to manage the fiscal affairs of correctional facilities, including inmate accounts. *See Nardi v. Le Fevre*, 235 A.D.2d 602, 603 (1997). Having dismissed all constitutional claims for monetary damages against Annucci and McCarthy, in their individual capacity, related to the CAU, the Court declines in its discretion to retain supplemental jurisdiction over Plaintiff's state law claims against McCarthy and Annucci related to the CAU. *See 28 U.S.C. § 1367(c)(3); Doyle v. Suffolk Cty.*, 786 F.2d 523, 525 (2d Cir. 1986)* ("With the federal claim failing at the outset of the litigation, the District Judge properly declined to exercise pendent jurisdiction over the state law claims.").

#### 2. Constitutional Claims

Plaintiff contends that Defendants violated Article I, §§ 1,3, 5, 6, 8, 9, 11 of the New York State Constitution. In light of the dismissal of Plaintiff's federal claims for deliberate indifference, due process, freedom of speech, and freedom to petition, the Court declines to exercise supplemental jurisdiction over the claims related to violations of Article I, Sections 5, 6, 8, and 9 of the New York State Constitution. *See* 28 U.S.C. § 1367(c)(3); *Valencia v. Sung M. Lee*, 316 F.3d 299, 306 (2d Cir. 2003).

With respect to Plaintiff's claims pursuant to Article I, §§ 1, 3, and 11, while New York recognizes a private cause

Hamilton v. New York State Department of Corrections..., Not Reported in Fed....

2019 WL 2352981

of action for violations of the New York State Constitution, *Brown v. State*, 89 N.Y.2d 172, 192, 652 N.Y.S.2d 223, 235 (1996), that cause of action is only available, however, "where the plaintiffs have no alternative remedies that would protect their interests." *Vilkhu v. City of New York*, No. 06-CV-2095, 2008 WL 1991099, at *8 (E.D.N.Y. May 5, 2008) (citations omitted). Thus, because Plaintiff has viable First and Fourteenth Amendment Equal Protection claims under section 1983, Plaintiff's state law claims are dismissed because there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983. *Flores v. City of Mount Vernon*, 41 F.Supp.2d 439, 446-47 (S.D.N.Y. 1999).

**J. Prospective Injunctive Relief**

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. Under this doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities); *see also Inside Connect, Inc. v. Fischer*, No. 13-CV-1138, 2014 WL 2933221, at *7 (S.D.N.Y. June 30, 2014) (dismissing the plaintiff's requests for declaratory judgment related to the defendants' policy of refusing delivery of Inmate News because the defendants were no longer refusing to deliver Inmate News) (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)). "[I]n order to warrant the court's consideration, the plaintiff must be seeking prospective relief from an 'ongoing violation of federal law' which affects him directly, as opposed to others." *Ruggiero v. Brian Fischer, Comm'r, No.* 15-CV-00962, 2017 WL 6999859, at *2 (W.D.N.Y. Aug. 25, 2017), *report and recommendation adopted sub nom.*, 2018 WL 488949 (W.D.N.Y. Jan. 20, 2018) (citations omitted).

**\*20** In the Amended Complaint, Plaintiff seeks an order directing Annucci and McKoy to provide at least one hour of worship and study. *See* Am. Compl. at 37. Because the Court has directed a response to Plaintiff's claim that his First Amendment right to the free exercise of his religion was

violated on December 27, 2015 because he was afforded only five minutes to worship in the chapel, the corresponding claim for prospective injunctive relief survives as well.

A different conclusion is reached however, with respect to the remaining requests for prospective injunctive relief. Plaintiff also seeks an order preventing Auburn's administration from allowing "general callouts" of all registered Rastafaris. *See* Am. Compl. at 37-38. However, Plaintiff fails to explain how this injunction is necessary to prevent irreparable injury to his constitutional rights as alleged in the Amended Complaint. Because this claim for injunctive relief is unrelated to the constitutional claims set forth in the Amended Complaint, it is dismissed. *See Betlewicz v. Div. of New York State Police*, No. 1:12-CV-1158 (GLS/RFT), 2013 WL 2181248, at *3 (N.D.N.Y. May 20, 2013).

Finally, with respect to Plaintiff's request for an order preventing Auburn's administration from utilizing the "penalty box" for callouts in periods of inclement weather, as discussed *supra*, Plaintiff's Eighth Amendment claim related to the "penalty box," was dismissed. Accordingly, the corresponding claim for injunctive relief is also dismissed. *See Spiteri v. Russo*, No. 12-CV-2780, 2013 WL 4806960, at *44 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom. Spiteri v. Camacho*, 622 Fed. App'x 9 (2d Cir. 2015); *see also Rossi v. Fischer*, No. 13-CV-3167, 2015 WL 769551, at *15 (S.D.N.Y. Feb. 24, 2015).

**K. Preliminary Injunctive Relief**

In the Amended Complaint, Plaintiff also seeks preliminary injunctive relief. Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "The district court has wide discretion in determining whether to grant a preliminary injunction." *Id.* at 511. To obtain preliminary injunctive relief, a plaintiff must demonstrate irreparable harm and either a substantial likelihood of success on the merits of the claim, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *Citigroup Global Markets, Inc. V. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). However, when the moving party seeks a "mandatory preliminary injunction that alters the status quo by commanding a positive act," the burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011). "A mandatory preliminary injunction

Case 1:22-cv-00581-DNH-TWD Document 4 Filed 06/29/22 Page 87 of 175
Hamilton v. New York State Department of Corrections..., Not Reported in Fed....
2019 WL 2352981

'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.' " *Id.* (quoting *Citigroup*, 598 F.3d at 35 n.4).

Generally an alleged violation of a constitutional right creates a presumption of irreparable harm. *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). However, speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983). Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that "absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Bisnews AFE (Thailand) Ltd. v. Aspen Research Group Ltd.*, 437 Fed. App'x 57, 58 (2d Cir. 2011) (quoting *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)); *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238, at *2 (S.D.N.Y. June 27, 1994) ("It is well settled that an allegation of the mere possibility of irreparable harm is insufficient to justify the drastic remedy of preliminary injunction.... A party who seeks the extraordinary remedy of a preliminary injunction must show the alleged irreparable harm to be imminent, not remote or speculative, and the alleged injury to constitute one that is incapable of being fully remedied by monetary damages." (citations omitted)). A finding of irreparable harm cannot be based solely on past conduct. *Haden v. Hellinger*, No. 9:14-CV-0318 (GLS), 2016 WL 589703 at *1 (N.D.N.Y. Feb. 11, 2016).

**\*21** Furthermore, the party seeking preliminary injunctive relief must establish a relationship between the alleged irreparable harm claimed and the conduct giving rise to the complaint. *See Candelaria v. Baker*, No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) (citations omitted*); see also Allen v. Brown*, No. 96-CV-1599 (RSP/GJD), 1998 WL 214418, at *4 (N.D.N.Y. Apr. 28, 1998) (denying request for injunctive relief where allegations in application for such relief were unrelated to claims asserted in the complaint and thus plaintiff "failed to establish either a likelihood of succeeding on the merits of his underlying claim, or sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward" the plaintiff). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825,

846-47 (1994)) (other citations omitted). Here, the injunction sought is mandatory, and thus the Court will use the "clear and substantial" showing of a likelihood of success standard.

Plaintiff requests the following preliminary injunctive relief: (1) an order directing Annucci to immediately reinstate DOCCS' policy mandating that food be prepared by a faith group member; (2) an order precluding Annucci from using disciplinary measures to "force" Plaintiff to consume food prepared or served by homosexuals; (3) an order directing Annucci to reinstate the policy requiring Rastafari "brethren" to serve as clerks to prepare callouts, etc.; (4) an order enjoining Annucci, McKoy, McCarthy, and Schenk from posting the Rastafari "Family Day Event" on the commissary buy sheet; (5) an order suspending all aspects of Annucci's and Mallozzi's IGP; (6) an order directing Annucci to reinstate the CAU; (7) an order preventing Annucci from collecting funds from the CAU pending a full and complete forensic audit; (8) an order preventing Annucci from dispersing the CAU funds; and (9) if Plaintiff should be transferred during the pendency of this lawsuit, an Order directing Annucci to transfer eight property bags containing Plaintiff's research, exhibits, books, and legal material with Plaintiff. *See* Am. Compl. at 61-64, 87-88.

The Court has thoroughly reviewed the Amended Complaint and requests for preliminary injunctive relief and finds that the requests are unrelated to the underlying claims that have survived this Court's review. Further, "the past allegations of misconduct stated in Plaintiff's Amended complaint, standing alone, are insufficient to support a finding of irreparable harm." *Ross v. Smith*, No. 9:18-CV-0039 (GLS/TWD), 2018 WL 5816301, at *2 (N.D.N.Y. Nov. 7, 2018). Thus, Plaintiff has not made any showing that he will suffer an injury that is neither remote nor speculative should the relief not be granted. Upon review, the Court finds that Plaintiff has failed to meet the heavy burden for a mandatory preliminary injunction. As a result, Plaintiff's requests for preliminary injunctive relief are dismissed.

**L. Doe Defendants**

Because Plaintiff asserts First and Fourteenth Amendment claims against corrections officers and officials whose names are not known to Plaintiff, service of process cannot be effected on them unless and until these individuals have been identified by name. If Plaintiff wishes to pursue his claims against WC John Doe #1, WC John Doe #2, Yard Supervisor Jay Doe, PG John Doe, PG James Doe, Sgt. Doe and/or WC John Doe #3, he must take reasonable steps to

ascertain through discovery the identity of those individuals. Upon learning the identities of the unnamed defendants, Plaintiff must amend the operative complaint to properly name those individuals as parties. If Plaintiff fails to ascertain the identity of the John Doe defendants so as to permit timely service of process, all claims against those individuals will be dismissed. [16]

[16] Rule 4 of the Federal Rules of Civil Procedure require that a party be served within 90 days of issuance of the summons, absent a court order extending that period. Fed. R. Civ. P. 4(m). The Court's local rules shorten the time for service from 90 days under Rule 4(m) to 60 days. N.D.N.Y. L.R. 4.1(b).

## V. CONCLUSION

**\*22 WHEREFORE**, it is hereby

**ORDERED**, that the Amended Complaint (Dkt. No. 15), and all exhibits annexed (Dkt. No. 1 at 15-28) thereto is accepted for filing and is deemed the operative pleading; and it is further

**ORDERED** that the Clerk of the Court shall amend the docket to add McKoy, Morris, Guenette, Stewart, Rose, Bellamy, Mallozzi, McCarthy, Schenk, Vanni, Bertonica, Kelsey, WC John Doe #1, WC John Doe #2, WC John Doe #3, Tomandl, Pino, PG John Doe, Porten, Sgt. Doe, Yard Supervisor Jay Doe, PG James Doe, Porter, Pitoniak, and Silcox as defendants herein; and it is further

**ORDERED** that the following claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) section 1983 claims for monetary damages against defendants in their official capacity; (2) claims against Rose, Stewart, and Pino (3) First Amendment retaliation claims against Graham and Annucci; (4) First Amendment claims related to freedom of speech and to petition; (5) First Amendment claims related to the free exercise of religious freedom against Tomandl, PG James Doe, Sgt. Doe, WC Doe #3, Kelsey, and McCarthy; (6) Fourth Amendment claims; (7) Eighth Amendment claims; (8) Ninth Amendment claims; (9) constitutional claims related to violations of DOCCS' directives; (10) Fourteenth Amendment equal protection claims against Tomandl, Pitoniak, Vanni, Porter, Annucci, and McCarthy; (11) Fourteenth Amendment due process claims;

(12) state law claims based upon Corrections Law § 116; and (13) New York State constitutional claims; it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) First Amendment retaliation claims against Bertonica, Pitoniak, Vanni, Porter, Schenk, and Silcox; (2) First Amendment claims related to the free exercise of religious freedom against Graham, Venditti, Delfavero, WC John Doe #1, Porten, Bertonica, Annucci, McKoy, Morris, and Guenette; (3) First Amendment Establishment Clause claims against Annucci, McKoy, Morris, Guenette, Graham, and PG John Doe; (4) Fourteenth Amendment equal protection claims against Venditti, Delfavero, Graham, WC Doe #1, WC Doe #2, Yard Supervisor Jay Doe, PG James Doe, Sgt. Doe, WC John Doe #3; and (5) corresponding state law claims; and it is further

**ORDERED** that DOCCS, Stewart, Rose, Bellamy, Mallozzi, McCarthy, Kelsey, Tomandl, and Pino are **DISMISSED** as defendants herein; and it is further

**ORDERED**, that upon receipt from Plaintiff of the documents required for service of process, the Clerk shall issue a summonses and forward them, along with copies of the Amended Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the summonses and Amended Complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that a response to the Amended Complaint be filed by the remaining defendants, or his counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**\*23 ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this

action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED** that Plaintiff shall take reasonable steps through discovery to ascertain the identity of Defendants WC John Doe #1, WC Doe #2, Yard Supervisor Jay Doe, PG John Doe, PG James Doe, Sgt. Doe and WC John Doe #3. **Plaintiff's failure to timely serve those Defendants will result in**

**dismissal** of the claims asserted against them and termination of those defendants from the action; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2352981

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 1747859
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Kyle G. DEROUSEAU; K.M.D., a minor, Plaintiffs,

v.

FAMILY COURT, WESTCHESTER
COUNTY; Judge Arlene (Gordon) Oliver;
Eva Bunting Smith, Esq.; Arnold Szherzrniak;
Jasmine Hernandez, Esq., Defendants.

21-CV-8716 (LTS)

|

Signed 05/31/2022

**Attorneys and Law Firms**

Kyle G. DeRouseau, Sleepy Hollow, NY, Pro Se.

K.M.D., Pro Se.

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

 **\*1** Plaintiff Kyle DeRouseau, who is appearing *pro se*, brings this action under 42 U.S.C. §§ 1983 and 1985.[1] He sues the Westchester County Family Court, the judge presiding over his Family Court proceedings, and the attorneys appointed to represent him and his minor child. Plaintiff seeks "full custody" of the minor child. By order dated May 19, 2022, the Court granted Plaintiff's request to proceed *in forma pauperis* (IFP), that is, without prepayment of fees.[2]

[1]    The Court concludes below that Plaintiff Kyle DeRouseau cannot represent his minor child and therefore refers to him as the sole Plaintiff.

[2]    This action was closed for Plaintiff's failure to timely respond to the Court's order directing him to file an IFP application but was later reopened when he did so. (ECF 6, 10.)

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see* Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

**BACKGROUND**

Plaintiff alleges the following facts. Plaintiff's claims arose between 2019 and 2021, in the Westchester County Family Court, where Judge Arlene Oliver is presiding over Plaintiff's child custody proceedings. Attorney Jasmine Hernandez was appointed to represent Plaintiff, and his minor child was represented first by court-appointed attorney Arnold Szherzrniak and later by attorney Eva Bunting Smith. Plaintiff brought several "contempt of court petitions," which the Family Court ignored. (ECF 1 at 5.) Unspecified "perjury has been also ignored." (*Id.*)

Plaintiff contends that the child's mother is "unfit" and "mentally ill," and that, as a result of the mother's "illness and fraud," the mother and child were evicted from their home. (*Id.*) Assistance was "ineffective and untimely," which "caus[ed] child to be removed from housing." (*Id.* at 6.)

Plaintiff continues to be "deprived of parental rights," which has allowed his child to be left with "an unfit parent." (*Id.* at 5.) Plaintiff has suffered "extreme stress and severe shoulder pain." (*Id.* at 6.) He seeks "sole custody and whatever the court deems fit." (*Id.*)

**DISCUSSION**

**A. Proceeding Pro Se**

Plaintiff brings this suit on his own behalf and also purports to bring suit on behalf of his minor child. A nonlawyer parent ordinarily cannot represent a child's interests *pro se*. *See* Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906

DeRouseau v. Family Court, Westchester County, Slip Copy (2022)

2022 WL 1747859

F.2d 59, 61 (2d Cir. 1990); *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005) (holding that it is "a well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action *pro se* in federal court on behalf of his or her child"). Minors "are entitled to trained legal assistance so their rights may be fully protected" and nonlawyer parents are not trained to represent competently the interests of their children. *Cheung*, 906 F.2d at 61. Moreover, "a district court has a duty to raise this issue *sua sponte*." *Thomas v. Astrue*, 674 F. Supp. 2d 507, 511 (S.D.N.Y. 2009). Plaintiff does not plead facts showing that he is an attorney, and he cannot pursue claims *pro se* on behalf of his child. The Court therefore dismisses K.M.D. as a plaintiff in this action. Any claims asserted on K.M.D.'s behalf are dismissed without prejudice.

**B. Eleventh Amendment Immunity**

**\*2** "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity ...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* Plaintiff names the Family Court, Westchester County, as a defendant. The Family Court, as a part of the New York State Unified Court System, is an arm of the State of New York. *Id.* at 368 (explaining that the Family Court is part of the New York State Unified Court System and "is unquestionably an 'arm of the State,' entitled to Eleventh Amendment sovereign immunity.").

New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Plaintiff's Section 1983 claims against the Family Court are therefore barred by the Eleventh Amendment and are dismissed for lack of jurisdiction.

**C. Judicial Immunity**

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations

of bad faith or malice cannot overcome judicial immunity." *Id.* (citations omitted). This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation ...." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). Moreover, injunctive relief is unavailable in an action against a judicial officer "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" her judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 9-10; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Here, Plaintiff asserts claims arising from Judge Oliver's decisions and actions (or failure to act) while presiding over Plaintiff's proceedings in Family Court. Because Plaintiff's claims relate to Judge Oliver's judicial acts, the judge is immune from suit for these claims. Moreover, although Plaintiff includes a conclusory allegation that her "decisions [were] made out of jurisdiction," the scope of a judge's jurisdiction is construed broadly, and such conclusory allegations do not show that the judge's judicial acts were taken in the absence of jurisdiction. Accordingly, the Court dismisses Plaintiff's claims under Section 1983 against Judge Oliver under the doctrine of judicial immunity, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) (claims dismissed because of judicial immunity are deemed frivolous for the purpose of the IFP statute, 28 U.S.C. § 1915).

**D. Claims Against Court-Appointed Counsel**

A claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties are therefore not generally liable under the statute. *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

**\*3** Absent special circumstances suggesting concerted action between an attorney and a state representative, *see Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)), an attorney's representation of a party does not constitute the degree of state involvement or interference necessary to establish a claim under Section 1983, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender. *See Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 324-25 (1981)); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (holding that legal aid organization ordinarily is not a state actor for purposes of Section 1983).

Moreover, in Family Court proceedings, "an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent." *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011) (collecting cases), *aff'd*, 485 F. App'x 500 (2d Cir. 2012); *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) (holding that a law guardian, like a public defender, acts according to the best interests of the client with "no 'obligation to the mission of the state.' ") *Id.* (relying on *Polk Cnty. v. Dodson*, 454 U.S. 312, 320 (1981)).

Plaintiff seeks to assert claims under Section 1983 against attorneys who were appointed to represent him and his child in the Family Court. Because these individuals do not qualify as state actors, Plaintiff cannot state a claim against these defendants under Section 1983. The Court therefore dismisses all claims brought against Defendants Jasmine Hernandez, Eva Bunting Smith, and Arnold Szherzrniak for failure to state a claim. 28 U.S.C. § 1915(e)(B)(ii).

**E. 42 U.S.C. § 1985**

To state a conspiracy claim under 42 U.S.C. § 1985, a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007). Furthermore, the conspiracy must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Palmieri v. Lynch*, 392 F.3d 73, 86 (2d Cir. 2004) (quotation omitted).

"[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). Claims under Section 1985 must be alleged "with at least some degree of particularity" and must include facts showing that the "overt acts which defendants engaged in ... were reasonably related to the promotion of the claimed conspiracy." *Hernandez v. Goord*, 312 F. Supp. 2d 537, 546 (S.D.N.Y. 2004).

Plaintiff's complaint makes no allegation of racial discrimination or discrimination based on his membership in a particular class. *Palmieri*, 392 F.3d at 86. He does not plead any facts about his race or that of any other party, or plead any facts suggesting that his claims arise from any class-based discrimination. Plaintiff also makes no factual allegations suggesting the existence of a conspiracy. The Court therefore dismisses Plaintiff's claim under Section 1985 for failure to state a claim on which relief can be granted.

**F. Request for Award of Custody**

**\*4** Plaintiff asks this Court to award him full custody of his child. Federal courts generally do not determine child custody, which is a matter left to the state courts. *See Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (holding that even if subject matter jurisdiction lies, "where a federal court is asked to ... determine support payments, or award custody of a child," the district court generally declines jurisdiction of such claims where "there is no obstacle to their full and fair determination in state courts"); *see also Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (holding that even where diversity jurisdiction was satisfied, federal courts are divested of the power "to issue divorce, alimony, and child custody decrees").

Moreover, federal district courts lack jurisdiction to review state court judgments. *See Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) ("[F]ederal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments.") (per curiam); *see generally Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415–16 (1923). Plaintiff's remedy, if he wishes to challenge any Family Court decisions regarding an award of

custody or the termination of his parental rights, is a direct appeal within the state court system.

**G. Leave to Amend Futile**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione,* 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988). The deficiencies in Plaintiff's complaint, such as his claims against defendants who are immune from suit or who are not state actors subject to suit under Section 1983, cannot be cured with an amendment. The Court therefore declines to grant him leave to amend his complaint.

**CONCLUSION**

The Court dismisses K.M.D. as a plaintiff in this action, without prejudice, because a non-attorney parent cannot bring claims on behalf of a minor child. The remainder of Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii); *see also Mills v. Fischer,* 645 F.3d 176, 177 (2d Cir. 2011).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Slip Copy, 2022 WL 1747859

---

**End of Document**                                © 2022 Thomson Reuters. No claim to original U.S. Government Works.

417 Fed.Appx. 96
This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Annselm MORPURGO, M.A., Plaintiff–Appellant,

v.

INCORPORATED VILLAGE OF SAG HARBOR,
and Gregory N. Ferraris as Appointed Mayor, Edward
Deyermond as Retiring Elected Mayor, and J. Doe #
1 Through # N of the Elected Board of Trustees, Sag
Harbor Village Police, and Thomas Fabiano as Police
Chief, Police Officer Patrick Milazzo, Suffolk County
Water Authority, and Paul Greenwood as Assistant
Superintendent, Caleca & Towner, PC, Andrew T.
Towner, Esq., John Jermain Memorial Library, Gregory
N. Ferraris as President of the Board of Trustees, and
J. Doe # 1 Through # N of the Appointed or Elected
Board of Trustees, John Jermain Future Fund, Gail
Slevin, Gregory N. Ferraris, Patrick Milazzo, Timothy
Platt, Paul Greenwood, Andrew T. Towner, Esq., Peter
Darrow, Other Persons J. Doe # 1 Through # N as Other
Conspiring Individuals Upon Discovery, Christine
Stanley, aka Helga Morpurgo, Defendants–Appellees,
Thomas Fabiano, Michael A. Wolohojian, Ed
Deyermond, as Retired Elected Mayor, Defendants.

No. 10–1043–cv.
|
April 5, 2011.

Appeal from a judgment of the United States District Court
for the Eastern District of New York (Joanna Seybert, Judge).
**UPON CONSIDERATION WHEREOF, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the District Court is **AFFIRMED.**

**Attorneys and Law Firms**

Annselm Morpurgo, Sag Harbor, NY, pro se.

David H. Arntsen and Diane Christine Farrell, Devitt,
Spellman Barrett, LLP, Smithtown, NY; Patrick Brian Fife,
Twomey, Latham, Shea, Kelley, Dubin & Quartararo, LLP,
Riverhead, NY; Andrew T. Towner, Caleca & Towner,
P.C., East Hampton, NY; Anton Piotroski, Hammill, O'Brien,
Croutier, Dempsey, Pender & Koehler, P.C., Syosset, NY;

Nica B. Strunk, Esseks, Hefter & Angel, Riverhead, NY;
Richard F. Hans, Barbara L. Seniawski, DLA Piper, LLP, New
York, NY; Christine Stanley, pro se, East Hampton, NY, for
Appellees.

PRESENT: WILFRED FEINBERG, WALKER, and JOSÉ A.
CABRANES, Circuit Judges.

**SUMMARY ORDER**

**\*\*1**  Plaintiff–Appellant Annselm Morpurgo ("appellant"),
*pro se,* appeals the District Court's judgment dismissing her
complaint brought under 42 U.S.C. §§ 1983 and 1985(3). We
assume the parties' familiarity with the underlying facts and
procedural history of the case, and the issues on appeal.

This Court reviews *de novo* a district court's *sua sponte*
dismissal of a complaint. *See Giano v. Goord,* 250 F.3d 146,
149–50 (2d Cir.2001). We also review *de novo* a district
court's dismissal of a complaint pursuant to Rule 12(b)(6)
of the Federal Rules of Civil Procedure, construing the
complaint liberally, accepting all factual allegations in the
complaint as true, and drawing all reasonable inferences in
the plaintiff's favor. *See Chambers v. Time Warner, Inc.,*
282 F.3d 147, 152 (2d Cir.2002); see also *Miller v. Wolpoff
& Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.2003).
To survive a motion to dismiss under Rule 12(b)(6), the
complaint must plead "enough facts to state a claim to
relief that is plausible on its face." *Bell Atlantic Corp. v.
Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929
(2007). Although all allegations contained in the complaint
are assumed to be true, this tenet is "inapplicable to legal
conclusions." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct.
1937, 1949, 173 L.Ed.2d 868 (2009). A claim will have
"facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Id.*

As an initial matter, appellant argues that the District Court
erred in finding appellant's objections to the Magistrate
Judge's Report and Recommendation to be insufficient to
warrant applying a *de novo* standard of review, pursuant to
28 U.S.C. § 636(b)(1) and **\*98** Rule 72(b) of the Federal
Rules of Civil Procedure. However, even if the District Court
should have applied a *de novo* standard of review, any error
was harmless, as our own *de novo* review of the record reveals
appellant's objections to have been without merit. Insofar as
appellant, in her objections and on appeal, has challenged the
district court's dismissal of her conspiracy claims under §§

WESTLAW  © 2022 Thomson Reuters. No claim to original U.S. Government Works.

1983 and 1985, we find that appellant failed to plead enough facts to state a conspiracy claim under either of those statutes, for substantially the same reasons stated by the District Court. See *Morpurgo v. Incorporated Village of Sag Harbor, et al.,* 697 F.Supp.2d 309 (E.D.N.Y. Mar.5, 2010). We note that appellant has abandoned any challenge to the dismissal of her claims based on appellees' alleged individual actions, having failed to raise those claims on appeal. See *LoSacco v. City of Middletown,* 71 F.3d 88, 92–93 (2d Cir.1995).

Finally, we hold that the District Court did not abuse its discretion in denying appellant leave to amend her complaint. The complaint, even when read liberally, does not "suggest[ ] that [appellant] has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe," *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000), and appellant has not given any indication as to the manner in which she would amend the complaint.

### *CONCLUSION*

**\*\*2** We have considered all of appellant's claims on appeal and have found them to be without merit. Accordingly, the judgment of the District Court is **AFFIRMED.**

### All Citations

417 Fed.Appx. 96, 2011 WL 1252406

---

End of Document

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2165814
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Jean C. OLIVER, Plaintiff-Appellant,

v.

Daniel PENNY, in his individual and official
capacity, Thomas Capezza, in his individual and
official capacity, Clay Lodovice, in his individual
and official capacity, John Hartford, in his individual
and official capacity, Michael Volforte, in his
individual and official capacity, Lois Goland, in his
individual and official capacity, Jason Hughes, in his
individual and official capacity, Defendants-Appellees,
New York State Police, Francis Christensen, in
his individual and official capacity, Defendants.

21-111
|
June 16, 2022

Appeal from a judgment of the United States District Court
for the Northern District of New York (Sannes, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Jean C. Oliver, pro se,
Elma, NY.

FOR DEFENDANT-APPELLEE: Barbara D. Underwood,
Solicitor General, Victor Paladino, Senior Assistant Solicitor
General, Laura Etlinger, Assistant Solicitor General, for
Letitia James, Attorney General of the State of New York,
Albany, NY.

PRESENT: PIERRE N. LEVAL, STEVEN J. MENASHI,
BETH ROBINSON, Circuit Judges.

## SUMMARY ORDER

**\*1** In 2015, Appellant Jean Oliver sued the New York State
Police ("NYSP") and ten of its employees under Title VII,
the Rehabilitation Act, and 42 U.S.C. §§ 1983, 1985, and
1986 (hereinafter referred to as "*Oliver 2015*"). She generally

alleged that she was discriminated against based on her sex
and perceived disability, harassed, and ultimately fired from
her position as an investigator with the NYSP. In 2017, while
proceeding pro se, she commenced a substantially identical
lawsuit against the NYSP and seven of its employees and
agents ("*Oliver 2017*"), with the exception that she also
alleged a First Amendment retaliation claim. The district
court dismissed the second amended complaint in the 2017
action, reasoning that *Oliver 2017* was largely duplicative
of *Oliver 2015* and that Oliver otherwise failed to state a
claim for relief. We assume the parties' familiarity with the
underlying facts, the procedural history of the case, and the
issues on appeal.

"We review *de novo* a district court's dismissal of a complaint
pursuant to Rule 12(b)(6), construing the complaint liberally,
accepting all factual allegations in the complaint as true, and
drawing all reasonable inferences in the plaintiff's favor."
*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.
2002). We review for abuse of discretion a district court's
decision to stay or dismiss a lawsuit as duplicative of another
federal suit. *Sacerdote v. Cammack Larhette Advisors, LLC*,
939 F.3d 498, 507 (2d Cir. 2019).

## I. Duplicative Litigation

The district court did not abuse its discretion by concluding
that Oliver's claims under the Equal Protection Clause for
sex discrimination, hostile work environment, and retaliation
were barred as duplicative of *Oliver 2015*. "As part of its
general power to administer its docket, a district court may
stay or dismiss a suit that is duplicative of another federal
court suit." *Id.* at 504 (internal quotation marks omitted). In
order to dismiss a pending suit as duplicative, "[t]here must
be the same parties, or, at least, such as represent the same
interests; there must be the same rights asserted and the same
relief prayed for; the relief must be founded upon the same
facts, and the title, or essential, basis of the relief sought must
be the same." *Id.* (internal quotation marks omitted; alteration
in original). We apply the general principles of res judicata to
duplicative lawsuits. *Id.* The main difference is that the rule
against duplicative lawsuits "can only be raised to bar one of
two suits that are both still pending[.]" *Id.* at 505.

The facts and legal claims asserted in *Oliver 2015* were
largely the same as the facts and legal claims asserted in
*Oliver 2017*. Both suits involved the same series of events
concerning Oliver's sexual harassment reports, disciplinary
charges, and eventual dismissal from the NYSP. The claims
are generally identical. Oliver raised sex discrimination,

2022 WL 2165814

hostile work environment, retaliation, conspiracy, and failure to prevent conspiracy claims in both lawsuits. Finally, the relief sought in both lawsuits was the same: Oliver sought reinstatement and monetary damages in both *Oliver 2015* and *Oliver 2017.*

**\*2** The rule against duplicative litigation requires that the parties in the two lawsuits be the same or in privity with one another. *See Sacerdote*, 939 F.3d at 504. Oliver does not challenge on appeal the conclusion that there is privity between the *Oliver 2015* and *Oliver 2017* defendants and therefore waives the issue. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir. 1995). Nevertheless, there is privity between the defendants in both suits. Although Oliver sued different individual defendants in her 2017 lawsuit, those defendants represent the same interests as the individuals named in *Oliver 2015.* The *Oliver 2015* defendants consisted of the NYSP, several of its officers, and Oliver's former supervisors. The *Oliver 2017* defendants included the NYSP, two supervisors (Francis Christensen and Daniel Penny), and legal counsel to the NYSP. Two of the defendants overlap between the two lawsuits (NYSP and Christensen). The remainder share the "same interests." *Sacerdote*, 939 F.3d at 504. Employee defendants have a sufficiently close relationship with other employees when their challenged actions in both lawsuits consist of acts in their official capacities on behalf of their employer. *See Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (concluding that the defendant was in privity with defendants in an earlier lawsuit where they all represented the same company within the scope of their employment). The majority of the individual defendants in *Oliver 2017* acted as counsel to the NYSP during the events described in the lawsuits and therefore represented the interests of the NYSP and its employees. *See id.* (concluding that the defendant was in privity with other employee defendants because he was acting as company's chief legal officer during the events leading to the lawsuit).

Two of the defendants in *Oliver 2017*, Clay Lodovice and Michael Volforte, were not employees of the NYSP but of the Governor's Office of Employee Relations. However, they represented the same interests as the other *Oliver 2017* defendants, that of the NYSP, by appearing on NYSP's behalf —as its "designated representative[s]," *Cho*, 991 F.3d at 169—in the proceedings of the Public Employment Relations Board (Lodovice) and by allegedly continuing to withhold copies of Oliver's grievances from the Administrative Law Judge in those proceedings (Volforte). Because their interests were aligned with the NYSP, they were sufficiently in privity

with the *Oliver 2015* defendants. *See John St. Leasehold, LLC v. Capital Mgmt. Res., L.P.*, 283 F.3d 73, 74, 75 (2d Cir. 2002) (per curiam) (concluding that the defendants were in privity with the defendants in a prior suit because they acted within the "scope of their agency").

In sum, Oliver duplicated the majority of her *Oliver 2015* claims in her 2017 lawsuit. The district court did not abuse its discretion by dismissing Oliver's sex discrimination, hostile work environment, and retaliation claims under the Equal Protection Clause as duplicative of *Oliver 2015.* [1]

[1]   In her 2017 complaint, Oliver appears to detail an "[i]llegal search and seizure ... under the [Fourth] Amendment" that allegedly occurred immediately after her termination. It is unclear whether these allegations are intended to advance a freestanding Fourth Amendment claim. The district court did not consider such a claim, and this order does not preclude Oliver from asserting a claim based on these allegations in the future. We express no opinion as to whether such a claim would be barred by res judicata.

### II. First Amendment Retaliation

To the extent that Oliver's complaint can be construed as raising a First Amendment retaliation claim, Oliver failed to state a claim for relief. To establish a First Amendment retaliation claim under § 1983, "a plaintiff must show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (internal quotation marks omitted). When the speaker is a public employee, her speech is protected when it involves a matter of public concern and she is speaking as a private citizen. *Lynch v. Ackley*, 811 F.3d 569, 578 (2d Cir. 2016).

Oliver argues that she engaged in protected speech by reporting sex discrimination and harassment and was retaliated against for doing so. But personal grievances, such as discrimination complaints, are not matters of public concern and are "not brought within the protection of the First Amendment" simply because the grievances "could be construed broadly to implicate matters of public concern." *Ruotolo v. City of New York*, 514 F.3d 184, 190 (2d Cir. 2008) (internal quotation marks omitted). Furthermore, the other allegations of protected speech in Oliver's complaint were too

2022 WL 2165814

vague and conclusory for the district court to determine if they involved matters of public concern. Oliver alleged that she "raised grave matters of public safety, public integrity, public trust, and public concern involving supervisory members and those holding leadership positions within the NYSP." She elaborated that she submitted reports concerning "egregious safety violations, fraudulent narcotics investigations, and the mishandling of [c]onfidential [i]nformants." However, these broad allegations did not contain enough detail to ascertain whether they involved matters of public concern, let alone that Oliver was speaking as a private citizen when she made those reports. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

**\*3**  Accordingly, the district court properly dismissed the First Amendment retaliation claim.

### III. Conspiracy and Failure to Prevent Conspiracy

Finally, Oliver asserts that she stated claims for conspiracy under 42 U.S.C. §§ 1983 and 1985 and for failure to prevent a conspiracy under 42 U.S.C. § 1986. But these claims failed because she did not plausibly allege an underlying constitutional violation; the Equal Protection Clause claims were properly dismissed as duplicative of *Oliver 2015* and Oliver failed to state a claim for First Amendment retaliation. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (explaining that a § 1983 conspiracy claim fails if there is no underlying violation); *Great Am. Fed. Saving & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979) (noting that § 1985 "is a purely remedial statute" and requires an underlying violation of a federal right); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) (noting that a § 1986 claim "lies only if there is a viable conspiracy claim under section 1985").

We have considered all of Oliver's remaining arguments, which we conclude are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

### All Citations

Not Reported in Fed. Rptr., 2022 WL 2165814

---

**End of Document**                              © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

2016 WL 4046780
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jorge TIRSE, Plaintiff,

v.

David GILBO in his official capacity as a Lieutenant
in the Johnstown Police Dep't; Johnstown Police
Dep't; Gloversville Police Dep't; Donald Vandeusen
in his official capacity as the Chief of Police of the
Gloversville Police Department; Louise Sira in her
official capacity as District Attorney of the County of
Fulton; John P. Sira, Jr., in his official capacity as a
Captain in the Gloversville Police Dep't; Jesse Ashdown
in his official capacity as a Special Prosecutor and
Assistant District Attorney in the County of Saratoga
District Attorney's Office; Fulton County; Mark Gifford
in his official capacity as the Chief of Police of the
Johnstown Police Dep't; and Darryl Bazan in his official
capacity as a New York State Police Investigator in
the Bureau of Criminal Investigation, Defendants.

6:15-CV-0987 (GTS/ATB)
|
Signed 07/27/2016

**Attorneys and Law Firms**

JORGE TIRSE, 53 Park Street, Gloversville, New York
12078, Plaintiff Pro Se.

MURPHY, BURNS, BARBER & MURPHY, LLP, 226 Great
Oaks Blvd., OF COUNSEL: THOMAS K. MURPHY, ESQ.,
STEPHEN M. GROUDINE, ESQ., Albany, New York 12203,
Counsel for Defendants David Gilbo, Johnstown Police
Dept., and Mark Gifford.

LEMIRE JOHNSON, LLC, P.O. Box 2485, 2534 Route 9, OF
COUNSEL: APRIL J. LAWS, ESQ., GREGG T. JOHNSON,
ESQ., Malta, New York 12020, Counsel for Defendants
Louise Sira, Donald VanDeusen, Gloversville Police Dept.,
John P. Sira, Jr., Jesse Ashdown, and Fulton County.

ERIC T. SCHNEIDERMAN, 615 Erie Blvd. West, Suite
102, OF COUNSEL: KEVIN M. HAYDEN, ESQ., Assistant
Attorney General, Syracuse, New York 13204, GLENN T.
SUDDABY, Chief United States District Judge, Attorney

General for the State of New York, Counsel for Defendant
Darryl Bazan.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Jorge Tirse ("Plaintiff") against the County
of Fulton, Louise Sira in her official capacity as the District
Attorney for the County of Fulton (collectively "County
Defendants"), the Gloversville Police Department, Donald
VanDeusen in his official capacity as the Chief of Police
of the Gloversville Police Department, John P. Sira, Jr.,
in his official capacity as a Gloversville Police Captain
(collectively "Gloversville Defendants"), Jessie Ashdown in
his official capacity as a special prosecutor and an Assistant
District Attorney for the County of Saratoga ("Defendant
Ashdown"), the Johnstown Police Department, Mark Gifford
in his official capacity as the Chief of Police of the Johnstown
Police Department, David Gilbo in his official capacity as a
Lieutenant in the Johnstown Police Department (collectively
"Johnstown Defendants"), and Darryl Bazan in his individual
and official capacity as a New York State Police Investigator
("Defendant Bazan"), are Defendants' respective motions to
dismiss Plaintiff's Complaint (Dkt. No. 1) for failure to state
a claim upon which relief can be granted, pursuant to Fed. R.
Civ. P. 12(b)(6) (Dkt. Nos. 11, 14, 26, 27, 30). For the reasons
set forth below, Defendants' motions are granted.

**I. RELEVANT BACKGROUND**
Generally, liberally construed, Plaintiff's Complaint alleges
as follows. On November 29, 2011, Plaintiff's business was
closed due to a civil dispute with his landlord, Joseph
Andrews. (Dkt. No. 1, ¶ 1 [Pl.'s Compl.].) On the same
day, Plaintiff was given a notice from the Johnstown Police
Department not to trespass on the property. (*Id.*, ¶ 3.) On
December 1, 2011, Plaintiff went to the Johnstown Police
Department to file a complaint against Mr. Andrews and Mr.
Andrews's friend, "Sgt. Stevens," for not allowing Plaintiff
to access the property and for threatening to arrest him
even though he had a lease with Mr. Andrews. (*Id.*, ¶ 2.)
While at the police department, Plaintiff was interviewed by
Defendant Gilbo, who secretly recorded the interview. (*Id.*, ¶
4.) In that interview, Plaintiff described everything that had
happened. (*Id.*) The interview lasted nine minutes and 32
seconds; however, Defendants Gilbo and Bazan conspired to
edit the video so it would show only three minutes of the

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

interview. (*Id.*, ¶¶ 4-5, 31, 34.) The unedited video would have constituted proof that Plaintiff had not committed a crime; but, because it was edited, it depicted Plaintiff admitting to a crime that he never committed. (*Id.*, ¶ 7.) The video was later used in Plaintiff's criminal prosecution. (*Id.*, ¶ 6.)

On December 7, 2011, Plaintiff commenced a breach-of-contract action against Mr. Andrews in New York State Supreme Court, Fulton County. (*Id.*, ¶ 10.) The following day, Mr. Andrews filed a criminal complaint against Plaintiff, alleging that Plaintiff had forged his signature on the lease. (*Id.*, ¶ 11.) This was a false accusation, evidenced by the fact that Plaintiff had sent the lease to the New York State Liquor Authority on November 23, 2011, one week before Mr. Andrews prohibited Plaintiff from entering the premises. (*Id.*, ¶ 13.) On January 13, 2012, Plaintiff was falsely arrested by Defendant Bazan for felony forgery. (*Id.*, ¶¶ 14-15.) During Plaintiff's criminal and civil proceedings, he was advised by the court and Defendant Ashdown that, if Plaintiff dropped his civil suit against Mr. Andrews, the criminal charges against him would be withdrawn. (*Id.*, ¶¶ 16-17.) Defendant Ashdown was assigned as a special prosecutor to handle Plaintiff's criminal prosecution due to Defendant Louise Sira's relationship with Mr. Andrews. (*Id.*, ¶ 18.) Plaintiff alleges that the forgery charge was a "trump charge" to use as leverage against him and to coerce him into dismissing his civil action against Mr. Andrews. (*Id.*, ¶¶ 18-21.)

**\*2** Furthermore, "in-house police reports" generated by the Gloversville Police Department were used in bad faith and to maliciously prosecute Plaintiff. (*Id.*, ¶¶ 22, 26-27.) Plaintiff alleges that Defendant John Sira conspired in Plaintiff's malicious prosecution by forwarding these in-house police reports to Gerard McAuliffe, Mr. Andrews's attorney, who in turn sent them to Defendant Ashdown. (*Id.*, ¶¶ 22, 24, 26.) Defendant John Sira knew that using or sharing these in-house documents violated federal, state, and local laws. (*Id.*, ¶ 29.) Defendant John Sira is married to Defendant Louise Sira. (*Id.*, ¶ 28.)

On August 15, 2012, Plaintiff received a copy of the video that recorded his interview with Defendant Gilbo. (*Id.*, ¶ 30.) Defendant Ashdown also received a copy of this video but claims he never watched it. (*Id.*, ¶ 33.) Plaintiff had difficulty viewing the video because it was saved under the editing software used by the police department. (*Id.*, ¶ 35.) Plaintiff went to the Johnstown Police Department and received assistance from an officer in accessing the videotape. (*Id.*) When Plaintiff finally viewed the videotape, he noticed

that it did not end correctly. (*Id.*, ¶ 36.) As a result, Plaintiff made a Freedom of Information Law ("FOIL") request for the entire videotape, which was denied by Defendant Gilbo. (*Id.*) Plaintiff spoke with Defendant Gifford regarding the matter, including the fact that the videotape had been tampered with and had been done so out of malice. (*Id.*, ¶ 37.) Defendant Gifford told Plaintiff that he "shouldn't of [done] what [he] did" and hung up the telephone. (*Id.*) Plaintiff left several messages for Defendant Gifford but they were never returned. (*Id.*, ¶ 38.) Plaintiff also contacted public officials, such as the local Mayor, regarding the issue but to no avail. (*Id.*, ¶¶ 39-40, 43.) Plaintiff eventually sent the videotape to be analyzed and the results confirmed that it had been edited and tampered with. (*Id.*, ¶ 40.)

Based upon the foregoing allegations, the Complaint asserts the following eight causes of action: (1) a claim that Defendants maliciously abused their power by using legal process to accomplish some ulterior purpose outside the legitimate ends of process in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, and 1986; (2) a claim that Defendants deliberately abused legal process in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, and 1986; (3) a claim that Defendants intentionally inflicted emotional distress on Plaintiff in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, and 1986; (4) a claim that Defendants falsely arrested Plaintiff and deprived him of his constitutional rights in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988; (5) a claim that Defendants maliciously prosecuted Plaintiff in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 1985, and 1986; (6) a claim that Defendants conspired to violate Plaintiff's constitutional rights in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. §§ 1983 and 1985; (7) a claim that Defendants refused or neglected to prevent Plaintiff's constitutional rights from being violated in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983; and (8) a claim that Defendants Gifford and VanDeusen failed to train, supervise, and discipline their subordinates in their respective police departments in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983. (*Id.* at 9-16.)

## II. PARTIES' BRIEFING ON DEFENDANTS' MOTIONS TO DISMISS

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 101 of 175

**1. Defendants' Memoranda of Law in Chief on Their Respective Motions to Dismiss**

**a. The County Defendants' Memorandum of Law in Chief**

**\*3** Generally, in their memorandum of law, the County Defendants assert thirteen arguments with regard to Plaintiff's claims against them. (Dkt. No. 11, Attach. 5 [Cty. Defs.' Mem. of Law].)

First, the County Defendants argue that Defendant Louise Sira is entitled to prosecutorial immunity because (a) she acted within the scope of her duties in initiating the criminal prosecution against Plaintiff, and (b) she recused herself from the criminal prosecution itself. (*Id.* at 5-7.)

Second, the County Defendants argue that Plaintiff's claims for abuse of process, false arrest, and conspiracy are time-barred by New York's three-year statute of limitations for personal injury. (*Id.* at 7.)

Third, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a claim under 42 U.S.C. § 1981 because it does not allege that Plaintiff is a member of a racial minority or that Defendants discriminated against Plaintiff on the basis of his race. (*Id.* at 9.)

Fourth, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a claim under 42 U.S.C. § 1985 because it does not allege that they acted with racial animus toward Plaintiff. (*Id.* at 10-11.)

Fifth, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a claim under 42 U.S.C. § 1986 because (a) it does not allege facts indicating that they had any involvement in Plaintiff's criminal prosecution, and (b) a viable § 1985 claim is a prerequisite for an actionable § 1986 claim. (*Id.* at 11.)

Sixth, the County Defendants argue that Plaintiff's 42 U.S.C. § 1983 claim must be dismissed because the Complaint fails to allege facts plausibly suggesting that they violated his constitutional rights. (*Id.* at 9-10.)

Seventh, the County Defendants argue that Plaintiff's malicious abuse of power and abuse of process claims must be dismissed because the Complaint fails to allege facts plausibly

suggesting that they acted with malice and/or that they attempted to achieve a collateral purpose beyond Plaintiff's criminal proceeding. (*Id.* at 12-14.)

Eighth, the County Defendants argue that Plaintiff's false arrest claim must be dismissed because (a) the New York Court of Claims has already determined that there was probable cause to arrest him, and (b) the Complaint fails to allege facts plausibly suggesting any involvement by the County Defendants in Plaintiff's arrest in that Plaintiff alleges that he was arrested by the New York State Police following an investigation by the Johnstown Police Department and then prosecuted by a special prosecutor from Saratoga County (i.e., Defendant Ashdown). (*Id.* at 14-15.)

Ninth, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a malicious prosecution claim against them because (a) the Complaint alleges that Plaintiff's criminal proceeding was initiated by the New York State Police as well as Defendant Ashdown and not the County Defendants, (b) Plaintiff did not receive a favorable termination of the criminal charges against him, and (c) the New York Court of Claims has already determined that there was probable cause to arrest him. (*Id.* at 15-16.)

Tenth, the County Defendants argue that Plaintiff's conspiracy claim must be dismissed because the Complaint fails to allege facts plausibly suggesting a "meeting of the minds" between the County Defendants and the other Defendants regarding an agreement to conspire against Plaintiff. (*Id.* at 16-17.)

**\*4** Eleventh, the County Defendants argue that Plaintiff's state law claim for intentional infliction of emotional distress must be dismissed because (a) Plaintiff never served them with a notice of claim, and (b) the Complaint fails to allege facts plausibly suggesting that they engaged in extreme or outrageous conduct. (*Id.* at 18-19.)

Twelfth, the County Defendants argue that the Complaint fails to allege facts plausibly suggesting a *Monell* claim because it does not cite to and/or describe any Fulton County policy or custom that allegedly caused him a constitutional deprivation. (*Id.* at 20.)

Thirteenth, and finally, the County Defendants argue that Defendant Louise Sira is entitled to qualified immunity because (a) she recused herself from Plaintiff's criminal investigation and prosecution, and (b) the New York Court of Claims has determined that there was probable cause to arrest

2016 WL 4046780

Plaintiff and, therefore, Defendant Louise Sira did not violate any of his clearly established rights. (*Id.* at 21-22.)

### b. The Gloversville Defendants' Memorandum of Law in Chief

The Gloversville Defendants have substantially restated all of the County Defendants' arguments in support of their motion to dismiss. (*Compare* Dkt. No. 14, Attach. 3, at 5-17, 22-23 [Gloversville Defs.' Mem. of Law] *with* Dkt. No. 11, Attach. 5, at 7-19 [Cty. Defs.' Mem. of Law].) Accordingly, for the sake of brevity, the Court will not repeat those arguments here. Rather, the Court will merely summarize the three additional arguments that the Gloversville Defendants assert.

First, the Gloversville Defendants argue that governmental immunity, which shields public entities from liability for discretionary actions taken during the performance of governmental functions, bars any state law negligence claim asserted against them for the following reasons: (a) responding to a FOIL request is a discretionary act; (b) Plaintiff has failed to allege facts plausibly suggesting that he had a special relationship with any of the Gloversville Defendants, which acts as an exception to governmental immunity; and (c) Plaintiff has not alleged facts plausibly suggesting either (i) the existence of a City policy or identifiable custom under which his alleged injury occurred, or (ii) a causal connection between such policy and a constitutional deprivation. (Dkt. No. 14, Attach. 3, at 18-19 [Gloversville Defs.' Mem. of Law].)

Second, the Gloversville Defendants argue that any claims against them in their individual capacities must be dismissed because the Complaint fails to allege specific facts plausibly suggesting their personal involvement in the constitutional violations alleged. (*Id.* at 19-20.) More specifically, they argue that the only specific allegations regarding Defendant VanDeusen and Defendant John Sira are that Defendant Sira responded to a third-party FOIL request in his capacity as chief FOIL officer for the Gloversville Police Department. (*Id.* at 20.) The Gloversville Defendants argue that Plaintiff's conclusory allegation that Defendant VanDeusen failed to supervise Defendant Sira when he responded to the FOIL request is insufficient to plausibly suggest a constitutional violation or supervisory liability. (*Id.*)

Third, the Gloversville Defendants argue that, in any event, Defendant VanDeusen and Defendant John Sira are entitled to

qualified immunity because (a) even though these Defendants did not participate in Plaintiff's criminal investigation, the New York Court of Claims has already determined that there was probable cause to arrest him, and (b) the Complaint fails to allege facts plausibly suggesting that they violated Plaintiff's clearly established rights, or that they had reason to believe that Plaintiff's rights were being violated when they processed the non-party FOIL request. (*Id.* at 20-22.)

### c. Defendant Ashdown's Memorandum of Law in Chief

**\*5** Defendant Ashdown substantially restates the County Defendants' arguments in support of his motion to dismiss. (*Compare* Dkt. No. 26, Attach. 3, at 7-21 [Ashdown Mem. of Law] *with* Dkt. No. 11, Attach. 5, at 5-19 [Cty. Defs.' Mem. of Law].) Accordingly, for the sake of brevity, the Court will not repeat those arguments here.

### d. Defendant Bazan's Memorandum of Law in Chief

Defendant Bazan substantially restates the County Defendants' arguments in support of his motion to dismiss. (*Compare* Dkt. No. 27, Attach. 3, at 10-20 [Bazan Mem. of Law] *with* Dkt. No. 11, Attach. 5, at 7-19 [Cty. Defs.' Mem. of Law].) Accordingly, for the sake of brevity, the Court will not repeat those arguments here.

### e. The Johnstown Defendants' Memorandum of Law in Chief

The Johnstown Defendants substantially restate the County Defendants' arguments in support of their motion to dismiss. (*Compare* Dkt. No. 30, Attach. 3, at 4-7 [Johnstown Defs.' Mem. of Law] *with* Dkt. No. 11, Attach. 5, at 7-19 [Cty. Defs.' Mem. of Law].) Accordingly, for the sake of brevity, the Court will not repeat those arguments here. Rather, the Court will merely summarize the three additional arguments that the Johnstown Defendants assert.

First, the Johnstown Defendants argue that Plaintiff's claims against the Johnstown Police Department must be dismissed for the following reasons: (a) it is an administrative arm of the City of Johnstown and, therefore, does not have its own legal identity; (b) the County of Fulton is the proper party in interest; and (c) Plaintiff has failed to allege facts plausibly suggesting an official policy, practice or custom that caused

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

his constitutional rights to be violated in order to state a *Monell* claim. (Dkt. No. 30, Attach. 3, at 9-10 [Johnstown Defs.' Mem. of Law].)

Second, the Johnstown Defendants argue that Plaintiff's state law tort claims for intentional infliction of emotional distress and negligence must be dismissed because (a) he failed to serve a notice of claim, and (b) the claims are time-barred by the one-year and ninety-day limitations period. (*Id.* at 10-12.)

Third, the Johnstown Defendants argue that Defendants Gifford and Gilbo are entitled to qualified immunity because the New York Court of Claims has already determined that probable cause existed to arrest Plaintiff. (*Id.* at 12-13.)

### 2. Plaintiff's Opposition Memorandum of Law

#### a. Plaintiff's Memorandum of Law in Opposition to the County Defendants' Motion to Dismiss

Generally, liberally construed, Plaintiff asserts three arguments in opposition to the County Defendants' motion to dismiss. (Dkt. No. 32 [Pl.'s Opp'n Mem. of Law].)

First, with respect to Defendant Louise Sira, Plaintiff argues that she is not entitled to prosecutorial immunity for the following three reasons: (a) she knew that she was not supposed to interfere with Plaintiff's prosecution but did so by reviewing statements made by Defendants, providing Defendant Bazan with a subpoena, and assisting him throughout his investigation; (b) she was aware of the conflict of interest regarding her involvement in the criminal investigation against Plaintiff but continued to assist in the investigation in order to find probable cause to arrest him; and (c) she recused herself only after the criminal investigation had been completed and she had collected sufficient evidence to secure Plaintiff's arrest. (*Id.* at 6-8.)

**\*6** Second, Plaintiff argues that his *Monell* and § 1983 claims against the County of Fulton should not be dismissed for the following reasons: (a) the County violated N.Y. Gen. Mun. Law § 18 because of its numerous monetary contracts with the City of Gloversville and allowing Defendant John Sira to be employed as Captain of the Gloversville Police Department and Louise Sira to be employed as district attorney despite the fact that they are married, which created an inherent conflict of interest; (b) the County allowed Defendant Louise Sira to assist in the criminal investigation

against Plaintiff despite the conflict of interest that existed due to her relationship with Mr. Andrews; (c) the County turned a blind eye to these numerous conflicts of interest; and (d) the County is vicariously liable for the actions of Defendant Ashdown because it appointed him as special prosecutor to handle Plaintiff's criminal prosecution. (*Id.* at 8-9.)

Third, Plaintiff argues that his claims for abuse of process, false arrest, and conspiracy are not barred by the three year limitations period for the following reasons: (a) he did not agree to a plea deal on July 5, 2012, but instead the criminal charges against him were dropped on that date and the case was ultimately dismissed on November 28, 2012; (b) he did not have knowledge of the substance forming the basis of his claims because all records were sealed by the N.Y. Supreme Court and he did not have access to them until they were released by the N.Y. Attorney General's Office in the subsequent N.Y. Court of Claims action on July 13, 2013; and (c) he received additional information regarding his claims during Defendant Bazan's deposition on May 30, 2013. (*Id.* at 14.)

#### b. Plaintiff's Memorandum of Law in Opposition to the Gloversville Defendants' Motion to Dismiss

Generally, liberally construed, Plaintiff asserts four arguments in opposition to the Gloversville Defendants' motion to dismiss. (Dkt. No. 35 [Pl.'s Opp'n Mem. of Law].)

First, with respect to Defendant John Sira, Plaintiff argues as follows: (a) he conspired with other Defendants and allowed "in-house" police reports to be used in Plaintiff's criminal prosecution, to maliciously prosecute him, and to coerce him into taking a plea deal; (b) he impermissibly sent these "in-house" police reports to Mr. Andrews's attorney, Gerard McAuliffe, at his request so that they could be used against him; and (c) he ordered his subordinates at the Gloversville Police Department to harass Plaintiff and his family. (*Id.* at 6-8.) Because of these actions, Plaintiff argues that Defendant John Sira was forced into an early retirement from the Gloversville Police Department. (*Id.* at 9.)

Second, with respect to Defendant VanDeusen and the Gloversville Police Department, Plaintiff argues that they (a) harassed and discriminated against his family, and (b) willfully ignored Defendant John Sira's unlawful conduct. (*Id.* at 8.)

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

Third, Plaintiff argues that the Gloversville Defendants are not entitled to qualified immunity because (a) they violated his constitutional rights, (b) Defendant John Sira violated FOIL laws and police department policies, and (c) Defendant John Sira was aware that his conduct was unlawful while Defendant VanDeusen was aware of this conduct as well but failed to intervene. (*Id.* at 12-13.)

Fourth, and finally, Plaintiff argues that his claims are not time-barred for the reasons discussed above in Part II.2.a. of this Decision and Order.

### c. Plaintiff's Memorandum of Law in Opposition to Defendant Ashdown's Motion to Dismiss

Generally, liberally construed, Plaintiff asserts three arguments in opposition to Defendant Ashdown's motion to dismiss. (Dkt. No. 51 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that Defendant Ashdown violated his right to due process when Defendant Ashdown impermissibly conditioned any plea agreement to drop the criminal charges against Plaintiff on Plaintiff agreeing to discontinue his civil lawsuit against Mr. Andrews, paying for the locks to be changed on the subject premises, and moving his property out of Mr. Andrew's building. (*Id.* at 10-11.)

 *7 Second, Plaintiff argues that Defendant Ashdown conspired with Defendant Bazan by using his arrest as leverage to get the civil lawsuit against Mr. Andrews dismissed. (*Id.* at 11.) Furthermore, Plaintiff argues that Defendant Ashdown conspired with Mr. McAuliffe by impermissibly requesting, and receiving, the "in-house" police reports from Mr. McAuliffe, which were then used against Plaintiff in his criminal prosecution. (*Id.* at 11-12.)

Third, Plaintiff argues that Defendant Ashdown is not entitled to prosecutorial or qualified immunity for the following four reasons: (a) Defendant Ashdown violated Plaintiff's constitutional rights on numerous occasions as described above; (b) there was no probable cause to charge Plaintiff with felony forgery, a fact that Defendant Ashdown was aware of; (c) despite the lack of probable cause, Defendant Ashdown maliciously pursued the criminal charge anyway in an attempt to get Plaintiff's civil lawsuit dismissed against Mr. Andrews; and (d) Defendant Ashdown's actions were outside the scope of his duties as prosecutor. (*Id.* at 12-13.)

### d. Plaintiff's Memorandum of Law in Opposition to Defendant Bazan's Motion to Dismiss

Generally, liberally construed, Plaintiff asserts two arguments in opposition to Defendant Bazan's motion to dismiss. (Dkt. No. 50 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that Defendant Bazan is not entitled to qualified immunity because (a) he tampered with evidence, coerced witness statements, and intentionally ignored exculpatory evidence, and (b) he engaged in unlawful conduct by tampering with evidence. (*Id.* at 10.)

Second, Plaintiff argues that Defendant Bazan tampered with the videotape containing his interview at the police station. (*Id.* at 7, 11, 14.) In addition, Plaintiff argues that the tampering with the videotape, coupled with the tampering of witness statements, negates the probable cause for his arrest. (*Id.* at 11.)

### e. Plaintiff's Memorandum of Law in Opposition to the Johnstown Defendants' Motion to Dismiss

Generally, liberally construed, Plaintiff asserts three arguments in opposition to the Johnstown Defendants' motion to dismiss. (Dkt. No. 48 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that Defendant Gilbo is not entitled to qualified immunity because (a) he violated Plaintiff's constitutional rights by falsifying evidence and submitting it to the court in order to facilitate Plaintiff's malicious prosecution, (b) he did not comply with Plaintiff's FOIL request but instead provided Plaintiff with an edited copy of his video taped interview at the police station, and (c) he has threatened Plaintiff's life for pursuing this matter against him. (*Id.* at 12-13.)

Second, Plaintiff argues that he has alleged facts plausibly suggesting a *Monell* claim because he has alleged that the Johnstown Police Department violated FOIL request laws by tampering with the evidence that he requested. (*Id.* at 11.)

Third, Plaintiff argues that his claim is not time-barred by the three-year statute of limitations period because he first learned on August 14, 2012, that the video taped disk of his interview at the police station was tampered with. (*Id.* at 8.)

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 105 of 175

### 3. Defendants Respective Reply Memoranda of Law

#### a. The County Defendants' Reply Memorandum of Law

Generally, the County Defendants assert seven arguments in reply to Plaintiff's opposition. (Dkt. No. 37 [Cty. Defs.' Reply Mem. of Law].)

First, the County Defendants argue that Defendant Louise Sira is entitled to prosecutorial immunity for the following reasons: (a) Plaintiff's various admissions and evidence contained in his opposition papers make it clear that Defendant Louise Sira played no role in his prosecution or the decision to arrest him; (b) even if Defendant Louise Sira processed a subpoena before being recused, this conduct was clearly within the scope of her duties in initiating and pursuing a criminal prosecution; and (c) Plaintiff's claim that Defendant Louise Sira conspired with Defendant John Sira is speculative at best. (*Id.* at 2-3.)

**\*8** Second, the County Defendants argue that Plaintiff's § 1983 claims are time-barred because his excuse that he did not have access to his criminal legal file until it was released by the New York Attorney General's Office is not valid for purposes of tolling the limitations period. (*Id.* at 3-4.) More specifically, the County Defendants argue that Plaintiff, as a defendant in a criminal prosecution, had knowledge of the charges against him and was present and acting on his own behalf when the charges were eventually dismissed. (*Id.* at 4.)

Third, the County Defendants argue that Plaintiff's claims under §§ 1981, 1983, 1985, and 1986 should be dismissed for the reasons stated in their memorandum of law. (*Id.* at 4-5.)

Fourth, the County Defendants argue that Plaintiff's claim for intentional infliction of emotional distress should be dismissed because (a) he admits that he never served a notice of claim, and (b) he has not alleged facts plausibly suggesting that they engaged in extreme or outrageous conduct. (*Id.* at 5-6.)

Fifth, the County Defendants argue that Plaintiff's *Monell* claim must be dismissed because he has failed to allege facts plausibly suggesting and/or describing a policy or custom that caused his constitutional deprivations. (*Id.* at 6.)

Sixth, the County Defendants argue that Defendant Louise Sira is entitled to qualified immunity because, even if she did not recuse herself, the Complaint still does not allege facts plausibly suggesting anything that would have informed her that (a) there was insufficient probable cause to arrest Plaintiff, and (b) she acted unlawfully or violated Plaintiff's constitutional rights. (*Id.* at 6-7.)

Seventh, the County Defendants argue that Plaintiff should not be given an opportunity to amend his Complaint because any amendments would be futile for the following two reasons: (a) the documentary evidence submitted by Plaintiff in his opposition papers demonstrate that the County Defendants had nothing to do with his criminal investigation, arrest, and/or prosecution; and (b) his federal claims are time-barred by the applicable statute of limitations. (*Id.* at 7-8.)

#### b. The Gloversville Defendants' Reply Memorandum of Law

Generally, the Gloversville Defendants assert six arguments in reply to Plaintiff's opposition. (Dkt. No. 38 [Gloversville Defs.' Reply Mem. of Law].)

First, the Gloversville Defendants argue that Plaintiff's § 1983 claims for malicious abuse of power, abuse of process, false arrest, and conspiracy are time-barred because, contrary to Plaintiff's argument that he did not have the requisite knowledge regarding these claims until a later date, Plaintiff had knowledge of the charges levied against him (as the defendant in a criminal proceeding) and was present when the criminal charges were eventually dismissed. (*Id.* at 3-4.)

Second, the Gloversville Defendants argue that Plaintiff's §§ 1981, 1983, 1985, and 1986 claims should be dismissed for the reasons stated in their memorandum of law. (*Id.* at 4.) Similarly, the Gloversville Defendants argue that Plaintiff has failed to allege facts plausibly suggesting a claim for malicious abuse of power, abuse of process, false arrest, malicious prosecution, and conspiracy for the reasons set forth in their memorandum of law. (*Id.* at 4-5.) In addition, the Gloversville Defendants argue that Plaintiff has failed to make any arguments in opposition to their motion to dismiss demonstrating that they had any involvement in the allegations serving as the basis for these claims. (*Id.* at 5.)

**\*9** Third, the Gloversville Defendants argue that Plaintiff has not opposed their arguments for dismissal of his intentional infliction of emotional distress and negligence

Case 1:22-cv-00581-DNH-TWD    Document 4    Filed 06/29/22    Page 106 of 175

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

claims and has not offered an explanation regarding his failure to serve a notice of claim. (*Id.*)

Fourth, the Gloversville Defendants argue that Plaintiff has not opposed their arguments regarding his failure to allege facts plausibly suggesting the personal involvement of Defendants VanDeusen and John Sira in the alleged constitutional violations. (*Id.* at 6.)

Fifth, the Gloversville Defendants argue that Defendants VanDeusen and John Sira are entitled to qualified immunity and Plaintiff has failed to allege facts plausibly suggesting a *Monell* claim for the reasons stated in their memorandum of law. (*Id.* at 6-7.)

Sixth, the Gloversville Defendants argue that Plaintiff should not be given an opportunity to amend his Complaint because any amendments would be futile for the following reasons: (1) the attachments to Plaintiff's opposition papers demonstrate that the Gloversville Defendants were not involved with Plaintiff's criminal investigation, arrest and/or prosecution; and (2) the statute of limitations regarding the majority of Plaintiff's claims has expired. (*Id.* at 7-8.)

### c. The Johnstown Defendants' Reply Memorandum of Law

Generally, the Johnstown Defendants assert eight arguments in reply to Plaintiff's opposition. (Dkt. No. 47 [Johnstown Defs.' Reply Mem. of Law].)

First, the Johnstown Defendants restate their argument from their memorandum of law that all of Plaintiff's § 1983 claims, with the exception of his malicious prosecution claim, are time-barred and Plaintiff has failed to oppose the dismissal of those claims on this basis. (*Id.* at 2.)

Second, the Johnstown Defendants restate their argument from their memorandum of law that Plaintiff's malicious prosecution claim should be dismissed because (a) Plaintiff has failed to allege facts plausibly suggesting that the Johnstown Defendants initiated a criminal proceeding against him, (b) a termination in the interest of justice is not a favorable termination, (c) the N.Y. Court of Claims has already determined that probable cause existed for Plaintiff's arrest, and (d) Plaintiff has failed to allege facts plausibly suggesting either malice or that the Johnstown Defendants

attempted to achieve a collateral purpose beyond Plaintiff's criminal proceeding. (*Id.* at 2-4.)

Third, the Johnstown Defendants restate their argument from their memorandum of law that Plaintiff has failed to allege facts plausibly suggesting a claim under §§ 1981, 1985, and 1986. (*Id.* at 4-5.)

Fourth, the Johnstown Defendants restate their argument that Plaintiff has failed to allege facts plausibly suggesting the personal involvement of Defendant Gifford in a violation of Plaintiff's constitutional rights and Plaintiff's allegation that Defendant Gifford advised him over the telephone that he " shouldn't of did what [he] did" and hung up is insufficient to state a claim. (*Id.* at 5.)

Fifth, the Johnstown Defendants restate their arguments from their memorandum of law that the claims against the Johnstown Police Department must be dismissed because it is a nonlegal entity and he has failed to allege facts plausibly suggesting a *Monell* claim. (*Id.* at 5-6.)

 **\*10** Sixth, the Johnstown Defendants argue that Plaintiff's state law claims must be dismissed because (a) he failed to serve a notice of claim, and (b) they are time-barred by the one-year-and-ninety-day statute of limitations period. (*Id.* at 6-7.)

Seventh, the Johnstown Defendants restate their arguments from their memorandum of law that Defendants Gifford and Gilbo are entitled to qualified immunity. (*Id.* at 7-8.)

Eighth, the Johnstown Defendants argue that Plaintiff should not be given an opportunity to amend his Complaint because any amendments would be futile. (*Id.* at 8-10.)

### d. Defendant Ashdown's Reply Memorandum of Law

Generally, Defendant Ashdown asserts seven arguments in reply to Plaintiff's opposition. (Dkt. No. 52 [Def. Ashdown's Reply Mem. of Law].)

First, Defendant Ashdown argues that the Court should disregard Plaintiff's opposition papers because they were filed three days after the deadline set by the Court and Plaintiff has not offered any explanation for his delayed filing. (*Id.* at 2.)

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

Second, Defendant Ashdown argues that, even if the Court considers Plaintiff's opposition papers, he is still entitled to prosecutorial immunity because (a) Plaintiff's admissions and "evidence" contained in his opposition papers demonstrate that Defendant Ashdown acted exclusively within his role as special prosecutor, (b) all activities Plaintiff argues that Defendant Ashdown engaged in were also within the scope of his duties in initiating and pursuing a criminal prosecution, and (c) Plaintiff's continued speculation that Defendant Ashdown acted in concert with law enforcement agents or the other Defendants is speculative at best and does not plausibly suggest a claim. (*Id.* at 2-3.)

Third, Defendant Ashdown restates the argument from his memorandum of law that Plaintiff's § 1983 claims for malicious abuse of power, abuse of process, false arrest, and conspiracy are time-barred by the statute of limitations. (*Id.* at 3.)

Fourth, Defendant Ashdown restates his arguments from his memorandum of law that Plaintiff has failed to allege facts plausibly suggesting a claim under §§ 1981, 1983, 1985, and 1986. (*Id.* at 4.)

Fifth, Defendant Ashdown argues that Plaintiff has failed to allege facts plausibly suggesting a claim for intentional infliction of emotional distress because (a) any alleged tortious acts by Defendant Ashdown were taken within the scope of his role as special prosecutor, (b) Plaintiff has offered nothing more than conclusory assertions that Defendant Ashdown acted in concert with other Defendants for personal and/or nefarious reasons, and (c) no rational fact-finder could find that Defendant Ashdown engaged in extreme and outrageous conduct. (*Id.* at 5.)

Sixth, Defendant Ashdown argues that he is entitled to qualified immunity for the reasons stated in his memorandum of law. (*Id.* at 5-6.)

Seventh, and finally, Defendant Ashdown argues that, for the foregoing reasons, Plaintiff should not be given an opportunity to amend his Complaint because any amendments would be futile. (*Id.* at 6-7.)

**e. Defendant Bazan's Reply Memorandum of Law**

Generally, Defendant Bazan asserts four arguments in reply to Plaintiff's opposition. (Dkt. No. 55 [Def. Bazan's Reply Mem. of Law].)

First, Defendant Bazan argues that Plaintiff's opposition papers should not be considered because they were filed after the deadline set by this Court. (*Id.* at 1.)

**\*11** Second, Defendant Bazan argues that Plaintiff has failed to refute the fact that the N.Y. Court of Claims has already determined that probable cause existed for his arrest. (*Id.*)

Third, Defendant Bazan argues that Plaintiff has failed to respond to the arguments that his claims are time-barred and that Defendant Bazan is entitled to qualified immunity. (*Id.* at 2.)

Fourth, and finally, Defendant Bazan argues that Plaintiff should not be given an opportunity to amend his Complaint because (1) any amendments would be futile, (2) Plaintiff has not filed a proposed amended complaint, and (3) there are no meritorious claims that can be asserted against Defendant Bazan. (*Id.*)

## III. RELEVANT LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand,

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

**\*12** Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12. [1] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [2] Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson*, 549 F. Supp. 2d at 214, n.28 [citations omitted]. [3]

[1]     *See Vega v. Artus,* 610 F. Supp. 2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases).

[2]     *See Rosendale v. Brusie,* 374 Fed.Appx. 195, 196 (2d Cir. 2010) ("[A]lthough the courts remain

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

obligated to construe a pro se complaint liberally, ... the complaint must contain sufficient factual allegations to meet the plausibility standard."); *Vega,* 610 F. Supp. at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F. Supp. 2d at 214 & n.34 (citing Second Circuit cases).

3    It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus,* 127 S. Ct. 2197, 2200 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S. Ct. 1965, n.3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. See *Rusyniak,* 629 F. Supp. 2d at 214 & n.35 (explaining holding in *Erickson*).

**\*13** Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. 4 Moreover, in the Second Circuit, a *pro se* plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his

complaint–to the extent those papers are consistent with the allegations in the complaint. 5

4    See Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC,* No. 10-573, 2011 WL 2135734, at \*1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.... Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint.... However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a]

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 110 of 175

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

5      See *Drake v. Delta Air Lines, Inc.,* 147 F.3d 169, 170 n.1 (2d Cir. 1998) (per curiam) ("[W]e deem Drake's complaint to include the facts contained in his memorandum of law filed in response to Delta's 1996 motion to dismiss."); *Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir. 1987) ("In his affidavit submitted in opposition to defendants' motion to dismiss, Gill asserts that Mooney's actions amounted to deliberate and willful indifference. Liberally construed under *pro se* pleading standards, Gill's allegations against Mooney involve more than ordinary lack of due care for the prisoner's interests or safety, ... and therefore state a colorable claim under the Eighth and Fourteenth Amendments.") (internal quotation marks and citation omitted); *Donhauser v. Goord,* 314 F. Supp. 2d 119, 212 (N.D.N.Y.) (Sharpe, M.J.) ("[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they "are consistent with the allegations in the complaint.") (collecting district court cases), *vacated on other grounds,* 317 F. Supp. 2d 160 (N.D.N.Y. 2004) (Hurd, J.).

## IV. ANALYSIS

**\*14** As an initial matter, the Court must determine what extraneous documents it may consider in deciding Defendants' respective motions. More specifically, Defendants have submitted a decision and order from the New York Court of Claims in a related state court action where Plaintiff sued the State of New York for false arrest and defamation. (Dkt. No. 11, Attach. 4 [N.Y. Court of Claims Op.].) Defendants argue that the Court can take judicial notice of this document. (Dkt. No. 11, Attach. 5, at 3 [Cty. Defs.' Mem. of Law].) In opposing Defendants' respective motions, Plaintiff appears to have submitted all of the exhibits that were filed in that action, including various deposition transcripts. (Dkt. No. 51, Attach. 1.)

As discussed above in Part III of this Decision and Order, there are four circumstances under which the Court may consider materials outside of the pleadings, including documents that the Court may take judicial notice of. State court decisions are clearly public documents that fall under

this category. *See Johnson v. Pugh,* 11-CV-0385, 2013 WL 3013661, at \*2 (E.D.N.Y. June 18, 2013) (stating that, "[a] court may take judicial notice of matters of public record, including ... decisions in prior state court adjudications"); *accord, Nemeth v. Vill. of Hancock,* 10-CV-1161, 2011 WL 56063, at \*1 n.3 (N.D.N.Y. Jan. 7, 2011) (McAvoy, J.) (collecting cases); *Barnes v. Cty. of Monroe,* 85 F. Supp. 3d 696, 723 (W.D.N.Y. 2015). Therefore, the Court agrees with Defendants that it may take judicial notice of the decision and order from the New York Court of Claims. However, in so doing, the Court may take judicial notice "only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." *Glob. Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir. 2006) (internal quotations and citation omitted).

The Court reaches a different conclusion with respect to the documents submitted by Plaintiff for the following three reasons. First, Plaintiff does not explain how the documents may be properly considered by the Court. Although it is conceivable that they could be considered public documents, Plaintiff admits that not all of the exhibits (without identifying which ones) were properly filed with the New York Court of Claims. (Dkt. No. 51, at 16 [Pl.'s Opp'n Mem. of Law] [stating that "my evidence was not submitted in the right form and was not considered"].) Similarly, the decision and order indicates that the New York Court of Claims did not consider the exhibits submitted by Plaintiff. (Dkt. No. 11, Attach. 4, at 7.)

Second, with respect to the deposition transcripts, the Court finds that they cannot be properly considered as either incorporated by reference or integral to the Complaint. The Complaint neither expressly references the depositions, nor does it bear any indication that they were substantially relied upon in its drafting. *See Goel v. Bunge, Ltd.,* 820 F.3d 554, 560 (2d Cir. 2016) (finding error in district court's decision to consider deposition testimony from an underlying state court action and stating that "[a] complaint that alleges facts related to or gathered during a separate litigation does not open the door to consideration, on a motion to dismiss, of any and all documents filed in connection with that litigation"); *see also Allstate Ins. Co. v. Rozenberg,* 771 F. Supp. 2d 254, 268 (E.D.N.Y. 2011) (declining to consider deposition transcript because the complaint did not make any reference to it and the plaintiffs did not "purport to have relied on [the] deposition in crafting the allegations").

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 111 of 175
Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)
2016 WL 4046780

Third, in any event, the Court has reviewed the exhibits submitted by Plaintiff and it is apparent that, even if the Court were to consider them, they are immaterial to the Court's adjudication of Defendants' respective motions.

**\*15** Having resolved this issue, the Court now turns to its analysis of the issues raised in Defendants' respective motions.

### A. Whether Plaintiff's Malicious Prosecution Claim Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' respective memoranda of law. *See*, *supra*, Part II of this Decision and Order. To those reasons, the Court adds the following analysis.

"To state a claim for malicious prosecution under New York law, the plaintiff must show: (1) the defendant initiated a criminal proceeding; (2) the proceeding terminated in plaintiff's favor; (3) there was no probable cause for the criminal charge; and (4) the defendant acted maliciously." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 272 (S.D.N.Y. 2010) (internal quotation marks omitted). "In addition, the Court of Appeals requires that in order 'to sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating claimant's personal liberty and privacy interests under the Fourth Amendment.' " *Brandon*, 705 F. Supp. 2d at 272 (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 316 [2d Cir. 2004]).

As discussed above, Defendants argue that this claim should be dismissed because (1) the dismissal of Plaintiff's criminal proceeding in the interest of justice is not a termination in his favor, and (2) the New York Court of Claims has determined that there was probable cause for Plaintiff's arrest. With respect to the first argument, it is true that the Second Circuit has held that "[a] dismissal 'in the interest of justice' under [N.Y. Crim. Proc. Law § 170.40] cannot provide the favorable termination required as the basis for a claim of malicious prosecution." *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 Fed.Appx. 672, 674 (2d Cir. 2009) (internal quotations omitted); *accord*, *Murphy v. Gibbons*, 13-CV-1433, 2014 WL 4828126, at \*6 (N.D.N.Y. Sept. 29, 2014) (Sharpe, C.J.). However, other courts in this Circuit have recognized that, in *Cantalino v. Danner*, 96 N.Y.2d 391 (N.Y. 2001), the New York Court of Appeals rejected this proposition as a *per se* rule. *See Guzman v. U.S.*, 11-CV-5834, 2013 WL 543343, at

\*8 (S.D.N.Y. Feb. 14, 2013) (stating that, "[b]ecause *Lynch* relies on *Hygh*, it appears that the Second Circuit overlooked the Court of Appeals' clarification of the law in *Cantalino*. Indeed, even after the Second Circuit decided *Lynch*, other judges [in this Circuit] have seen fit to apply the rule of *Cantalino*."); *see also Norton v. Town of Brookhaven*, 47 F. Supp. 3d 152, 160 (E.D.N.Y. 2014) (collecting cases). Indeed, in *Cantalino*, the New York Court of Appeals explained that, while "there are circumstances where a dismissal in the interest of justice is inconsistent with innocence because it represents mercy requested or accepted by the accused," the Court's past decisions did "not establish a *per se* rule that a dismissal in the interest of justice can never constitute a favorable termination. Rather ... the question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused." *Cantalino*, 96 N.Y. 2d at 396-97.

**\*16** The Court need not linger on this issue, however, because it agrees with Defendants' second argument: that dismissal of Plaintiff's malicious prosecution claim is warranted on the grounds that the N.Y. Court of Claims has already determined that probable cause existed for his arrest. *See Martin v. Cty. of Nassau*, 692 F. Supp. 2d 282, 293 (E.D.N.Y. 2010) ("[T]he Court takes judicial notice of the fact that another court has already found probable cause for the plaintiff's arrest."). Although Plaintiff appears to contest this determination in his opposition papers, he is collaterally estopped from doing so. Specifically, "[t]he doctrine of collateral estoppel, or issue preclusion, refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Sahni v. Legal Servs. of the Hudson Valley*, 14-CV-1616, 2015 WL 4879160, at \*3 (S.D.N.Y. Aug. 13, 2015). "[I]nferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations." *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004). Under federal law, collateral estoppel applies when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Austin v. Downs, Rachlin & Martin*, 270 Fed.Appx. 52, 53-54 (2d Cir. 2008). Similarly, under New York law, federal courts must give preclusive effect to state court judgments "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 112 of 175

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

the plaintiff had a full and fair opportunity to litigate the issue in an earlier action." *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002).

Here, the N.Y. Court of Claims dismissed Plaintiff's false arrest claim as a matter of law, finding that "Claimant fails to raise any genuine issues of material fact which illustrate that Investigator Bazan lacked probable cause to believe that a crime had been committed." (Dkt. No. 11, Attach. 4, at 6.) The Court of Claims then held that, because "Claimant's arrest is privileged ... Defendant is entitled to summary judgment dismissing the cause of action alleging false arrest." (*Id.* at 7.) A lack of probable cause is a necessary element of claims for false arrest and malicious prosecution. Furthermore, Plaintiff had a full and fair opportunity to litigate the issue of probable cause through the summary judgment motion filed in the N.Y. Court of Claims. *See Tobias v. First City Nat'l Bank & Trust Co.*, 709 F. Supp. 1266, 1270 (S.D.N.Y. 1989) (stating that "[a] fully litigated and opposed summary judgment determination can constitute the requisite full and fair opportunity to litigate"). Accordingly, because Plaintiff cannot establish that probable cause was lacking, his malicious prosecution claim is dismissed. *See Mitchell v. Hartnett*, 262 F. Supp. 2d 153, 155 (S.D.N.Y. 2003) (state court decision collaterally estopped plaintiff from relitigating the lawfulness of his arrest via § 1983 claim); *Boomer v. Bruno*, 134 F. Supp. 2d 262, 268-69 (N.D.N.Y. 2001) (Kahn, J.) (dismissing § 1983 malicious prosecution claim where state court previously determined the issue); *Graebe v. Falcetta*, 726 F. Supp. 36, 38 (E.D.N.Y. 1989) (giving preclusive effect to probable cause determination in underlying state court action when dismissing subsequent § 1983 malicious prosecution claim).

### B. Whether Plaintiff's § 1983 Claims for "Malicious Abuse of Power,"[6] Malicious Abuse of Process, and False Arrest Are Time-Barred

[6] Although Plaintiff titles this claim as "Malicious Abuse of Power," it is clear from a reading of the substantive allegations that this is a claim for malicious abuse of process. (Dkt. No. 1, at 9 [Pl.'s Compl.].)

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' respective memoranda of law. *See*, *supra*, Part II of this Decision and Order. To those reasons, the Court adds the following analysis.

"Under New York law, the statute of limitations for § 1983 claims, including false arrest and malicious abuse of process, is three years." *Anderson v. Cty. of Putnam*, 14-CV-7162, 2016 WL 297737, at *2 (S.D.N.Y. Jan. 22, 2016). A § 1983 claim accrues "when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994); *see also Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (stating that a claim accrues under § 1983 "when the plaintiff knows or has reason to know of the injury which is the basis of his action...."). "Ordinarily, a claim for abuse of process accrues at such time as the criminal process is set in motion–typically at arrest–against the plaintiff." *Duamutef v. Morris*, 956 F. Supp. 1112, 1118 (S.D.N.Y. 1997) (Sotomayor, J.); *accord*, *Anderson*, 2016 WL 297737, at *3. Similarly, "[a] claim for false arrest generally accrues on the date of the arrest." *Harrison v. New York*, 95 F. Supp. 3d 293, 327 (E.D.N.Y. 2015).

**\*17** In the present case, the Complaint alleges that Plaintiff was arrested on January 13, 2012. (Dkt. No. 1, ¶ 14 [Pl.'s Compl.].) Plaintiff commenced this action on August 13, 2015, which is three years and eight months after his arrest. Accordingly, Plaintiff's § 1983 claims for false arrest, malicious abuse of power, and abuse of process are time-barred by the applicable statute of limitations.

In any event, the Court would dismiss Plaintiff's false arrest claim because probable cause for his arrest has already been determined by the N.Y. Court of Claims as discussed above in Part IV.A. of this Decision and Order. *See McBride v. Bratton*, 95-CV-9626, 1996 WL 636075, at *3 (S.D.N.Y. Nov. 4, 1996) (Chin, J.), *aff'd*, 122 F.3d 1056 (2d Cir. 1997) (dismissing § 1983 false arrest claim where state court previously determined officers had probable cause to arrest); *accord*, *Brown v. De Filippis*, 717 F. Supp. 172, 179 (S.D.N.Y. 1989); *see also Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (stating that "[p]robable cause is a complete defense to false arrest claims"). With respect to Plaintiff's malicious abuse of process claim, "[c]ourts in this Circuit appear to be divided on whether the existence of probable cause defeats a claim for malicious abuse of process." *Posner v. City of New York*, 11-CV-4859, 2014 WL 185880, at *7 (S.D.N.Y. Jan. 16, 2014); *see also Deanda v. Hicks*, 137 F. Supp. 3d 543, 576 (S.D.N.Y. 2015) (collecting cases); *cf. Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 958 (2d Cir. 2015) (recognizing the confusion surrounding this issue but declining to resolve it).[7] Nevertheless, the

**Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)**

2016 WL 4046780

Court would dismiss Plaintiff's malicious abuse of process claim for the alternative reason that he has not alleged facts plausibly suggesting that Defendants employed regularly issued legal process to compel performance of some act, with intent to do harm without excuse or justification, in order to obtain a collateral objective that is outside the legitimate ends of the process, for the reasons stated in Defendants' respective memoranda of law. (Dkt. No. 11, Attach. 5, at 12-14 [Cty. Defs.' Mem. of Law]; Dkt. No. 14, Attach. 3, at 10-12[Gloversville Defs.' Mem. of Law]; Dkt. No. 26, Attach. 3, at 12-14 [Def. Ashdown's Mem. of Law]; Dkt. No. 27, Attach. 3, at 14-15 [Def. Bazan's Mem. of Law].) For example, while the Complaint generally alleges that Defendants were maliciously motivated to use the "trump" criminal charge to coerce Plaintiff into discontinuing his civil lawsuit against Mr. Andrews (Dkt. No. 1, ¶¶ 16-18 [Pl.'s Compl.] ), it does not plausibly suggest a collateral objective because the allegations plausibly suggest merely a malicious motive. *See Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003) (explaining that a "malicious motive alone" is not a "collateral objective"); *Perry v. Manocherian*, 675 F. Supp. 1417, 1429 (S.D.N.Y. 1987) (stating that a "malicious motive alone ... does not give rise to a cause of action for abuse of process" and holding that issuance of a summons and complaint, even if made with the intent to coerce settlement, does not constitute abuse of process).

7     The Court notes that, in *Jones v. J.C. Penny's Dep't Stores Inc.*, 317 Fed.Appx. 71 (2d Cir. 2009), the Second Circuit, in a non-precedential summary order, indicated its support for the interpretation that probable cause is a complete defense to an abuse of process claim. *Jones*, 317 Fed.Appx. at 74 (holding that "[t]he conclusion that [the plaintiff] could not prevail on her claims that the officers lacked probable cause for her arrest ... required dismissal of her ... claims of abuse of process"). Under *Jones*, Plaintiff's malicious abuse of process claim would clearly fail because, as discussed above in Part IV.A. of this Decision and Order, probable cause for Plaintiff's arrest has already been established. At the very least, Defendants would be entitled to qualified immunity based on this ground.

**C. Whether Plaintiff's Conspiracy Claim Under §§ 1983 and 1985 Should Be Dismissed**

**\*18** After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth below

**1. Conspiracy Claim Under § 1983**

"To establish a § 1983 conspiracy, plaintiff must prove '(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.' " *Mitchell v. Cty. of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. 2011) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 [2d Cir. 1999]). "In addition, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (internal quotations omitted); *accord*, *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011). Finally, "a § 1983 conspiracy fails as a matter of law where there is no underlying constitutional violation." *Mitchell*, 786 F. Supp. 2d at 564; *accord*, *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 97 (N.D.N.Y. 2013) (Suddaby, J.).

Here, Plaintiff's § 1983 conspiracy claim is dismissed because his underlying constitutional claims for false arrest, malicious prosecution, abuse of process, and malicious abuse of power have been dismissed. In any event, the Court agrees with Defendants that Plaintiff's allegations, even when read with the utmost of special liberality, are impermissibly vague and conclusory to plausibly suggest a conspiracy.

**2. Conspiracy Claim Under § 1985**

"To avoid dismissal of a § 1985 claim, a plaintiff must demonstrate: (1) a conspiracy; (2) for the purpose of depriving either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) a person is either injured in his person or property or deprived of any right of a citizen of the United States; and (5) the conspiracy is motivated by some racial or perhaps otherwise invidious discriminatory animus." *K.W. ex rel. Brown v. City of New York*, 275 F.R.D. 393, 399 (E.D.N.Y. 2011).

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 114 of 175

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

Because the Court has found that Plaintiff has failed to allege facts plausibly suggesting a conspiracy and/or an underlying constitutional violation, Plaintiff's § 1985 claim is likewise dismissed. *See Alston v. Sebelius*, 13-CV-4537, 2014 WL 4374644, at *18 (S.D.N.Y. Sept. 2, 2014) (stating that, "given that plaintiff has failed to allege an underlying claim for a constitutional violation, his conspiracy claim under Section 1985 cannot stand."). In addition, the Court agrees with Defendants that the Complaint is devoid of any facts plausibly suggesting that their alleged actions were motivated by racial or discriminatory animus or that Plaintiff is a member of a protected class.

### D. Whether Plaintiff's Claim for "Refusing or Neglecting to Prevent" Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the following two reasons.

**\*19** First, the Court construes this claim as an attempt to bring a claim under 42 U.S.C. § 1986. *See Bromfield v. Lend-Mor Mortg. Bankers Corp.*, 15-CV-1103, 2016 WL 632443, at *6 (D. Conn. Feb. 17, 2016) (reading *pro se* plaintiff's claim that defendants "violated [her] constitutionally protected Rights by refusing or neglecting to prevent deprivation of [her] rights under Color of Law" as a claim under § 1986).

Second, because Plaintiff's § 1985 claim is dismissed, his § 1986 claim must also be dismissed. *See Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) (stating that "[a] claim under Section 1986 ... lies only if there is a viable conspiracy claim under 1985"); *accord, Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 361 (N.D.N.Y. 2015) (Suddaby, J.).

### E. Whether Plaintiff's *Monell* Claim Against the Johnstown Police Department and Gloversville Police Department Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for each of the two reasons set forth below.

First, because the Court has dismissed Plaintiff's underlying constitutional claims, his *Monell* claim must also be dismissed. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely

correct"); *accord, Grega v. Pettengill*, 123 F. Supp. 3d 517, 556 (D. Vt. 2015).

Second, in any event, police departments are not municipalities or "persons" within the meaning of § 1983. *See Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005) (holding that, "[b]ecause a municipal police department is not an independent legal entity, it is not subject to suit under [§] 1983") (collecting cases). Accordingly, Plaintiff's *Monell* claim is dismissed on this additional basis.

### F. Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Supervisory Liability Claim Against Defendants Gifford and VanDeusen

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' respective memoranda of law. (Dkt. No. 30, Attach. 3, at 7-8 [Johnstown Defs.' Mem. of Law]; Dkt. No. 14, Attach. 3, at 19-20 [Gloversville Defs.' Mem. of Law].). In addition to those reasons, the Court adds the following two points.

First, this claim is dismissed on the basis that Plaintiff cannot demonstrate an underlying constitutional violation because his claims have been dismissed. *See Lacey v. Yates Cty.*, 30 F. Supp. 3d 213, 227 (W.D.N.Y. 2014) (stating that, "[a]s a threshold matter, where a plaintiff has not established any underlying constitutional violation, [he] cannot state a claim for § 1983 supervisory liability") (internal quotations omitted); *accord, Lawrence v. Evans*, 136 F. Supp. 3d 486, 491 (W.D.N.Y. 2015).

Second, even if the merits of Plaintiff's claim were considered, the Court notes that the only allegation regarding Defendant VanDeusen's personal involvement in this matter is his failure "to train, supervise and discipline Captain Sira for his conflicted and malice acts[,]" (Dkt. No. 1, ¶ 46 [Pl.'s Compl.] ), which is wholly conclusory and insufficient to plausibly suggest his personal involvement in a constitutional violation. *See Davis v. Cty of Nassau*, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005) (stating that "[a] complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal."); *Tricoles v. Bumpus*, 05-CV-3728, 2006 WL 767897, at *4 (E.D.N.Y. Mar. 23, 2006) ("Courts have dismissed § 1983 ... claims where a complaint merely asserts bare conclusory statements that a defendant supervisor failed to supervise or train ...."); *Pravda v. City of Albany*, 956

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 115 of 175

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

2016 WL 4046780

F. Supp. 174, 182 (N.D.N.Y. 1997) (Scullin, J.) (granting defendants' motion for judgment on the pleadings, where *pro se* plaintiff's "conclusory allegations" that county jail superintendent and county sheriff were responsible for setting county policy and supervising corrections officers involved in abuse were "insufficient to establish the personal involvement of these individual Defendants in Plaintiff's alleged constitutional deprivations").

### G. Whether Plaintiff's State Law Claim for Intentional Infliction of Emotional Distress Should Be Dismissed

**\*20** After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' respective memoranda of law regarding Plaintiff's failure to serve Defendants' with a notice of claim as required by N.Y. Gen. Mun. Law § 50-e. *See Rivas v. Suffolk Cty.*, 326 F. Supp. 2d 355, 360-61 (E.D.N.Y. 2004) ("The defendants contend that the plaintiff has failed to serve the required notice of claim, and the plaintiff has not denied such contentions in his reply papers. In the absence of such a filing, the plaintiff's tort claim for intentional infliction of emotional distress ... must be dismissed"). In addition, the Court notes that it does not have the authority to consider a motion for leave to file a late notice of claim. *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 710 (S.D.N.Y. 2011) (collecting cases). Therefore, Plaintiff's claim for intentional infliction of emotional distress is dismissed.

### H. Whether Plaintiff Should Be Afforded Leave to Amend His Complaint

After carefully considering the matter, the Court answers this question in negative for the reasons set forth below.

Generally, *pro se* civil rights litigants, such as Plaintiff, are to be afforded special solicitude in this Circuit. *See, e.g., Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (explaining that the liberal pleading standard set forth in Fed. R. Civ. P. 12[b][6] "applies with greater force when the complaint is submitted *pro se* or the plaintiff alleges civil rights violations"). As a result, where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's]

causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112.

Here, the Court finds that the defects with Plaintiff's claims are substantive, rather than formal, such that any amendments would be futile. More specifically, the Court has found that Plaintiff's claims for false arrest, malicious abuse of power, and malicious abuse of process are time-barred and, therefore, cannot be cured by better pleading. *See Mackensworth v. S.S. Am. Merch.*, 28 F.3d 246, 251 (2d Cir. 1994) (finding denial of leave to amend complaint proper on futility grounds because proposed claim would have been barred by the statute of limitations); *Diallo v. Williams*, 04-CV-4556, 2006 WL 156158, at \*2 (S.D.N.Y. Jan. 20, 2006) (denying plaintiff's motion to amend to include § 1983 claims as futile where the claims would be barred by the statute of limitations). With respect to Plaintiff's malicious prosecution claim, the Court has found that Plaintiff is collaterally estopped from re-litigating the issue of probable cause for his arrest and, therefore, cannot establish the necessary elements for his claim.

Finally, because Plaintiff cannot establish an underlying constitutional violation, any amendments to his § 1983 and conspiracy claims would be futile. Similarly, any amendments to Plaintiff's claim for intentional infliction of emotional distress would also be futile because he has failed to serve a notice of claim.

**ACCORDINGLY**, it is

**ORDERED** that Defendants Fulton County and Louise Sira's Motion to Dismiss (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendants' Gloversville Police Department, John P. Sira, Jr. and Donald Vandeusen's Motion to Dismiss (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant Jesse Ashdown's Motion to Dismiss (Dkt. No. 26) is **GRANTED**; and it is further

**\*21 ORDERED** that Defendant Darryl Bazan's Motion to Dismiss (Dkt. No. 27) is **GRANTED**; and it is further

**ORDERED** that Defendants Mark Gifford, David Gilbo and Johnstown Police Department's Motion to Dismiss (Dkt. No. 30) is **GRANTED**; and is further

Tirse v. Gilbo, Not Reported in Fed. Supp. (2016)

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 116 of 175

2016 WL 4046780

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** in its entirety with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4046780

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

837 Fed.Appx. 67 (Mem)
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE 32.1
AND THIS COURT'S LOCAL RULE 32.1.1. WHEN
CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN
ELECTRONIC DATABASE (WITH THE NOTATION
"SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON
ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

John DOE, Plaintiff-Appellant,

v.

Luke Zachary FENCHEL, Defendant-Appellee,
Cornell University, Lance R. Collins, Dean
of Engineering, William Carpenter, Officer,
David Forbes Delchamps, Associate Professor,
College of Engineering, Cornell University Police
Department, Wendy Gilmore-Fitzgerald, Defendants.

20-1971-cv
|
February 23, 2021

Appeal from an order of the United States District Court for
the Northern District of New York (D'Agostino, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the order
of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

For Plaintiff-Appellant: Terry J. Kirwan, Jr., Kirwan Law
Firm, P.C., Syracuse, NY

For Defendant-Appellee: Russell E. Maines, Allen & Maines,
Ithaca, NY

Present: Debra Ann Livingston, Chief Judge, Denny Chin,
Michael H. Park, Circuit Judges.

**SUMMARY ORDER**

Plaintiff-Appellant John Doe ("Doe") appeals from a May 21,
2020 memorandum and order of the United States District
Court for the Northern District of New York (D'Agostino, *J.*)
granting a motion to dismiss in favor of Defendant-Appellee
Luke Zachary Fenchel ("Fenchel"). Doe commenced this
action *pro se* on September 25, 2019 and thereafter filed an
amended complaint alleging claims under the Americans with
Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Title
VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.
§ 2000e *et seq.* After Doe obtained counsel, he claimed that
Fenchel may also be held liable under 42 U.S.C. § 1985(3).
However, he did not seek leave to file a second amended
complaint. On appeal, Doe challenges only the dismissal of
his purported Section 1985(3) claim against Fenchel. [1] We
assume the parties' familiarity with the underlying facts, the
procedural history of the case, and the issues on appeal.

[1]    In declining to challenge the district court's
       treatment of his ADA and Title VII claims, Doe
       has waived review of them. *See Norton v. Sam's
       Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues
       not sufficiently argued in the briefs are considered
       waived and normally will not be addressed on
       appeal.").

* * *

We review *de novo* the district court's judgment granting
Fenchel's motion to dismiss. *Stratte-McClure v. Morgan
Stanley*, 776 F.3d 94, 99–100 (2d Cir. 2015). "To **\*68**
survive a motion to dismiss, a complaint must contain sufficient
factual matter, accepted as true, to 'state a claim to relief that
is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662,
678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955,
167 L.Ed.2d 929 (2007)). "A claim has facial plausibility
when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Id.* "Threadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice." *Id.* "We may affirm on any ground
that finds support in the record, regardless of the grounds
upon which the district court relied." *Ellul v. Congregation of
Christian Brothers*, 774 F.3d 791, 796 (2d Cir. 2014).

Setting aside the fact that Doe did not plead a cause of action under Section 1985(3), the district court dismissed his supposed Section 1985(3) claim because: 1) he failed to allege facts that give rise to a plausible entitlement to relief under Section 1985(3); and 2) he brought claims under Title VII and the ADA, precluding relief under Section 1985(3). We affirm on the former ground and need not address the latter. To state a claim for civil rights conspiracy under Section 1985(3), a plaintiff must allege:

> 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Gray v. Town of Darien, 927 F.2d 69, 73 (2d Cir. 1991). As to the first of these elements, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks omitted). A plaintiff must also allege that the conspiracy was "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." Dolan v. Connolly, 794 F.3d 290, 296 (2d Cir. 2015) (internal quotation marks omitted).

Here, even assuming arguendo that Doe pleaded a cause of action under Section 1985(3), he failed to allege plausibly that members of the alleged conspiracy entered into an agreement to achieve unlawful ends and were motivated by some class-based animus. To be sure, Doe alleges throughout his amended complaint both that Fenchel and others conspired to deprive him of his constitutional rights and that members of the conspiracy targeted him and discriminated against him based on his "race, color, gender, sex, veteran status, disability status, [and] so forth." E.g., App'x at 55 ¶ 4. But he fails to plead any facts in support of these conclusory allegations. [2] Such " 'naked assertion[s]' devoid of 'further factual enhancement' " are insufficient to give rise to a plausible entitlement to relief. Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (alteration in original) (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955); see also Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983) (per curiam) ("A complaint containing only conclusory, *69 vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."). Consequently, the district court did not err in concluding that Doe failed to state a claim under Section 1985(3).

[2]    Moreover, Doe asserts elsewhere in his amended complaint that whatever motivation Fenchel and others had for engaging in the supposed conspiracy was financial, not discriminatory.

\* \* \*

We have considered Doe's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the order of the district court.

## All Citations

837 Fed.Appx. 67 (Mem)

---

End of Document

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4374644
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Orlando ALSTON, et al., Plaintiffs,

v.

Kathleen SEBELIUS, HHS Secretary, et al., Defendants.

No. 13–CV–4537 (SJF)(ARL).
|
Signed Sept. 2, 2014.

**Attorneys and Law Firms**

Orlando Alston, Inwood, NY, pro se.

Diane C. Leonardo-Beckmann, United States Attorney's Office, Central Islip, NY, Ralph Pernick, New York State Attorney General, Pablo A. Fernandez, Mineola, NY, for Defendants.

*ORDER*

FEUERSTEIN, District Judge.

**\*1** Pending before the Court is the Report and Recommendation ("the Report") of the Honorable Arlene R. Lindsay, United States Magistrate Judge, dated July 31, 2014: (1) recommending, *inter alia,* (a) that the defendants' motions to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim for relief be granted, and (b) that the application of plaintiff Orlando Alston ("plaintiff") for leave to amend the amended complaint be denied; and (2) advising plaintiff (a) that "[a]ny objections to th[e] Report * * * must be electronically filed with the Clerk of the Court within 14 days of service[,]" (Report at 35), and (b) that a "[f]ailure to file objections within th[e] [fourteen (14) day] period waives the right to appeal the District Court's Order[,]" (*id.*) (citing 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir.1997); and *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996)). The Court served a copy of the Report upon plaintiff by express mail on July 31, 2014. (Doc. No. 55). Plaintiff has not filed any objections to the Report, nor sought an extension of time to do so. For the reasons stated herein and in the Report, Magistrate Judge Lindsay's

Report is accepted in its entirety and the amended complaint is dismissed in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim for relief.

I. Standard of Review

Any party may serve and file written objections to a report and recommendation of a magistrate judge on a dispositive matter within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)(2). Any portion of such a report and recommendation to which a timely objection has been made is reviewed *de novo.* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)(3). The court, however, is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are interposed. See *Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Specifically, where, as here, a party "received clear notice of the consequences of the failure to object" to a report and recommendation on a dispositive matter, *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992) (quotations and citation omitted), his "failure to object timely to [that] report waives any further judicial review of the report." *Id.; see also Caidor v. Onondaga County,* 517 F.3d 601, 604 (2d Cir.2008); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993).

"Although this rule applies equally to counseled and *pro se* litigants, it is 'a nonjurisdictional waiver provision whose violation [the Court] may excuse in the interests of justice.' ' *King v. City of New York, Department of Corrections,* 419 F. App'x 25, 27 (2d Cir. Apr.4, 2011) (quoting *Roldan,* 984 F.2d at 89); *see also DeLeon v. Strack,* 234 F.3d 84, 86 (2d Cir.2000). "Such discretion is exercised based on, among other factors, whether the defaulted argument has substantial merit or, put otherwise, whether the magistrate judge committed plain error in ruling against the defaulting party." *Spence v. Superintendent. Great Meadow Correctional Facility,* 219 F.3d 162, 174 (2d Cir.2000); *see also King,* 419 F. App'x at 27 (accord).

II. Review of Report

**\*2** Although the Report provided plaintiff with the requisite "express warning" of the consequences of a failure to timely file objections thereto. *Caidor,* 517 F.3d at 603, plaintiff has not filed any objections to Magistrate Judge Lindsay's Report, nor sought an extension of time to do so. Accordingly, plaintiff has "waive[d] any further judicial review of the findings contained in the report." *Spence,* 219 F.3d at 174.

Moreover, as the Report is not plainly erroneous, the Court will not exercise its discretion to excuse plaintiff's default in filing timely objections to the Report in the interests of justice. Accordingly, the Report is accepted in its entirety and the amended complaint is dismissed in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim for relief.

III. Conclusion

For the reasons set forth herein and in the Report, Magistrate Judge Lindsay's Report is accepted in its entirety and the amended complaint is dismissed in its entirety with prejudice pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim for relief. The Clerk of the Court shall close this case and, pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this Order upon all parties as provided in Rule 5(b) of the Federal Rules of Civil Procedure and record such service on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

ORLANDO ALSTON, SARAH BAXTER (deceased), THELMA and JAMES GREEN (deceased), and INWOOD TERRACE APARTMENTS TENANTS, *et ah,*

Plaintiffs,

KATHLEEN SEBELIUS, HHS Secretary; BEATRICE DISMAN, SSA N.Y. Regional Commissioner; NIRZA NEGRON MORALES, HUD Director of Public Housing; MICHAEL WALKER, HHS Director of Media Services; NIRAI SHAH, MD, Commissioner NYS Managed Care; DARRYL C. TOWNES, Commissioner/CEO NYS HCR Statewide Section 8; LOUISE C. FINKELL, Director of OAH; EDWARD MANGANO, County Executive; JOHN E. IMHOF, PhD, Commissioner NC DSS; JOHN SARCONE, Executive Director OHCD; KRISTIN M. PROUD, Commissioner Office of Temporary and Disability Assistance OTDA; SARAH SMITH, Deputy Director LDSS APS; JANET HUNTER MCSHEA, LDSS Social Welfare Examiner Medicaid

Services; HOUSING AND URBAN DEVELOPMENTS [HUD]; HEALTH AND HUMAN SERVICES [HHS]; DEPARTMENT OF HEALTH [DOH]; OFFICE OF TEMPORARY AND DISABILITY ASSISTANCE [OTDA], OFFICE OF ADMINISTRATIVE HEARINGS [OAH] and LOCAL (PROGRAM) ADMINSTRATORS [LA]; COUNTY OF NASSAU [NC] DEPARTMENT OF SOCIAL SERVICES [LDSS] and OFFICE OF HOUSING AND COMMUNITY DEVELOPMENT [OHCD]; SOCIAL SECURITY ADMINISTRATION [SSA] and the STATE OF NEW YORK [NYS] AGENCIES–DIVISION OF HOMES AND COMMUNITY RENEWAL [DHCR],

**\*3** Defendants.

## REPORT AND RECOMMENDATION

LINDSAY, United States Magistrate Judge.

Before the court, on referral from District Judge Sandra J. Feuerstein, are the motions to dismiss of the defendants (1) Nassau County Department of Social Services ("NC DSS"); Office of Housing and Community Development ("OHCD"); Edward P. Mangano, County Executive ("Mangano"); John E. Imhof, PhD–Commissioner NC DSS ("Imhof"); John Sarcone, Executive Director OHCD ("Sarcone"); Smith, Deputy Executive LDSS APS ("Smith"); Janet Hunter McShea, LDSS Social Welfare Examiner Medicaid Services ("McShea") (the "County Defendants") pursuant to Fed.R.Civ.P. 12(b)(1)[1] and 12(b)(6); (2) Nirah Shah, MD Commissioner NYS Managed Care ("Shah"); Darryl C. Townes, Commissioner/CEO NYS HCR Statewide Section 8 ("Townes"); Kristin M. Proud, Commissioner–Office oF Temporary and Disability Assistance OTDA ("Proud"); Louise C. Finkell, Director of OAH ("Finkell"); Department of Health; Office of Temporary and Disability Assistance; Office of Administrative Hearings and Local (Program) Administrators; and New York State Division of Housing and Community Renewal (the "State Defendants") pursuant to Fed.R.Civ.P. 12(b) (1), 12(b)(5) and 12(b)(6); and (3) Kathleen Sebelius, HHS Secretary ("Sebelius"); Beatrice Disman, SSA N.Y. Regional Commissioner ("Disman"); Nirza Negron Morales, HUD Director Public Housing ("Morales"); Housing and Urban Development ("HUD"); and Health and Human Services ("HHS") (the "Federal Defendants") pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), (collectively "defendants"). For the reasons set forth herein, the undersigned respectfully reports and recommends that the defendants' motions be granted.

[1]     Although the County Defendants' Declaration in
Support of the Motion Seeking Dismissal refers
to Rule 12(b)(6), their Notice of Motion moves
pursuant to Rule 12(b) and their Memorandum of
Law addresses Rule 12(b)(1).

## BACKGROUND

The following facts are drawn from the amended complaint
and the court assumes these facts to be true for purposes of
deciding the pending motions to dismiss. These facts do not,
however, constitute findings of fact by the court. *See Colvin v.
State University College at Farmingdale,* No. 13–CV–3595
(SJF) (ARL), 2014 WL 2864224, at *1 n. 1 (E.D.N.Y. June
19, 2014).

Although largely incoherent and difficult to discern, plaintiff
Orlando Alston's ("Alston" or "plaintiff) amended complaint
appears to challenge a notice to vacate the premises issued to
Alston in state court. (Amended Compl. at 19, 23.) [2] Plaintiff
is a senior citizen with disabilities and is a tenant in an
apartment in a Section 8 housing [3] complex. (*Id.* at 6–7, 15–
16.) Alston resides in apartment 1Q in a 175–unit residential
community known as Inwood Terrace Apartments, located at
385 Bayview Avenue, Inwood, New York 11096. (*Id.* at 6.)
The landlord of Inwood Terrace Apartments is 385 LLC, an
entity participating in the Section 8 program ("385 LLC" or
the "landlord"). (*Id.* at 16 .) Plaintiff alleges that the Inwood
Terrace Apartment complex is in poor condition because the
landlord has not provided adequate on site security personnel
or security lighting for its tenants. (*Id* . at 15–19.)

[2]     As the amended complaint is not paginated or
otherwise consistently numbered, the undersigned
refers to the page numbers assigned by the
Electronic Case Filing system.

[3]     "Section 8 of the United States Housing Act of
1937, as codified by 42 U.S.C. § 1437f, is a
federal housing assistance program that provides,
among other things, rental assistance to eligible
low-income tenants who reside in units owned by
participating landlords." *Cain v. Rambert,* No. 13–
CV–5807 (MKB), 2014 WL 2440596, at * 1 n. 2
(E.D.N.Y. May 30, 2014) (citations omitted).

**\*4** According to plaintiff, on March 8, 2012, Alston's
landlord wrongfully obtained a default judgment against him
in state court "based upon misrepresentations and fraud"
made by 385 LLC to the court. (*Id.* at 19, ¶ 7.) Plaintiff
alleges the state court issued a non-revocable notice to vacate
the premises to Alston without taking into consideration any
of plaintiff's "chronic medical conditions." (*Id.*) On May 4,
2012, the Nassau County Sheriff's Office served Alston with
a notice to vacate the premises. (*Id.* at 23, ¶ 21.) Plaintiff
further alleges that on July 5, 2012, the landlord wrongfully
served Alston with a notice of termination. (*Id.* at 25, ¶ 27.) It
appears that Alston continues to reside at the Inwood Terrace
Apartments. (*See* Docket Report.)

Alston commenced the instant action on August 9, 2013,
and filed an amended complaint on September 30, 2013
as a class action on behalf of himself, Sarah Baxter
(deceased) and Thelma and James Green (deceased)
and all tenants of Inwood Terrace Apartments. Alston
filed the amended complaint representing the class as
"Orlando Alston, the medically disabled Semi–Retired
Chairman of The Municipal Programs Group Inc. dba
YourClaimsManagersdotcom." (Amended Compl. at 1.) The
amended complaint alleges discrimination based upon race,
age, and disability, willful misrepresentation under the color
of state law, and violations of 42 U.S.C. §§ 1983, 1985 and
1988. (Amended Compl. at 4.) In addition, Alston alleges
that defendants conspired with unnamed private actors in
violation of 42 U.S.C. §§ 1983, 1985 and 1988 and failed
to enforce and/or supervise federal mandates. (*Id.* at 6–9.)
Alston further alleges that defendants violated their rights
as beneficiaries of various entitlement programs provided
by certain federal statutes and regulations, including the
Medicare and Medicaid programs. (*Id.* at 9–13, 17.) Finally,
Alston alleges that his landlord failed to comply with HUD
requirements and committed criminal acts in connection with
the misuse of rents and rent subsidies. (*Id.* at 7, 10.) With
respect to any injuries sustained in connection to the events
alleged, the amended complaint clarifies that

[t]his Proposed Instant Class action
seeks strict enforcement of certified
beneficiary and targeted End
Users rights and responsiblities in
accordance with Medicare, Medicaid
and HUD Section 8 published
Conformed Contract Documents.
Personal injuries, Bodily injuries and

Property damages will be pursued in separate litigations.

(*Id.* at 13, § IV.)

Defendants now move to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. In addition, the State Defendants alternatively move to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(5) for improper service of process. Defendants' respective motions will be addressed together, and separately as applicable, in the relevant discussion sections below. Plaintiff opposes the County and State Defendants motions; however, his papers are incoherent, conclusory, vague, disjointed and unresponsive to the motions. [4]

[4]   To the extent plaintiff's opposition papers suggest new facts and/or allegations they will not be considered as he may not cure any deficiencies in his amended complaint by asserting new facts and allegations in his opposition papers. *See Thomas v. City of New York,* No. 12–CV–5061 (FB)(SMG), 2013 WL 3810217, at *3 (E.D.N.Y. July 23, 2013) ("It is well established that plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss") (internal quotation marks and citation omitted).

## DISCUSSION

**\*5** "When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, such as Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must consider the Rule 12(b)(1) motion first." *Bobrowsky v. Yonkers Courthouse,* 777 F.Supp.2d 692, 703 (S.D.N.Y.2011); *see Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir.1990) ("Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined") (internal quotation marks

and citations omitted); *cf. Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946) (holding the court may decide a motion to dismiss for failure to state a claim only after finding subject matter jurisdiction exists). The court is mindful that when considering a motion to dismiss a *pro se* complaint, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." *Triestman v. Federal Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006). "However, mere conclusions of law or unwarranted deductions need not be accepted." *Bobrowsky,* 777 F.Supp.2d at 703 (internal quotation marks and citations omitted). In examining the defendants' motions, the court will first address the defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(1).

## (A) Defendants' Motions Pursuant to Fed.R.Civ.P. 12(b)(1)

### (1) Standard of Review

Notwithstanding the liberal pleading standard afforded pro se litigants, "federal courts are courts of limited jurisdiction which thus requires a specific grant of jurisdiction." *Frouter a Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic,* 582 F.3d 393, 397 (2d Cir.2009) (internal quotation marks and citations omitted); *see Gunn v. Minton,* ––– U.S. ––––, ––––, 133 S.Ct. 1059, 1064, 185 L.Ed.2d 72 (2013); *see also Allen v. Mattingly,* No. 10 CV 0667(SJF)(ARL), 2011 WL 1261103, at *5 (E.D.N.Y. Mar. 29, 2011) ("[f]ederal courts are courts of limited jurisdiction and may not preside over cases absent subject matter jurisdiction") (citations omitted). A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000); *see Baur v. Commissioner of Social Sec.,* No. 10–CV–3781 (CBA), 2011 WL 1877726, at *2 (E.D.N.Y. May 16, 2011). Under both Rule 12(b)(1) and Rule 12(b)(6) "the court must accept as true all material factual allegations in the complaint and draw all inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997); *see Baur,* 2011 WL 1877726, at *2. "When considering a motion to dismiss, courts are generally limited to examining the sufficiency of the pleadings, but where a party challenges the court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings." *Baur,* 2011 WL 1877726, at *2 (internal quotation marks and citation omitted). Moreover, "[i]n contrast to the standard for a motion

to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.' " *MacPherson v. Town of Southampton,* 738 F.Supp.2d 353, 361 (E.D.N.Y.2010). Finally, notwithstanding the *pro se* status of plaintiffs, "subject matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." *United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002); *see Feinstein v. Chase Manhattan Bank,* No. 06 CV 1512 JFB ARL, 2006 WL 898076, at *2 (E.D.N.Y. Apr.5, 2006).

### (2) Standing

**\*6** As an initial matter, defendants contend that plaintiff lacks standing to bring this class action on behalf of named plaintiffs Sarah Baxter, Thelma and James Green and the Inwood Terrace Apartment Tenants. The court agrees.

"Standing is a federal jurisdictional question determining the power of the court to entertain the suit." *Carver v. City of New York,* 621 F.3d 221, 225 (2d Cir.2010) (internal quotation marks and citation omitted). "Article III of the Constitution limits judicial power of the United States to the resolution of cases and controversies. This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.,* 577 F.3d 479, 489 (2d Cir.2009) (citations omitted). "To invoke the jurisdiction of the federal courts and establish standing a plaintiff must [1] allege personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief." *Sharpe v. Mental Health Sys. of the U.S.,* 357 F. App'x 373, 374 (2d Cir.2009) (internal quotation marks and citation omitted) (alterations in original); *see Lamar Adver. of Penn, LLC v. Town of Orchard Park, N.Y.,* 356 F.3d 365, 373 (2d Cir.2004) ("[t]o meet Article III's constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful conduct of the defendant") (internal quotation marks and citation omitted).

"To meet Article III's injury-in-fact requirement, a plaintiff's alleged injury must be concrete and particularized as well as actual or imminent, not conjectural or hypothetical." *Carrion v. Singh,* No. 12–CV–0360 (JFB)(WDW), 2013 WL 639040, at * 5 (E.D.N.Y. Feb. 21, 2013) (internal quotation marks and citations omitted). "Standing cannot be predicated on ... generalized grievances about the conduct of government." *Sharpe,* 357 F. App'x at 374 (internal quotation marks and citation omitted). "Demonstrating that the defendant's allegedly unlawful conduct caused injury to the plaintiff

[him]self is thus generally an essential component of Article III standing." *Mahon v. Ticor Tile Ins. Co.,* 683 F.3d 59, 62 (2d Cir.2012) (citations omitted). "Foremost among the prudential requirements is the rule that a party must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Wight v. BankAmerica Corp.,* 219 F.3d 79, 86 (2d Cir.2000) (internal quotation marks and citation omitted).

Alston, proceeding *pro se,* seeks to bring this action on behalf of the Inwood Terrace Apartments tenants and three individuals listed on the caption as deceased, *viz.* Sarah Baxter, Thelma Green and James Green [5] alleging generally that (i) the landlord violated the rights of the tenants in the Inwood Terrace Apartments, (ii) state and local administrators of the Medicare and Medicaid programs failed to protect the interests of the tenants, and (iii) defendants breached their duty to supervise and direct contracting parties retained to run the federal programs. Aside from the fact that plaintiff asserts only generalized grievances about defendants' conduct and does not allege any factual allegations that would support an inference that he suffered a plausible injury in fact, as a *pro se* litigant, Alston is precluded from bringing this action on behalf of anyone other than himself. Although litigants in federal court have a statutory right to act as their own counsel, 28 U.S.C. § 1654, the statute does not permit unlicensed laymen to represent anyone other than themselves." *KLA v. Windham S.E. Supervisory Union,* 348 F. App'x 604, 605–06 (2d Cir.2009) (internal quotation marks and citation omitted); *see Iannaccone v. Law,* 142 F.3d 553, 558 (2d Cir.1998) ("because *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause"). As Alston has not been admitted to the practice of law, he cannot represent anyone other than himself. *Guest v. Hansen,* 603 F.3d 15, 21 (2d Cir.2010) ("[a] person who has not been admitted to the practice of law may not represent anybody other than himself"). Accordingly, the undersigned respectfully recommends that the defendants' motion to dismiss Alston's class action claims made on behalf of the Inwood Terrace Apartment tenants and Sarah Baxter, Thelma Green and James Green be granted. The court will proceed to address the respective defendants' motions as they apply solely to Alston. [6]

[5]     Notably, plaintiff was advised by Order dated October 22, 2013 that he could not represent anyone other than himself. (Docket Entry No. 25, at 2 n. 1.) Moreover, Alston lacks the capacity to bring

an action on behalf on the deceased individuals as there is no indication that he is their duly appointed representative. *See* Fed.R.Civ.P. 17(a).

6    As will be discussed in the relevant sections *infra,* many of Alston's claims do not satisfy the standing requirements because he fails to assert a personal "injury in fact" in connection with the defendants in this action.

### (3) Sovereign Immunity (Federal Defendants)

**\*7** In his amended complaint, plaintiff asserts constitutional violations under 42 U.S.C. § 1983 against the Federal Defendants. Section 1983 creates a private cause of action against individuals acting under color of state law, but does not extend to federal actors acting under color of federal law. *See Dotson v. Griesa,* 398 F.3d 156, 162 (2d Cir.2005); *Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 n. 4 (2d Cir.1991) (holding that "[a]n action brought pursuant to 42 U.S.C. § 1983 cannot lie against federal officers"). Because the individual federal defendants and their agencies are federal actors, they cannot be sued under Section 1983.

In light of plaintiff's *pro se* status, however, the court construes plaintiff's Section 1983 claims against the federal defendants as asserting claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which recognizes a cause of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Ashcroft v. Iqbal,* 556 U.S. 662, 675, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks and citation omitted); *see Hartman v. Moore,* 547 U.S. 250, 254 n. 2, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) ("a *Bivens* action is the federal analog to suits brought against state officials under [Section 1983]"); *see also Daloia v. Rose,* 849 F.2d 74, 75 (2d Cir.1988) (per curiam) (construing *pro se* Section 1983 claim against federal defendants as *Bivens* claims); *Megna v. Food & Drug Administration,* No. 08–CV–1435 (JFB) (WDW), 2009 WL 749900, at \*4 (E.D.N.Y. Mar. 17, 2009) (same). A *Bivens* action must be brought against "federal officers involved in their individual capacities," *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994), and not "against the federal agency," *Polanco v. U.S. Drug Enforcement Administration,* 158 F.3d 647, 650 (2d Cir.1998). *See Platsky v.C.I.A.,* 953 F.2d 26, 28 (2d Cir.1991) ("in *Bivens* actions jurisdictional limitations permit a plaintiff to sue only the federal government officials responsible for violating the plaintiffs constitutional rights; a plaintiff cannot

sue the agency for which the officials work"). The elements of a *Bivens* claim are (1) "that a defendant acted under color of federal law" (2) "to deprive plaintiff of a constitutional right." *Tavarez v. Reno,* 54 F.3d 109, 110 (2d Cir.1995). "Because the doctrine of respondeat superior does not apply in *Bivens* actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation." *Thomas v. Ashcroft,* 470 F.3d 491, 496 (2d Cir.2006). That is, a plaintiff in a *Bivens* action "must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676.

### (a) Claims against HHS, SSA, HUD and Sebelius, Disman and Morales in their Official Capacities

**\*8** To the extent that Alston's claims are against the federal agencies and against the federal defendants in their official capacities, they are barred by sovereign immunity. An action brought against a federal agency or a federal official in his or her official capacity is considered an action against the United States and is thus barred unless the United States has waived sovereign immunity. *Robinson,* 21 F.3d at 510 ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are ... barred under the doctrine of sovereign immunity, unless such immunity is waived"). "[T]he United States has not waived its sovereign immunity with respect to claims that its employees have committed constitutional torts." *Castro v. United States,* 34 F.3d 106, 110 (2d Cir.1994). Thus, plaintiff's *Bivens* claims against defendants Sebelius, Disman and Morales in their official capacities as HHS Secretary, SSA N.Y. Regional Commissioner, and HUD Director of Public Housing respectively, and against HHS, SSA and HUD are barred for lack of subject matter jurisdiction. *See DeMartino v. New York,* No. 12–CV–3319 (SJF)(AKT), 2013 WL 3226789, at \* 5 (E.D.N.Y. June 24, 2013) ("Absent a waiver, sovereign immunity, under which the United States, as sovereign, is immune from suit, save as it consents to be sued, bars any *Bivens* claim against the United States, a federal agency or a federal official acting in his official capacity") (internal quotation marks and citations omitted).

### (b) Claims against Sebelius, Disman and Morales in their Individual Capacities

Although plaintiff has not specified in what capacity he has sued the individually-named federal defendants, to the extent plaintiff seeks to assert a *Bivens* claim against federal

defendants Sebelius, Disman and Morales in their individual capacities, his claims fail because the amended complaint is devoid of any specific unconstitutional conduct engaged in by these federal defendants that caused him injury. Apart from referencing defendants Sebelius, Disman and Morales in the caption of the amended complaint and listing these individuals in the section of the amended complaint under the heading "Defendants," (Amended Compl. at 3–4), the only other reference to these individuals is plaintiff's generalized assertion under the heading "Facts" that

> Sebelius, Disman and Morales together with the other defendants "have a joint and severed delegate-able [contractual] duty to direct and supervise any and all Local (program) Adminstrators conformance to the programmed Designers' Intent absent discrimination in accordance with the more stringent Americans with Disabilities [ADA] an 'Act of Congress'.

(*Id.* at 13, ¶ C.)

"Demonstrating that the defendant's allegedly unlawful conduct caused injury to the plaintiff [himself] is thus generally an essential component of Article III standing." *Mahon v. Ticor Tile Ins. Co.,* 683 F.3d 59, 62 (2d Cir.2012); *accord Raines v. Byrd,* 521 U.S. 811, 819, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) ("We have consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him"). Thus, because plaintiff does not assert any factual allegations about Sebelius, Disman and Morales in the amended complaint or particularize any injury to Alston by their conduct, he has failed to demonstrate that his injuries were "fairly traceable" to these named defendants. *Sharpe,* 357 F. App'x at 374; *cf. Volpe v. Nassau County,* 915 F.Supp.2d 284, 299 (E.D.N.Y.2013) ("It is well settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted") (internal quotation marks and citations omitted); *Terry v. New York City Dep't of Corrections,* No. 10 Civ. 6197, 2012 WL 718555, at *2 (S.D.N.Y. Mar.6, 2012) ("Where a plaintiff does not allege how a particular defendant was personally involved in any of the actions or inactions that led to the alleged deprivations of the plaintiff's constitutional or federal rights, dismissal as to that defendant is appropriate").

**\*9** In sum, the plaintiff's Section 1983 claim cannot be considered to be a *Bivens* claim against the Federal

Defendants. Accordingly, the undersigned respectfully recommends that the district court grant the Federal Defendants' motion to dismiss plaintiff's Section 1983 claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

**(4) Eleventh Amendment (State Defendants)**

The State Defendants contend that the Eleventh Amendment and sovereign immunity deprive this court of subject matter jurisdiction with respect to plaintiff's claims based on 42 U.S.C. §§ 1983, 1985, 1988 and the FHA to the extent they are brought against the individual state defendants in their official capacity and against their respective state agencies. The court agrees.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XL The Supreme Court has made clear for over a century "that the Constitution does not provide for federal jurisdiction over suits against non-consenting states." *Nevada Dep't of Human Res. v. Hibbs,* 538 U.S. 721, 726, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003) (citations omitted). "As a general matter, states enjoy sovereign immunity from suit in federal court, even if the claim arises under federal law." *KM Enters., Inc. v. McDonald,* 518 F. App'x 12, 13 (2d Cir.2013) (citations omitted). Hence, "[t]he Eleventh Amendment entitles states to sovereign immunity and this immunity extends ... to entities considered arms of the state, such as state agencies." *Walker v. City of Waterbury,* 253 F. App'x 58, 60 (2d Cir.2007) (internal quotation marks and citations omitted); *see Smith v. The New York State Dep't of Correctional Servs.,* No. 08 Civ. 7090(GBD)(RLE), 2010 WL 1192057, at *2 (S.D.N.Y. Mar. 1.2010) ("[t]he Eleventh Amendment serves as a jurisdictional bar to suits against a state agency regardless of the nature of the relief sought, including suits in equity") (internal quotation marks and citations omitted); *see also Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (same). "There are three limited exceptions to state sovereign immunity." *Tiraco v. New York State Bd. of Elections,* No. 12–CV–2273 (KAM) (MDG) 2013 WL 4046257, at * 5 (E.D.N.Y. Aug. 7, 2013). First, a state may waive its Eleventh Amendment immunity. *See id.; Walker,* 253 F. App'x at 61. Second, pursuant to a grant of constitutional authority, Congress may abrogate the sovereign immunity of the states. *See Kimel v. Florida Bd.*

*of Regents,* 528 U.S. 62, 80, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (Congress can abrogate state immunity under Section 5 of the Fourteenth Amendment). Finally, "under the *Ex parte Young* doctrine, [7] sovereign immunity does not preclude a plaintiff from seeking prospective injunctive relief against a state official acting in his or her official capacity for ongoing violations of federal law." *Tiraco,* 2013 WL 4046257, at *5; *see In re Deposit Ins. Agency,* 482 F.3d 612, 617 (2d Cir.2007); *Anghel v. N.Y. State Dep't of Health,* 947 F.Supp.2d 284, 298 (E.D.N.Y.2013).

[7]  The *Ex parte Young* exception is not applicable here because the amended complaint does not assert prospective injunctive or declaratory relief to enjoin ongoing violations of federal constitutional or statutory law by defendants Shah, Townes, Proud or Finell. *See McKeon v. N.Y. State Comm 'n on Judicial Conduct, 311* F. App'x 121, 123 (2d Cir.2010) ("a state official acting in his or her official capacity may be sued only for prospective injunctive relief from ongoing violations of federal law"). The amended complaint is bereft of any non-conclusory allegations of a violation of federal law, much less an ongoing violation of federal law, by any of the State Defendants and fails to set forth any facts that might establish a direct connection to, or responsibility for, alleged unlawful conduct by any of the defendants which might merit prospective injunctive relief. *See Spiteri v. Russo,* No. 12–CV–2780 (MKB)(RLM), 2013 WL 4806960, at *17 (E.D.N.Y. Sept. 7, 2013) ("to obtain injunctive and declaratory relief against an official, the official must have a direct connection to the illegal action").

**\*10** Here, "[t]he State has not waived its immunity, nor has its immunity been abrogated, for the causes of action plaintiff has asserted pursuant to 42 U.S.C. §§ 1983 and 1985." [8] *Garcia v. Paylock,* No. 13–CV–2868 (KAM), 2014 WL 298593, at *3 (E.D.N.Y. Jan.28, 2014). Moreover, plaintiff's claims brought against the State Defendants pursuant to the FHA are likewise barred by the Eleventh Amendment immunity. *See Sierotowicz v. State of New York Div. of Housing & Community Renewal,* Nos. 04–CV–3886, 04–CV–3887, 04–CV–3888, 2005 WL 1397950, at *1 (E.D.N.Y. June 14, 2005) (observing that New York State has not waived its immunity with respect to suits of this type and "[c]ourts have similarly rejected the contention that the FHA abrogates sovereign immunity) (citing cases); *see also Forziano v.*

*Independent Group Home Living Program, Inc.,* 2014 WL 1277912, at *6 (E.D.N.Y. Mar.26, 2014) (finding plaintiffs' claims brought against the State Defendants pursuant to the FHA were barred by Eleventh Amendment immunity). Finally, to the extent plaintiff seeks to assert jurisdiction under 28 U.S.C. § 1331, such an assertion is likewise "ineffective in these circumstances, as the bare fact that a case implicates a federal question does not override state sovereign immunity." *Sierotowicz,* 2005 WL 1397950, at *1. Thus, Alston's claims against Shah, Townes, Proud and Finkell in their official capacities, their respective agencies and Office of Temporary and Disability Assistance, Office of Administrative Hearings and Local (Program) Administrators; and New York State Division of Housing and Community Renewal are barred for lack of subject matter jurisdiction.

[8]  Alston's amended complaint also lists 42 U.S.C. § 1988 as a basis for his claims against the State Defendants. However, Section 1988 does not create "an independent cause of action." *Torres v. City of New York,* No. 13–CV–7091 (ARR)(RER), 2013 WL 6835170, at *2 (E.D.N.Y. Dec. 18, 2014). Because each of plaintiff's substantive claims against the State Defendants lack subject matter jurisdiction, plaintiff's claim under Section 1988 fails as well. Hence, the undersigned recommends that the State Defendants' motion to dismiss plaintiff's Section 1988 claim be granted.

Although plaintiff has not specified in what capacity he has sued the individually-named state defendants, to the extent Alston seeks to assert claims against defendants Shah, Townes, Proud or Finell in their personal capacities under 42 U.S.C. §§ 1983, 1985, 1988 and the FHA, his claims against them fail. Apart from referencing defendants Shah, Townes, Proud or Finell in the caption and listing these individuals as defendants under the heading "Defendants," (Amended Compl. at 4–5), the amended complaint evinces a total absence of any factual allegations that might establish their personal involvement in an alleged constitutional violation. Coupled with the incoherent conclusory allegations asserted against them in the amended complaint, the court is unable to infer a causal connection between the injury alleged and the challenged conduct of the state defendants necessary to satisfy Article III. *See Mahon,* 683 F.3d at 62 (2d Cir.2012); *see also Sharpe,* 357 F. App'x at 374; *cf. Volpe,* 915 F.Supp.2d at 299; *Terry,* 2012 WL 718555, at *2.

Accordingly, the undersigned respectfully recommends that the district court grant the State Defendants' motion to dismiss

plaintiffs Section 1983, Section 1985, Section 1988 and FHA claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

### (5) The *Rooker–Feldman* Doctrine

**\*11**  Although not raised by the parties, to the extent Alston seeks to challenge the default judgment and notice to vacate the premises his landlord allegedly "wrongfully obtained against him in state court," the court lacks subject matter jurisdiction because such claims would be barred by the *Rooker–Feldman* doctrine. *See generally District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). This doctrine recognizes that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 84 (2d Cir.2005). "Underlying the *Rooker–Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Green v. Mattingly,* 585 F.3d 97, 101 (2d Cir.2009). The Second Circuit identified four elements that must be met for the *Rooker–Feldman* doctrine to divest a court of subject matter jurisdiction:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite the district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced.

*Hoblock,* 422 F.3d at 85 (internal quotation marks and citation omitted). "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." *Id.* Here, the amended complaint does not supply any factual details. However, liberally construing the complaint it appears Alston complains of injury allegedly caused by the state court default judgment and notice to vacate the premises that occurred in connection with his Section 8 apartment prior to commencing the instant action. Plaintiff

seemingly seeks the court's assistance to undo the state court decision. Thus, to the extent Alston is challenging the state-court judgments as a violation of his constitutional rights, Alston "seek[s] federal-court review and rejection of the state-court judgment[s]" and such relief is barred by the *Rooker–Feldman* doctrine. *Id.; cf. Jaeger v. Cellco Partnership,* 542 F. App'x 78, 80 (2d Cir.2013). Accordingly, the undersigned respectfully recommends that this claim [9] be dismissed for lack of subject matter jurisdiction.

[9]
> To the extent Alston seeks to have the court direct his landlord to rescind the notice of termination it issued to him, the court "has no authority to do so since federal courts, unlike state courts, have no subject matter jurisdiction over landlord-tenant matters." *Cain v. Rambert,* No. 13–CV–5807 (MKB), 2014 WL 2440596, at \*9 (E.D.N.Y. May 30, 2014) (collecting cases).

### (6) Failure to Exhaust Administrative Remedies

Plaintiff appears to make a generalized assertion that defendants have discriminated against him based on his age (a senior) and disability in connection with outstanding "Medicaid Services financial disputes" and "essential services and programs" and benefits under Medicare and Medicaid. (Amended Compl. at 11–12, 15, 17–18.) Although difficult to discern, Alston's claim seems to be based on defendants' alleged failure to reimburse him (or a personal care assistant) for four hours of services by a personal care assistant. (*Id.* at 17–18 ¶ 4.)

**\*12**  The "special Medicare [judicial] review route ... is set forth in a complex set of statutory provisions, which must be read together." *Shalala v. Illinois Council on Long Term Care, Inc.,* 529 U.S. 1, 7–8, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000). "This procedure provides the sole means of review of a Medicare reimbursement decision." *Bentley v. Wellpoint Companies,* No. 11 Civ. 8963(CM), 2012 WL 546991, at \*5 (S.D.N.Y. Feb. 12, 2012) (citations omitted). Under 42 U.S.C. § 405(h), which is made applicable to the Medicare Act by 42 U.S.C. § 1395ii, judicial review of claims for Medicare benefits is limited. Section 405(h) provides that:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to

Case 1:22-cv-00581-DNH-TWD   Document 4   Filed 06/29/22   Page 128 of 175

such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h). The first two sentences of Section 405(h) "assure that administrative exhaustion will be required. Specifically, they prevent review of decisions of the Secretary save as provided in the Act, which provision is made in § 405(g)." *Weinberger v. Salfi,* 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (citation omitted). The third sentence "provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all claim[s] arising under the Medicare Act." *Heckler v. Ringer,* 466 U.S. 602, 614–15, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (internal quotation marks and citation omitted). "Thus, unless this procedure is complied with, no court has subject matter jurisdiction to address the claims at all." *Bentley,* 2012 WL 546691, at *5 (citations omitted). A "final decision is rendered on a Medicare claim only after the individual claimant has pressed his claim through all designated levels of administrative review." *Heckler,* 466 U.S. at 606.

Thus, to the extent that Alston is seeking reimbursement from Medicare through this action, his claim is governed by the jurisdictional requirements of 42 U.S.C. § 405.[10] Notwithstanding plaintiffs language that he has been discriminated against or styling his arguments as a constitutional challenge to Medicare benefits and entitlements, Alston is still subject to "the nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court." *Shalala,* 529 U.S. at 15; *see Potts v. Rawlings Co., LLC,* 897 F.Supp.2d 185, 192–93 (S.D.N.Y.2012) (The Courts of Appeals advise that courts should be wary of claims that are cleverly concealed claims for benefits. These Courts hold that Subsection 405(h) prevents beneficiaries and potential beneficiaries from evading administrative review by creatively styling their benefits and eligibility claims as constitutional or statutory challenges to Medicare statutes and regulations") (internal quotation marks and citations omitted). Because there is

no indication that plaintiff has exhausted his administrative remedies with respect to his claim, the court lacks subject matter jurisdiction to decide the Medicare claim. Accordingly, the undersigned recommends that defendants' motion to dismiss this claim be granted.

10      "Although section 405(h) only bars federal jurisdiction over actions against the United States, the Secretary, or any officer or employee thereof, courts have consistently held that the exhaustion requirement applies to actions against otherwise private entities that contract with [the Center for Medicare and Medicaid Services]." *Potts,* 897 F.Supp.2d at 191 n. 2 (collecting cases).

**(B) Defendants' Motions Pursuant to Fed.R.Civ.P. 12(b)(6)**

**(1) Standard of Review**

**\*13** The Supreme Court has instructed that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation marks and citations omitted). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient to 'raise a right to relief above the speculative level'." *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt., LLC,* 595 F.3d 86, 91 (2d Cir.2010) (quoting *Twombly,* 550 U.S. at 555)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. If the plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly,* 550 U.S. at 570; *see McClinton v. Hen derson,* No. 13–CV–3335 (JFB) (GRB), 2014 WL 2048389, at *3 (E.D.N.Y. May 19, 2014) ("even though the [c]ourt construes *a pro se* complaint liberally, the complaint must still state a claim to relief that is plausible on its face to survive a motion to dismiss") (internal quotation marks and citations omitted). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference and to matters of which judicial notice may be taken." *Leonard F.*

2014 WL 4374644

*v. Israel Discount Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999) (internal quotation marks and citation omitted); *see Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 424–25 (2d Cir.2008).

### (2) Section 1983

Pursuant to § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must "allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Rae v. County of Suffolk,* 693 F.Supp.2d 217, 223 (E.D.N.Y.2010) (internal quotation marks and citation omitted); 42 U.S.C. § 1983. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen,* 593 F.3d 233, 249 (2d Cir.2010). The Supreme Court held in *Iqbal,* that "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676. "An individual cannot be held liable for damages under § 1983 merely because he held a high position of authority." *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 127 (2d Cir.2004) (internal quotation marks and citation omitted). A complaint based upon a violation under Section 1983 that does not allege the defendant's personal involvement fails as a matter of law. *Johnson v. Barney,* 360 F. App'x 199, 201 (2d Cir.2010).

**\*14** In addition, where a section 1983 conspiracy is alleged, a plaintiff must show "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Jae Soog Lee v. Law Office of Kim & Bae, PC,* 530 F. App'x 9, 9–10 (2d Cir.2013) (internal quotation marks and citation omitted); *see Ciambriello v. County of Nassau,* 292 F.3d 307, 324–325 (2d Cir.2002); *Muzio v. Incorporated Village. of Bayville,* No. CV–99–8605 (SJF), 2006 WL 39063, at \*6 (E.D.N.Y. Jan.3, 2006). "[C]omplaints containing only conclusory, vague,

or general allegations that the defendants engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello,* 292 F.3d at 325 (internal quotation marks and citation omitted).

Section 1983, however, "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (internal quotation marks and citation omitted); *see Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). The threshold question, therefore, is whether plaintiff has alleged a violation of a cognizable federal right. *Albright,* 510 U.S. at 271 ("The first step in any such claim is to identify the specific constitutional right allegedly infringed").

### (a) The Housing Act of 1937, 42 U.S.C. § 1437f

Reading the amended complaint liberally, the court believes Alston is trying principally to assert a cause of action under the Housing Act of 1937, 42 U.S.C. § 1437f and its regulations over the poor quality of his Section 8 apartment. Alston seemingly contends that defendants violated (and conspired to violate) unspecified portions of the Section 8 program by failing to supervise and enforce his landlord's obligations and compliance with applicable housing quality standards. This cause of action, however, is not available to plaintiff.

"[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). "The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." *Transamerica Mortg. Advisors, Inc. v. Lewis,* 444 U.S. 11,15, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval,* 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). "There is no private right of action under the Housing Act enabling plaintiffs to sue defendants for violations of the statute and its implementing regulations" over the poor quality of their Section 8 housing. *Renaissance Equity Holdings LLC v. Donovan,* No. 12–CV–1639 (FB) (SMG), 2013 WL 2237547, at \*5 (E.D.N.Y. May 21, 2014); *see Montgomery v. City of New York,* No. 09 Civ. 6145(RJH),

2010 WL 3563069, at *3 (S.D.N.Y. Sept.7, 2010); *see also Kirby v. Richmond Development & Housing Authority,* No. 04–0791, 2005 WL 5864797, at *7 (E.D.Va. Sept.28, 2005), *aff'd* 194 F. App'x 105 (4 th Cir.2006) ("No express private right of action exists in [the Housing Act] or the regulations enabling a voucher participant to enforce the provisions"). "By its express terms, the statute grants no such right." *Id.;* see 42 U.S.C. § 1437f "Nor can such a right be implied from Section 1437f of the Housing Act." *Montgomery,* 2010 WL 3563069, at *4 ("Section 1437f provides ... no reason to think that Congress intended by it to create a new private right. It does not contain rights-creating language, and it focuses on the class of regulated persons-owners of Section 8 housing who are subject to inspections-rather than the individuals protected by the statute"). Moreover, "the implementing regulations pointedly disclaim the creation of a right of a party to assert claims based upon a failure of HUD to comply with the Housing Act." *Id.; see* 24 C.F.R. § 982.406 ("The regulations do[ ] not create any right of ... any party other than HUD or the PHA, ... to assert any claim against HUD or the PHA, for damages, injunction or other relief, for alleged failure to enforce [housing quality standards]").

  *15  Although the Second Circuit has not addressed this issue, numerous courts, including district courts in this Circuit, have routinely found that no private right of action exists under the Housing Act for the failure to enforce a landlord's compliance with housing quality conditions. *See, e.g., Hen ry v. City of Erie,* 728 F.3d 275, 281 (3 rd Cir.2013) ("Federal appellate courts that have addressed the issue have held that the Housing Act does not create a private cause of action to enforce any right") (citing cases); *Hill v. Richardson,* 7 F.3d 656, 658 (7 th Cir.1993) ("[S]ection 1437f does not create a private right of action"); *see Renaissance Equity Holdings LLC,* 2013 WL 2237547, at *5 (same) (citing cases); *Montgomery,* 2010 WL 3563069, at *3 (same); *Lindsay v. New York City Housing Authority,* No. 95–3315, 1999 WL 104599, at *4 (E.D.N.Y. Feb.24, 1999) (stating 24 C.F.R. § 982.406 "unambiguously denied a private right of action"); *Green v. Konover Residenital Corp.,* No. 95–1984, 1997 WL 736528, at *8 (D.Conn.1997) (finding no private right of action exists under § 1437 "for failure to maintain the premises in a safe and sanitary condition"); *see also Reyes– Garay v. Integrand Assur. Co.,* 818 F.Supp.2d 414, 429–30 (D.P.R.2011) ("We join a long line of courts that have all determined that the Housing Act does not expressly grant a private right of action to individuals who are suing HUD over the poor quality of their Section 8 housing .... [and] there exists no implied right of action under Section 1437f

of the Housing Act") (collecting cases); *Gilchrist v. Bakshi,* No. 09–0415, 2009 WL 4909439, at *2–3 (D.Md. Dec.10, 2009) ("The Fourth Circuit has held that no private right of action arises under 42 U.S.C. § 1437f and that tenants cannot sue as third-party beneficiaries of contracts between the housing authority and their landlord.... Similarly, HUDs regulations foreclose a private right of action to enforce [housing quality standards]") (citing cases). In the instant action, the undersigned agrees with the courts that have addressed this issue and concludes that the Housing Act does not create a private cause of action for alleged unsafe housing conditions or for the alleged failure of a defendant to enforce and supervise housing quality standards. For the same reason, Alston's claim that defendants conspired to violate unspecified portions of the Section 8 program by failing to supervise and enforce his landlord's obligations and compliance with applicable housing quality standards necessarily fails.

Accordingly, the undersigned recommends that the defendants' motions to dismiss Alston's claims under Section 1983 for violations under the Housing Act and its accompanying regulations be dismissed.

### (b) Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.,* ("ADA")

Since plaintiff references the ADA in the amended complaint, the court will consider whether the amended complaint, broadly construed, establishes a claim. (Amended Compl. at 13.) Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accomodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a); *see Roberts v. Royal Atlantic Corp.,* 542 F.3d 363, 368 (2d Cir.2008). Here, the amended complaint is devoid of any facts to establish that the residential building, *viz.* the Inwood Terrace Apartment complex, is a place of public accommodation. *See Reyes v. Fairfield Properties,* 661 F.Supp.2d 249, 264 n. 5 (E.D.N.Y.2009) (finding that the "receipt of Section 8 housing vouchers is an insufficient basis upon which to deem the premises a private, residential apartment complex-a place of public accommodation"); *see Cain,* 2014 WL 2440596, at *9 (same). Accordingly, given that plaintiff is unable to state a claim under Title III of the ADA, the undersigned recommends that defendants' motion to dismiss the ADA claim be granted.

**(3) Municipal Liability (County Defendants)**

*16 Although Alston has not named the County of Nassau as a defendant in this action, the undersigned broadly construes plaintiffs amended complaint to assert a Section 1983 claim against the County of Nassau. *See Hernandez v. Sposato,* No. 12–CV–2530 (SJF)(WDW), 2014 WL 3489818, at *5 (E.D.N.Y. July 9, 2014). "Under the standards of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality may be liable under Section 1983 if deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town ofE. Haven,* 691 F.3d 72, 80 (2d Cir.2012). "[Local governments] are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson,* ––– U.S. ––––, ––––, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011); *see Muzio,* 2006 WL 39063, at *5 ("A municipality or municipal entity cannot be held liable under § 1983 on a *respondeat superior* theory") (citations omitted). In order to sustain a claim for relief under 42 U.S.C. § 1983 against a municipality such as the County of Nassau, "a plaintiff must show the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right." *Torres v. City of New York,* No. 13–CV–7091 (ARR)(RER), 2013 WL 6835170, at *2 (E.D.N.Y. Dec. 18, 2013). Because Alston has failed to allege any underlying violation of his statutory or constitutional rights by a municipal official, there can be no *Monell* liability. *See Curcio v. Roosevelt Union Free School Dist.,* 10–CV–5612 (SJF) (AKT), 2012 WL 3646935, at *18 (E.D.N.Y. Aug. 22, 2012) ("It is well-settled that a municipality may not be held liable where there is no underlying constitutional violation by a municipal official") (internal quotation marks and citation omitted). Even assuming plaintiff had identified an underlying constitutional violation, Alston cannot maintain Section 1983 claims against the County of Nassau because he not alleged any factual allegations regarding a pattern, custom or policy of unconstitutional conduct.

Likewise, Alston fails to allege any facts to support an inference that the County of Nassau endorsed a formal policy or custom of alleged constitutional conduct by any of the individual defendants in their official or individual capacities. The fact that the named county defendants are in a high position of authority is insufficient to impose liability on a defendant in his or her official capacity. *See McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Moreover, the lack of any specific allegations in the amended complaint about Mangano, Imhof, Sarcone, Smith and McShea as well as the lack of any facts to show how each of the individual county defendants was personally involved in any of the actions or inactions that led to an alleged deprivation of a constitutional right, foreclose any relief against the defendants in their personal capacity. *See Volpe,* 915 F.Supp.2d at 299; *Terry,* 2012 WL 718555, at *2.

*17 Accordingly, the undersigned recommends that the County Defendants' motion to dismiss plaintiff's *Monell* claim be granted for failure to state a claim. [11]

[11]    Having determined that plaintiffs claims against the County Defendants fail to state a claim, the court need not reach the County Defendants' alternate qualified immunity argument.

**(4) Due Process**

To the extent that Alston's claims may be construed to suggest that he has a constitutional right under the due process clause of the Fourteenth Amendment to have the defendants protect him from his landlord; to have defendants investigate violations of his purported rights; or to have defendants prosecute his landlord for alleged unlawful conduct, such claims are without merit.

"The Due Process Clause of the Fourteenth Amendment provides that no State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1; *DeShaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 194–95, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (internal quotation marks omitted). To allege a Section 1983 claim based on the denial of either procedural or substantive due process provided by the Fourteenth Amendment, a plaintiff must allege a constitutionally protected property interest. *See Harrington v. County of Suffolk,* 607 F.3d 31, 34 (2d Cir.2010) ("To state a claim for deprivation of property without due process of law, a plaintiff must identify a property interest protected by the Due Process Clause"). "In order to have an interest protectable under the Constitution, a person must have a 'legitimate claim of entitlement to it'." *Abramson v. Pataki,* 278 F.3d 93, 99 (2d Cir.2002) (quoting *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). "Such entitlements are not created by the Constitution but, rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Harrington,* 607 F.3d at 34 (internal quotation marks and citation omitted). "An abstract need, desire or unilateral expectation is not enough."

*Abramson,* 278 F.3d at 99. Plaintiff has not pled any facts that establish a deprivation of a constitutionally protected property interest.

As an initial matter, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty and property of its citizens against invasion by private actors." *DeShaney,* 489 U.S. at 195. The language of the Due Process Clause "cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.... Its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 195–96. "Moreover, there is no constitutional right to an investigation by government officials." *Longi v. County of Suffolk,* No. CV–02–5821 (SJF)(WDW), 2008 WL 858997, at *6 (E.D.N.Y. Mar. 27, 2008); *see Martinez v. County of Suffolk,* No. 11–CV–5113 (ADS)(WDW), 2014 WL 775058, at *3–4 (E.D.N.Y. Feb. 27, 2014) ("the case law is clear that there exists no statutory or constitutional right to have a government agency investigate a citizen's claims"); *Stone v. Dep't of Investigation of N.Y.,* No. 91–CV–2471, 1992 WL 25202, at *2 (S.D.N.Y. Feb.4, 1992) (same). Finally, "the law is well settled that no private citizen has a constitutional right to bring a criminal complaint against another individual." *Hayes v. County of Sullivan,* 853 F.Supp.2d 400, 433 (S.D.N.Y.2012) (internal quotation marks and citation omitted); *see Town of Castle Rock v. Gonzales,* 545 U.S. 748, 768, 125 S.Ct. 2796, 162 L.Ed.2d 658 (holding that "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause").

**\*18** In sum, having failed to state a constitutionally protected interest or demonstrate that defendants' alleged inaction deprived him of any constitutional right, Alston has failed to establish a viable due process claim. Accordingly, the undersigned recommends that the district court grant defendants' motions to dismiss plaintiff's due process claims.

**(5) Sections 1985 and 1988**

Section 1985, which prohibits certain conspiracies to interfere with civil rights, does not provide Alston with a basis for relief. Of the three subsections of Section 1985, only the third is arguably relevant. "Section 1985(3) clearly provides a remedy for conspiracies to deprive persons of their rights under the United States Constitution." *Pabon v. New York City Transit Auth.,* 703 F.Supp.2d 188, 202 (E.D.N.Y.2010) (citing cases). Section 1985 requires a showing of "(1) a

conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Thomas v. City of New York,* No. 12–CV–5061 (FB)(SMG), 2013 WL 3810217, at *5 (E.D.N.Y. July 23, 2013) (internal quotation marks and citation omitted). Thus, "to state a valid conspiracy claim under 42 U.S.C. § 1985(3), plaintiff[ ] must, among other things, plausibly allege the existence of a conspiracy to deprive [him] of [his] constitutional rights." *Kiryas Joel Alliance v. Village of Kiryas Joel,* 495 F. App'x 183, 190 (2d Cir.2012); *see Gyadu v. Hartford Ins. Co.,* 197 F.3d 590, 591 (2d Cir.1999) (same). Further, the "conspiracy must be also motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Cine SK8, Inc. v. Town of Hen rietta,* 507 F.3d 778, 791 (2d Cir.2007) (internal quotation marks and citation omitted). A claim of a Section 1985 conspiracy must be supported by more than conclusory or vague allegations and "must contain specific factual allegations." *Elmasri v. England,* 111 F.Supp.2d 212, 218 (E.D.N.Y.2000); *see Brito v. Arthur,* 403 F. App'x 620, 621 (2d Cir.2010) ("Complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed) (internal quotation marks and citation omitted).

Here, the amended complaint is devoid of any plausible facts to suggest that defendants entered into an unlawful agreement to deprive Alston of his rights on account of class-based discrimination. Aside from alleging in a vague and disjointed fashion that defendants conspired with unnamed private actors in violation of 42 U.S.C. §§ 1983, 1985 and 1988 in failing to supervise and enforce federal mandates, (Amended Compl. at 6–9), Alston fails to provide any substantive allegations that would support a conspiracy claim. *See Brito,* 403 F. App'x at 621; *see also Hartley v. Nassau Health Care Corp.,* No. 10–CV–3884 (SJF) (AKT), 2013 WL 3364375, at * 8 (E.D.N.Y. July 3, 2013) ("vague and conclusory allegations that defendants entered into an unlawful agreement ... do not suffice in alleging a conspiracy under section 1985(3)") (internal quotation marks and citations omitted). Moreover, given that plaintiff has failed to allege an underlying claim for a constitutional violation, his conspiracy claim under Section 1985 cannot stand. *See Hartley,* 2013 WL 3364375, at * 8 ("Plaintiff has failed to allege the violation of any constitutional right, and

therefore violate section 1985(3) [claim] must be dismissed"); *Curcio,* 2012 WL 3646935, at *18 (same); *see also Nasca v. County of Suffolk,* No. 05–CV–1717 (JFB)(ETB), 2008 WL 53247, at *8 n. 8 (E.D.N.Y. Jan. 2, 2008) ("Plaintiff's conspiracy claim under 42 U.S.C. § 1985 must also fail because there is no underlying Section 1983 violation") (collecting cases).

**\*19** Alston also lists 42 U.S.C. § 1988 as a basis for his claims. Section 1988, however, does not provide an independent cause of action. *See Monell,* 436 U.S. at 701 n. 66 ("42 U.S.C. § 1988 cannot be used to create a federal cause of action where § 1983 does not otherwise provide one"); *Weiss v. Violet Realty, Inc.,* 160 F. App'x 119, 120 (2d Cir.2005) (" § 1988 does not provide an independent cause of action"); *Hanley,* 2013 WL 3364375, at * 8 (same). Inasmuch as plaintiff has failed to allege any civil rights violation, Section 1988 is not applicable.

Accordingly, the undersigned recommends that defendants' motions to dismiss plaintiff's Section 1985 and 1988 claims be granted.

**(C) The State Defendants' Motion Pursuant to 12(b)(5)**
Having determined that dismissal is warranted pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, the court need not address the State Defendants' Rule 12(b)(5) arguments.

**(D) Leave to Amend**
In his opposition papers, plaintiff seeks leave to amend. Leave to amend should be freely granted when justice so requires. Fed.R.Civ.P. 15(a)(2). "This relaxed standard applies with particular force to *pro se* litigants." *Pan gburn v. Culbertson,* 200 F.3d 65, 70 (2d Cir.1999). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007) (holding "it is within the sound discretion of the district court to grant or deny leave to amend"). A "court should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation marks and citation omitted); *see Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (same). Nevertheless, "leave to amend, though liberally granted, may be properly denied for: undue delay,

bad faith or dilatory motive on the part of the [plaintiff], repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of N.Y.,* 514 F.3d 184, 191 (2d Cir.2008) (internal quotation marks and citation omitted); *see Ashmore v. Prus,* 510 F. App'x 47, 49 (2d Cir.2013) (holding that denial of leave to amend was proper where barriers to relief for *pro se* plaintiff "cannot be surmounted by reframing the complaint"); *see also Cuoco,* 222 F.3d at 112 ("a futile request to replead should be denied").

In light of the deficiencies identified herein, the undersigned finds that granting leave to amend is likely futile. Plaintiff already amended his complaint once. The amended complaint is premised on an inaccurate view of the law, *viz.* that Alston can bring a class action on behalf of the tenants in his Section 8 apartment complex to enforce his landlord's compliance with the Housing Act and its regulations and other unspecified entitlements under federal statutes. Moreover, in the body of the amended complaint Alston makes clear that his class action seeks relief on behalf of the class and that "Personal injuries, Bodily injuries and Property damages will be pursued in separate litigations." (Amended Compl. at 13, § IV.) Hence, "better pleading would not cure the defects in plaintiff['s] [amended] complaint." *Bodmann v. JP Morgan Chase Bank, N.A.,* No. 14–CV–833 (JFB)(WDW), 2014 WL 3058551, at *5 (E.D.N.Y. July 7, 2014) (denying leave to amend where plaintiffs' complaint was premised on an inaccurate view of the law and "better pleading would not cure the defects in plaintiffs' complaint"); *Knox v. Countywide Bank,* No. 13–CV–3789 (JFB) (WDW), 2014 WL 946635, at *10 (E.D.N.Y. Mar. 12, 2014) (same).

**\*20** Moreover, the rambling allegations and disjointed and incoherent facts set forth in the amended complaint do not allege a plausible deprivation of any constitutional right nor do Alston's opposition papers which are equally irrational, conclusory and difficult to discern. *See Wallace v. FBI, U.S. Dept. of Justice,* Nos. 14–CV–2264, 14–CV–2512 (JS)(AKT), 2014 WL 1817725, at *4 (E.D.N.Y. May 7, 2014) (declining to afford plaintiff an opportunity to amend her complaint where notwithstanding the court's liberal construction of the complaint, the court finds that "[p]laintiff's allegations rise to the level of the irrational"); *Paulstich v. Merrick Post Office,* No. 14–CV–2169 (JS) (WDW), 2014 WL 1411758, at *4 (E.D.N.Y. Apr. 11, 2014) (same). As such, the deficiencies in Alston's claims are substantive in nature and cannot be remedied by amendment.

**Alston v. Sebelius, Not Reported in F.Supp.3d (2014)**

2014 WL 4374644

*See Morales v. Gugerty,* No. 14–CV–3706 (JFB)(ARL), 2014 WL 3368443, at *8 (E.D.N.Y. July 3, 2014) (declining to grant *pro se* plaintiff leave to file an amended complaint where the deficiencies in plaintiffs pleadings were substantive in nature); *Sims v. SecurusTech.net Connection,* No. 13–CV–5190 (SJF)(GRB), 2014 WL 1383084, at *6 (E.D.N.Y. Apr. 8, 2014) (same). Accordingly, the undersigned respectfully recommends that plaintiff's motion for leave to file an amended complaint be denied.

### OBJECTIONS

A copy of this Report and Recommendation is being served by the Court on all parties. Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir.1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996).

Filed July 31, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4374644

---

**End of Document**                                                         © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 226798
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Francesca AMATO, Plaintiff,

v.

Anthony MCGINTY, Defendant.

1:21-cv-00860 (GLS/TWD)

|

Signed 01/26/2022

**Attorneys and Law Firms**

FRANCESCA AMATO, Plaintiff, pro se, PO Box 774,
Marlboro, NY 12542.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** Francesca Amato ("Plaintiff" or "Amato"), proceeding
*pro se*, filed an action against Ulster County Family Court
Judge Anthony McGinty ("Defendant" or "Judge McGinty").
(Dkt. No. 1.) This case is related to *Orr v. McGinty*, 1:17-
cv-1280 (GLS/TWD). (Dkt. No. 5.[1]) Plaintiff has not paid
the filing fee, but instead seeks leave to proceed *in forma
pauperis* ("IFP"). (Dkt. No. 16.) For the reasons discussed
below, the Court grants Plaintiff's fourth IFP application (Dkt.
No. 16) and recommends dismissal of the amended complaint
(Dkt. No. 6) in its entirety.

[1]    Amato was terminated as party plaintiff in the
related action by Order entered August 7, 2019. *See
Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), ECF
Dkt. No. 73. The Court assumes familiarity with
the related case.

**I. BACKGROUND**
Plaintiff initiated this action and moved to proceed IFP
on July 30, 2021. (Dkt. Nos. 1, 2.) However, the initial
pleading was not signed and Plaintiff was directed to submit
a signed copy of the complaint. (Dkt. No. 5.) On August 13,
2021, Plaintiff submitted a signed copy of the complaint, but
also attached five exhibits that were not submitted with the

original pleading. (Dkt. No. 6.) As such, the signed pleading
was docketed as the amended complaint.

Thereafter, by Orders filed October 28, 2021, November 17,
2021, and December 17, 2021, this Court denied Plaintiff's
motions to proceed IFP. (Dkt. Nos. 8, 11, 14.) In the December
17, 2021, Order, Plaintiff was afforded one final opportunity
to submit a fully completed IFP application or pay the entire
filing fee by January 6, 2022. (Dkt. No. 14.) Despite the
foregoing directive, Plaintiff's fourth IFP application was not
filed until January 10, 2022. (Dkt. No. 16.)

**II. IFP APPLICATION**
Plaintiff declares in her fourth IFP application that she is
unable to pay the filing fee. (Dkt. No. 16.) After reviewing the
submission, the Court finds Plaintiff meets the requirement
for economic need and thus her IFP application is granted.

**III. SUFFICIENCY OF THE AMENDED
COMPLAINT**

  **A. Legal Standard**
28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to
proceed *in forma pauperis*, "the court shall dismiss the case
at any time if the court determines that – ... (B) the action ...
(i) is frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B).

To determine whether an action is frivolous, a court must
look to see whether the complaint "lacks an arguable basis
either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319,
325 (1989). To survive dismissal for failure to state a claim,
a complaint must plead enough facts to state a claim that
is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007). "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,
678 (2009). While Rule 8(a) of the Federal Rules of Civil
Procedure, which sets forth the general rules of pleading,
"does not require detailed factual allegations, ... it demands
more than an unadorned, the-defendant-unlawfully-harmed-
me accusation." *Id.*

 **\*2** In determining whether a complaint states a claim upon
which relief may be granted, "the court must accept the

material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A *pro se* litigant's pleadings are held to a less strict standard than attorney drafted pleadings. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."). Because Plaintiff is proceeding *pro se*, the Court construes her pleadings "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). However, this "does not exempt [Plaintiff] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

**B. Summary of the Amended Complaint**

Plaintiff brings this action against Defendant in both her "judicial" and "individual" capacity. (Dkt. No. 6 at 1. [2]) The amended complaint is written on a form complaint brought pursuant to the American with Disabilities Act ("ADA"). *Id.* at 1-4. Plaintiff also lists her minor child, C.A.B., as a plaintiff. *Id.* at 1, 5 ("Plaintiffs Francesca Amato & C.A.B. (hereafter, the 'Plaintiffs')—hereby makes these allegations against Defendant herein as follows[.]").

[2]      Page references to documents identified by docket number refer to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Her disabilities are listed as "ptsd" and "LAS", which she defines as "Legal Abuse Syndrome caused by defendant's actions and inactions." *Id.* at 2. She complains of the following conduct: denial of participation in public service or program, failure to make alterations to accommodate disability, retaliation, and others "in federal suit." *Id.* at 3. However, the section of the form complaint titled "Facts" is blank. *See id.* As to the "Prayer for Relief", Plaintiff states "see attached lawsuit." *Id.* at 4.

The "attached lawsuit" consists of 24 typewritten, single spaced pages, *id.* at 5-29, along with an additional 56 pages of exhibits. (Dkt. Nos. 6-1 through 6-5.) The "attached lawsuit" references the related action, *Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), and Plaintiff states she is "requesting the right to re plead [and] I am also filing a new verified complaint due to ongoing abuse by the defendant." *Id.* at 5.

Plaintiff's amended complaint also references 42 U.S.C. § 1983. *See id.* at 5-6. Plaintiff claims the "policies, practices, procedures and standards established and/or maintained by Defendant violate the Due Process and Equal Protection Clauses of the Fourteenth Amendments to the U.S. Constitution." *Id.* at 5. She also claims that "[u]nder color of authority, Anthony McGinty deprived me of my rights to my child, due process, and ADA rights were completely violated." *Id.* Plaintiff seeks compensatory and punitive damages, along with injunctive and declaratory relief. *Id.* at 5-6. She further states:

> **\*3** I demand my son's immediate return to his home with me at once and that a permanent restraining order is placed on this highly abusive Judge Anthony McGinty and also in his individual capacity as I feel he is a threat and danger to my family within his political power and lack of professionalism and boundaries. I'm also concerned with his mental state and feel he is unfit and I have overwhelming information and belief that he is an addict.

*Id.* at 26.

According to Plaintiff, "this is also a civil rights action brought pursuant to Title VII of the Civil Rights Acts of 1964" because Defendant authorized "unconstitutional, gender-biased contested Judgment of Custody polices, practices, procedures and standards." *Id.* at 6. Plaintiff contends Judge McGinty's "policies, practices, procedures and standards are gender biased, unconstitutional, have disparate impact on women and violate women's NYS entitled equal economic, property ownership and custody rights in contested Judgement of Custody Orders when domestic

violence ("DV") exists." *Id.* at 7. Judge McGinty "has a history of court orders that change custody to abusive fathers and remove them from safe, loving caretakers with an extreme general bias against mothers." *Id.* at 11. Defendant also ignores the ACP address confidentiality program of New York State. *Id.*

Generally, Plaintiff alleges that from "February 2019 to Ongoing" Defendant "enforced polices, practices, procedures, and standards that prevented Plaintiff from proving the Custody Orders issued by trial were based on the wrong legal standards, erroneous facts, a biased unconstitutional trial. And prevented me from being able to have my witnesses and my own testimony." *Id.* at 7. Defendant also "denied Plaintiff child access to his Service dogs and home status quo and private bedroom and consistent life needed to heal from past abuse." *Id.*

Plaintiff alleges Judge McGinty denied her "all ADA accommodations requested over and over orally and in writing and further abuse[d] his power by forcing plaintiff to draft own motions and train all parties in the ADA in order to protect my rights that continually are denied." *Id.*

She further claims Judge McGinty is "intentionally practicing and inflicting highly unlawful Discriminatory abuse upon [Plaintiff] due to [her] years of reputable advocacy and exposure of him." *Id.* at 6. He has also retaliated against her because of her "two time best-selling book, *Punished 4 Protecting: The Injustice of Family Court.*" *Id.* [3]

[3]    Plaintiff explains the book "talks about the ongoing abuse of Anthony McGinty and his ongoing abuse to my family for exposing him. I have been publicly outspoken long before he was put on my case in 2016. I've been exposing him since 2014 and my best selling book was published in 2018. He refuses to recuse from this case which I orally explained pre trial in 2019 that I would not only never receive a fair trial but that having to come before him after the tremendous harm he caused my son...." (Dkt. No. 6 at 14.)

Plaintiff explains that "anytime I enter the Family Court it will be the three of them [4] against me leaving an extremely unfair disadvantage, further harm and suffering and full control. I am constantly bullied and they cooperate together to continue to retaliate against me by using my child as their pawn. McGinty's actions have caused my son and I irreparable

injury and each second this continues threatens to harm us indefinitely." *Id.* at 11.

[4]    Plaintiff appears to be referring to Defendant, along with "Child Attorney Amy Ingram and opposing Counsel Andy Gilday." (Dkt. No. 6 at 11.) The Court notes Amy Ingram was named as a defendant in the related case and all claims asserted against her were dismissed with prejudice. *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 13. The Court takes judicial notice that Amato, along with others, also filed suit against Judge McGinty, Amy Ingram, and Attorney Andrew Gilday (for his role as assigned counsel to Patrick Beesmer, C.A.B.'s father), Beesmer, and another individual in a previous action, also captioned *Amato v. McGinty*, 1:17-cv-00593 (MAD/ATB), ECF Dkt. No. 1. In that case, although Amato paid the filing fee, United States Magistrate Judge Baxter recommended, *inter alia*, that Amato's Section 1983 claims against Judge McGinty be dismissed with prejudice as barred by judicial immunity. *See id.*, ECF Dkt. No. 11. United States District Judge D'Agostino adopted the report-recommendation in its entirety and judgment was entered accordingly on September 15, 2017. *See id.* at ECF Dkt. Nos. 19, 20.

**\*4**  Plaintiff claims "having pre diagnosed ptsd and LAS received zero ADA Accommodations requested and missed a court appearance on March 8, 2020." *Id.* at 12. According to Plaintiff, she missed the court appearance "due to stress and denial of rights combined with fear of [the] court causing further harm to my son and family and fear of further McGinty retaliation causing ptsd to be triggered." *Id.* She has "no recollection of being handed a slip" and did not put the March 8, 2020, court date on her calendar. *Id.* Plaintiff claims Defendant:

refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3rd trial. I was thrown into trial and discriminated further bc I "did such a good job, I couldn't possibly have ptsd" this only proves that I didn't willfully miss a court date two days before our Country was on COVID quarantine but that with ptsd memory issues occur during high stress moments. McGinty used it as a legal loophole to strip me of all custody giving my son to his estranged father who barely had visits of 8 hours a month and abandoned the child in California after

he was released from jail. McGinty was clearly Aware of all of this as he testified to it during the 2020 trial.

*Id.* at 13.

Plaintiff also claims Judge McGinty "intentionally ignores all emergency motions and puts them out months and months at a time; and takes hearsay from the father without any evidence or fact finding violating and taking/ away more rights." *Id.* at 14.

Plaintiff references the related case, and states that her ADA claims against Judge McGinty were dismissed in *Orr v. McGinty*, without prejudice and with leave to replead. *Id.* at 15.[5] According to Plaintiff, she is pursuing her "right to replead and add ongoing violations in current proceedings against Judge Antony McGinty and his ongoing abuse to me and my son C.A.B." *Id.* She explains that she "didn't continue at that time to fight this case because my son was returned to my sole custody on September 17, 2017[,] and we were healing from the damages and severe trauma." *Id.*

[5]    However, and contrary to Plaintiff's assertion, in the related action she was not afforded the "right to replead and add current ongoing violations" rather, Amato's Section 1983 claims against Judge McGinty were dismissed with prejudice and her Title II ADA claims were dismissed for failure to state a claim upon which relief may be granted. *Orr v. McGinty*, 1:17-CV-01280 (GLS/TWD), ECF Dkt. Nos. 47, 74.

Plaintiff states that she was diagnosed in 2016 and "orally and in writing has requested ADA Accommodations" "numerous" times to "let the court know" that Defendant has "withheld" her child's "full service therapy dogs" since October 2, 2020, amounting to "intentional and deliberate indifference." *Id.* at 15.

According to Plaintiff, "Anthony McGinty continues his abuse in the form of retaliation, abuse of power, extreme harm and pain and suffering, violations of ADA title ii [which resulted] in a final order dated October 2, 2020. Granting Patrick Beesmer sole physical custody [of C.A.B.] and all decision making power...." *Id.*

Plaintiff lists several ways Judge McGinty has "denied" her "reasonable accommodations" and "basic rights." *Id.* at 16-17. For example, she claims Judge McGinty failed to recuse himself and denied her a fair trial. *Id.* at 16.

He also denied C.A.B. his "full service therapy dogs since October 2, 2020." *Id.* Judge McGinty denied and restricted communication between Plaintiff and C.A.B., conspired with C.A.B.'s and Beesmer's attorneys, and omitted "strong evidence off the record," and "pushed several emergency motions out far past their legal requirements." *Id.* at 16-17. She also complains of "ongoing discrimination." *Id.* Plaintiff also alleges Judge McGinty failed to replace C.A.B.'s attorney with an "ethical" attorney. *Id.*

**\*5** She further alleges Judge McGinty lied in the October 2, 2020, Order which cited "concerns" in Plaintiff's home, without evidence, and falsely stated C.A.B.'s father's home "has no domestic violence." *Id.*

Additionally, on June 3, 2021, Judge McGinty denied C.A.B.'s "rights to his service dog again" and "showed preference to fathers" in that he gave C.A.B.'s father a "courtesy call" when he missed "virtual court" but did not extend the same courtesy to Plaintiff on March 8, 2021, when she failed to appear in court. *Id.* at 16. When she questioned Judge McGinty, he "falsely" explained that "virtual court is different from physical Court when someone doesn't show up we call them." *Id.*

Under a section of the amended complaint labeled "Damages" Plaintiff lists twelve "counts." *Id.* at 17-19. Plaintiff also lists five "counts" under Title II ADA Violations. *Id.* at 19. Plaintiff also devotes several pages to what appears to be excerpts and summaries of what she refers to as "Title II ADA Case Law re: Accommodations." *See Id.* at 19-26.

As relief, Plaintiff seeks a temporary restraining order, a permanent restraining order, and preliminary injunction. *Id.* at 26, 28. Plaintiff is "seeking injunctive relief and a permanent restraining order against [Judge McGinty] to stop his abuse and allow us to have a fair trial with an unbiased Judge without any connections to him whatsoever to avoid any further harm." *Id.* at 9. She requests declaratory relief "to the effect" that Defendant's "actions were illegal and violative of Plaintiff's right to due process of the law and to equal protection of the laws." *Id.* at 28.

Plaintiff seeks damages in the amount of at least $3,000,000. *Id.* at 27-28. Plaintiff asks this Court to "assume jurisdiction over this matter." *Id.* Plaintiff also wants this Court to "restore" her sole custody rights over her minor child. *Id.* at 28. She also asks for any further relief as the Court shall deem just and proper. *Id.*[6]

Case 1:22-cv-00581-DNH-TWD  Document 4  Filed 06/29/22  Page 139 of 175

6    Plaintiff also seeks attorneys fees pursuant to 42 U.S.C. § 1988 and the Equal Access to Justice Act. (Dkt. No. 6 at 28.) However, as she was informed in the related action, *pro se* plaintiffs are not entitled to such fees. *Orr v. McGinty*, No. 1:17-cv-01280, ECF Dkt. No. 47 at 3 n.6 (citing *SEC v. Price Waterhouse*, 41 F.3d 805, 808 (2d Cir. 1994)).

For a complete statement of Plaintiff's claims, reference is made to the amended complaint. (*See generally* Dkt. No. 6.)

**C. Discussion**

Initially, the Court finds the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, No. 95 CIV 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (citations omitted). The statement should be "short and plain" because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1998) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> *6    (b)  Paragraphs;  Separate Statements. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.

Fed. R. Civ. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (quotation marks and citations omitted).

A complaint that does not comply with these Rules "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Artuz*, 1998 WL 832708, at *2 (internal quotation marks omitted).

The amended complaint contains rambling legal arguments, numerous disjointed sentences, and repeated conclusory allegations. (Dkt. No. 6.) Moreover, while the amended complaint contains some numbered sections, the numbering is of limited value since some of the numbered sections contain numerous sentences, and/or contain multiple paragraphs, and/ or are repeated. *Id.* As a result, it is difficult for the Court to determine the sufficiency of Plaintiff's allegations, and it would be difficult for Defendant to shape a comprehensive defense. As such, the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.

However, the Court refrains from recommending dismissal on this basis alone because the amended complaint does not quite rise to the level of being "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Rather, this action represents yet another lawsuit whereby Plaintiff is complaining of Defendant's handing of and decisions issued in family court proceedings. Construed liberally, Plaintiff seeks to nullify family court and custody determinations issued by Defendant, and asks this Court to restore her sole custody, requests declaratory and injunctive relief, and monetary compensation. As such, in accordance with 28 U.S.C. § 1915(e), the Court will review the sufficiency of the amended complaint.

**1. Minor Plaintiff**

As Plaintiff is aware, an individual "who has not been admitted to the practice of law may not represent anybody other than himself." *Amato v. McGinty*, No. 1:17-CV-00593 (MAD/ATB), 2017 WL 4083575, at *4 (N.D.N.Y. Sept. 15, 2017) (quoting *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007))); *see also Orr v. McGinty*, No. 1:17-cv-1280 (GLS/ TWD), ECF Dkt. No. 47 at 1 n.1, 13 (plaintiff-mothers cannot

bring an action "as next of friend for their minor children" and directing the Clerk to amend the caption to remove all references to the minor children). Similarly, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Amato v. McGinty*, 2017 WL 4083575, at \*4 (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)).

\*7 Therefore, the Court does not construe the amended complaint to include any claims or causes of action brought on behalf of C.A.B. The Court also recommends that the Clerk be directed to amend the docket to remove all references to C.A.B.

## 2. Section 1983

Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

As noted, Plaintiff has named Judge McGinty as the sole defendant in his "judicial" and "individual" capacity. However, and as Plaintiff was previously informed in the related action, Plaintiff's Section 1983 claims against Judge McGinty are barred by the Eleventh Amendment and judicial immunity. [7] *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at \*4 (dismissing Amato's Section 1983 claims against Judge McGinty with prejudice); *Treistman v. McGinty*, No. 1:16-cv-1403, 2018 WL 4078262, at \*1 (N.D.N.Y. Aug. 27, 2018) (finding the plaintiff's claims against the individual defendants in their official capacity as Family Court employees are barred by the Eleventh Amendment); *see also Amato v. McGinty*, 2017 WL 4083575, at \*4. The same result is required here.

[7]     Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities. *See Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993); *Martinez v. Queens Cty. Dist. Attorney*, No. 12-CV-06262, 2014 WL 1011054, at \*8 n. 8 (E.D.N.Y. Mar. 17, 2014), *aff'd*, 596 F. App'x 10 (2d Cir. 2015); *McKnight v.*

*Middleton*, 699 F.Supp.2d 507, 521-25 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011). The Eleventh Amendment, on the other hand, shields judges from suit to the extent that they are sued in their official capacities. *See Ying Jing Gan*, 996 F.2d at 529 ("To the extent that ... a claim is asserted against the state official in his official capacity, he may assert the state's Eleventh Amendment immunity against suit.").

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209 (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation [.]" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 9-10; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

\*8 As detailed above, Plaintiff has brought several allegations against Judge McGinty, including that he violated her constitutional rights, conspired with other individuals, endangered the welfare of C.A.B., denied her "accommodations," and retaliated against her for being outspoken about Judge McGinty's purported abuses and discrimination against mothers and children. However, all of the acts described in the amended complaint arise out of family court proceedings before Judge McGinty, the functions complained of were ones normally performed by a judge, and Plaintiff was a party who dealt with Judge McGinty in his judicial capacity. Plaintiff has not alleged that Judge McGinty took nonjudicial actions or that he acted in the absence of jurisdiction. Notwithstanding Plaintiff's allegations that Judge McGinty made improper adverse rulings against Plaintiff

2022 WL 226798

during the custody proceedings with malice or in retaliation for her "exposing" abuses in Family Court, Judge McGinty was still performing judicial functions and presiding over Plaintiff's custody action in Ulster County Family Court. As stated above, a judge does not lose his or her judicial immunity because he is accused of acting with malice or corruptly. Accordingly, Judge McGinty is entitled to judicial immunity. *See Mireles*, 502 U.S. at 12-13; *Bliven*, 579 F.3d at 210.

Judge McGinty is also protected under sovereign immunity. In *Gollomp v. Spitzer*, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a Section 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365-68 (2d Cir. 2009). Likewise, Plaintiff has filed her complaint against Judge McGinty, a member of the Ulster County Family Court, which is part of the New York Unified Court System. N.Y. Const. Art. VI, §§ 1, 13. All of Judge McGinty's alleged constitutional violations occurred while he acted within his official capacity as a Family Court judge in adjudicating a custody dispute. Therefore, all claims against Judge McGinty should be dismissed, because "a suit against a state official in his official capacity is, in effect, a suit against the state itself, which is barred." *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at *7 (N.D.N.Y. June 29, 2020) (citations omitted).

Moreover, Plaintiff is not entitled to injunctive relief because she "allege[d] neither the violation of a declaratory decree, nor the unavailability of declaratory relief." *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Nor is Plaintiff entitled to declaratory relief because she alleges only past conduct and does not seek to prevent an ongoing or future violation of federal law. *See Shtrauch v. Dowd*, 651 F. App'x 72, 74 (2d Cir. 2016) (citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996) (concluding that relief sought was not prospective where the "specific allegations target[ed] past conduct" and the "remedy [was] not intended to halt a present, continuing violation of federal law")).

The Court therefore recommends dismissing Plaintiff's Section 1983 claims against Judge McGinty under the doctrines of judicial and sovereign immunity and as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *see also Montero*, 171 F.3d at 760 ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.' " (quoting *Neitzke*, 490 U.S. at 327)).

### 3. Title VII

Title VII provides that "[i]t shall be unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a); *see Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.").

Here, Plaintiff claims in conclusory fashion that Judge McGinty "discriminates" against women in violation of Title VII. Plaintiff does not, however, allege employment discrimination or that she is or was an employee of Judge McGinty and, therefore, the claim is frivolous.[8] *See Jones v. Thomas*, No. 20-CV-5581, 2020 WL 5077026, at *4 (S.D.N.Y. Aug. 27, 2020) (dismissing plaintiff's claims pursuant to Title VII where the plaintiff did not allege that he is or was an employee of any of the defendants); *Basora-Jacobs v. Palevsky*, No. 20-CV-1675, 2020 WL 3868710, at *2 (E.D.N.Y. July 10, 2020) (dismissing the plaintiff's Title VII claims because "[t]he complaint does not list Plaintiff's employer as a defendant in the case caption."). Since Title VII claims are to be raised against a plaintiff's employer, there is no proper Title VII defendant in this case. *Militinska-Lake v. Kirnon*, No. 1:20-CV-443 (TJM/CFH), 2021 WL 3569807, at *9 (N.D.N.Y. Aug. 11, 2021) ("As a general rule, the proper defendant in a Title VII case against a State entity is the actual department or agency that employs the plaintiff.") (citation omitted).

[8]     Moreover, "[i]t is axiomatic that 'Title VII does not impose liability on individuals.' " *Hamlett v. City of Binghamton*, No. 3:20-CV-880 (GLS/ML), 2021 WL 3723091, at *2 (N.D.N.Y. Aug. 23, 2021) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) (citations omitted)); *see also Golden v. Syracuse Reg'l Airport Auth.*, No. 5:20-CV-1566 (MAD/TWD), 2021 WL 485731, at *1 (N.D.N.Y. Feb. 10, 2021) ("[I]ndividuals are not subject to

liability under Title VII.") (quotation marks and citation omitted).

**\*9** Accordingly, the Court recommends that Plaintiff's Title VII claims against Judge McGinty be dismissed.

### 4. ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To plead an ADA claim, a plaintiff must allege: "(1) that [s]he is a qualified individual with a disability; (2) that [s]he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [her] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks and citation omitted).

As discussed, Plaintiff has utilized a form ADA complaint, largely alleges disability due to PTSD, and claims Judge McGinty denied her "accommodations" and "retaliated" against her during family court proceedings. For reasons set forth below, Plaintiff's purported disability-based claims under the ADA must also be dismissed.

First, to the extent Plaintiff asserts ADA claims against Judge McGinty in his individual capacity, such claims fail as a matter of law because there is no individual liability under Title II of the ADA. *See Garcia v. SUNY Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that defendants cannot be sued in their individual capacities for violating Title II of the ADA); *see also Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) ("the retaliation provision of the ADA ... cannot provide for individual liability"); *Myers v. N.Y.-Dep't of Motor Vehicles*, No. 06-CV-4583, 2013 WL 3990770, at \*9 (E.D.N.Y. Aug. 5, 2013) ("[N]umerous district courts in this [C]ircuit have persuasively held that there is no individual liability under Title I or Title II of the ADA, regardless of whether the claim is brought in an individual or official capacity."); *Netti v. Ayers*, No. 17-CV-976, 2017 WL 7542494, at \*18 (Oct. 5, 2017) ("individuals cannot be held liable under the ADA") (citing cases). Thus, Plaintiff's ADA claims against Judge McGinty, insofar as he is sued in his individual capacity, must be dismissed. [9]

9    The Court notes judicial immunity also extends to Plaintiff's ADA claims for damages. *See Orr v. McGinty*, No. 1:17-cv-01280, Dkt. No. 47 at 5 (citing *Brooks v. Onondaga Cty. Dep't of Children & Family Servs.*, 5:17-CV-1186, 2018 WL 2108282, at \*4 (N.D.N.Y. Apr. 9, 2018) (collecting cases)).

Even if the Court assumes for purposes of initial review only, that Plaintiff was disabled during the state court proceedings within the meaning of the ADA, and Judge McGinty was a proper defendant in his official capacity, [10] her assertions do not show that Judge McGinty discriminated or retaliated against her because of her PTSD. It is not enough for Plaintiff to state that she is disabled and that bad things happened to her in the state court proceedings; she must allege facts from which a reasonable trier of fact could infer that these things happened to her because of discrimination on the basis of her disability. The use of "buzz words" such as "disability," "accommodation," and "retaliation" does not cure a pleading defect such as the one herein. *See Barr v. Abrams*, 810 F.2d 358, 362 (2d Cir. 1986) (the Second Circuit has repeatedly held, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"). She does not allege any facts suggesting a plausible connection between her alleged PTSD and "LAS" and the actions that were taken against her in the state court proceedings. Rather, Plaintiff merely states she "has no recollection of being handed a slip" regarding the March 8, 2020, court date that she missed. Moreover, Plaintiff's passing reference that she "requested audio of the court hearings so that I can have time to listen to prepare as *pro se* for continuing proceedings" or that Judge McGinty "refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3rd trial" are insufficient to state a claim. (Dkt. No. 6 at 13, 14.)

10    As observed in the related case, "It is questionable whether defendants, even when sued in their official capacities, are public entities." *Orr v. McGinty*, No. 1:17-cv-01280, Dkt. No. 74 at 4 n.4 (citing *Santiago v. Garcia*, 70 F. Supp. 2d 84, 89 (D. P.R. 1999) (holding state court judge sued in official capacity was not "public entity" under Title II); *but see Shollenberger v. N.Y. State Unified Court Sys.*, 18 CV 9736, 2019 WL 2717211, at \*5 (S.D.N.Y. June 28, 2019) (allowing ADA claims

seeking prospective injunctive relief to proceed against Chief Judge of the State of New York and Chief Administrator of the New York State Unified Court System because "a plaintiff need only allege the defendant[s] ha[ve] responsibility for the alleged conduct and the ability to redress the alleged violations")).

**\*10** In light of the foregoing, the Court recommends dismissing Plaintiff's ADA claims, if any, against Judge McGinty. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 5. Domestic Relations Exception, *Rooker-Feldman* [11] Doctrine, and *Younger* [12] Abstention

[11]   *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-17 (1923).

[12]   *Younger v. Harris*, 401 U.S. 37 (1971).

Due to the nature of Plaintiff's amended complaint, it is difficult to precisely determine exactly which doctrines apply, but based upon the relief sought, even if Plaintiff had sued an appropriate defendant, her claims are also likely barred by the *Rooker-Feldman* doctrine, domestic relations exception, and/or *Younger* abstention.

### a. Domestic Relations Exception

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

Here, in order to return custody of C.A.B. to Plaintiff, or to "enjoin" the state court's orders, this Court would have to re-determine Judge McGinty's decision in the custody matter. This would also involve resolving factual disputes regarding custody and visitation. This court is divested of jurisdiction to make such determinations. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) (it has been uniformly held that federal

courts do not adjudicate cases involving the custody of minors and rights of visitation); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees"). Accordingly, to the extent the amended complaint is seeking a child custody decree from the Court, the court lacks jurisdiction to adjudicate such a claim. *See, e.g.*, *Amato v. McGinty*, No. 17-CV-593 (MAD/ATB), 2017 WL 9487185, at \*8 (N.D.N.Y. Jun. 6, 2017) *report and recommendation adopted* by 2017 WL 4083575 (N.D.N.Y. Sept. 15. 2017).

### b. *Rooker-Feldman* Doctrine

In the event the relevant underlying state court proceedings are concluded, such claims may be barred by the *Rooker-Feldman* doctrine. This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at \*3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) ("The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases.")). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Fernandez v. Turetsky*, 2014 WL 5823116, at \*3 (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

**\*11** The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).

Here, it appears Plaintiff "lost" in state court, complains of injuries caused by the state court judgments, and asks this Court to invalidate the state court's judgments regarding child custody. *See* Dkt. No. 6 at 29. Thus, as currently drafted, the amended complaint is likely barred under the *Rooker-Feldman* doctrine.

### c. *Younger* Abstention

In the event the underlying state court proceedings remain pending, Plaintiff's request for this Court's involvement may also implicate the *Younger* abstention doctrine. *See generally Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 n.16 (1975) (extending the equitable principles that required abstention with respect to injunctive relief in *Younger* apply to requests for declaratory relief as well).

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* doctrine is limited to three exceptional circumstances, including (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73. "[T]here can be no doubt that a custody dispute ... raises important state interests." *Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-459, 2015 WL 1120121, at *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that plaintiff's claim for injunctive relief was barred by *Younger* when the plaintiff sought to challenge an ongoing family court custody proceeding) (citation omitted).

Accordingly, to the extent that the child custody issues are continuing in Family Court, the Court should abstain from interfering with that process. *See, e.g.*, *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying *Younger* abstention in child support matter); *Lomtevas v. New York State*, No. 03-CV-2359, 2003 WL 22937688, at *2 (E.D.N.Y. Nov. 13, 2003) (same).

### IV. LEAVE TO AMEND

Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to replead may be denied where any amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with the plaintiff's causes of action is substantive

such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above, which appear to apply to all claims except for Plaintiff's ADA claim seeking prospective injunctive relief.

**\*12** Nevertheless, in light of Plaintiff's *pro se* status and in an abundance of caution, as was the case in the related action, better pleading—addressing the deficiencies outlined above—could potentially save Plaintiff's ADA claim for prospective injunctive relief against Judge McGinty from being *sua sponte* dismissed on initial review. *See, e.g., Orr v. McGtiny*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 10-11. [13] As such, the Court recommends this claim be dismissed without prejudice and with leave to amend. [14]

[13]   At this juncture, the Court expresses no opinion on the sufficiency of any such claim.

[14]   If the District Court adopts this Report-Recommendation, and if Plaintiff chooses to file a second amended complaint, the pleading must comply with Rules 8 and 10 of the Federal Rules. The revised pleading will replace the amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."). The revised pleading should not attempt to resurrect any claims dismissed with prejudice in this action and/or claims brought or could have been brought in the related case. *See Lopez v. Jet Blue Airways*, No. 12-CV-0057, 2012 WL 213831, at *2 (E.D.N.Y. Jan. 24, 2012) ("Under the doctrine of *res judicata*, once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose.").

### V. PLAINTIFF'S ADDRESS

Under this Court's rules, an unrepresented litigant is under a duty to inform the Court of any address changes in writing. L.R. 10.1(c)(2). For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes. To date, all the Court's Orders mailed to Plaintiff's address on file have been returned as undeliverable. (Dkt. Nos. 10, 12, 15.)

In an extraordinary display of special solicitude to Plaintiff as a *pro se* litigant, the Clerk was directed to mail a one-time courtesy copy of each Order at the confidential and redacted address indicated on the envelope of Plaintiff's submissions to the Court and as verbally provided to the Clerk on December 1, 2021. (*See generally* Docket Report; *see* Dkt. Nos. 11, 14.[15]) However, Plaintiff must file a change of address IN WRITING within thirty days, and she must continue to submit any address changes to the Court as long as her action is pending. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." L.R. 41.2(b).

[15]    While not entirely clear to the Court, it appears this "confidential" address differs from Plaintiff's residence, while the PO Box on file is the business address for Plaintiff's "home office" Punished 4 Protecting. (*See* Dkt. No. 16.)

## VI. CONCLUSION

**WHEREFORE**, after carefully considering this matter, and for the reasons explained above, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 16) is **GRANTED**;[16] and it is further

[16]    Plaintiff should note that although her IFP application has been granted, she will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

 **\*13  RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 6) be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further

**RECOMMENDED** that all claims be **DISMISSED WITH PREJUDICE** except that Plaintiff's ADA claim for prospective injunctive relief be **DISMISSED WITHOUT**

**PREJUDICE AND WITH LEAVE TO REPLEAD**; and it is further

**RECOMMENDED** that the Clerk be directed to amend the docket to remove all references to C.A.B., and it is further

**ORDERED** that Plaintiff must file a **CHANGE OF ADDRESS** within **THIRTY DAYS** of the date of the Report-Recommendation, and she must continue to submit any address changes to the Court as long as this action is pending; failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action; and it is further

**ORDERED** that the Clerk mail a copy of this Order and Report-Recommendation to Plaintiff at the address listed on the docket and to mail a **FINAL** one-time courtesy copy to the confidential and redacted address indicated on the envelope of Dkt. No. 16 and as verbally provided to the Clerk on December 1, 2021.

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report.[17] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

[17]    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Slip Copy, 2022 WL 226798

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2062613
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Nicholas Bates STUMPF, Plaintiff,

v.

Linda MAYWALT, Mary Ellen Degrave, Jeffrey
Cooley, Katherine Resch, Olivia Christman,
Vince Arcesi, Wonisha-Ann Greenlee, Debra
Indivino, Honorable James A. Vazzana, Defendants.

21-CV-06248 EAW
|
Signed 06/06/2022

**Synopsis**
**Background:** Father, proceeding pro se, brought § 1983
action against state court judge, state caseworkers, and other
individuals, asserting constitutional violations, including
violation of his First Amendment religious rights and
violation of his substantive due process rights, arising from
removal of his children from his home and child custody
proceedings. Father filed motion for leave to proceed in forma
pauperis.

**Holdings:** The District Court, Elizabeth A. Wolford, Chief
Judge, held that:

[1] claims against judge were barred by absolute judicial
immunity;

[2] *Younger* abstention applied;

[3] domestic relations exception to federal jurisdiction
applied;

[4] father failed to state an unlawful entry claim;

[5] alleged libelous statements were not actionable; and

[6] father failed to state a substantive due process claim.

Motion granted; complaint dismissed with leave to amend.

**Procedural Posture(s):** Motion to Proceed In Forma
Pauperis.

West Headnotes (23)

**[1]    Costs, Fees, and Sanctions**  🔑

The court is required to conduct an initial
screening of complaints filed by civil litigants
proceeding in forma pauperis, to ensure that
the case goes forward only if it meets certain
requirements. 28 U.S.C.A. § 1915.

**[2]    Costs, Fees, and Sanctions**  🔑

In evaluating the complaint filed by a civil
litigant proceeding in forma pauperis, a court
must accept as true all of the plaintiff's factual
allegations and must draw all inferences in the
plaintiff's favor. 28 U.S.C.A. § 1915.

**[3]    Costs, Fees, and Sanctions**  🔑

Upon conducting initial screening of a complaint
filed by a civil litigant proceeding in forma
pauperis, a court must dismiss the case if the
court determines that the action (i) is frivolous or
malicious; (ii) fails to state a claim upon which
relief may be granted; or (iii) seeks monetary
relief against a defendant who is immune from
such relief. 28 U.S.C.A. § 1915(e)(2)(B).

**[4]    Federal Courts**  🔑

If the court determines at any time that it
lacks subject-matter jurisdiction, the court must
dismiss the action. Fed. R. Civ. P. 12(h)(3).

**[5]    Civil Rights**  🔑

To state a valid claim under § 1983, the plaintiff
must allege that the challenged conduct (1) was
attributable to a person acting under color of
state law, and (2) deprived the plaintiff of a
right, privilege, or immunity secured by the
Constitution or laws of the United States. 42
U.S.C.A. § 1983.

**[6]**   **Civil Rights** 🔑

Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere. 42 U.S.C.A. § 1983.

**[7]**   **Judges** 🔑

Father's § 1983 claims against state court judge, alleging that judge violated his First Amendment rights by placing his children in a foster care family that attended religious practices against his beliefs, and that he was denied right to trial by jury when court canceled two trial dates, were barred by absolute judicial immunity, since all the claims stemmed from alleged actions that occurred within judge's judicial capacity. U.S. Const. Amend. 1; 42 U.S.C.A. § 1983.

**[8]**   **Judges** 🔑

Judicial immunity protects conduct taken as part of all judicial acts except those performed in the clear absence of jurisdiction.

**[9]**   **Federal Courts** 🔑

*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims.

**[10]**   **Federal Courts** 🔑

*Younger* abstention applies if the federal action involves ongoing: (1) state criminal prosecutions'; (2) civil proceedings that are akin to criminal prosecutions; or (3) civil proceedings that implicate a state's interest in enforcing the orders and judgments of its courts.

**[11]**   **Federal Courts** 🔑

If the federal action falls into one of three *Younger* abstention categories, a court may then consider the additional factors of whether the state interest is vital and whether the state proceeding affords an adequate opportunity to raise the constitutional claims.

**[12]**   **Federal Courts** 🔑

Father's allegations underlying § 1983 claims against state court judge and state caseworkers, relating to procedure for removing his children, coercion used during that process, and untrue statements made during state custody proceedings were based solely on state court custody proceedings and involved state's compelling interest in protecting the welfare of children, and thus, claims were subject to *Younger* abstention doctrine; issues involved area of state concern and could be vindicated in state court. 42 U.S.C.A. § 1983.

**[13]**   **Federal Courts** 🔑

To extent that father's § 1983 claims against state court judge and state caseworkers involved in child custody proceedings were aimed at changing results of domestic proceedings, including orders of child custody, they were barred by the domestic relations exception to federal jurisdiction; court would be forced to reexamine and reinterpret evidence brought before the state court in child custody proceedings, which was role of state appellate court, not the federal district court. 42 U.S.C.A. § 1983.

**[14]**   **Courts** 🔑

To extent that father's § 1983 claims against state court judge and state employees concerning alleged violation of his constitutional rights during child custody proceedings sought to overturn final custody orders that had been issued by the court, the claims were barred by the *Rooker-Feldman* doctrine.

**[15]     Courts** 🔑

The *Rooker-Feldman* doctrine bars federal courts from exercising jurisdiction over claims brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

**[16]     Courts** 🔑

The *Rooker-Feldman* doctrine has four requirements: (1) the plaintiff must have lost in state court; (2) the loss must have occurred before the district court proceedings commenced; (3) the plaintiff must complain of injuries caused by a state court judgment; and (4) the plaintiff must invite district court review and rejection of that judgment.

**[17]     Searches and Seizures** 🔑

State caseworkers' alleged warrantless entry into father's home, in connection with child custody proceedings, was not sufficient basis for father's unlawful entry claim under the Fourth Amendment, where he provided no facts supporting his allegations, such as when the alleged entry occurred or circumstances surrounding the entry, and it was not clear from his complaint whether the caseworkers searched or seized anything other than his children from his home. U.S. Const. Amend. 4.

**[18]     Searches and Seizures** 🔑

Warrantless searches inside a home are presumptively unreasonable, in violation of the Fourth Amendment. U.S. Const. Amend. 4.

**[19]     Searches and Seizures** 🔑

Under the Fourth Amendment, police officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance. U.S. Const. Amend. 4.

**[20]     Libel and Slander** 🔑

Alleged libelous statements about father's character were made in connection with child custody proceedings, and as such, they were not actionable under New York law.

**[21]     Libel and Slander** 🔑

To state a claim for libel under New York law, a complaint must allege (1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm,' unless the statement is defamatory per se, in which case harm is presumed.

**[22]     Libel and Slander** 🔑

Under New York law, absolute immunity from liability for defamation exists for oral or written statements made in connection with a proceeding before a court.

**[23]     Constitutional Law** 🔑

State caseworkers' alleged conduct in removing father's children from his home was not so egregious or so outrageous that it may fairly be said to shock the contemporary conscience as required for a substantive due process claim; father did not explain why employees did not have reasonable basis for removing his children from his home, but only that he believed removal was improper. U.S. Const. Amend. 14.

**Attorneys and Law Firms**

Nicholas Bates Stumpf, Hamlin, NY, Pro Se.

**DECISION AND ORDER**

ELIZABETH A. WOLFORD, Chief Judge

Stumpf v. Maywalt, --- F.Supp.3d ---- (2022)
2022 WL 2062613

## INTRODUCTION

**\*1** *Pro se* plaintiff Nicholas Bates Stumpf ("Plaintiff") commenced the instant action on March 17, 2021, alleging violations of his civil rights by Defendants. (Dkt. 1). Plaintiff also filed a motion for leave to proceed *in forma pauperis.* (Dkt. 2). On March 18, 2021, Plaintiff filed an amended complaint [1], which contains substantially the same allegations but names the Honorable James A. Vazzana as an additional defendant and amends the name of defendant "Vincent Arcarese" to "Vince Arcesi." (Dkt. 3 at 1). Plaintiff's amended complaint is accompanied by another *in forma pauperis* application. (Dkt. 4).

[1]    On May 20, 2022, Plaintiff filed a second amended complaint (Dkt. 5), which contains many of the same allegations as are contained in his previously-filed complaints. Plaintiff has already filed one amended complaint in this action (*see* Dkt. 3), and the Court did not previously grant him leave to file a second amended complaint. As further explained below, the Court will grant Plaintiff leave to further amend his claims consistent with this Decision and Order, and therefore it will not consider the second amended complaint filed at Docket 5.

The Court has reviewed Plaintiff's motions for *in forma pauperis* status, and they are granted. The Court has also reviewed Plaintiff's amended complaint as required by 28 U.S.C. § 1915(e)(2), and finds that his claims stemming from the New York child custody proceedings must be dismissed without prejudice for lack of subject matter jurisdiction. However, given Plaintiff's *pro se* status, the Court will grant Plaintiff the opportunity to amend his claims. [2]

[2]    In April 2022, the Court received an email with an attached letter from Plaintiff, containing further allegations relating to his claims. Plaintiff is hereby advised that an emailed letter is not the appropriate vehicle for supplementing his claims. Rather, as further explained below, Plaintiff may only supplement his claims by filing an amended complaint.

## BACKGROUND

The following facts are taken from Plaintiff's amended complaint. (Dkt. 3). As is required at this stage of the proceedings, the Court treats Plaintiff's allegations as true.

Plaintiff's claims stem from Defendants' involvement in and handling of the state court custody proceedings involving his son and daughter. He alleges that Judge Vazzana violated his First Amendment rights by placing his children in a foster care family that attended religious practices against Plaintiff's beliefs, and also that he has been denied his right to a trial by jury when the court canceled two trial dates. (*Id.* at 4). Plaintiff alleges that defendant Waywalt, a child protection worker, removed his children based on speculation, that she has not addressed his objections to religious practices in his children's foster home, she attempted to end his weekend visitation, and she forced him to close his tobacco business as a condition of visitation. (*Id.* at 5-6). Plaintiff alleges that defendant Degrave, who is the girlfriend of his children's paternal great grandfather, filed an untrue petition in Monroe County Family Court, containing "profanity and libel about [his] character," and that Degrave's attorney, defendant Indivino, also defamed him in emails and before the court. (*Id.* at 7). He alleges that defendant Indivino also participated in "coercing agreements that were ... illegal to make between the court and myself," and that defendant Degrave has no custodial rights over his children. (*Id.* at 8). As against defendant Cooley, Plaintiff alleges that he entered his home without permission after an allegation concerning his children's mother, he coerced Plaintiff into a safety plan, had his children taken from him, and did not seek other options to keep the children home with Plaintiff. (*Id.* at 9). Plaintiff alleges that defendant Christman assisted defendant Cooley in the decisions made the day his children were removed from his care, and that she took statements from his children against his wishes. (*Id.* at 8-9). He also alleges that she displayed a "Black Lives Matter" sticker on her vehicle, which he alleges is "an organization that terroristicly promotes against all race besides their own," and therefore she is not impartial. (*Id.* at 9). As to defendant Arcesi, Plaintiff alleges that he is the Monroe County Attorney for Child Protective Services (CPS), and he lied in a May 2020 petition, including because he stated that Plaintiff has a history of cocaine use and is on probation for larceny, as he does not have a history of drug use and has received only traffic violations. (*Id.*). Plaintiff alleges that defendant Resch removed his children and coerced him into a safety plan by threatening that she would place the children into foster care and separate them. (*Id.* at 11). He also alleges that she had a conflict of interest, and that her reasons for removing the children—that the children saw their mother

Stumpf v. Maywalt, --- F.Supp.3d ---- (2022)

2022 WL 2062613

and they were present at his store—were unconstitutional. (*Id.*). As to defendant Greenlee, Plaintiff alleges that she is a Monroe County Department of Social Services case worker, and she removed his children in May 2020 without a warrant and violated his right to due process by breaking up his family. (*Id.* at 11-12).

**\*2** Plaintiff alleges that, as a result of this conduct, he has sustained injuries to his reputation as a father and as a business owner, as well as post-traumatic stress disorder and an increase in his anxiety levels, and that both of his children show signs of trauma and separation anxiety. (*Id.* a 13). Based on these allegations, Plaintiff requests that the Court declare the New York State custody case to be unconstitutional and to dismiss it. (*Id.*). He also requests monetary damages against each of the individual defendants. (*Id.* (requesting $500,00 against Judge Vazzana; $100,00 against defendant Maywalt; $100,00 against defendant Degrave; $25,000 against defendant Indivino; $25,000 against defendant Greenlee; $50,000 against Arcesi; $100,000 against defendant Cooley; $50,000 against defendant Christman; and $50,000 against defendant Resch)).

**DISCUSSION**

### I. Plaintiff's Motion for In Forma Pauperis Status is Granted

Plaintiff's affirmation of poverty has been reviewed in accordance with 28 U.S.C. § 1915(a)(1). Plaintiff has met the statutory requirements for *in forma pauperis* status and permission to proceed *in forma pauperis* is granted. The Court now turns to its obligation to screen Plaintiff's complaint pursuant to 28 U.S.C. § 1915.

### II. Legal Standards

#### A. Screening Order

**[1]** **[2]** **[3]** **[4]** "Section 1915 requires the Court to conduct an initial screening of complaints filed by civil litigants proceeding *in forma pauperis*, to ensure that the case goes forward only if it meets certain requirements." *Guess v. Jahromi*, No. 6:17-CV-06121(MAT), 2017 WL 1063474, at \*2 (W.D.N.Y. Mar. 21, 2017), *reconsideration denied*, No. 6:17-CV-06121(MAT), 2017 WL 1489142 (W.D.N.Y. Apr. 26, 2017). In evaluating the complaint, a court must accept as true all of the plaintiff's factual allegations and must draw all inferences in the plaintiff's favor. *See, e.g., Larkin v. Savage*,

318 F.3d 138, 139 (2d Cir. 2003). Upon conducting this initial screening, a court must dismiss the case pursuant to § 1915(e)(2)(B) "if the [c]ourt determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *Eckert v. Schroeder, Joseph & Assocs.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005). "In addition, if the Court 'determines at any time that it lacks subject-matter jurisdiction, the Court must dismiss the action.' " *West v. Sanchez*, No. 17-CV-2482 (MKB), 2017 WL 1628887, at \*1 (E.D.N.Y. May 1, 2017) (quoting Fed. R. Civ. P. 12(h)(3)); *see also English v. Sellers*, No. 07-CV-6611L, 2008 WL 189645, at \*1 (W.D.N.Y. Jan. 18, 2008) ("[E]ven pleadings submitted *pro se* must fit within the subject matter jurisdiction of an Article III court....").

#### B. Section 1983 Claims

**[5]** **[6]** "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)).

### III. Analysis

#### A. Plaintiff's Claims Against Judge Vazzana

**[7]** **[8]** Plaintiff's claims against Judge Vazzana must be dismissed on the basis of judicial immunity. "Judicial immunity protects conduct taken as part of all judicial acts except those performed in the clear absence of jurisdiction." *Walker v. Family Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at \*6 (N.D.N.Y. June 29, 2020) (quotations and citations omitted). All of Plaintiff's claims against Judge Vazzana stem from alleged actions taken in connection with the child custody proceedings, including orders relating to foster care and continuing his trial. Accordingly, Plaintiff's claims against Judge Vazzana are dismissed on this basis. *See id.* at \*7 (explaining that judge had "absolute judicial immunity for all judicial actions that occurred within her judicial capacity" of determining the proper custody for the plaintiff's children, and

noting that immunity applies "even when the judge is accused of acting maliciously and corruptly" (citation omitted)).

## B. **Plaintiff's Claims Relating to the State Court Custody Proceedings**

**\*3** **[9]** **[10]** **[11]** The Court next concludes that, to the extent Plaintiff seeks injunctive relief, his claims relating to the state court custody proceedings are barred by the abstention doctrine articulated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). "*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Morpurgo v. Incorp. Vill. of Sag Harbor,* 327 F. App'x 284, 285 (2d Cir. 2009) (citation omitted). As to the first condition, "*Younger* applies if the federal action involves ongoing: (1) 'state criminal prosecutions'; (2) 'civil proceedings that are akin to criminal prosecutions'; or (3) civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.' " *Torres v. Gaines,* 130 F. Supp. 3d 630, 636-37 (D. Conn. 2015) (quoting *Sprint Commc'ns, Inc. v. Jacobs,* 571 U.S. 69, 72, 134 S.Ct. 584, 187 L.Ed.2d 505 (2013)). "Both the Supreme Court and the Second Circuit have observed that a 'state-initiated proceeding to gain custody of children allegedly abused by their parents' falls within the second category. *Id.* (citing *Davis v. Baldwin,* 594 F. App'x 49, 51 (2d Cir. 2015)). "If the federal action falls into one of these three categories, a Court may then consider the additional factors ... [of] whether the state interest is vital and whether the state proceeding affords an adequate opportunity to raise the constitutional claims." *Id.*

**[12]** Turning to the additional conditions for application of the *Younger* abstention doctrine, it is well-settled that "a custody dispute ... raises important state interests." *Amato v. McGinty,* No. 1:17-CV-593 (MAD/ATB), 2017 WL 9487185, at \*10 (N.D.N.Y. June 6, 2017) (citation and quotations omitted), *adopted,* 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017); *Reinhardt v. Commonwealth of Mass. Dep't of Soc. Servs.,* 715 F. Supp. 1253, 1256 (S.D.N.Y. 1989) (explaining that "there can be no doubt that a custody dispute that involves allegations of sexual abuse raises important state interests," and noting that "[q]uestions of family relations, especially when issues of custody and abuse are involved, are traditionally an area of state concern"). Put simply, Plaintiff asks the Court to declare unconstitutional and to dismiss the state custody proceedings, based on his allegations

relating to Defendants' procedure for removing his children, alleged coercion they used during that process, and making untrue statements during the state custody proceedings. These allegations are based solely on the state custody proceedings and "similarly involve the state's compelling interest in protecting the welfare of children," and Plaintiff may raise these claims in the state proceedings. *Torres,* 130 F. Supp. 3d at 636. Plaintiff does not allege that he cannot vindicate his claims in state court. Accordingly, these claims are dismissed without prejudice on this basis. *See, e.g., Curcio v. Grossman,* No. 22 CV 1648 (VB), 2022 WL 767167, at \*7 (S.D.N.Y. Mar. 14, 2022) ("to the extent that Plaintiff asks this Court to intervene in [her pending state-court child-custody] ... proceeding, the Court also dismisses those claims under the *Younger* abstention doctrine"); *Walker,* 2020 WL 3503158, at \*4 (where the plaintiff challenged a temporary order in an ongoing child custody dispute, alleging that the temporary custody order was gained under "lies and false pretenses and therefore should be considered invalid," finding application of *Younger* abstention barred the plaintiff's federal claims for injunctive relief); *Herbert v. Cattaraugus Cnty.,* No. 17-CV-248S, 2017 WL 5300009, at \*4 (W.D.N.Y. Nov. 13, 2017) (applying *Younger* abstention to the plaintiff's claims arising from ongoing Family Court proceedings, and noting that "[s]everal courts in this Circuit have held that *Younger* abstention applies in similar circumstances").[3]

[3]  "The Supreme Court ... has not addressed whether *Younger* [abstention] applies to claims for monetary relief, ruling only that a stay rather than a dismissal of those claims would be appropriate," and "[t]he Second Circuit has reiterated that a stay may be appropriate but has not explicitly articulated whether a stay is made pursuant to *Younger* or some other equitable principle." *Torres,* 130 F. Supp. 3d at 636; *see also Bukowski v. Spinner,* 709 F. App'x 87, 88 (2d Cir. 2018) (finding *Younger* abstention applied only to Plaintiff's claims seeking declaratory or injunctive relief). At least one court has applied the *Younger* abstention doctrine to a claim for money damages in an ongoing child custody proceeding, in which it stayed claims for monetary relief and administratively closed the action, with leave to reopen at the conclusion of the underlying state proceedings. *See Torres,* 130 F. Supp. 3d at 637 ("The application of *Younger* is appropriate here because the resolution of the claims for monetary damages still places the Court in the awkward

position of having to question the validity of the underlying state proceedings, the sum and substance of Plaintiff['s] claims.").

Because the Court finds that Plaintiff's claims for monetary relief are also foreclosed by the domestic relations exception, it need not reach this issue. *See Walker*, 2020 WL 3503158, at *4 ("Although *Younger* does not bar Plaintiff's claims for monetary relief ... all of Plaintiff's claims seeking monetary relief are dismissed for a lack of subject matter jurisdiction under the domestic relations exception.").

**\*4** **[13]** **[14]** **[15]** **[16]** To the extent Plaintiff's claims are "aimed at changing the results of domestic proceedings, including orders of child custody," they are barred by the domestic relations exception to federal jurisdiction, which "divests the federal courts of power to issue divorce, alimony and child custody decrees." *Rabinowitz v. New York*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (citation omitted); *see also McArthur v. Bell*, 788 F. Supp. 706, 709 (E.D.N.Y. 1992) (where the plaintiff alleged violations of his constitutional rights and property damage, which were directly related to the child support determination, finding that domestic relations exception applied, because "to decide the instant case, this Court would be forced to re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings," which "is the role of the Appellate Division ... not the role of this Court"). As presently alleged, the majority of Plaintiff's allegations are aimed at changing the results of the state custody proceedings.[4] Accordingly, his claims for relief are also dismissed without prejudice on this basis.

[4]    "The *Rooker-Feldman* doctrine bars 'federal courts from exercising jurisdiction over claims brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " *Walker*, 2020 WL 3503158, at *3 (quoting *Sykes v. Mel S. Harris and Assoc. LLC*, 780 F.3d 70, 94 (2d Cir. 2015)). "[T]he *Rooker Feldman* doctrine has four requirements: (1) the plaintiff must have lost in state court; (2) the loss must have occurred before the district court proceedings commenced; (3) the plaintiff must complain of injuries caused by a state court judgment; and (4) the plaintiff must invite district court review and rejection of that

judgment." *Id.* (citing *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005)). To the extent Plaintiff seeks to overturn final custody orders that have already been issued by the court, any such claims would also be barred by the *Rooker-Feldman* doctrine.

### C. Plaintiff's Remaining Claims

Construed broadly, the amended complaint contains allegations that are not specifically aimed at changing the results of the state custody proceedings, but rather seek compensation for injuries Plaintiff alleges he sustained due to unconstitutional actions taken by Defendants during the removal of his children. Indeed, "[f]ederal courts do have jurisdiction to decide tort, contract or civil rights questions in cases arising out of a domestic relations context when the underlying domestic relations issues are not in dispute." *McArthur*, 788 F. Supp. at 708. For example, Plaintiff makes allegations relating to an unlawful entry into his home in violation of the Fourth Amendment, as well as allegations of libel and defamation against certain defendants. (*See, e.g.*, Dkt. 3 at 8, 10-11 (alleging that defendant Cooley entered his home without permission, and that defendant Greenlee removed his children without a warrant); *id.* at 7, 9 (alleging that defendant Degrave filed a petition containing false information, defendant Indivino published libel in emails and on the record before the court, and defendant Arcesi lied about Plaintiff's criminal history in a May 2020 petition)).

**[17]** **[18]** **[19]** Turning first to Plaintiff's unlawful entry claims, the Fourth Amendment requires that a state actor obtain a warrant, based on probable cause, before entering a residence and conducting a search. "Warrantless searches inside a home are presumptively unreasonable. However, police officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (citations, quotations, and alteration omitted). Although Plaintiff states, in conclusory fashion, that certain defendants entered his home without a warrant, he provides no facts supporting his allegations, such as when the alleged entry occurred or the circumstances surrounding the entry. Further, it is not clear from the amended complaint whether the state actors in this case searched or seized anything (other than his children) from Plaintiff's home.

**\*5** **[20]** **[21]** **[22]** "To state a claim for libel under New York law, a complaint must allege '(1) a false statement

that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm,' unless the statement is defamatory *per se*, in which case harm is presumed." *Goldman v. Reddington*, 417 F. Supp. 3d 163, 171 (E.D.N.Y. 2019) (citation omitted). "[U]nder New York law ... absolute immunity from liability for defamation exists for oral or written statements made ... in connection with a proceeding before a court." *Brown v. Maxwell*, 929 F.3d 41, 52 (2d Cir. 2019) (quotations and citations omitted). All the statements Plaintiff claims are libelous were made in connection with the child custody proceedings. Accordingly, as currently pleaded, Plaintiff's allegations fail to state a claim for libel.

 **[23]**  Plaintiff has also raised due process claims relating to the removal of his children. *See, e.g., Southerland v. City of New York*, 680 F.3d 127, 149 (2d Cir. 2012) (describing procedural due process claim, explaining that "[a]s a general rule ... before parents may be deprived of the care, custody, or management of their children without their consent, due process—ordinarily a court proceeding resulting in an order permitting removal—must be accorded to them" (quotations and citations omitted)); *see also id.* at 152 ("We have long recognized that parents have a constitutionally protected liberty interest in the care, custody and management of their children, and that the deprivation of this interest is actionable on a substantive due process theory." (quotations and citations omitted)). However, "because the law contemplates a careful balancing of interests, a parent's substantive constitutional rights are not infringed if a caseworker, in effecting a removal of a child from the parent's home, has a reasonable basis for thinking that a child is abused or neglected." *Id.*

Here, it is not entirely clear what process Plaintiff claims he was deprived. He has also failed to articulate why Defendants did not have a reasonable basis for removing his children from his home, but only that he believes the removal was improper. In other words, Plaintiff has not alleged that Defendants' conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," which is required to state a substantive due process claim. *Id.* at 151-52.

To the extent Plaintiff attempts to bring the above-mentioned claims, given Plaintiff's *pro se* status, the Court will grant him leave to file an amended complaint so that he may have the opportunity to better articulate them. Plaintiff must file his amended complaint within **45 days** of the date of

this Decision and Order. If Plaintiff fails to file an amended complaint within that time, the Clerk of Court is directed to dismiss this case without further Order of the Court.

Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint must include all allegations against each Defendant so that the amended complaint stands alone as the only complaint that Defendants must answer in this action.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to proceed *in forma pauperis* (Dkt. 2; Dkt. 4) is granted. Plaintiff's amended complaint has been screened in accordance with 28 U.S.C. § 1915(e)(2) and the Court concludes that it lacks subject matter jurisdiction over his claims relating to the state court child custody proceedings, and therefore they are dismissed without prejudice. Further, Plaintiff's claims against Judge Vazzana are dismissed based on judicial immunity. Given Plaintiff's *pro se* status, and as described above, the Court will grant him leave to file an amended complaint within **45 days** of the date of this Decision and Order. If Plaintiff fails to file an amended complaint by that date, the Clerk of Court is directed to dismiss this case without further Order of the Court.

 **\*6**  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Decision and Order would not be taken in good faith and, therefore leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Any request to proceed *in forma pauperis* on appeal should be directed to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

## All Citations

--- F.Supp.3d ----, 2022 WL 2062613

**Stumpf v. Maywalt, --- F.Supp.3d ---- (2022)**

2022 WL 2062613

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1120120
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
E.D. New York.

Jessica C. GRAHAM, Plaintiff,

v.

NY CENTER FOR INTERPERSONAL
DEVELOPMENT et al., Defendant.

No. 15–CV–00459 (PKC).
|
Signed March 12, 2015.

**Attorneys and Law Firms**

Jessica C. Graham, Staten Island, NY, pro se.

### *MEMORANDUM & ORDER*

PAMELA K. CHEN, District Judge.

 **\*1** On January 26, 2015, plaintiff Jessica C. Graham filed this *pro se* action alleging constitutional violations arising out of her ongoing family court proceedings. The Court liberally construes her complaint as one brought pursuant to 42 U.S.C. § 1983. Plaintiff's request to proceed *in forma pauperis* is granted solely for the purpose of this memorandum and order. Plaintiff's motion to appoint counsel is denied.

For the reasons set forth below, this action is dismissed for lack of subject matter jurisdiction. The Court also directs Plaintiff to show cause within 30 days why the Court should not issue an order barring her from filing any future frivolous actions without first obtaining leave of the Court. 28 U.S.C. § 1651. Finally, the Court denies plaintiff's March 6, 2015 request for leave to file electronically.

### BACKGROUND

This is the seventh action that plaintiff has brought in which she alleges a series of constitutional violations associated with underlying Richmond County Family Court proceedings. *See Graham v. Quirk,* 14 CV 5815 (E.D.N.Y. Dec. 8, 2014) (dismissing child custody-related claims and allowing claims for false arrest and excessive force to proceed); *Graham v.*

*Rawley,* 14 CV 6022 (E.D.N .Y. Oct. 27, 2014) (dismissing child custody-related claims and transferring remaining claims to the United States District Court for the District of New Jersey); *Graham v. Quirk,* 14 CV 6676 (E.D.N.Y. Dec. 22, 2014) (dismissing plaintiff's claims relating to the custody of her child for lack of subject matter jurisdiction); *Graham v. Distasio,* 14 CV 6677 (E.D.N.Y. Jan. 23, 2015) (dismissing amended complaint for failure to state a claim); *Graham v. Criminal Court of the City of N.Y. et al.,* 15 CV 337 (E.D.N.Y. Feb. 2, 2015) (dismissing all claims related to custody of Plaintiff's child for lack of subject matter jurisdiction and dismissing claims seeking injunctive relief related to pending state criminal proceedings on *Younger* abstention grounds); *Graham v. Family Court of the State of New York,* 15 CV 419 (E.D.N.Y. Feb. 25, 2015) (dismissing complaint for lack of subject matter jurisdiction).

In the instant complaint, plaintiff once again challenges the decisions of Family Court Judges which resulted in her loss of custody of her son. Plaintiff seeks this Court to: order Richmond County Family Court to "accommodate the Plaintiff .... so the Plaintiff can visit the child in a safe setting," sanction Richmond County Family Court, order the Federal Bureau of Investigation to conduct an investigation, and direct defendant to pay monetary damages. Compl. at pg. 9, ¶ IV.

### STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." An action is "frivolous" when either: (1) "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy"; or (2) "the claim is 'based on an indisputably meritless legal theory.' " *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (internal citation omitted).

 **\*2** Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 123 (2d Cir.2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955,

167 L.Ed.2d 929 (2007). It is axiomatic that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, and the Court is required to read the Plaintiff's *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–93 (2d Cir.2008).

A plaintiff seeking to bring a lawsuit in federal court must establish that the Court has subject matter jurisdiction over the action. *See, e.g., Rene v. Citibank NA,* 32 F.Supp.2d 539, 541–42 (E.D.N.Y.1999). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700–01 (2d Cir.2000) (citations omitted); *see* Fed.R.Civ.P. 12(h)(3).

## DISCUSSION

### I. *The Instant Action*

In order to maintain a § 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994) (citation omitted). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.*

### II. *Younger*

Federal courts ordinarily must abstain from exercising jurisdiction over constitutional claims seeking declaratory or injunctive relief when: 1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court. *Younger v. Harris,* 401 U.S. 37, 43–44 (1971); *Hansel v. Town Ct. for the Town of Springfield, N.Y.,* 56 F.3d 391, 393 (2d Cir.1995); *Koltun v. Berry,* 13 CV 1612, 2013 WL 3816603, at *5 (S.D.N.Y. July 19, 2013).

In *Sprint Commc'ns, Inc. v. Jacobs,* ––– U.S. ––––, –––– – ––––, 134 S.Ct. 584, 591–92, 187 L.Ed.2d 505 (2013), "the Supreme Court rejected this three-part test in favor of a categorical approach." *Mir v. Shah,* 569 Fed.App'x 48, 50 (2d Cir.2014). Instead, the Supreme Court held that

the *Younger* doctrine applies only to three classes of state court proceedings: 1) "state criminal prosecutions"; (2) "civil enforcement proceedings"; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* at 588 (internal quotation marks omitted); *see id.* at 591 ("We have not applied *Younger* outside these three 'exceptional' categories, and today hold ... that they define *Younger*'s scope.").

**\*3** Here, there is an ongoing child custody dispute, and "there can be no doubt that a custody dispute ... raises important state interests." *Reinhardt v. Com. of Mass. Dep't of Social Servs.,* 715 F.Supp. 1253, 1256 (S.D.N.Y.1989) (noting "questions of family relations, especially when issues of custody and abuse are involved, are traditionally an area of state concern") (citing *Moore v. Sims,* 442 U.S. 415, 435, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979)); *Rhee–Karn v. Burnett,* No. 13 Civ. 6132, 2014 WL 4494126, at *4 (S.D.N.Y. Sept.12, 2014) (citing *Younger* ). Moreover, plaintiff is able to raise any potential constitutional claims in the state court system. Therefore, plaintiff's claims for injunctive relief are barred by *Younger.* *See Morpurgo v. Incorporated Vill. of Sag Harbor,* 327 Fed. App'x 284, 285–86 (2d Cir.2009) (applying *Younger* to dismiss plaintiff's claims for injunctive and declaratory relief).

### III. *Proposed Filing Injunction*

As noted above, this is the seventh action that plaintiff has brought in which she alleges a series of constitutional violations associated with an underlying Richmond County Family Court custody dispute. Each of the prior complaints has been dismissed as frivolous and/or duplicative. The Court cannot continue to tolerate plaintiff's repeated filing of frivolous and baseless actions. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system); *see also Lau v. Meddaugh,* 229 F.3d 121, 123 (2d Cir.2000) ( "district courts have the power and the responsibility to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to [other parties] and an unnecessary burden on the courts and their supporting personnel" (internal quotation and citation marks omitted)); *Brown v. Moralles,* Nos. 14 CV 1382, 14 CV 2932 2014 WL 6610992, at *9 (E.D.N.Y. Nov.14, 2014) (issuing warning on potential filing injunction to litigant who had filed four actions against "largely the same defendants" "alleging largely the same claims"). Indeed, on

Graham v. N.Y. Center for Interpersonal Development, Not Reported in F.Supp.3d (2015)

2015 WL 1120120

February 2 and February 25, 2015, the Court similarly warned plaintiff about the consequences of engaging in such conduct. *See Graham v. Family Court of the State of New York,* 15 CV 419 (E.D.N.Y. Feb. 25, 2015) (warning plaintiff of possible filing injunction); *Graham v. Criminal Court of the City of N.Y. et al.,* 15 CV 337 (E.D.N.Y. Feb. 2, 2015) (same).

Accordingly, plaintiff is hereby directed to show cause, by written affirmation, within 30 days of the date of this memorandum and order, why the Court should not bar the acceptance for filing of any future frivolous complaints seeking *in forma pauperis* status, without leave of the Court. 28 U.S.C. § 1651. If plaintiff fails to show cause within the time allotted, she shall be barred from filing any future frivolous *in forma pauperis* complaint without leave of the Court. *See Hong Mai Sa,* 406 F.3d at 158; *see also Lau,* 229 F.3d at 123 (before imposing a filing injunction, the Court must first provide a litigant with notice and an opportunity to be heard); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ("the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard.").

 **\*4**  The Court denies plaintiff's March 6, 2015 request to submit documents electronically in this docket due to her history of filing numerous duplicative actions, all of which lack subject matter jurisdiction.

**CONCLUSION**

Accordingly, plaintiff's claims seeking injunctive relief are dismissed as barred by *Younger* and for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(h)(3); 28 U.S.C. § 1915(e)(2) (B). Plaintiff's remaining claims are dismissed as frivolous because they lack an arguable basis in law or fact. 28 U.S.C. § 1915(e)(2)(B). Plaintiff's request for leave to file electronically is also dismissed, and the Court denies her motion to appoint counsel.

The Court directs plaintiff to show cause, by written affirmation, within 30 days from the date of this memorandum and order, why she should not be barred from filing future complaints without leave of the Court. All further proceedings shall be stayed for 30 days or until plaintiff responds to this memorandum and order, whichever is earlier.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1120120

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 3503158
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha C. WALKER, Plaintiff,

v.

FAMILY COURT JUDGE CATHERINE
CHOLAKIS, et al., Defendants.

1:19-CV-1288 (LEK/CFH)
|
Signed 06/29/2020

**Attorneys and Law Firms**

Alisha C. Walker, Melrose, NY, pro se.

Denise P. Buckley, New York State Attorney General - Albany, Albany, NY, Mindy Ming-Huai Jeng, State of New York Unified Court System Office of Court Administration, New York, NY, for Defendant Family Court Judge Catherine Cholakis.

James P. Lagios, Rivkin Radler LLP, Albany, NY, for Defendant Joseph Drescher, Esq.

Matthew Foley, Esq., Troy, NY, pro se.

**MEMORANDUM-DECISION AND ORDER**

Lawrence E. Kahn, Senior U.S. District Judge

**I. INTRODUCTION**

 **\*1** This action concerns alleged violations of pro se plaintiff Alisha C. Walker's First, Fifth, and Fourteenth Amendment rights. Dkt. No. 1 ("Complaint"). Plaintiff asserts claims under 42 U.S.C. §§ 1983 and 1985 against the Honorable Catherine Cholakis, a judge of the Family Court of New York, Rensselaer County ("Judge Cholakis"), and attorneys Joseph Drescher ("Drescher") and Matthew Foley ("Foley") (collectively, "Defendants"). Compl. ¶1. Plaintiff seeks damages of at least $1,000,000 against Defendants individually and collectively. Id. ¶¶ 49–52.

Before the Court are three motions to dismiss made pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6): one filed by Foley, Dkt. Nos. 10 ("Foley Motion to Dismiss"); 10-1 ("Foley Memorandum"); 10-24 ("Foley Affidavit"); one filed by Drescher, Dkt. Nos. 13 ("Drescher Motion to Dismiss");

13-1 ("Drescher Memorandum"); and one filed by Judge Cholakis, Dkt. Nos. 15 ("Cholakis Motion to Dismiss"); 15-1 ("Cholakis Memorandum") (collectively, "Motions to Dismiss"). Plaintiff did not respond to any motion.

For the following reasons, the Court grants Defendants' Motions to Dismiss.

**II. BACKGROUND**

The Court draws all facts, which are assumed to be true, from the Complaint. Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012). Plaintiff's claims stem from a pending custody action in Rensselaer County Family Court ("Family Court"). Plaintiff commenced the action in Family Court on November 15, 2018, against the father of her children, Luke Walker ("Walker") (who is represented by Drescher in the state court proceeding). Id. ¶ 4. Foley was appointed as an attorney for A.W. and T.W. ("Plaintiff's children") by Judge Kehn. Id. ¶ 5. The case was later transferred to Judge Cholakis, who issued orders on May 31, 2019 and August 19, 2019, granting temporary custody of Plaintiff's children to Walker. Id. ¶11. In response to this temporary custody ruling, Plaintiff brought this action against Defendants on October 18, 2019. Id. ¶ 2.

**A. Plaintiff's Factual Allegations and Claims**

Plaintiff alleges that Drescher and Foley conspired with Judge Cholakis to deprive her and her children of their civil and constitutional rights. Compl. ¶¶ 46–47. Judge Cholakis violated her children's due process rights. Id. ¶¶ 42, 45. Foley discriminated against Plaintiff on the basis of her Buddhist religion by informing the court the Plaintiff believed in karma and thus would not provide medical attention to the children. Id. ¶ 17.

Moreover, in the course of the proceeding, Foley and Drescher made "false and misleading statements with no evidentiary support" and "belittled [Plaintiff's] character." Id. ¶¶ 30–31, 37. Drescher and Foley engaged in deceit, "character assassination and perjury." Id. ¶ 27.

Judge Cholakis demonstrated a lack of judicial competence, as she "made numerous improper pejorative and discriminatory statements," did not read the psychological reports verifying Plaintiff's parental fitness, "appeared not to know the case details," "unduly and unfairly relied on the spin and deceit and character assassination and perjury" made by

Drescher and Foley, and exhibited "personal animus and bias" against Plaintiff. Id. ¶¶ 13–41.

**\*2** The temporary custody orders are "suspect, gained under lies and false pretenses, and should therefore be considered invalid." Id. ¶ 40.

As a result of improper conduct by Defendants, Plaintiff has been injured and suffered harm, worry, anxiety, sleeplessness, and a loss of protected family and liberty rights. Id. ¶ 48. Defendants are liable to her in an amount no less than $1,000,000, separately and collectively. Id. ¶¶ 45–48.

The Court construes the following claims: (1) a Fourteenth Amendment equal protection claim under § 1983 on behalf of Plaintiff's minor children, against Drescher and Foley; (2) a Fourteenth Amendment due-process claim under § 1983 on behalf of Plaintiff's minor children, against Judge Cholakis; (3) a Fourteenth Amendment "equal protection" claim and due-process claim under § 1983 and § 1985 against Judge Cholakis, Drescher, and Foley; (4) defamation claims against Foley and Drescher; (5) a claim against Judge Cholakis based on her lack of judicial competence; and (6) a claim for declaratory relief, seeking a declaration that the temporary custody order imposed by Judge Cholakis is invalid.

### III. LEGAL STANDARD

"Pursuant to [Rule] 12(b)(1), a party may, prior to serving a responsive pleading, move to dismiss a complaint on the ground the Court lacks subject matter jurisdiction. When a federal court lacks the statutory or constitutional power to adjudicate a case, it must be dismissed irrespective of its merits." McCluskey v. Town of E. Hampton, No. 13-CV-1248, 2014 WL 3921363, at \*2 (E.D.N.Y. Aug. 7, 2014) (citing Makarova, 201 F.3d at 113). Thus, "[w]hen defendants move for dismissal on a number of grounds, the 'court should consider the Rule 12(b)(1) challenge first it must dismiss the complaint for lack of subject matter jurisdiction, and the accompanying defenses and objections become moot and do not need to be determined.' " Lipin v. National Union Fire Ins. Co. of Pittsburgh, Pa., 202 F. Supp. 2d 126, 132 (S.D.N.Y. 2002) (quoting Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990)). Plaintiff bears the burden of establishing the Court's subject matter jurisdiction by a preponderance of the evidence. Id.

The Court recognizes that pro se plaintiffs enjoy a more liberal pleading standard. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully

pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). "This is particularly so when the pro se plaintiff alleges that her civil rights have been violated." Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). But pro se plaintiffs must still "comport with the procedural and substantive rules of law." Javino v. Town of Brookhaven, No. 06-CV-1245, 2008 WL 656672, at \*3 (E.D.N.Y. Mar. 4, 2008). To survive a 12(b)(6) motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atl. Corp. v Twombly, 550 U.S. 544, 545 (2007).

### IV. DISCUSSION

**\*3** The Court grants the Defendants' Motion to Dismiss because there is a lack of subject matter jurisdiction, Plaintiff cannot assert claims on behalf of her minor children, and Defendants are protected by various forms of immunity.

#### A. The Court Lacks Subject Matter Jurisdiction

Drescher and Foley move to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction under the Rooker-Feldman doctrine and the Younger Abstention doctrine. Foley Mem. at 1, 9; Drescher Mem. at 8, 10. All Defendants move to dismiss for lack of subject matter jurisdiction under the Domestic Relations exception. Foley Mem. at 8; Drescher Mem. at 7; Cholakis Mem. at 5. The Court analyzes each doctrine in turn.

##### 1. Rooker-Feldman Doctrine

Defendants Foley and Drescher argue that Plaintiff's claims must be dismissed pursuant to the Rooker-Feldman doctrine. Foley Mem. at 1; Drescher Mem. at 8. This doctrine "pertains not to the validity of the suit but to the federal court's subject matter jurisdiction to hear it." Vossbrink v. Accredited HomeLenders, Inc., 773 F.3d 423, 427 (2d Cir. 2014). The Rooker-Feldman doctrine bars "federal courts from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " Sykes v Mel S. Harris and Assoc. LLC, 780 F3d 70, 94 (2d Cir. 2015) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).

Accordingly, the Rooker Feldman doctrine has four requirements: (1) the plaintiff must have lost in state court; (2) the loss must have occurred before the district court proceedings commenced; (3) the plaintiff must complain of injuries caused by a state court judgment; and (4) the plaintiff must invite district court review and rejection of that judgment. Hoblock v. Albany County. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005). The first and second requirements are "loosely termed" procedural, while the third and fourth requirements are substantive. Id.

The Rooker-Feldman doctrine does not bar jurisdiction in this action because the Plaintiff's claims do not meet the first requirement: Plaintiff did not lose in state court. The Rooker-Feldman doctrine does not apply when the state court had not entered a final custody order because the "outcome of the state action is unclear" and the "court proceedings never reached a final outcome that would be appealable in state court". Krowicki v. Sayemour, No. 16-CV-1186, 2016 WL 9227665, at *5 (N.D.N.Y. Oct. 5, 2016) (citing Green v. Mattingly, 585 F.3d 97, 102 (2d Cir. 2009), report and recommendation adopted by No. 16-CV-1186, 2017 WL 2804945 (N.D.N.Y. June 28, 2017)). Plaintiff commenced this action due to a loss in temporary custody of her children pursuant to a court order. Compl. ¶ 10. A final custody order to remove her children has not been issued. Id. ¶ 11. Given these circumstances, Plaintiff has not "lost" in state court. Green, 585 F.3d at 102. Therefore, the Court finds that Rooker-Feldman does not bar Plaintiff's claims.

### 2. Younger Abstention

Drescher and Foley argue that Plaintiff's claims are also barred by the doctrine of Younger abstention. Foley Mem. at 9; Drescher Mem. at 10. There is "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Comm. v Garden State Bar Ass'n, 457 US 423, 431 (1982). The Younger abstention doctrine "requires federal courts to abstain from exercising jurisdiction over claims that implicate ongoing state proceedings." Torres v. Gains, 130 F. Supp. 3d 630, 635 (D. Conn. 2015) (citing Younger v. Harris, 401 U.S. 37, 43–44 (1971)). "[Younger] abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional

claims." Morpurgo v Inc. Vil. of Sag Harbor, 327 F. Appx. 284, 285 (2d Cir. 2009) (quoting Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002)).

**\*4** The Court must abstain from exercising jurisdiction over the present case. This suit undoubtedly "raises important state interests," because the Plaintiff has challenged a temporary order in an ongoing child custody dispute. Graham v N.Y. Ctr. for Interpersonal Dev., No. 15-CV-459, 2015 WL 1120120, at *3 (E.D.N.Y. Mar. 12, 2015) (quoting Reinhardt v. Com. of Mass. Dep't of Social Servs., 715 F.Supp. 1253, 1256 (S.D.N.Y. 1989)). Additionally, "[Plaintiff] is able to raise any potential constitutional claims in the state court system." Graham, 2015 WL 1120120, at *3. [1] Plaintiff stated that the temporary custody order was gained under "lies and false pretenses and therefore should be considered invalid." Compl. ¶40. Thus, in addition to seeking monetary damages, Plaintiff is seeking declaratory relief. Younger abstention effectively bars a plaintiff's claims for declaratory relief. See Morpurgo, 327 F. Appx. at 285–86 (holding that Younger barred plaintiff's claims for injunctive and declaratory relief). Therefore, Plaintiff's claims for declaratory relief are barred by Younger.

[1]      The appropriate place for a party to appeal a final decision made in Rensselaer County Family Court is the Supreme Court of New York, Appellate Division, Third Department. Family Ct. Act § 1111.

Conversely, the Second Circuit "[has] held that abstention and dismissal are inappropriate when [monetary] damages are sought, even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for declaratory and injunctive relief." Kirschner v. Klemons, 225 F.3d 227, 238 (2d Cir. 2000). In Morpurgo, for instance, the Court abstained from exercising jurisdiction over the plaintiff's claims for injunctive relief pursuant to Younger but did not bar the plaintiff's claims for monetary relief. 327 Fed. App'x at 286. Likewise, Plaintiff's claims for monetary relief are not barred by Younger.

Pursuant to Younger abstention, the Court is barred from exercising subject matter jurisdiction over Plaintiff's claim for declaratory relief. Although Younger does not bar Plaintiff's claims for monetary relief, as discussed above, all of Plaintiff's claims seeking monetary relief are dismissed for a lack of subject matter jurisdiction under the domestic relations exception.

### 3. Domestic Relations Exception

Defendants argue that Plaintiff's claims are barred by the domestic relations exception. Foley Mem. at 8; Drescher Mem. at 7; Cholakis Mem. at 5. It is well-settled that federal courts generally do not have jurisdiction over domestic relations matters, which include divorce, child custody, child support, and alimony. Marshall v. Marshall, 547 U.S. 293, 294–295 (2006). This policy exception exists because the states have developed competence and expertise in adjudicating marital and custody disputes, a skill that the federal courts traditionally lack. See Thomas v. New York City, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Claims that: (1) attempt to "rewrit[e] a domestic dispute as a tort claim for monetary damages," Schottel v. Kutyba, No. 06-1577-CV, 2009 WL 230106, at *6 (2d Cir. Feb. 2, 2009); or (2) allege constitutional violations but whose injuries "stem directly from the disputed family court decision," Amato v. McGinty, No. 17-CV-593, 2017 WL 4083575, at *5 (N.D.N.Y. Sep. 15, 2017), will be barred under the domestic relations exception.

Here, Plaintiff's claims fail because they stem directly from a child custody decision. Plaintiff commenced a civil rights action and has alleged that the actions and decisions of Judge Cholakis, Foley, and Drescher were unconstitutional. Compl. ¶¶ 45–48. Although she is not directly seeking a rejection of state judgment in her request for relief, the "crux of the argument" arises out of the temporary custody order because the Court would need to "re-examine and reinterpret" the state court order and evidence surrounding the order to effectively address her constitutional claims. Amato, 2017 WL 4083575, at *5; see also Pappas v. Zimmerman, No. 13-CV-4883, 2014 WL 3890149, at *4 (E.D.N.Y. Aug. 6, 2014) (holding that the domestic relations exception barred the plaintiff's claims because she raised constitutional issues that invited the federal court to "re-examine and reinterpret" state court divorce proceedings).

 *5  In Amato, although plaintiffs alleged that the "order and processes" of the family court were unconstitutional, the domestic relations exception applied because plaintiff's injuries "stem[med] directly" from the disputed family court custody decision. 2017 WL 4083575, at *5. Likewise, Plaintiff's claims are barred under the domestic relations doctrine, because she invited the Court to re-examine and reinterpret a temporary custody order made in Family Court, and her injuries stem directly from this custody decision.

Additionally, to obtain a review of the state court decision, Plaintiff has rewritten a domestic dispute as a tort claim for monetary damages. This Court recently clarified that state courts are better suited to adjudicate tort claims that "begin and end in a domestic dispute." Dodd v. O'Sullivan, 19-CV-560, 2019 WL 2191749, at *4 (N.D.N.Y. May 21, 2019) (quoting Schottel, 2009 WL 23106, at *1), report and recommendation adopted by 519-CV-560, 2020 WL 204253 (N.D.N.Y. Jan. 14, 2020) (Kahn, J.). Therefore, pursuant to the domestic relations exception, the Court dismisses Plaintiff's claims for monetary relief for lack of subject matter jurisdiction.

### B. Plaintiff Cannot Assert Claims on Behalf of Her Minor Children

Defendants move to dismiss Plaintiff's claims made on behalf of her minor children. Foley Mem. at 8; Drescher Mem. at 9; Cholakis Mem. at 8. "Federal Rule of Civil Procedure 17(c)(1)(A) permits a guardian to bring suit on behalf of a minor." Hagans v Nassau County Dept. of Social Services, 18-CV-1917, 2020 WL 1550577, at *4 (E.D.N.Y. Mar. 31, 2020). However, it is well established that a pro se plaintiff lacks the authority to represent anyone other than herself in a court action, including her child. Cheung v. Youth Orchestra Found of Buffalo Inc., 906 F.2d 59, 61 (2d Cir. 1990); LeClair v. Vinson, 19-CV-28, 2019 WL 1300547, at *4 (N.D.N.Y. Mar. 21, 2019), report and recommendation adopted by 19-CV-28, 2019 WL 2723478 (N.D.N.Y. July 1, 2019). This restriction exists because "the choice to appear pro se is not a true choice for minors who under state law cannot determine their own legal actions." Cheung, 906 F.3d at 61 (citation omitted).

Plaintiff purports to represent her minor children in this action. Compl. ¶¶ 42, 45–48. Accordingly, Plaintiff's claims alleging constitutional violations of her children's rights should be dismissed.

### C. Defendants Are Entitled to Immunity

Defendants assert that Plaintiff's claims should be dismissed under 12(b)(6), because even if the case had proper subject matter jurisdiction, Plaintiff fails to state a claim upon which relief can be granted, as Defendants are protected by quasi-judicial immunity, absolute immunity, and sovereign immunity.

### 1. Quasi-Judicial Immunity

Foley argues that as an appointed attorney, his actions are protected by quasi-judicial immunity. Foley Mem. at 6. "Law guardians are entitled to quasi-judicial immunity for actions pertaining to their representation of a child in family court." Amato, 2017 WL 4083575, at *3. Quasi-judicial immunity is absolute and protects court-appointed guardians from civil liability. Lewittes v. Lobis, 4-CV-155, 2004 WL 1854082, at *11 (S.D.N.Y. Aug. 19, 2004) aff'd, 164 F. Appx. 97 (2d Cir. 2006). Foley was appointed by Judge Kehn to represent Plaintiff's children. Thus, Foley, who is being sued for conduct he engaged in when representing Plaintiff's children, is protected from suit under quasi-judicial immunity.

### 2. Absolute Immunity

**\*6** Drescher argues that he is entitled to absolute immunity from defamation claims for all statements made during the family court proceedings. Drescher Mem. at 11–12. Attorneys have absolute immunity from liability for defamation "when such words and writings [made during a court proceeding] are material and pertinent to the questions involved." Front, Inc. v. Khalil, 24 N.Y.3d 713, 718 (2015) (quoting Youmans v. Smith, 153 N.Y. 214, 265 (1897)). This immunity allows an attorney to "speak freely to zealously represent their clients without fear of harassment or financial hazard." Park Knoll Assoc. v. Schmidt, 59 N.Y.2d 205, 209 (1983). When there is an absolute privilege, the defendant has immunity from liability regardless of motive. Id.

Plaintiff alleges that Foley and Drescher conspired with Judge Cholakis to deprive her of her constitutional and civil rights. Compl. ¶ 10. Plaintiff further alleges that Drescher and Foley gave "false and misleading statements" to Judge Cholakis that were "full of innuendo and not backed up by any factual evidence." Id. ¶ 13. Plaintiff believes that Drescher's language was full of "deceit", "character assassination, and perjury." Id. ¶ 27. Given that there are no factual allegations to support any other claim on these facts,[2] the Court has construed Plaintiff's allegations against Drescher as a claim for defamation, for which Drescher has absolute immunity.[3]

---

[2]  Plaintiff alleges that Defendants acted in concert to deprive her of her constitutional and civil rights under § 1983 and § 1985. To state a claim under § 1983, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived them of that right acted under color of state law.' " Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005) (quoting Gomez v. Toledo, 446 U.S. 635, 640 (1980)). Private individuals who are not state actors (not acting under the color of state law) may be liable under § 1983 "if they have conspired with or engaged in joint activity with state actors." Storck v. Suffolk County Dept. of Social Services, 62 F. Supp. 2d 927, 940 (E.D.N. Y 1999). Allegations of conspiracy cannot be vague nor conclusory but must allege with "some degree of particularity" clear acts that defendants engaged in that were reasonably related to the alleged conspiracy. Id. Plaintiff did not allege any specific acts that Drescher and Foley engaged in that would indicate a conspiracy with Judge Cholakis. Therefore, the allegation should be dismissed under 12(b)(6) because Plaintiff fails to state a claim under § 1983 against Drescher and Foley. Similarly, to state a claim under § 1985, the plaintiff's claim must contain more than conclusory or vague allegations of conspiracy. Storck, 62 F. Supp. 2d at 940. Accordingly, Plaintiff's § 1985 claim should be dismissed under 12(b)(6) as well.

[3]  An individual can file an attorney misconduct complaint with the Third Judicial Department Attorney Grievance Committee in Albany, NY. New York State Unified Court System, Judicial Conduct, Attorneys, *Grievance Complaints*, http://ww2.nycourts.gov/attorneys/grievance/complaints.shtml (last visited June 26, 2020).

### 3. Sovereign Immunity

Judge Cholakis argues that all claims against her are barred by judicial immunity and Eleventh Amendment sovereign immunity. Cholakis Mem. at 2–5. Judicial immunity protects conduct "taken as part of all judicial acts except those performed in the clear absence of jurisdiction." LeClair, 2019 WL 1300547, at *7; see also Stump v. Sparkman, 435 U.S. 349, 356–57 (1978). When determining the limits of judicial action, the judge's jurisdictional scope must be construed broadly. LeClair, 2019 WL 1300547, at *7. This immunity is designed to benefit the public, so that the judge may

exercise her functions with "independence and without fear of consequences." Id. Further, the Eleventh Amendment bars a plaintiff from bringing suit in federal court against a state, its agencies, or officials unless the state consents to the suit or there is a statutory waiver of immunity. Pennhurst State Sch. & Hosp. v. Halderman, 465, U.S. 89, 99–101 (1984).

**\*7** Judge Cholakis has absolute judicial immunity for all judicial actions that occurred within her judicial capacity. Accepting Plaintiff's allegations as true, all of Judge Cholakis's actions occurred while she was working within her judicial capacity to determine the proper custody for Plaintiff's children. Plaintiff alleges that Judge Cholakis demonstrated a lack of judicial competence and exhibited "personal animus and bias" against her. Id. ¶¶ 13–41. However, "[t]his immunity applies even when the judge is accused of acting maliciously and corruptly." Amato, 2017 WL 4083575, at *3 (quoting Pierson v. Ray, 386 U.S. 547, 554 (1967)). Accordingly, Judge Cholakis is entitled to judicial immunity.

Judge Cholakis is also protected under sovereign immunity. In Gollomp v. Spitzer, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a § 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365–68 (2d Cir. 2009). Likewise, Plaintiff has filed her complaint against Judge Cholakis, a member of the Rensselaer County Family Court, which is part of the New York Unified Court System. Compl. ¶3; N.Y. Const. Art. VI, §§ 1, 13. All of Judge Cholakis's alleged constitutional violations occurred while she acted within her official capacity as a Family Court judge in adjudicating a custody dispute. Therefore, all claims against Judge Cholakis should be dismissed, because "a suit against a state official in [her] official capacity is, in effect, a suit against the state itself, which is barred." Berman Enterprises, Inc. v Jorling, 3

F.3d 602, 606 (2d Cir. 1993) (citing Hafer v. Melo, 502 U.S. 21, 21 (1991)). [4]

[4]    A complaint regarding a judge's religious discrimination or bias may be filed with the USC Managing Inspector General for Bias Matters. New York State Unified Court System, *Judicial Conduct*, https://nycourts.gov/ip/judicialconduct/index.shtml (last visited June 26, 2020). Similarly, if a party believes that a judge violated the Rules of Judicial Conduct, a complaint can be filed against the judge with the New York State Commission of Judicial Conduct. Id.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Foley's Motion to Dismiss (Dkt. No. 10), Drescher's Motion to Dismiss (Dkt. No. 13), and Cholakis's Motion to Dismiss (Dkt. No. 15) are **GRANTED**. Plaintiff's claims against Foley, Drescher, and Judge Cholakis are **DISMISSED** with prejudice, and without leave to amend; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this action; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2020 WL 3503158

2014 WL 4494126
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Maggie RHEE–KARN, individually and as the parent
and natural guardian on behalf of Sarah Karn, Plaintiffs,
v.
Marva A. BURNETT, as a state actor referee; Edwina
Richardson–Mendelson, as a state actor Administrative
Judge for the New York City Family Court; Rosemary
Rivieccio; Stephanie Brandt; A. Gail Prudenti, as
Chief Administrative Judge of the Courts; Office of
Court Administration; and DOES 1–3, Defendants.

No. 13 Civ. 6132(JPO).
|
Signed Sept. 12, 2014.

*OPINION AND ORDER*

J. PAUL OETKEN, District Judge.

**\*1** Maggie Rhee–Karn ("Rhee–Karn"), individually and on
behalf of her daughter, Sarah Karn ("Sarah"), brings this
action pursuant to 42 U.S.C. § 1983 against the New York
State Office of Court Administration ("OCA") and several
individuals involved in a child custody dispute in New York
County Family Court. Plaintiffs claim that Defendants have
violated and continue to violate their constitutional rights
under the First and Fourteenth Amendments by prolonging
the proceedings for more than four years and conspiring
to deprive Rhee–Karn of custody of her daughter without
due process. Defendants have moved to dismiss pursuant
to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).
Plaintiffs have not plausibly alleged that they lack an adequate
opportunity for vindication of their rights in state court or
that special circumstances warrant intervention. Defendants'
motions to dismiss are therefore granted.

**I. Background**

**A. Factual Background**
Unless otherwise noted, the following facts are alleged in the
Second Amended Complaint (Dkt. No. 33 ("Am.Compl.")),
and are assumed true for purposes of the instant motions.

On April 23, 2010, Rhee–Karn initiated an action in the
New York County Family Court to gain full custody of
her daughter, Sarah. On November 17, 2010, Sarah's father,
Ken Karn ("Ken"), asked the court to divide custody evenly
between himself and Rhee–Karn. The court granted his
request. At the time, Rhee–Karn had primary custody of
Sarah.

On August 19, 2011, the referee in the proceedings, Marva
A. Burnett, held a hearing on the order. After receiving
testimony from Ken, she decided: "I have not heard enough
that makes me think ... that I have to change this." (Dkt. No.
33 ("Am.Compl.") ¶ 25.) Immediately thereafter, the attorney
for Sarah, Rosemary Rivieccio, stated: "I am concerned at this
juncture there is information that Ms. Karn may relocate to
yet a third apartment in a very short period of time." (*Id.* ¶ 26.)
Based upon this statement—and without hearing testimony
from Rhee–Karn—Burnett reversed her prior determination
and said that "there is enough concern over the history of
this case and what I have heard to make me believe that
I need to change the access schedule"; "err[ing] on the
side of caution," she modified Rhee–Karn's custody to day
visits only on alternating weekends and every Wednesday.
(*Id.* ¶ 30.) Burnett then ordered an investigation by the
Administration for Child Services ("ACS") and adjourned
the hearing until October. In September 2011, ACS reported
that Sarah preferred living with her mother and that no issues
existed between the two. Notwithstanding this report, Burnett
refused to continue the hearing and did not allow Rhee–Karn
to testify or cross-examine Ken.

In late 2011, Rhee–Karn appealed Burnett's August 2011
order to the First Department of the New York Supreme
Court's Appellate Division. The court dismissed the appeal
on March 20, 2012 on the grounds that the order was non-
final and thus not appealable as of right, and that neither the
Family Court nor the First Department had given Rhee–Karn
permission to appeal. *Matter of Rhee–Karn v. Karn,* 2012
N.Y. Slip Op. 02045 (1st Dep't Mar. 20, 2012).

**\*2** On January 9, 2012, Rhee–Karn moved to consolidate the
custody action with her divorce action in New York Supreme
Court, arguing that matters would proceed more quickly in
that forum. The court denied her motion, finding that she
was at fault for the delay in Family Court because she had
requested a forensic evaluation in February or March of 2011,
which had not been completed until August 2011. The court
also expressed concern that her "true motivation in seeking

consolidation [was] to change the forum." (Dkt. No. 25, Ex. B.)

Over the course of the next year, Burnett issued several *ex parte* orders further restricting Rhee-Karn's access to Sarah. In December 2012, Plaintiffs initiated an action in the Southern District of New York substantially identical to the instant action. 12–CV–9354 (NRB). They voluntarily dismissed that action on February 5, 2013. (Dkt. No. 25, Ex. C.)

On January 15, 2013, based upon forensic evidence and the testimony of court-appointed psychiatrist Stephanie Brandt, Burnett continued an order limiting Rhee-Karn to supervised visitation. Brandt's report was "incompetent," "deficient," "inconsistent with the facts and the best interests of the child, biased against [Rhee–Karn] and based upon hearsay and fictions." Brandt was also influenced by a preexisting work and personal relationship with Riviecco and Ken's counsel, Cheryl Solomon. (Am.Compl.¶ 171.)

On February 14, 2013, Rhee–Karn filed a motion with the First Department seeking leave to appeal the January 2013 order. The court summarily denied the motion on May 28, 2013. (*Id.,* Ex. D.) This order and the March 20, 2012 order are allegedly "suspect and tainted" because Riviecco did not disclose that she was a member of the Departmental Advisory Committee for the First Department. (*Id.* ¶ 72.)

In a letter dated February 18, 2013, Rhee–Karn, proceeding *pro se,* complained about Burnett's actions to Edwina Richardson–Mendelson, Administrative Judge for the New York County Family Court, and Robert Mulroy, Deputy Chief Judge of the Family Court Magistrates. In her letter, she asserted that she would re-file her suit in federal court if they did not address her case. (*Id.,* Ex. C.) She did not receive a response.

On May 15, 2013, Rhee–Karn called Richardson–Mendelson's office to ask why she had not received a response to her February letter. She was told by an agent that a response "would not be appropriate" since Rhee–Karn had threatened to take legal action. (*Id.* ¶ 104.) On July 9, 2013, Rhee–Karn, through counsel, wrote another letter to Richardson–Mendelson (as well as Burnett), again complaining of the delay and requesting immediate and consecutive trial dates. On July 11, 2013, she wrote a final letter—apparently without counsel—to Douglas Hoffman, Supervising Judge of the

Family Court, requesting that he review her case. [1] In both instances, she received no response.

[1]     The Amended Complaint erroneously lists the dates of these letters as June and omits any mention of Hoffman. (Am.Compl.¶¶ 45–46.)

Since then, Riviecco "refuses to move the case to an immediate trial, refuses to agree to trial dates[,] and claims her schedule does not permit dates offered by the court," and Burnett "refuse[s] to supervise and control the case in a timely manner, and refuse[s] to schedule trial dates to expeditiously end this custody case[.]" (*Id.* ¶¶ 112–13.) Brandt and Riviecco have also charged substantial fees and "maliciously inflated those fees knowing ... Burnett will support excessive fees," totaling more than $45,000. (*Id.* ¶ 120, Ex. G.) Burnett has a preexisting arrangement to appoint Riviecco and Brandt, as is evidenced by their role together in over twenty-five cases this year, and appointed Riviecco without first consulting Sarah's parents or inquiring into Rhee-Karn's ability to pay. Riviecco also does not consult with Sarah or advocate her position, and she repeatedly fails to appear in court.

**B. Procedural Background**

**\*3** Plaintiffs initiated this action on August 30, 2013. (Dkt. No. 1 .) They filed an amended complaint on November 25, 2013, adding a request for preliminary injunctive relief. (Dkt. No. 12.) Defendants are the OCA; Burnett; Richardson–Mendelson; A. Gail Prudenti, the Chief Administrative Judge of the Courts and supervisor of Richardson–Mendelson; Does 1–3, policymaking officials working with OCA, Richardson–Mendelson, and Prudenti (collectively, the "State Defendants"); as well as Riviecco and Brandt. The individual defendants are sued in their official and personal capacities.

Defendants moved to dismiss on February 14 and 18, 2014. (Dkt. Nos. 23, 26 & 29.) On February 28, the Court held oral argument on the preliminary injunction motion. That same day, before the hearing, Plaintiffs filed their Second Amended Complaint. (Am.Compl .) Defendants have opted to rely upon their initial motions to dismiss. Following several extensions, Plaintiffs submitted their opposition memoranda on April 14. (Dkt. Nos. 50, 51 & 53.) Defendants replied on May 6. (Dkt. Nos. 57, 58 & 59.)

The Second Amended Complaint asserts claims under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments (Counts I & II), legal malpractice as to

Rivieccio (Count III), disgorgement of fees as to Rivieccio and Brandt (Count IV), and "declaratory and injunctive relief" (Count V). Plaintiffs seek a number of declarations regarding the constitutionality of Defendants' practices; an injunction against the continuation of such practices; "an order to bring Plaintiff Sarah before this court to be heard"; compensatory and punitive damages from Rivieccio and Brandt; interest, attorney's fees, and costs; and such other relief as may be just and proper. Plaintiffs do not seek monetary relief from the State Defendants.

## II. Discussion

### A. Legal Standard

On a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility if the well-pleaded factual allegations of the complaint, presumed true, permit the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Hagan v. City of New York,* 13–CV–1108 (JPO), 2014 WL 4058067, *6 (S.D.N.Y. Aug. 15, 2014) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. In contrast to a motion to dismiss under Rule 12(b)(1), a Rule 12(b)(6) motion must be resolved by looking only to the complaint; documents that are attached as exhibits to, incorporated by reference, or integral to the complaint; and matters of which judicial notice may be taken. *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir.1993).

*4 Federal courts ordinarily must abstain from exercising jurisdiction over constitutional claims seeking declaratory or injunctive relief when (i) there is an ongoing state proceeding (ii) involving an important state interest and (iii) the plaintiff has an adequate opportunity for judicial review of her constitutional claims in state court during or after the proceeding. *Christ the King Regional High Sch. v. Culvert,* 815 F.2d 219, 224 (2d Cir.1987) (citing *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.,* 477 U.S. 619 (1986) (relying upon *Younger v. Harris,* 401 U.S. 37, 49, 54 (1971))). This doctrine, known as *Younger* abstention, is based upon notions of comity and federalism and recognizes that state courts are presumptively capable of vindicating federal constitutional rights. *Diamond "D" Const. Corp. v. McGowan,* 282 F.3d 191, 198 (2d Cir.2002) (citations omitted). Where the *Younger* factors are implicated, the court

is required to abstain unless the presumption is unwarranted because of "bad faith, harassment or any other unusual circumstance that would call for equitable relief." *Id.* at 198 (quoting *Younger,* 401 U.S. at 54).

## B. Application

### 1. *Younger* Factors

Plaintiffs do not dispute that the first two *Younger* factors are satisfied in this case. There is an ongoing family court proceeding, and "there can be no doubt that a custody dispute ... raises important state interests." *Reinhardt v. Com. of Mass. Dep't of Social Servs.,* 715 F.Supp. 1253, 1256 (S.D.N.Y.1989) (citing *Moore v. Sims,* 442 U.S. 415, 435 (1979)); *see also Awan v. Kramer,* 2012 WL 5426088, *3 (E.D.N.Y.2012); *People United for Children, Inc. v. City of New York,* 108 F.Supp.2d 275, 289–90 (S.D.N.Y.1990). This leaves only the question whether Plaintiffs have an adequate opportunity for judicial review of their claims during or after the Family Court proceedings.

As an initial matter, Plaintiffs are fully capable of raising their constitutional due process claims in Family Court. *See, e.g ., Thomas v. New York City,* 814 F.Supp. 1139, 1149 (E.D.N.Y.1993). "Clearly, the Family Court ... is bound by the Federal Constitution. Thus notions of comity and federalism compel the assumption that the Family Court is competent to hear and thoughtfully consider the [plaintiffs'] constitutional challenges." *Reinhardt,* 715 F.Supp. at 1257.

To the extent that Plaintiffs "argue[ ] that [they] cannot obtain relief under the same procedures [they] [are] now attacking as unconstitutional," their "response misunderstands the appropriate inquiry." *Kaufman v. Kaye,* 466 F.3d 83, 87 (2d Cir.2006). This Court "need ask only 'whether the state's procedural remedies *could* provide the relief sought[,] not whether the state *will* provide the constitutional ruling which the plaintiff[s] seek[ ]." *Id.* (quoting *Spargo v. N.Y. State Comm'n on Judicial Conduct,* 351 F.3d 65, 79 (2d Cir.2003)). "Without question, the [Family Court] can consider the constitutional questions [Plaintiffs] raise[ ] and order relief if [it] deems them to have merit." *Id.* Put differently, since Plaintiffs can assert their claims in Family Court, and *Younger* presumes that forum capable of vindicating federal constitutional rights, they have an adequate opportunity for judicial review of their claims. *See, e.g., Glatzer v. Barone,* 394 Fed. App'x 763, 765 (2d Cir.2010) ("Nothing in the Appellate Division's order suggests that, as a procedural matter, that court was *incapable* of providing

the constitutional relief that Glatzer sought[.]") (emphasis added); *Doe v. State of Conn., Dep't of Health Servs.,* 75 F.3d 81, 85 (2d Cir.1996) ("Doe provides no evidence that the Medical Examining Board has prevented (or will prevent) him *from raising* his federal concerns in the hearing before it.") (emphasis added). Plaintiffs' allegations of bias or undue delay inform not the adequacy of the forum, but whether, under the circumstances, an exception to *Younger's* presumption should be made.

**\*5** Plaintiffs also have an adequate opportunity for judicial review of their claims in state court because they are capable of appealing the decisions of the Family Court. *See, e.g., Spargo,* 351 F.3d at 79; *Doe,* 75 F.3d at 85. "[A] necessary concomitant of *Younger* is that a party ... must exhaust his state appellate remedies before seeking relief in the District Court." *Huffman v.. Pursue, Ltd.,* 420 U.S. 592, 608 (1975). While Plaintiffs contend that Family Court Act § 1112 prohibits appeals of non-final custody and visitation orders, their interpretation is belied by their own allegations and exhibits. Rhee–Karn's appeal of the August 2011 order was dismissed not because § 1112 categorically precludes appeal of such orders, but rather because she failed to first seek leave to appeal from the Family Court or the First Department. Indeed, Rhee–Karn understood as much when she properly sought leave to appeal the January 2013 order. Plaintiffs were also able to appeal the First Department's denial of their motion seeking leave to appeal to the New York Court of Appeals. N.Y. CPLR § 5602. Since Plaintiffs failed to exhaust their appellate remedies, their claims in federal court are presumptively barred by *Younger. See Kaufman,* 466 F.3d at 87–88.

Finally, Plaintiffs could have initiated Article 78 proceedings challenging "whether a determination was made in violation of lawful procedure." N.Y. CPLR § 7803(3). An Article 78 petition is the proper vehicle for challenging state actions taken in violation of the Federal Constitution. *See, e.g., Dorsett–Felicelli, Inc. v. Cnty. of Clinton,* 349 F.Supp.2d 355, 363 (N.D.N.Y.2004); *Martinez v. Scoppetta,* 96–CV–7580 (LAK), 1997 WL 316714, \*5 (S.D .N.Y. June 10, 1997) ("Moreover, if the Family Court proceedings are being conducted in a manner which violates federal law ... plaintiffs[ ] may challenge these determinations under Section 7803(3).").

Plaintiffs argue that they are foreclosed from initiating Article 78 proceedings based upon an order issued in another, unrelated Article 78 proceeding. On March 6, 2013, Gary

Seckendorf, the father in another custody proceeding over which Burnett was presiding, filed an Article 78 petition asking the Supreme Court to compel Burnett to hear motions in his case, including one that had been outstanding for over a year and a half. (Am.Compl.Ex.A.) Two days later, Justice Joan B. Lobis issued an order declining to sign the petition because there was "[n]o basis for application to this court at this time" and "[r]ecourse [was] to the Family Court Administrative Judge." (*Id.*) Plaintiffs contend that this order forecloses their ability to file their own Article 78 petition. This argument fails for two reasons. First, in order to exhaust their remedies in state court, Plaintiffs must actually petition the reviewing court for relief; they cannot simply decline to petition for relief because it is unlikely—based upon an order in a similar case-that relief will be granted. *See Kaufman,* 466 F.3d at 87. Second, Justice Lobis did not forever bar Family Court litigants from bringing Article 78 proceedings; rather, she expressly stated that there was no basis for Seckendorf's "application to this court at *this* time" and that he should first appeal to the Family Court Administrative Judge. (Am. Compl., Ex. A. (emphasis added).) A reasonable interpretation of the order is that recourse would be to the Article 78 judge if the Administrative Judge was unwilling or unable to address his claims. *Younger's* presumption that state courts will uphold federal constitutional rights compels this interpretation. Because Plaintiffs had (and may still have) [2] the option of bringing Article 78 proceedings, they have an adequate opportunity to vindicate their claims in state court. *See Cecos Int'l, Inc. v. Jorling,* 895 F.2d 66, 70–71 (2d Cir.1990) (availability of Article 78 proceeding means court "cannot assume that New York's procedures are inadequate to provide plaintiff a forum to review its constitutional claims") (citation omitted); *Reinhardt,* 715 F.Supp. at 1256 (holding Article 78 proceeding to challenge family court's *ex parte* interim order suspending visitation is adequate opportunity under *Younger* ).

[2]   The Court expresses no opinion as to whether any of Plaintiffs' claims are time-barred under the statute of limitations for bringing an Article 78 petition. The answer to that question does not alter the analysis. *See, e.g., Martinez,* 1996 WL 316714, \*5 n. 12; *Reinhardt,* 715 F.Supp. at 1258.

### 2. Exceptions to *Younger*

**\*6** Although *Younger* presumptively requires abstention, this Court may nevertheless intervene if Plaintiffs can demonstrate either (i) bad faith or harassment, or (ii) unusual or extraordinary circumstances warranting equitable relief.

*Diamond "D,"* 282 F .3d at 198 (citing *Younger,* 401 U.S. at 54). Plaintiffs contend that both exceptions are applicable.

To invoke the former, Plaintiffs must show that the party bringing the state action had "no reasonable expectation of obtaining a favorable outcome." *Cullen v. Fliegner,* 18 F.3d 96, 103 (2d Cir.1994). This exception does not apply where the plaintiff was the party that initiated the underlying state court proceedings. *See Glatzer,* 394 Fed. App'x at 765; *Lerner v. Drager,* 10–CV–7928 (RJH), 2011 WL 1682348, *4 (S.D.N.Y. Apr. 18, 2011). Since Rhee–Karn initiated the custody proceedings, she cannot claim bad faith or harassment.

The unusual or extraordinary circumstances exception recognizes that "[t]here may ... be extraordinary circumstances in which the necessary irreparable injury [warranting equitable intervention] can be shown even in the absence of the usual prerequisites of bad faith and harassment." *Younger,* 401 U.S. at 53. "The very nature of 'extraordinary circumstances,' of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of great, immediate, and irreparable injury as to warrant intervention." *Kugler v. Helfant,* 421 U.S. 117, 124 (1975). However, the Second Circuit has identified "two predicates for application of this exception: (1) that there be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; *and* (2) that a finding be made that the litigant will suffer 'great and immediate' harm if the federal court does not intervene." *Diamond "D,"* 282 F.3d at 201 (citing *Kluger; Trainor v. Hernandez,* 431 U.S. 434, 441–42 & n. 7 (1977)). Neither predicate is satisfied here.

First, as noted above, Plaintiffs could have initiated (and might still initiate) Article 78 proceedings challenging the Family Court's process. Absent a showing that they have *actually* sought and been denied such relief, Plaintiffs have not plausibly alleged that there exists no state remedy to meaningfully, timely, and adequately remedy the alleged constitutional violations. *See, e.g ., Diamond "D,"* 282 F.3d at 202 (extraordinary circumstances not present where "to the extent that DOL was dragging its feet, Diamond D was free to file a mandamus proceeding in the Appellate Division to compel the DOL to provide expeditious post-deprivation review"). Nor would it be proper under *Younger* for this Court to infer that such relief is unavailable, either based upon Plaintiffs' strained reading of Justice Lobis's order or the possibility that their claims are time-barred. Assuming

that Plaintiffs' rights have been violated, giving New York " 'the first opportunity ... to correct [its] own mistakes' when there is an ongoing state proceeding serves the vital purpose of 'reaffirm[ing] the competence of the state courts,' and acknowledging the dignity of states as co-equal sovereigns in our federal system.' " *Spargo,* 351 F.3d at 75 (quoting *Diamond "D,"* 282 F.3d at 200).

**\*7** Second, as the Court noted during oral argument, it is difficult to see how Plaintiffs will suffer irreparable harm— that there will be more time during which they are wrongfully kept apart—if the custody proceedings come to a close and a final order is issued from which Plaintiffs may appeal as of right. Plaintiffs' counsel acknowledged that hearing dates had been set, but asserted that they are so sporadic that a decision will not be reached in a timely manner. Given the extremely protracted nature of the proceedings, that may well be true. But Plaintiffs have not plausibly alleged that they will be greatly and immediately harmed if *this* Court does not intervene, since it is unclear whether the state court cannot or will not offer them the relief they seek.

The Court is mindful of the seriousness of Plaintiffs' allegations, particularly given the Appellate Division's findings regarding Burnett and the documented issues involving the New York Family Court system. *See In re Rodger W., II v. Samantha S.,* 945 N.Y.S.2d 90 (1st Dep't 2012); *Patricia C. v. Bruce L.,* 848 N .Y.S.2d 102 (1st Dep't 2007); *Report to the Chief Judge of the State of New York,* located at www.courts.state.ny/reports/matrimonialcommission.pdf. However, it must also give due consideration to the State of New York and its authority over family law matters. Absent circumstances indicating that New York state courts are unwilling or unable to protect Plaintiffs' federal constitutional rights, abstention is mandated. [3]

---

[3]     The parties dispute at length whether the Court lacks jurisdiction in the first place because of the domestic relations exception, which "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards,* 504 U.S. 689, 703 (1992). In light of the Court's *Younger* analysis, it is not necessary to reach this issue. *See Spargo,* 351 F.3d at 74. The Court likewise does not reach Defendants' alternative grounds for dismissal.

**B. State Law Claims Against Rivieccio and Brandt**

2014 WL 4494126

The Court declines to exercise supplemental jurisdiction over the state law claims for legal malpractice and disgorgement. *See, e.g ., Betts v. Shearman,* 12–CV–3195 (JPO), 2013 WL 311124, \*16 (S.D.N.Y. Jan. 24, 2013) (declining to exercise supplemental jurisdiction over related state law claims after dismissing 42 U.S.C. § 1983 claims) (citing 28 U.S.C. § 1367(c)).

### III. Conclusion

For the foregoing reasons, Defendants' motions to dismiss are hereby GRANTED and Plaintiffs' request for preliminary injunctive relief is DENIED.

The Clerk of Court is directed to close the motions at docket numbers 23, 26, and 29 and to close this case.

SO ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2014 WL 4494126

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 5823116
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Edwin FERNANDEZ, Plaintiff,
v.
Vicky TURETSKY, et al., Defendants.

No. 12–cv–4092 (SLT)(MDG).
|
Signed Nov. 5, 2014.
|
Filed Nov. 7, 2014.

**Attorneys and Law Firms**

Edwin Fernandez, Staten Island, NY, pro se.

Kathleen Anne Mahoney, United States Attorneys Office, Elizabeth A. Forman, Attorney General of the State of New York, Gloria Mihee Yi, NYC Law Department, Omar Hani Tuffaha, New York City Law Department Office of the Corporation Counsel, New York, NY, for Defendants.

**MEMORANDUM & ORDER**

TOWNES, District Judge.

**\*1** Plaintiff Edwin Fernandez, proceeding *pro se,* alleges that his constitutional right to due process was violated by (1) federal defendants: Vicki Turetsky and Joyce A. Thomas, respectively, the Commissioner and Regional Administrator of the U.S. Department of Health and Human Services, Office of Child Support Enforcement; (2) state defendants: Thomas H. Mattox and C. Duncan Kerr, respectively, the Commissioner and Deputy Tax Commissioner of the New York State Department of Taxation and Finance, Office of Child Support Enforcement; and three Tax Compliance Agents employed by the New York State Department of Taxation and Finance, Child Support Enforcement Section– Patty Whitford, Georgia Brown, and Margaret Ramsay; and (3) a municipal defendant: Robert Doar, a former Commissioner of the New York City Human Resources Administration. Plaintiff alleges that his vehicles and funds were seized, wages garnished, and tax refunds intercepted in order to collect child support arrears even though "Plaintiff was in compliance paying child support arrears." [Dkt. 4,

Amd. Compl. ¶ 26.] This action was reassigned to this Court on March 18, 2014, after Judge Mauskopf entered a recusal order on March 17, 2014. Currently before the Court is state defendants' ("Defendants") motion to dismiss for, *inter alia,* lack of subject matter jurisdiction. [1]

[1]     Defendants also seeks to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff's claims are time-barred. This Court need not reach the issue because it lacks subject matter jurisdiction over the case.

**Legal Standard**

Defendants move to dismiss on the grounds that this Court lacks subject matter jurisdiction. *Remy v. New York State Dep't of Taxation & Fin.,* 507 F. App'x 16, 18 (2d Cir.2013) ("A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction.") (quoting *Moccio v. N.Y. State Office of Court Admin.,* 95 F.3d 195, 198 (2d Cir.1996)). "A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.' " *Sobel v. Prudenti,* 12 CV 3258 DRH WDW, 2014 WL 2750364, at \*10 (E.D.N.Y. June 18, 2014) (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)). Unlike on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." ' *Mac Pherson v. State St. Bank & Trust Co.,* 452 F.Supp.2d 133, 136 (E.D.N.Y.2006) *aff'd,* 273 F. App'x 61 (2008) (quoting *Makarova,* 201 F.3d at 113). In resolving a motion to dismiss under Rule 12(b)(1), the Court is not limited to the face of the complaint, but may also consider evidence such as affidavits submitted by the parties. *Robinson v. Government of Malaysia,* 269 F.3d 133, 141 (2d Cir.2001).

**Factual History**

According to the factual recitation in the May 13, 2008 Decision and Order of the Honorable Francois A. Rivera, Justice of the Supreme Court of the State of New York, Kings County dismissing Plaintiff's CPLR Article 78 petition, Plaintiff's obligation to pay child support to his ex-wife, custodial parent of their child, arises out of a June 7, 1990 divorce decree. After Plaintiff did not comply with his child support obligations, in June 1999, his ex-wife requested that

the New York City Support Collection Unit assist her in enforcing Plaintiff's support obligations. Justice Rivera's May 13, 2008 Order finds that although the child support order was terminated *nunc pro tunc* to January 9, 2007, the day that the subject child turned 21 Plaintiff still owed outstanding support arrears. Subsequently, a Supreme Court of the State of New York, Kings County Family Court Support Magistrate, at an October 23, 2007 hearing, set Plaintiff's child support arrears at $33,468.80. Justice Rivera's Order rejects Plaintiff's contention "that he has paid the required child support and now that the child is emancipated, he no longer owes any money," because "[i]n actuality, though Mr. Fernandez's [*sic*] paid child support through an income execution of his wages, and the child in question is now emancipated, *he is still in arrears for prior child support payments that he never paid.*" (emphasis added). Accordingly, Justice Rivera dismissed Plaintiff's CPLR Article 78 petition.

**\*2** Plaintiff filed the instant lawsuit pursuant to 42 U.S.C. § 1983 against employees of federal, state, and municipal child support enforcement agencies alleging that, because his ongoing support obligations were terminated *nunc pro tunc* to January 9, 2007 when his child turned 21, he had no further support obligations and all subsequent child support collection efforts were unconstitutional. [2] In his papers, Plaintiff challenges the October 23, 2007 decision of a Family Court Support Magistrate setting Plaintiff's child support arrears at $33,468.80. Although he does not mention his unsuccessful CPLR Article 78 petition in his pleadings, he, in effect, asks this Court to reconsider Justice Rivera's May 13, 2008 Order finding that Plaintiff owed money under a valid child support arrears decree. Defendants have moved to dismiss Plaintiff's action for, *inter alia,* lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction and the *Rooker–Feldman* doctrine.

[2]     *Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (internal quotation marks omitted).

## Discussion

### A. *Domestic Relations Exception to Jurisdiction*

Defendants contend that this Court lacks subject matter jurisdiction over the action under the domestic relations exception to federal court jurisdiction. *See Ankenbrandt v.*

*Richards,* 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). The so-called "domestic relations exception" dates back to 1858, when the Supreme Court announced that federal courts have no jurisdiction over suits for divorce or the allowance of alimony. *Barber v. Barber,* 62 U.S. 582, 584, 21 How. 582, 16 L.Ed. 226 (1858); *Ankenbrandt,* 504 U.S. at 703 (explaining that exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees.") Although courts frequently use broad language when characterizing the exception, the Supreme Court has clarified that, in actuality, the exception is narrow, and "encompasses *only* cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt,* 504 U.S. at 704 (emphasis added). Thus, where a lawsuit "in no way seeks such a decree," the exception's invocation is inappropriate. *Id.; Williams v. Lambert,* 46 F.3d 1275, 1283 (2d Cir.1995) ("[T]he exception is very narrow."); *but see McKnight v. Middleton,* 699 F.Supp.2d 507, 516–17 (E.D.N.Y.2010) *aff'd,* 434 F. App'x 32 (2d Cir.2011) (observing that in *Schottel v. Kutyba,* 06–1577–CV, 2009 WL 230106 (2d Cir. Feb.2, 2009), the Second Circuit expanded the exception to claims that, in fact, challenge domestic relations decrees, even where they are recast as actions seeking monetary relief).

The domestic relations exception is rooted in an understanding that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890). "[T]he exception is grounded, not in the Constitution, but as a matter of 'statutory construction' of the federal diversity statute." *Tilley v. Anixter Inc.,* 283 F.Supp.2d 729, 733–34 (D.Conn.2003) (citing *Ankenbrandt,* 504 U.S. at 703). Despite its origins in the federal diversity statute, courts in this district routinely apply the exception to cases brought under the federal courts' federal question jurisdiction. *See Mitchell–Angel v. Cronin,* 101 F.3d 108 (2d Cir.1996) ("District courts in this Circuit have held that the exception includes civil rights actions directed at challenging the results of domestic relations proceedings.") (citing *McArthur v. Bell,* 788 F.Supp. 706, 708 (E.D.N.Y.1992)); *see also Sobel,* 2014 WL 2750364, at \*11 (finding exception strips federal court of jurisdiction where "Plaintiff's complaint is, in effect, a civil rights action directed at challenging the results of domestic relations proceedings, and, in particular, a state court's decisions regarding child support."); *Sullivan v. Xu,* No. 10–CV–3626 (ENV), 2010 WL 3238979, at \*2 (E.D.N.Y. Aug.13, 2010) ("Although plaintiff invokes his constitutional rights, the substance of his claims concern state law domestic

relations matters."). That said, the Second Circuit recently noted in a summary order that the Circuit "expressly decline[s] to address whether the domestic relations exception to federal subject matter jurisdiction applies to federal question actions." *See Ashmore v. Prus,* 12–2760–CV, 2013 WL 362998, at *2 (2d Cir. Jan.31, 2013) (summary order); *see also Ahlawat v. State of Connecticut Superior Court,* 3:12–CV–1042 JBA, 2013 WL 3338572, at *1 n. 2 (D.Conn. July 2, 2013) (noting that "the Second Circuit has not resolved whether [the domestic relations] exception would provide a further bar to Plaintiff's federal question lawsuit.").

**\*3** Here, if Plaintiff's claim is read to challenge the enforcement of a child support decree on the grounds it is erroneous, his lawsuit, even though framed as a civil rights action, would be barred by the domestic relations exception. However, reading *pro se* Plaintiff's complaint to "raise the strongest arguments that they suggest," *Triestman,* 470 F.3d at 474, Plaintiff's complaint can be read more narrowly-to seek monetary damages for violations of his due process rights that occurred during the enforcement of a *valid* child support decree. *Ankenbrandt,* 504 U.S. at 704 (noting that the exception has no application where the lawsuit "in no way seeks [a domestic relation] decree"). Even so, some courts in this district have held that lawsuits seeking monetary relief for purportedly unlawful conduct undertaken to enforce valid support decrees are also barred by the domestic relations exception. *See Joseph v. Stewart,* 13–CV–1678 NGG LB, 2013 WL 3863915, at *2 (E.D.N.Y. July 24, 2013) (applying domestic relations exception where "Plaintiff challenges the enforcement and effect of his child support obligations, and although he invokes his constitutional rights, the essence of his allegations concern state law domestic relations matters.").[3] This Court need not resolve whether such a narrow challenge would be barred by the domestic relations exception because the Court lacks subject matter jurisdiction over this action under, *inter alia,*[4] the Rooker–Feldman doctrine.

[3]    *But see King v. Comm'r & New York City Police Dep't,* 60 F. App'x 873, 874–75 (2d Cir.2003) (summary order) ("The instant appeal is brought pursuant to the court's federal question jurisdiction, not its diversity jurisdiction. Nevertheless, the City argues that the domestic relations exception is not limited to diversity cases. Although this seems contrary to precedent, the city does cite language to support its argument. We need not

examine this question, however, because even under the broadest interpretation of the exception, it applies only to cases that seek issuance or modification of divorce, alimony, or child custody decrees. Appellant is not seeking a domestic relations award, and he is not asking that his parental rights be reinstated. Instead, his complaint seeks monetary damages. The domestic relations exception to federal jurisdiction is therefore irrelevant to this action.") (citation and parenthetical explanation omitted).

[4]    Even if this Court has jurisdiction, "[a] federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *Am. Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir.1990).

**B.** *Rooker–Feldman Doctrine*
The so-called *Rooker–Feldman* doctrine divests federal courts of jurisdiction to consider suits which seek to overturn state court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). Additionally, the doctrine "bars federal courts from considering claims that are 'inextricably intertwined' with a prior state court determination." *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 185 (2d Cir.1999) (citations and internal quotation marks omitted). In *Exxon Mobil,* the Supreme Court reined in the use of the doctrine, explaining that the doctrine "is confined to cases ... brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* In the wake of *Exxon Mobil,* the Second Circuit revisited its prior precedents and limited the application *of Rooker–Feldman* to cases satisfying four "requirements":

First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"-i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of

2014 WL 5823116

these requirements may be loosely termed procedural; the second and third may be termed substantive.

**\*4** *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005) (quoting *Exxon Mobil,* 544 U.S. at 284); *see also McKit hen v. Brown,* 626 F.3d 143, 154 (2d Cir.2010).

Courts have repeatedly invoked the doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears. *See Sorenson v. Suffolk Cnty. Child Support Enforcement Bureau,* 07–CV–03755JFBAKT, 2009 WL 580426, at \*6–7 (E.D.N.Y. Mar.5, 2009) (finding plaintiff, who previously unsuccessfully sought to have child support "arrears vacated ... in state court" cannot "utilize the federal courts to, in essence, challenge the existing judgment regarding child support arrears, or the County's enforcement of that judgment."); *Remy,* 507 F. App'x at 18–19 (finding that court was barred under *Rooker–Felman* from exercising jurisdiction over suit challenging "Family Court's arrears order[, where plaintiff] ... had a full and fair opportunity to litigate [the arrears order in state court]."); *Chestnut v. Gabler,* No. 06 Civ. 34E(F), 2007 WL 529556, at \*3 (W.D.N.Y.Feb.13, 2007) ("Construed liberally, the complaint essentially alleges that plaintiff's constitutional rights were violated during the course of the Family Court proceedings and plaintiff now seeks, in part, to challenge in this Court the orders issued in those proceedings. To the extent plaintiff is asking this Court to review the proceedings before the Allegany County Family Court, said review by this Court is barred by the *Rooker–Feldman* doctrine and the complaint must be dismissed accordingly."). In *Sorenson,* the Court explained that although the plaintiff attempted to recast his claims as alleging "improper enforcement of the Family Court judgment rather than [challenging] the judgment itself[,] ... *Rooker–Feldman* also bars such claims because the enforcement is inextricably intertwined with the state court judgment." *Sorenson,* 2009 WL 580426, at \*7 (collecting cases).

Plaintiff expressly asks this Court to review the October 23, 2007 family court order setting arrears on the grounds that the decision was erroneous because he had complied with all previous child support obligations and thus could not be liable for arrears. Under the *Rooker–Feldman* doctrine, this Court may not do so. As in *Sorenson,* to the extent Plaintiff recasts his claims as alleging improper enforcement of the

child support arrears decree, under these circumstances, the enforcement of the arrears decree is inextricably intertwined with the validity of the decree, itself. Thus this Court is barred under the *Rooker–Feldman* doctrine from reviewing the claim. Additionally, this Court is precluded from reviewing Plaintiff's claims for the separate reason that Plaintiff has already brought an Article 78 petition in state court raising these exact arguments. Thus, the instant lawsuit, in effect, challenges not only the October 23, 2007 arrears order, but also the May 13, 2008 decision of Justice Rivera dismissing the Article 78 petition. Plaintiff's attempts to appeal to this Court the decisions of the Family Court Support Magistrate and Justice Rivera are barred by the *Rooker–Feldman* doctrine. Accordingly, Defendant's motion to dismiss is granted.

**\*5** The above reasoning applies with equal force to Plaintiff's claims against the other defendants who allegedly enforced the child support arrears decree. Thus, this Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims against all of the remaining defendants in the action. Given that this Court has determined that it lacks subject matter jurisdiction over the entire action, the Court, *sua sponte,* dismisses Plaintiff's claims against the remaining defendants and dismisses Plaintiff's complaint in its entirety. *Morris v. Rosen,* 12–3143–CV, —— F. App'x ——, 2014 WL 4233392, at \*1 (2d Cir. Aug.28, 2014) (affirming district court's *sua sponte* dismissal of *pro se* plaintiff's complaint for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine.)

### Conclusion

For the foregoing reasons, the State Defendant's motion to dismiss is granted on the grounds that this Court lacks subject matter jurisdiction over the instant action under the *RookerFeldman* doctrine. For the same reasons, the Court *sua sponte* dismisses the action against all other defendants. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

### SO ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2014 WL 5823116

---

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

645 Fed.Appx. 103
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE 32.1
AND THIS COURT'S LOCAL RULE 32.1.1. WHEN
CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN
ELECTRONIC DATABASE (WITH THE NOTATION
"SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON
ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals,
Second Circuit.

Edwin FERNANDEZ, Plaintiff–Appellant,

v.

Vicky TURETSKY, Commissioner of United States
Health and Human Services, Office of Child Support
Enforcement, Joyce A. Thomas, Regional Administrator
Region II (New York), United States Department of
Health and Human Services, Office of Child Support
Enforcement, Thomas H. Mattox, Commissioner,
New York State Department of Taxation and Finance,
Robert Doar, Commissioner, New York City Human
Resources Administration, C. Duncar Kerr, Deputy
Tax Commissioner, New York State Department
of Taxation and Finance, Office of Child Support
Enforcement, Margaret Ramsay, Tax Compliance
Agent, New York State Department of Taxation and
Finance, Patty Whitford, Tax Compliance Agent, New
York State Department of Taxation and Finance, Child
Support Enforcement Section, Defendants–Appellees,
Georgia Brown, Tax Compliance Agent, New
York State Department of Taxation and Finance,
Child Support Enforcement, Defendant. *

* The Clerk of Court is directed to amend the caption
as set forth above.

No. 14–4568–cv.
|

April 14, 2016.

Appeal from a judgment of the United States District Court
for the Eastern District of New York (Sandra L. Townes,
Judge).

**UPON DUE CONSIDERATION WHEREOF, IT IS
HEREBY ORDERED, ADJUDGED, AND DECREED**
that the judgment of the District Court be and hereby is
**AFFIRMED.**

**Attorneys and Law Firms**

Edwin Fernandez, pro se, Staten Island, NY, for Plaintiff–
Appellant.

Varuni Nelson, Kathleen A. Mahoney, Assistant United States
Attorneys, for Kellie T. Currie, Acting United States Attorney,
Eastern District of New York, Brooklyn, NY, for Federal
Defendants–Appellees.

Barbara D. Underwood, Solicitor General (Claude S. Platton,
Philip V. Tisne, Assistant Solicitors General, of counsel),
for Eric T. Scheiderman, Attorney General of the State of
New York, New York, NY, for Defendants–Appellees Mattox,
Kerr, Ramsay, and Whitford.

Deborah A. Brenner, Ronald E. Sternberg, Assistant
Corporation Counsel, for Zachary W. Carter, Corporation
Counsel of the City of New York, New York, NY, for
Defendant–Appellee Doar.

PRESENT: AMALYA L. KEARSE, JOSÉ A. CABRANES
and DENNY CHIN, Circuit Judges.

**\*104 SUMMARY ORDER**

Plaintiff-appellant Edwin Fernandez ("Fernandez"),
proceeding *pro se,* appeals from a November 10, 2014
judgment of the District Court, which followed a November 5,
2014 order dismissing his complaint for lack of subject matter
jurisdiction under the *Rooker–Feldman* doctrine. Fernandez
had sought compensatory and punitive damages pursuant to
42 U.S.C. § 1983 for alleged violations of his constitutional
rights in connection with the enforcement of child support
obligations as determined by state courts. We assume the
parties' familiarity with the underlying facts, the procedural
history of the case, and the issues on appeal.

We review *de novo* a dismissal for lack of subject-matter
jurisdiction, including under *Rooker–Feldman. Green v.*

*Mattingly,* 585 F.3d 97, 101 (2d Cir.2009). The *Rooker–Feldman* doctrine provides that federal district courts lack subject-matter jurisdiction to review "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

We have identified "four 'requirements' that must be met before" that doctrine is applicable. *Green,* 585 F.3d at 101. The District Court properly ruled that each requirement is met here.

(1) "[T]he federal-court plaintiff must have lost in state court." *Id.* (internal quotation marks omitted). Here, Fernandez challenges an adverse 2007 state-court judgment setting child support arrears and the 2008 denial of his petition under N.Y. C.P.L.R. Article 78, in which a state court rejected his challenge to enforcement of the arrears.

(2) "[T]he plaintiff must complain of injuries caused by [the] state-court judgment." *Id.* (alterations and internal quotation marks omitted). Here, Fernandez alleges injuries, such as the seizure of his cars, stemming from the 2007 and 2008 state-court judgments. *Cf. Sykes v. Bank of Am.,* 723 F.3d 399, 403–04 (2d Cir.2013) (finding the *Rooker–Feldman* doctrine inapplicable where a plaintiff did "not complain of injuries caused by a state court judgment" or "challenge the validity or enforcement of the child support order itself," but only challenged a garnishment that had not been approved by any state court).

(3) "[T]he plaintiff must invite district court review and judgment of [the state-court] judgment." *Green,* 585 F.3d at 101 (alterations and internal quotation marks omitted). Here, the District Court would have had to overturn the state-court judgments in order for Fernandez to prevail

on his constitutional claims. He therefore sought review and rejection of those state-court judgments.

(4) "[T]he state-court judgment must have been rendered before the district court proceedings commenced." *Id.* (internal quotation marks omitted). Here, Fernandez filed his federal complaint in 2012, after the entry of the two state-court judgments.

Fernandez's arguments to the contrary are without merit. First, he argues that the *Rooker–Feldman* doctrine does not apply because no state court specifically addressed the illegal seizure of his cars. But that doctrine applies when "a federal suit **\*105** complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are *produced* by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hoblock v. Albany Cty. Bd. of Elections,* 422 F.3d 77, 88 (2d Cir.2005) (emphasis supplied). The seizure of Fernandez's cars is an injury "produced by" or caused by the state-court judgment setting arrears. *See id.* Second, Fernandez asserts that the doctrine does not apply because his case concerns child support, while *Rooker* involved a decision regarding property in a trust, and *Feldman* involved bar admission. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 417, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). But the *Rooker–Feldman* doctrine is not limited to the exact factual situations that arose in those cases. *See, e.g., Hoblock,* 422 F.3d at 85–92.

## CONCLUSION

We have reviewed all of the arguments raised by Fernandez on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the District Court.

**All Citations**

645 Fed.Appx. 103

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.